**EXHIBIT 3**

OBER│KALER
A Professional Corporation

FILE COPY

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Anthony F. Vittoria
afvittoria@ober.com
410-347-7692

Offices In
Maryland
Washington, D.C.
Virginia

September 1, 2005

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Re:  *AES Puerto Rico, LP v. ALSTOM Power Inc.*
     Civil Action No. 04-1282-JJF

Dear Dan:

I am writing regarding AES's woefully deficient and defective electronic document production in this matter. Despite a series of conversations and correspondence – including the exchange of sample productions – AES has failed to produce what was agreed upon by the parties. Indeed, aspects of AES's initial electronic document production raise questions regarding the loss or destruction of relevant information and evidence.

A.  **The Deficiencies In AES's Electronic Document Production**

AES produced a total of 544 separate electronic documents, which comprised a total of 622 megabytes (.6 gigabytes) of memory. In contrast, ALSTOM simultaneously produced to AES 37,519 separate electronic documents, which comprised a total of 3.7 gigabytes – approximately six times the amount of information provided by AES.

Of the 544 separate documents, AES produced only 136 electronic e-mail documents. Of those 136 e-mails, 28 electronic e-mail documents had been produced in such a manner that some, or most, of the metadata that should have accompanied those electronic documents was lost or destroyed. Specifically, there were 18 electronic e-mail documents (Bates numbers AESPR-028499 to AESPR-020519) that were produced in PDF format. Apparently, all but one of those e-mails required some sort of redaction.[1]

To accomplish this "redaction", it appears that AES first converted those electronic documents to hard-copy form by printing them and then redacted certain portions of the newly created hard-copy documents. Following the redaction, AES converted the hard-copy documents into PDF files and included them in its production of electronic documents. In this process, however, AES lost or destroyed much of the crucial metadata that originally

---

[1] In addition, AES failed to provide a basis for the redaction of a portion of these electronic e-mail documents.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 2

accompanied the non-redacted electronic documents, including (1) the subject of the e-mail, (2) from whom the e-mail was sent, (3) to whom the e-mail was sent, (4) to whom the e-mail was carbon-copied (e.g. the "CC" information), (5) the date the e-mail was sent, (6) the time the e-mail was sent, (7) the date the e-mail was received, (8) the time the e-mail was received and (9) the author of the e-mail. Most importantly, however, the metadata for these 18 e-mails contained no optical character recognition ("OCR") data, thereby rendering essentially useless the production of these 18 e-mails in "electronic" format.[2]

In addition to the 18 "redacted" e-mails, there were 10 other electronic e-mail documents that were produced in some format other than the MS-Outlook format in which the other 108 electronic e-mail documents had been produced.[3] For some reason, AES failed to produce all of the required metadata for these e-mails, as well. Specifically, all 10 of these e-mails were missing the following metadata: (1) from whom the e-mail was sent, (2) to whom the e-mail was sent, (3) to whom the e-mail was carbon-copied (e.g. the "CC" information), (4) the date the e-mail was sent, (5) the time the e-mail was sent, (6) the date the e-mail was received, (7) the time the e-mail was received and (8) the author of the e-mail. In addition, only 1 of those 10 e-mails (Bates number AESPR-028520 to AESPR-029521) had the "e-mail subject" metadata. A list containing the Bates numbers for the subject e-mails is attached hereto.

Another problem with AES's initial electronic document production is that it produced electronic e-mail documents for a very limited period of time. Specifically, the e-mails contained in AES's first electronic document production date from September 16, 2003 through May 12, 2005. ALSTOM has repeatedly explained to AES that there is a great deal of information and documentation – whether in hard-copy or electronic format – dating prior to the fall of 2003 that is relevant and material to the issues in this case.

Incredibly, AES also failed to produce a single e-mail that was sent by or to someone at D/FD, AES's primary contact on the Project. It is simply not credible that there was not a single e-mail exchanged between the twelve AES individuals whose e-mails were allegedly produced and anyone at D/FD – the entity to whom AES paid over $400M – relating to the ESP, CDS or FBHE handcuff equipment during the entire seven years in which D/FD was involved with this Project.

Finally, AES represented that it produced e-mails from 12 separate individuals, including Al Dyer, AES's Project Manager. Unbelievably, however, AES produced only 44 e-mails that were either received (either directly or by "CC") or sent by Mr. Dyer. AES's production would suggest that AES's Project Manager sent or received only about 2 e-mails a month (for the 20 month period provided by AES) relating to the two issues about which AES is now claiming

---

[2] Another document, Bates numbered AESPR-029085 through AESPR-029096, was produced in PDF format resulting in the loss or destruction of all of the same metadata that had been lost or destroyed for the 18 "redacted" e-mails.

[3] Those 10 e-mails had document extensions of either OFT, HTM or TXT.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 3

over $14 million in damages. Contradicting that, however, is AES's own hard-copy document production which shows that Mr. Dyer received more "responsive" e-mails during this period than were produced in electronic form. Specifically, there were several e-mails that AES produced in hard-copy format that it did not produce in electronic format, including at least 5 e-mails received by Mr. Dyer during the 20 month period produced by AES.[4] Moreover, ALSTOM has in its database a total of 117 e-mails that were sent either by or to Mr. Dyer – and ALSTOM's database does not include any e-mails exchanged solely between AES and D/FD, AES's primary contact on the Project.

Likewise, it is apparent that AES has failed to produce a significant number of e-mails sent either to or by all of the other people whose e-mails were allegedly produced, including Paul Stinson, an engineer who was intimately involved with the corrosion issue, Elias Sostre, AES's Operation Team Leader/Control Room Supervisor, Weili Yu, AES's E&I Maintenance Team Leader, and Ron McParland, AES's Project Engineering Manager. ALSTOM has in its database 98 e-mails that were sent either by or to Paul Stinson. AES, however, only produced a total of 76 e-mails that were sent by or to Paul Stinson. ALSTOM has 93 e-mails that were sent by or to Elias Sostre. In stark contrast, AES produced only 21 e-mails sent by or to Mr. Sostre. ALSTOM has a total of 48 e-mails that were sent by or to WeiLi Yu in its database; AES, on the other hand, produced only 15. Finally, ALSTOM has a total of 451 e-mails that were sent by or to Ron McParland; incredibly, AES produced only 14.

The facts that (1) AES failed to produce any e-mails to or from D/FD, its primary contact on this project, (2) AES failed to produce e-mails in electronic format that it had already produced in hard-copy format, and (3) ALSTOM is in possession of hundreds of AES e-mails in its own limited electronic document database that were not produced by AES establishes that AES has failed to produce even a semblance of the responsive electronic e-mail documents in its possession, custody or control.

**B.    The Defects In AES's Electronic Document Production**

Despite the exchange and review of electronic document production samples, AES failed to provide some of the metadata that it agreed to produce. Specifically, AES failed to produce any of the "Custodian" metadata information. This data indicates from whose computer/file/directory the subject electronic document was retrieved. Accordingly, while AES has represented that it produced electronic documents from 12 different individuals, ALSTOM has no way of confirming that representation. In addition, ALSTOM has no way of determining from whose custody a specific electronic document was retrieved. This information is critical for a myriad of reasons, including authentication issues.

In addition, AES failed to provide the relative file path information in the "NativeFile" metadata field that automatically links the user to the subject document in its native file format.

---

[4] The Bates numbers of those five e-mails are (1) AESPR 004147, (2) AESPR 025862, (3) AESPR 025858, (4) AESPR 025854 and (5) AESPR 025743.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 4

AES provided this information/link (highlighted in yellow) in its sample, but failed to do so in this initial electronic document production. As a result, ALSTOM is essentially unable to move between the metadata of the subject document and the document in its native format.

Likewise, AES failed to produce any "BCC" metadata for any of the electronic documents that it produced.

There were also some apparently inadvertent defects in AES's production. First, there were 15 electronic documents that should have had data in the "ParentID" metadata field, but did not. A list containing the Bates numbers of those documents is attached hereto. In addition, there were no TIF or PDF images associated with the metadata for the document or documents at Bates numbers AESPR-029160 through AESPR-029171. Finally, the images associated with the electronic documents with "GIF" extensions were completely undecipherable. A list containing the Bates numbers of those documents is attached hereto.

Because AES has (1) failed to produce highly relevant and responsive electronic documents, (2) may have lost or destroyed certain relevant and material information, and (3) failed to produce certain metadata agreed to by the parties, it is imperative that AES immediately supplement its electronic document production and cure the defects in its first production.

I look forward to hearing from you in the near future regarding these matters.

Sincerely,

Anthony F. Vittoria

Attachment
cc:   James E. Edwards, Jr., Esquire
      Michael A. Schollaert, Esquire
AFV
772096

## Bates Numbers of Defective AES Electronic Documents

### Defective "Redacted" E-Mails With Missing Metadata

AESPR-028499 to AESPR-020519

### Defective OFT, HTM Or TXT E-Mails With Missing Metadata

AESPR-028436 to AESPR-028438
AESPR-028520 to AESPR-028521
AESPR-028522
AESPR-028551
AESPR-028590 to AESPR-028591
AESPR-028623 to AESPR-028625
AESPR-029020
AESPR-029053 to AESPR-029054
AESPR-029055 to AESPR-029056
AESPR-029098.

### Electronic Document Attachments Missing "ParentID" Metadata

AESPR-028480 to AESPR-028486
AESPR-028531 to AESPR-028535
AESPR-028536 to AESPR-028540
AESPR-028541 to AESPR-028544
AESPR-028546 to AESPR-028547
AESPR-028583 to AESPR-028585
AESPR-028627 to AESPR-028628
AESPR-029044 to AESPR-029045
AESPR-029063
AESPR-029064
AESPR-029065
AESPR-029072 to AESPR-029077
AESPR-029098
AESPR-029111 to AESPR-029113
AESPR-029136 to AESPR-029152

### Undecipherable "GIF" Electronic Documents

AESPR-028274
AESPR-028296
AESPR-028361
AESPR-028365