## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL D. WILLIAMS

I, DANIEL D. WILLIAMS, declare as follows:

1.    I am an associate at Williams & Connolly LLP and I represent AES Puerto Rico, L.P. ("AES-PR") in the above-captioned matter.  I am admitted *pro hac vice*.  This declaration is based on my personal knowledge except where otherwise noted.

2.    Without first contacting counsel for AES-PR to attempt to discuss a mutually agreeable date, defendant ALSTOM noticed a Rule 30(b)(6) deposition for November 15, 2005 for AES-PR to testify about its document collection and preservation efforts.

3.    I am the attorney handling the AES-PR matter day-to-day at Williams & Connolly LLP, and I am the attorney most familiar with AES-PR's document collection and preservation efforts.  I will be preparing AES-PR's Rule 30(b)(6) witness for the deposition, and I will be defending the deposition on behalf of AES-PR.

4.    My schedule did not permit me to defend this deposition on November 15, 2005 or to spend sufficient time prior to November 15, 2005 to prepare the witness for the deposition. Among other scheduling conflicts, I am the only associate involved in drafting an appeal brief

that must be filed in the United States Court of Appeals for the Federal Circuit on November 23, 2005. In addition, I am drafting summary judgment reply briefs that are due on December 1, 2005 for a multi-district litigation pending in the United States District Court for the Northern District of California.

5.      AES-PR's witness must travel from Puerto Rico for the Rule 30(b)(6) deposition, which means that we must schedule the deposition in a manner that provides sufficient time for the witness to travel to Washington, D.C., prepare for the deposition, attend the deposition, and return home. Both the witness and I have attempted to accommodate ALSTOM's demands, but, particularly in light of my other client obligations, it is not possible for me to prepare this witness for the deposition and defend it prior to November 23, 2005, nor is it clear that the witness could arrange travel on a holiday week.

6.      I have been informed by our litigation support staff that AES-PR has produced 44,674 pages of electronic documents and 44,287 pages of paper documents, for a total of 88,961 pages. AES-PR believes that it has completed its production of paper documents in response to ALSTOM's First Set of Requests for Documents. If additional responsive, non-privileged documents are located, AES-PR seasonably will supplement its document production.

7.      On October 13, 2005, I wrote ALSTOM to request that the parties agree to a mutual date to complete production of paper and electronic documents in response to the parties' first set of document requests, which were exchanged in March 2005, because substantial completion of document production is necessary for meaningful and complete depositions of fact witnesses. *See* Ex. A. I reiterated this request to ALSTOM several times. Each time I have requested that the parties agree to a date, ALSTOM's counsel has refused to do so.

8.     On September 1, 2005 and September 19, 2005, ALSTOM sent me letters complaining about the format of AES-PR's electronic document production, including complaints relating to the "metadata" produced.  It is my belief that ALSTOM's letters revealed a misunderstanding of various technical issues concerning electronic discovery.  I responded with a detailed explanation as to why I believe that AES-PR's format complied with its obligations.  ALSTOM then wrote to me to say that it still was not satisfied and to request that our electronic discovery liaisons meet to discuss the technical issues.  I responded by letter dated October 24, 2005 with the name of our electronic discovery liaison, and I offered to facilitate a meeting of our liaisons.  *See* Ex. B.  ALSTOM has not responded to that letter nor has it contacted me to arrange the meeting.

9.     On November 4, 2005, counsel for ALSTOM wrote to me concerning illegible copies of some of AES-PR's documents that ALSTOM had copied when it inspected AES-PR's paper documents earlier this year.  On November 6, 2005, I wrote to ALSTOM to explain that it appeared that ALSTOM's copy service had not made dark enough copies, that we would make the documents available to ALSTOM again, and that, if necessary, we would make the originals of the documents available.  *See* Ex. C.  ALSTOM has not responded to my letter.

10.     ALSTOM has yet to produce the e-mails from the e-mail boxes of twenty-six persons it identified in response to AES-PR's interrogatories as having information about the subject matter of this lawsuit.  Those persons include William Jarvis, the Project Manager for ALSTOM, who is the ALSTOM employee most centrally involved in this dispute, and Frank Garbielli, a key ALSTOM employee whose deposition is scheduled to be taken December 15, 2005.  Notwithstanding my requests, ALSTOM has not provided any date certain by which it will produce these documents (even though I have advised ALSTOM that we need Mr.

3

Garbielli's documents for his upcoming deposition).  It is possible that there are other ALSTOM employees in addition to the twenty-six whose e-mails have not been produced.

11.    ALSTOM made available to AES-PR over 100 boxes of documents in Windsor, Connecticut.  AES-PR determined based on a sample of boxes that, while each box appeared to contain some responsive documents, the vast majority of the documents had nothing to do with the issues in dispute in this litigation.  AES-PR moved to compel ALSTOM to segregate its responsive documents from its non-responsive documents.  This Court denied AES-PR's motion (D.I. 36).  AES-PR then requested access to the over 100 boxes of documents.  ALSTOM initially refused to grant AES-PR any access to the documents, stating that the two days it had set aside in May for AES-PR to review the over 100 boxes fully satisfied its discovery obligations, *see* Tab D.  ALSTOM also has implied that the documents are either no longer at the Windsor location or were reintegrated at some point with other ALSTOM documents.  In either case, ALSTOM did not notify AES-PR or the Court of its intent to disband its document repository.  When AES-PR invited ALSTOM to reconsider its refusal to make the documents available, ALSTOM said that it would make the documents available again only if AES-PR would pay its attorneys' fees and expenses, including for "travel, lodging and food expenses," "not only . . . during the actual production, but also . . . as a result of the need to have ALSTOM's attorneys travel to Windsor prior to AES's arrival to prepare the documents for production."  *See* Tab E.

12.    On behalf of AES-PR, I issued a document subpoena to Altran Corp., a third party that prepared a report for the surety of ALSTOM subcontractor EEC.  ALSTOM has represented that it recently retained Altran as a litigation consultant.  At first, ALSTOM claimed that all of the Altran documents therefore were privileged, and asked that I withdraw the subpoena.  I responded that Altran had documents that clearly were not privileged because Altran had

prepared a report for the surety in connection with a dispute between the surety and ALSTOM, and indeed ALSTOM's counsel had written a letter referring to the report as "a very superficial analysis." ALSTOM subsequently agreed that it had no privilege claim with respect to the documents pre-dating October 28, 2004, but said that, because it now was using this company – whose work it had criticized as "very superficial" – as a consulting expert, Altran would not produce documents from after that date. ALSTOM's counsel told me that he would produce Altran's pre-October 28, 2004 documents, but has failed to do so. I repeatedly have inquired when ALSTOM or Altran would produce the documents, but ALSTOM's counsel has not provided a date by which he will do so.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of November, 2005, at Washington, D.C.

Daniel D. Williams