## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. No. 04-1282-JJF |
| ) | |
| ALSTOM POWER, INC., ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF AES PUERTO RICO, L.P.'S
### MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff AES Puerto Rico, L.P. ("AES-PR") moves to compel ALSTOM Power, Inc. ("ALSTOM") to comply with its discovery obligation to make its paper documents available to AES-PR without imposing cost shifting and without further delay.

### BACKGROUND

AES-PR commenced this action against ALSTOM, the principal subcontractor in the construction of AES-PR's power plant, because ASLTOM failed to honor its warranty with respect to two pieces of the plant's equipment: its electrostatic precipitators and its fluidized bed heat exchanger handcuffs. On March 7, 2005, AES-PR served document requests on ALSTOM relating to those two warranty claims. *See* Requests for Production (Tab A).

After extended negotiations, ALSTOM informed AES-PR in early May 2005 that it would be making approximately 200 boxes of documents ("the Windsor boxes") available for inspection *See* Boatman Decl. ¶ 2 (Tab B). At that time, however, counsel for ALSTOM refused to confirm that an attorney had reviewed all of the documents within those boxes for

responsiveness. *See id.* ¶ 3. Instead, counsel for ALSTOM would state only that the boxes

represented a subset of documents that ALSTOM had gathered for another litigation, and that

ALSTOM had culled the documents for production to AES-PR based on an internal ALSTOM

index. *Id.*

On May 11, 2005, AES-PR wrote to ALSTOM to express its concerns that, given

ALSTOM's refusal to confirm that an attorney had reviewed all of the documents in the Windsor

boxes for responsiveness, the bulk of ALSTOM's production might be unresponsive to AES-

PR's requests. *See* Letter from Boatman to Schollaert of 5/11/05 (Tab C). Given those

concerns, AES-PR wrote that it intended to travel to Windsor to inspect a sample of the

documents in the Windsor boxes so that AES-PR could confirm or dispel its concerns, and that

AES-PR would complete its review at that time only if its inspection revealed that "the bulk of

the documents [were] indeed responsive to [AES-PR's] requests." *Id.* ALSTOM then told AES-

PR that AES-PR could inspect the documents on May 19 and 20, 2005. *See* Letter from

Schollaert to Boatman of 5/13/05 (Tab D). At no time did ALSTOM state that AES-PR's

inspection trip would be the only two days on which ALSTOM would make the 208 Windsor

boxes available to AES-PR, nor did ALSTOM ever state that it believed the inspection trip fully

satisfied its obligation to make its responsive documents available to AES-PR. *See* Boatman

Decl. ¶ 5 (Tab B).

When counsel for AES-PR arrived at ALSTOM's Windsor office, they reviewed

a sample of twelve of the boxes and quickly discovered that the vast majority of the documents

in those boxes were unrelated to this litigation. *Id.* ¶ 6. Indeed, some boxes contained as little as

2% responsive files; others had important responsive documents buried within stacks of

unrelated files. *Id.* 6. Given the great number of unresponsive documents that ALSTOM had

produced, counsel for AES-PR informed the ALSTOM paralegal that they would not be reviewing the documents at that time. *Id.* ¶ 7. AES-PR arranged for a vendor to copy a small number of documents from the sample AES-PR had reviewed and left. *Id.*

After an unsuccessful attempt to persuade ALSTOM to review the 208 Windsor boxes for responsiveness, AES-PR filed a Motion To Compel with this Court. *See* Motion to Compel (Tab E). Although this Court stated that "[ALSTOM's] production may have been less than efficient," it denied the Motion because "the deficiencies that the Court can discern . . . [did] not amount to a clear violation of Defendant's duties under Rule 34." *See* D.I. 36 (Tab F). At no point during the unsuccessful meet-and-confer process nor in its Response to AES-PR's Motion To Compel did ALSTOM ever state that it intended to make the 208 Windsor boxes available only for two days and that, in ALSTOM's view, AES-PR had forfeited the right ever to view these documents by filing its Motion To Compel. *See* Boatman Decl. ¶ 9 (Tab B). Furthermore, ALSTOM never stated that it believed it had fully satisfied its obligation to make its paper documents available for inspection by making the 208 boxes available for a two-day review, nor did ALSTOM inform this Court or AES-PR that it intended to disassemble the 208 boxes of Windsor documents either while AES-PR's motion was pending or immediately following this Court's ruling on that Motion. *See id.* at ¶ 10.

Following this Court's denial of AES-PR's Motion To Compel, counsel for AES-PR wrote to counsel for ALSTOM on November 8, 2005, asking for access to the 208 Windsor boxes. *See* Letter from Boatman to Vittoria of 11/8/05 (Tab G). Given the large number of documents involved, counsel for AES-PR indicated that he would like to review the documents over a four-day span, two days in November and two days in early December. *Id.*

On November 10, 2005, ALSTOM refused AES-PR's request to review the documents, claiming that it had fully satisfied its obligation to produce the documents by making them available during May 19 and 20, 2005. *See* Letter from Vittoria to Boatman of 11/10/05 (Tab H). ALSTOM further stated that it could not make the 208 Windsor boxes available because, at some undisclosed point in time, it had disassembled the boxes and did not intend to incur the cost to reassemble those boxes in Windsor. *See id.* ALSTOM has not indicated whether it moved the Windsor documents while AES-PR's Motion To Compel was pending with this Court or whether it did so immediately following this Court's November 7, 2005 Order. *See* Boatman Decl. ¶ 12 (Tab B ).

Over the next week, AES-PR engaged in a series of emails, letters, and telephone calls, requesting that ALSTOM re-consider its position. *See Id.* ¶ 13. In response, ALSTOM stated that it would reassemble the Windsor boxes only if AES-PR would pay its full attorneys' fees and expenses for doing so, including its attorneys' "travel, lodging and food expenses," "not only . . . during the actual production, but also . . . as a result of the need to have ALSTOM's attorneys travel to Windsor prior to AES's arrival to prepare the documents for production." Letter from Vittoria to Boatman of 11/16/05 (Tab I).

## ARGUMENT

ALSTOM's stance in this dispute is truly remarkable: at some point either during the pendency of AES-PR's Motion To Compel or immediately thereafter, ALSTOM claims that it disassembled a production of documents that it knew AES-PR needed to review. ALSTOM did this without ever giving notice of its intention to do so either to this Court or to AES-PR and without ever informing either this Court or AES-PR that it believed it had fully satisfied its discovery obligations by giving AES-PR access to over 208 boxes on May 19 and 20, 2005.

4

Then, when, AES-PR asked ALSTOM to review the full 208 boxes following this Court's denial of AES-PR's Motion to Compel, ALSTOM first refused to allow AES-PR to review them at all and then agreed to allow AES-PR to review the documents only if AES-PR would bear the costs of discovery that ALSTOM alone is required to bear.

For at least two reasons, this Court should order ALSTOM to make available for inspection, at its own expense, the 208 Windsor boxes. First, AES-PR never intended nor agreed to review the full 208 Windsor boxes in two days on May 19 and 20, 2005. Indeed, the opposite is true. In AES-PR's final letter before the May 19 inspection visit, AES-PR specifically told ALSTOM that it was traveling to Windsor to review only a sample of the 208 boxes so that it either could confirm or dispel its concerns. AES-PR also told ALSTOM that it did not intend to review the full 208 boxes on May 19 and 20 if ALSTOM had engaged in an inappropriate document dump. *See* Letter from Boatman to Schollaert of 5/11/05 (Tab C). Furthermore, given that there were over 200 Windsor boxes, even if AES-PR diligently had reviewed the documents for the full two days apparently allotted by ALSTOM it is highly unlikely that AES-PR could have completed its review at that time. Indeed, AES-PR has allotted four days to attempt to complete its review of the documents when they are next made available.

Second, this Court should not allow ALSTOM to benefit from "gotcha" discovery. ALSTOM never told AES-PR that AES-PR's plan to inspect a sample of the 208 boxes was unacceptable or that ALSTOM believed that it was satisfying fully its obligation to produce documents by allowing AES-PR two days to review the 208 boxes. Had ALSTOM raised those issues at the time, AES-PR could have objected or sought the assistance of this Court to obtain appropriate relief before their initial inspection.

5

Moreover, ALSTOM cannot justify its refusal to make the documents available by relying on its own unilateral decision to disassemble the 208 Windsor boxes during the pendency of AES-PR's Motion To Compel or shortly thereafter. ALSTOM never once informed this Court or AES-PR that it intended to disassemble the 208 boxes of "responsive" Windsor boxes. Whether AES-PR won or lost its Motion To Compel, it was obvious that it would thereafter need to review either some subset or the entirety of the 208 Windsor boxes. Knowing that, it is inexcusable that ALSTOM secretly disassembled the 208 boxes, apparently intending never to reassemble those boxes for future inspection by AES-PR.

*     *     *     *     *

If ALSTOM has indeed disassembled the 208 Windsor boxes, it has no one to blame but itself that it must incur expense to re-assemble them. The parties never agreed that AES-PR would review the full 208 Windsor boxes on May 19 and 20, 2005, or that ALSTOM had satisfied its discovery obligation by making the boxes available to AES-PR. Indeed, given the large number of boxes, a full review of the documents in two days would have been impracticable.

## CONCLUSION

For the foregoing reasons, AES-PR requests that this Court order ALSTOM to make available for inspection the 208 boxes of Windsor documents and that it order that ALSTOM bear the expense to do so.

Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated:  November 28, 2005

/s/ John S. Spadaro
John S. Spadaro (Bar No. 3155)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Attorneys for AES Puerto Rico, L.P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AES PUERTO RICO, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. No. 04-1282JJF |
| ) | |
| ALSTOM POWER, INC., ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Richard R. Wier, Jr.
Daniel W. Scialpi
1220 Market Street, Suite 600
Wilmington, DE 19801

Anthony F. Vittoria
James E. Edwards
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimire, MD 21202-1643

Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Dated: November 28, 2005            Attorneys for AES Puerto Rico, L.P.

126237