# Tab B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALSTOM POWER, INC., )<br>)<br>Defendant. )<br>) | Civ. No. 04-1282-JJF |

## DECLARATION OF JEB BOATMAN

I, JEB BOATMAN, declare as follows:

1. I am an attorney at Williams & Connolly LLP, and I represent AES Puerto Rico, L.P. ("AES-PR") in the above-captioned matter. My application for pro hac admission is currently pending before this Court. This declaration is based on my personal knowledge except where otherwise noted.

2. In a telephone conversation in early May 2005, counsel for ALSTOM informed me that ALSTOM would be making approximately 200 boxes (the "Windsor boxes") available for review by AES-PR at ALSTOM's Windsor, Connecticut office.

3. During that May 2005 telephone conversation, counsel for ALSTOM refused to confirm that an attorney for ALSTOM had reviewed for responsiveness all the documents in the Windsor boxes. Instead, counsel for ALSTOM stated only that the Windsor boxes represented a subset of documents that ALSTOM had gathered for another litigation, and that ALSTOM had culled the boxes for production to AES-PR based on an internal ALSTOM index.

4. On May 11, 2005, I wrote to counsel for ALSTOM to re-express AES-PR's concern that ALSTOM had engaged in an improper document dump by not reviewing for responsiveness all of the documents in the Windsor boxes. Given these concerns, I informed ALSTOM that AES-PR intended to travel to Windsor to inspect a sample of the documents in the Windsor boxes so that AES-PR could confirm or dispel its concerns. I further wrote that we would attempt to complete our review on May 19 and 20, 2005 only if the bulk of the documents were indeed responsive to AES-PR's requests.

5. At no time did ALSTOM state that it would make the Windsor boxes available to AES-PR only on two days in May 2005, or that it believed that giving AES-PR access to the boxes for two days fully satisfied its obligation to make its responsive documents available to AES-PR

6. When I, along with my colleague Daniel D. Williams, arrived at ALSTOM's Windsor office, ALSTOM made available the 208 boxes of documents. We reviewed a sample of twelve boxes and quickly discovered that the vast majority of documents in the boxes were unrelated to this litigation. Some boxes contained as little as 2% responsive documents; others had important responsive documents buried within stacks of unrelated files.

7. Given the large number of unresponsive documents, we informed the paralegal for ALSTOM (the only representation of ALSTOM'S legal team who was present during our review) that we would not be completing our review of the documents at that time. We arranged for a vendor to make copies of a small sample of the documents and left.

8. Thereafter, AES-PR sought to have ALSTOM review the documents and produce only those that were responsive. ALSTOM refused. AES-PR then filed a Motion To Compel.

9. At no point during the unsuccessful meet-and-confer process or in ALSTOM's Response to AES-PR's Motion To Compel did ALSTOM state that it intended to make the 208 Windsor boxes available for only two days or that, in ALSTOM view, AES-PR had forfeited its right ever to complete its review those documents by filing its Motion To Compel.

10. ALSTOM also never stated at that time that it believed that it had fully satisfied its obligation to make its paper documents available for inspection by making the 208 boxes available for a two-day review, nor did ALSTOM inform this Court or AES-PR that it intended to disassemble the 208 boxes of Windsor documents either while AES-PR's Motion was pending or immediately after this Court's ruling on that Motion.

11. Following this Court's denial of AES-PR's Motion To Compel, I wrote to ALSTOM on November 8, 2005, asking for access to the 208 Windsor boxes. Given the large number of boxes, I stated that I would like to review the documents over four days, two days in November and two days in early December.

12. On November 10, 2005, ALSTOM refused my request to review the Windsor boxes, claiming that it had fully satisfied its obligation to produce the documents by making them available for two days in May 2005. ALSTOM also stated that it could not make the documents available because it had disassembled them. ALSTOM has not said whether it did so during the pendency of AES-PR's Motion To Compel or after this Court's ruling.

13. Over the next week, I unsuccessfully attempted to persuade counsel for ALSTOM to reconsider their refusal to make the documents available. ALSTOM stated that it would reassemble the documents only if AES-PR would pay ALSTOM's full attorneys' fees and expenses for doing so, including its attorneys' travel, lodging, and food expenses, not only

3

during the actual production, but also as a result of the need to have ALSTOM's attorneys travel to Windsor prior to AES's arrival to prepare the documents for production.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of November, 2005, at Washington, D.C.

_____
Jeb Boatman

4