IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 04-1282-JJF |
| ALSTOM POWER INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**SUPPLEMENT TO**
**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF**
**ELECTRONIC DOCUMENTS**

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

Of Counsel:

James E. Edwards, Jr., Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:      (410) 547-0699

Counsel for Defendant
ALSTOM Power Inc.

Date:  December 5, 2005

I. **INTRODUCTION**

From March 18, 2005 through October 24, 2005 – the date on which ALSTOM filed its Motion to Compel Electronic Documents – AES had produced a total of 544 electronic documents in this matter. In the 28 days immediately after the Motion was filed, AES produced an additional 14,504 electronic documents. Despite this "data dump", however, AES has still substantially failed to fulfill its discovery obligations in this case.

While, as the requesting party, it is unclear to ALSTOM how many relevant electronic documents AES has failed to produce, the fact that ALSTOM can conclusively show that AES has failed to produce hundreds of relevant electronic mail messages leads to the inescapable conclusion that there are hundreds, if not thousands, of other relevant electronic documents that AES has failed to produce. Further, most of the e-mails that AES has produced are deficient because important metadata – metadata which the parties expressly agreed to produce – is missing. Indeed, the state of AES's electronic document production clearly indicates that AES has utilized collection techniques that have not only failed to capture all of the responsive and relevant electronic documents in its possession but have also altered or eliminated important metadata for many of the documents that it has produced.

II. **DEFICIENCIES IN AES'S PRODUCTION**

A. **Analysis of the Electronic Documents Produced By AES**

While AES may suggest that production of 14,548 electronic documents is substantial, in reality, AES has failed to produce even a fraction of the responsive and relevant electronic documents in its possession. First, of the 14,548 electronic documents that AES has produced,

fully 8,285 of those documents are either photographs, graphics or drawings.[1] Accordingly, AES has produced only a total of 6,263 electronic documents that have any text associated with them. However, almost half of the 6,263 textual electronic documents produced by AES were duplicates. That is, even though they have distinct Bates numbers, such documents are exactly the same as other electronic documents produced by AES. If the duplicate electronic documents are omitted, the actual number of unique, textual electronic documents produced by AES is only 3,139.

In contrast, ALSTOM has produced a total of 109,650 electronic documents, of which only 8,225 were .jpg, .tif, .dwg. or .bmp files. Of the remaining 100,852 electronic documents, 20,041 were duplicates, meaning that ALSTOM produced a total of 80,811 unique "textual" documents. The disparity between the totality of AES's and ALSTOM's electronic document productions is displayed in Table A, below.

**Table A**
**Electronic Documents Produced By The Parties**

|  | AES | ALSTOM |
|---|---|---|
| Total Electronic Documents Produced | 14,548 | 109,650 |
| Number of .jpg, .dwg, .bmp., .tif files | 8285 | 8,225 |
| Total Number of Remaining "Textual" Electronic Documents Produced | 6263 | 100,852 |
| Total Number of Duplicate "Textual" Electronic Documents | (3124) | (20,041) |
| **Total Number of Unique "Textual" Electronic Documents Produced** | **3139** | **80,811** |

---

[1] These electronic documents have the following file extensions – .jpg, .tif, .dwg., and .bmp. AES produced 8068 .jpg files, 61 .tif files, 39 .dwg files, and 117 .bmp files.

2

As Table A demonstrates, AES has produced less than one twentieth the amount of unique textual electronic documentation that ALSTOM has produced.

**B.      Analysis of AES's E-Mail Production**

    **1.      Analysis of E-Mail Using Keyword Searching**

Of the 14,548 electronic documents AES produced, only 1,743 of those documents were electronic e-mail documents. Many of the e-mails produced by AES are irrelevant or only tangentially related to the issues in this case. As a result, to obtain an accurate count of the relevant electronic e-mails that AES has produced, ALSTOM performed a "keyword" search of those e-mails. A search using the keywords "CDS," "ESP," "scrubber," "precipitator," and "EEC"[2] reveals that AES has produced only 299 "clearly" relevant e-mails. Further, 53 of the 299 clearly relevant e-mails produced by AES are duplicates, meaning that AES produced only 246 unique clearly relevant electronic email documents.

In contrast, ALSTOM has produced over 70,700 electronic e-mail documents, 9,358 of which contain one or more of the five keywords. However, to put into true perspective the paucity of the clearly relevant electronic e-mail produced by AES, it is instructive to analyze the e-mail produced by a single ALSTOM employee. ALSTOM produced a total of 22,217 electronic e-mail documents for William Jarvis, ALSTOM's Project Manager for this Project. Of those 22,217 electronic e-mails, 3,414 contained one or more of the five keywords. In other words, as shown in Table B, below, AES has produced less then one-tenth of the amount of unique clearly relevant e-mails that ALSTOM produced *for one person*.

---

[2] The majority of this case revolves around the circulating dry scrubber (the "CDS or "scrubber") and the electrostatic precipitator (the "ESP" or "precipitator"), which are components of a pollution control system designed and built by Environmental Elements Corporation ("EEC"), a subcontractor to ALSTOM on the Project.

3

**Table B**
**Relevant E-Mails Produced By The Parties**

|  | AES | ALSTOM | Jarvis |
|---|---|---|---|
| E-Mails Produced | 1743 | 70,737 | 22,217 |
| **Relevant E-Mails Produced** | **299** | **9358** | **3414** |

### 2. Analysis of "Clearly" Relevant E-Mails Sent Between the Parties

Throughout the course of discovery, AES has attempted to defend its deficient electronic document production by asserting that it simply may not have as many responsive or relevant electronic documents in its possession. While that may be the case, closer examination of the electronic documents that either have been produced by ALSTOM or are in ALSTOM's possession shows, definitively, that AES has, or should have, responsive and relevant electronic documents in its possession that it has not produced.

Of the 1,743 electronic e-mail documents produced by AES, only 16 were sent to or by ALSTOM. Only 14 of those 16 e-mails contained one or more of the five keywords, and 7 of those e-mails were duplicates. In other words, AES has produced a total of 7 unique clearly relevant e-mails that were either sent or received by ALSTOM.

In contrast, of the 70,737 e-mails produced by ALSTOM, 1,153 of them had been sent or received by AES. Of those 1,153 e-mails, 192 contained one or more of the five keywords. Only ten of those e-mails were duplicates. Thus, ALSTOM has produced 182 unique electronic e-mails that were either sent or received by AES. The disparity in these figures is shown in Table C.

4

**Table C**
**Analysis of E-Mails Sent Between the Parties**

|  | AES | ALSTOM |
|---|---|---|
| E-Mails Produced | 1,743 | 70,737 |
| E-mails Exchanged Between the Parties | 17 | 1,153 |
| E-mails Exchanged That Contain One or More Keywords | 14 | 192 |
| Duplicates | (7) | (10) |
| **Total Unique E-mails That Were Exchanged and Contain a Keyword** | **7** | **182** |

As demonstrated by Table C, there are at least 175 relevant responsive electronic e-mail documents that AES has, or should have, but has failed to produce.

**3.  Analysis of E-Mails Sent Between AES and D/FD**

Duke-Fluor Daniel ("D/FD") was the general contractor on the Project at issue and was, therefore, AES's prime contact throughout much of the relevant time period. For reasons unrelated to the present matter, ALSTOM and D/FD became involved in litigation over the Project. During the course of discovery in that litigation, D/FD produced to ALSTOM over 112,229 electronic documents. Of those documents, 4,432 were e-mails that were sent to or by AES.[3] Importantly, 140 of the e-mails exchanged between AES and D/FD included one or more of the five keywords.

In stark contrast, AES has produced a total of 61 e-mails between itself and D/FD. Of those, only 2 contain one or more of the five keywords. Accordingly, as shown in Table D,

---

[3] Discovery had not completed in the D/FD–ALSTOM matter before it was resolved. Indeed, the 112,229 electronic documents produced by D/FD in that matter represents only a partial production of all of the electronic documents in D/FD's possession.

5

below, AES is, or should be, in possession of at least 138 relevant electronic e-mail documents exchanged with D/FD that it has failed to produce in this matter.

**Table D**
**Analysis of E-Mails Sent Between AES and D/FD**

|  | AES | D/FD |
|---|---|---|
| E-Mails Exchanged Between AES and D/FD | 61 | 4443 |
| **Total Exchanged E-Mails That Contain One or More Keywords** | **2** | **140** |

**C.     Deficiencies in the Format of AES's E-Mail Production**

    **1.     The Format of Electronic E-Mail Document Production Agreed Upon By the Parties**

Prior to the exchange of any electronic documentation, the parties devoted a great deal of time and resources in reaching an agreement regarding the format of their respective electronic document productions. Those efforts included several conferences and the exchange of numerous letters and e-mails. Included in that exchange of correspondence was an e-mail that ALSTOM sent to AES in which ALSTOM listed the types of "metadata"[4] that should accompany the electronic documents exchanged by the parties. (*See* Tab 1, e-mail from A. Vittoria dated May 13, 2005.) AES never objected to the types of metadata ALSTOM proposed be exchanged.

---

[4] Appendix F to the *Sedona Guidelines: Best Practice Guidelines & Commentary for Managing Information & records in the Electronic Age* defines "metadata" as "information about a particular data set which describes how, when and by who it was collected, created, accessed or modified . . ." Metadata is "critical in information management and for ensuring effective retrieval and accountability in record-keeping. Metadata can assist in proving the authenticity of the content of electronic documents, as well as establish the context of the content." *Sedona Guidelines*, Appendix E.

6

Thereafter, the parties agreed to exchange sample electronic document productions to ensure that there were no misunderstandings regarding the format of each party's electronic document production. The exchange of those samples occurred on or around May 16, 2005. By e-mail message of May 17, 2005, AES agreed to the proposed format of ALSTOM's electronic production. (*See* Tab 2, e-mail from D. Williams dated May 17, 2005.)

There were, however, certain issues regarding AES's sample production, which ALSTOM addressed in a letter dated August 3, 2005. (*See* Tab 3, letter from A. Vittoria dated August 3, 2005.) On August 12, 2005, AES forwarded a second sample production, which included both e-mail correspondence and e-mail correspondence with attachments of electronic documents. Importantly, all of the electronic e-mail documents included metadata information as to the sender, recipient (whether direct or by carbon copy), date and time sent and received, information regarding attachments and OCR text of the e-mail. (*See* Tab 4, printout of metadata of one e-mail from AES's second sample production.) Moreover, in the cover letter accompanying that second sample, AES expressly stated: "AES-PR will produce all of its electronic documents in this format." (*See* Tab 5, letter from D. Williams dated August 12, 2005.)

   2.   **The Metadata Deficiencies of AES's E-Mail Production**

Despite repeated request by ALSTOM,[5] AES has failed to produce the metadata that the parties had expressly agreed would be included with any electronic document production. The 1,743 e-mails produced by AES are in at least seven different formats, including .htm, .oft, .doc.,

---

[5] *See* Tabs 6 and 7, letters from A. Vittoria dated September 1, 2005 and September 19, 2005.

7

.msg, .oft, .pdf, .rft.[6]  In addition, AES produced a total of 71 e-mails whose file format is unknown.

The metadata accompanying the e-mails produced by AES appear to correspond to each particular file format.  For example, the 57 .msg e-mails produced by AES were accompanied by most of the metadata agreed to by the parties and is, therefore, most like the metadata produced for all 70,737 e-mails – all of which were in .htm format – produced by ALSTOM.  (*See* Tabs 8 and 9, metadata of .msg e-mail and ALSTOM e-mail, respectively.)

Some, but not all, of the .htm e-mails produced by AES also were accompanied by most of the metadata agreed to by the parties.  (*See* Tab 10, metadata of .htm e-mail AESPR-075660 to AESPR-075661.)  However, many relevant .htm e-mails produced by AES were not accompanied by important aspects of metadata, including the author and recipients of the e-mail, and the date the e-mail was sent and received.[7]  (*See* Tab 11, metadata of .htm e-mail AESPR-071358 to AESPR-071359.)  The same was true for all of the .doc, the .oft, the .rtf and the .txt. e-mails.  (*See* Tabs 12 through 15, metadata for .doc, .oft, .rtf and .txt e-mails, respectively.)  AES also produced 81 e-mails whose metadata did not identify the file format of the e-mail.  (*See* Tab 16, metadata for e-mail Bates numbered AESPR-100790.)  Many of these e-mails were also missing critical metadata.  (*Id.*)

Finally, AES produced 18 e-mails in .pdf format.  It is apparent that AES simply printed those e-mails onto paper, redacted certain information, and then converted the paper document

---

[6] Importantly, .doc., .oft., .pdf, and .rft are not e-mail file formats, which means that the e-mails produced by AES in those formats were converted from their original format at some point.  The conversion of e-mails from their original format inevitably results in the loss or alteration of metadata.

[7] The fact that many of the .htm e-mail messages had all of the metadata, while others did not, indicates that the metadata existed at one time but has since been lost or destroyed.

8

back into an electronic .pdf file. Those e-mails were accompanied by essentially no metadata (*See* Tab 17, metadata for .pdf e-mail.)

### III.    LEGAL ARGUMENT

As addressed in the Motion to Compel, AES is obligated under the Federal Rules to preserve, review, and produce electronic documents. *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003); *Rowe Entm't, Inc. v. The William Morris Agency, Inc.,* 205 F.R.D. 421, 428 (S.D.N.Y. 2002). Indeed, the current standard for electronic discovery imposes three affirmative steps upon counsel in responding to an electronic document discovery request. Counsel must first issue (and then reissue) a litigation hold on potentially discoverable documents and information. *Zubulake*, 2004 U.S. Dist. LEXIS 13574 at *31 - *37. Counsel must then locate all sources of relevant information. This means that counsel must obtain knowledge of its client's document retention policy and computer system, communicate with its client's IT personnel, and communicate with key employees to identify sources of discoverable information. *Id.* Finally, counsel must ensure continual preservation and produce information responsive to the opposing party's requests. *Id.*

It is indisputable that AES has failed to produce relevant and responsive electronic e-mail documents. Indeed, ALSTOM can conclusively prove that AES has failed to produce over 300 relevant responsive e-mails that are, or should be, in its possession. Significantly, the fact that AES has failed to produce those e-mails indicates that AES has also failed to collect and produce relevant e-mails that were sent internally or to or by outside consultants or subcontractors.

In addition, AES's discovery obligations extend to the metadata associated with its electronic documents. *See Williams v. Sprint/United Management Co.*, 2005 WL 2401626 (D.Kan.). Despite express agreement between the parties, however, AES has failed to produce

9

important metadata for many of the e-mails that it produced.  Indeed, by producing its e-mail in at least seven different file formats and failing to produce much of the critical metadata for those e-mails, AES has essentially rendered its electronic e-mail documents almost impossible to search, retrieve or segregate.  Consequently, AES's electronic e-mail production is no better than if the e-mails had been printed on paper and produced in that form.

## IV.    CONCLUSION

The fact that AES has (1) failed to produce hundreds of e-mails that it undeniably has in its possession, (2) produced its e-mail in several different file formats, and (3) failed to produce important metadata for many of its e-mails, indicates conclusively that AES failed to use proper techniques when it collected its e-mails for production, and that those techniques led to the failure to collect relevant e-mails and to the elimination or alteration of metadata.

For these reasons, ALSTOM respectfully requests that the Court grant its Motion and order AES to conduct a thorough search of all of the possible sources of e-mail and produce, within 30 days, any and all responsive electronic documents in the format and with the metadata agreed to by the parties.

ALSTOM POWER INC.

/s/ Daniel W. Sciapli
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222
dscialpi@wierlaw.com

James E. Edwards, Jr., Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:      (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 5th day of December 2005, copies of the foregoing Supplement to Defendant's Motion to Compel Production of Electronic Documents and accompanying Proposed Order was filed with the Court using CM/ECF, which will send copies of those documents to:  John S. Spadaro, Murphy Spadaro & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware  19805.  In addition, courtesy copies were served, via electronic mail, upon Daniel D. Williams, Esquire, Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, D.C.  20005

/s/ Daniel W. Scialpi
Daniel W. Scialpi

777385.v2