# TAB
# 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,                    *

       Plaintiff,                          *

       v.                                 *     C.A. No. 03-544-JJF    04-1282-JJF

ALSTOM POWER, INC.,                       *

       Defendant,                          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**ALSTOM POWER, INC.'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS AND
ENTRY UPON LAND FOR INSPECTION**

TO:     AES Puerto Rico, L.P.
       c/o John S. Spadaro, Esquire
       Murphy Spadaro & Landon
       824 Market Street, Suite 700
       Wilmington, DE  19801

     Pursuant to Fed. R. Civ. P. 34, Defendant, ALSTOM Power, Inc. ("ALSTOM") hereby

serves its First Request for Production of Documents and Things and Entry Upon Land for

Inspection to Plaintiff, AES Puerto Rico, L.P. ("AES").  AES shall file a written response within

30 days of service of this Request.

**DEFINITIONS**

    1.    "Document" shall mean any written or graphic matter or other means of

preserving thought or expression, and all tangible things from which information can be

processed or transcribed, including, but not limited to correspondence, messages, contracts,

checks, memoranda or notes of telephone or other oral conversations, studies, surveys, charts,

reports, minutes, notes, diaries, logs, schedules, cancelled checks, graphs, invoices, bills,

computer reports, photographs, videotapes, releases, newspaper or magazine articles, books,

1

financial statements, ledgers, transcripts, affidavits, tapes, tape recordings, phonograph

recordings, e-mails, electronic files, electronically stored data, whether originals, copies, or

drafts, however produced or reproduced.  If any of the data or information requested below is

stored in such a way as to be retrieved by computer, then in respect to such data or information,

the term "document" shall also include the physical medium in which such data or information is

stored, or a copy thereof, together with a copy of the software which will enable the data or

information to be retrieved and reviewed.

    2.  "Electronic data" means the original (or identical duplicate when the original is not

available), and any non-identical copies (whether non-identical because of notes made on copies

or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of

writings of every kind and description whether inscribed by mechanical, facsimile, electronic,

magnetic, digital, or other means. Electronic data includes, by way of example only, computer

programs (whether private, commercial or work-in-progress), programming notes or instructions,

activity listings of electronic mail receipts and/or transmittals, output resulting from the use of

any software program, including word processing documents, spreadsheets, database files,

charts, graphs and outlines, electronic mail, operating systems, source code of all types,

peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or

file fragments, regardless of the media on which they reside and regardless of whether said

electronic data consists in an active file, deleted file or file fragment. Electronic data includes

any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable

media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of

all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to

EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or

transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3. "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

4. "Identify," when used in reference to electronic data, means to state the software and/or operating system under which the data was created, title and author, the type of data (example: word processing document, spreadsheet, database, application program, etc.), and all other means of identifying it with sufficient particularity to meet the requirements for its inclusion in a Request for Production pursuant to the Federal Rules of Civil Procedure, and its present or last known location or custodian. If any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

5. "Network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be

3

a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

6.  "Support" means any help or assistance provided to a user of a computer by another individual, either in an official job capacity or not. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair and/or user forums. Providers of support may be employees, contractors and/or other third-party providers.

7.  The term "computer" shall be construed in its broadest possible sense and includes, but is not limited to, any means of storing or processing magnetic, graphic, photographic or other descriptive materials or any retrievable data or information including without limitation computers, word processors, personal computers, network terminals, hard-drives, computer network systems, mainframes, or other means of creating or storing information in magnetic form under the custody, possession or control of AES, its past and present officers, directors, partners, agents, predecessors, successors, affiliates, representatives, employees, attorneys, and any other person or entity employed by or acting on behalf of AES.

8.  "Person" means any natural person, corporation, partnership or other private organization or governmental or legal entity.

9.  "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

4

10.    "D/FD" refers to Duke/Fluor Daniel Caribbean, S.E., a Puerto Rico partnership, and its constituent partner members, also named as parties in this action, and any officers, directors, employees, agents, representatives of or attorneys for D/FD.

11.    "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

12.    "EEC" refers to Environmental Elements Corp., a Maryland corporation, and any officers, directors, employees, agents, contractors, representatives or attorneys on behalf of EEC.

13.    "Agreement" refers to the contract dated April 3, 1996, between AES, as Buyer, and D/FD, as Seller, in which D/FD agreed to engineer, design, and construct a 454-megawatt, co-generation, coal-fired plant in Guayama, Puerto Rico.

14.    "Project" means the 454-megawatt, co-generation, coal-fired facility, in its entirety, located in Guayama, Puerto Rico.

15.    "CDS" refers to the Circulating Dry Scrubber equipment provided by ALSTOM for the Project.

16.    "ESP" refers to the Electrostatic Precipitator equipment provided by ALSTOM for the Project and referred to in your Complaint.

17.    "FBHE Handcuffs" refers to the fluidized bed heat exchanger handcuff equipment provided by ALSTOM for the Project and referred to in your Complaint.

18.    "Plant Operating Data" means recorded measurements, in both written and electronic form, of the operating parameters of the Project from the time of "first fire" on coal.

19.    "Water Treatment Systems" refers to the plant equipment used to treat the water used in the CDS and ESP equipment.

20.    "Closed Cooling Water Cycle" refers to the

## REQUEST FOR DOCUMENTS – INSTRUCTIONS

1.    This request for production of documents is continuing in nature, so AES shall supplement its response to this request for production of documents in accordance with Rule 34 of the Federal Rules of Civil Procedure.

2.    This request includes the production of all non-identical copies of requested documents, including drafts and copies upon which notes or comments have been made.

3.    If any document responsive to this request is not produced due to a claim of privilege to a part or parts of the document (including a claim that all or a portion of the document constitutes work product), describe each such document and the factual basis for the claim of privilege.  Documents shall be deemed to have been adequately listed and described for the purpose of this instruction when the following information has been provided:

    a.    The place, approximate date and manner of preparation of the document;

    b.    The basis on which the privilege is claimed;

    c.    The name of each person who participated in the preparation of the document;

    d.    The name and corporate position, if any, of each person other than attorneys representing you to whom the content of the document has been communicated in the past whether by copy, exhibition, reading or substantial summarization;

    e.    The nature of the document and a brief description of its subject matter; and

    f.    Each addressee, recipient or possessor of the document.

6

5. To the extent that any request is objected to on grounds other than privilege, set forth the factual and legal basis for the objection. If you object in part to any request, produce all documents responsive to the remainder of that request.

6. Documents required to be produced are not limited to "paper" documents, but also include electronic data and electronic media and all forms of documents listed in the documents definition above.

7. Where the name or identity of a person or entity is requested, state the full name, address, title, employer, and business address (if applicable) of the person or entity.

8. Where knowledge or information is requested, such request includes knowledge of your agents, representatives, and, unless privileged, your attorneys.

9. In seeking information to respond to this document production request, you are required to examine all possible forms of storing textual, verbal or numerical information, and your examination may not be limited to paper or other forms of "hard copy" records. In searching for nonpaper sources of information, you are required to search all computer or other electronic or optical forms of information storing formats, including:

    a.   so-called floppy disks;

    b.   removable drive media, of all kinds;

    c.   hard drives used by individuals;

    d.   hard drives shared by multiple users;

    e.   storage media used by network systems;

    f.   storage media not maintained on-line, including but not limited to backup tapes or similar archival storage media, wherever and by whomever stored or retained;

7

g.  file servers;

h.  optical media, including "write-once-read-many" ("WORM") media or other

optical formats, including rewritable optical formats;

i.  portable computers, included but not limited to, "notebook" computers,

"laptop" computers, or other similar portable devices;

j.  palmtop, pocket size or similar portable information devices on which

information is stored in digital form;

k.  systems that preserve "voice mail" or similar messages in analog or digital

form; and

l.  all systems, whether included in (a)-(k) above, that preserve electronic mail

or similar messages in any form, including, but not limited to, systems on the

desktop of electronic mail users, systems on servers, and systems that are

"offline" methods of preservation of such messages, whether tape, optical or

otherwise.

10.    The documents and things requested shall be produced at the office of AES, or

such other location(s) as agreed to by the parties.

## REQUESTS FOR DOCUMENTS

**REQUEST 1:**  All documents, including indices, directories and catalogs, which

evidence, explain or set forth how AES identifies, organizes and maintains documents or files

relating to the Project, including, but not limited to, Plant Operating Data.

**REQUEST 2:**  All documents, written policies, procedures, guidelines, electronic data or

electronic media that refer, evidence or relate to file naming conventions and standards.

**REQUEST 3:** All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to diskette labeling standards.

**REQUEST 4:** All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to back up tape rotation schedules.

**REQUEST 5:** All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to electronic media retention/destruction schedules.

**REQUEST 6:** All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to corporate policies concerning employee use of company computers and data.

**REQUEST 7:** Exact copies (sometimes referred to as image copies, or evidentiary copies) of hard drives on desktop, laptop, notebook, palm top or personal digital assistant computers used by AES and/or its employees, agents or representatives in any way relating to the Project.

**REQUEST 8:** Exact copies (sometimes referred to as "diskcopies") of diskettes used by AES and/or its employees, agents or representatives in any way relating to the Project.

**REQUEST 9:** Organization charts in any form, written or otherwise, for AES and all of its respective partners, subsidiaries, divisions, and affiliates.

**REQUEST 10:** Any and all lists of AES employees who worked on the Project.

**REQUEST 11:** All documents evidencing, referring to or relating to any and all negotiations or discussions leading up to AES' Agreement with D/FD.

**REQUEST 12:** All documents which constitute the Agreement between AES and D/FD pertaining to the Project.

9

**REQUEST 13:**    All documents created or exchanged by AES, D/FD or EEC evidencing, referring to or relating to the application for the air permit submitted to the governmental agency or agencies having authority over the emissions from the Project.

**REQUEST 14:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the Water Treatment System.

**REQUEST 15:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the CDS and/or the ESP equipment.

**REQUEST 16:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the FBHE Handcuff equipment.

**REQUEST 17:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the Closed Cooling Water Cycle.

**REQUEST 18:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and D/FD concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 19:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ALSTOM concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 20:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and EEC concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 21:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between D/FD and EEC concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 22:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and any subcontractor, sub-subcontractor, vendor, supplier, consultant or other person or entity (other than D/FD, ALSTOM and EEC) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 23:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and D/FD concerning or in connection with the FBHE Handcuff equipment.

**REQUEST 24:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ALSTOM concerning or in connection with the FBHE Handcuff equipment.

**REQUEST 25:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and any subcontractor, sub-subcontractor, vendor, supplier, consultant or other person or entity (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the FBHE Handcuff equipment.

**REQUEST 26:**    All documents which constitute, pertain or relate in any way to subcontracts, purchase orders, agreements or understandings for work performed or requested to be performed of any kind between AES and any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 27:**   All documents which constitute, pertain or relate in any way to subcontracts, purchase orders, agreements or understandings for work performed or requested to be performed of any kind between AES and any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the FBHE Handcuff equipment.

**REQUEST 28:**   All documents which pertain or relate in any way to sums paid by AES to any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 29:**   All documents which pertain or relate in any way to sums paid by AES to any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the FBHE Handcuff equipment.

**REQUEST 30:**   All documents which constitute, pertain or relate in any way to requests for information, or other requests for interpretation or clarification which AES or D/FD submitted to any person or entity relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 31:**   All documents which constitute, pertain or relate in any way to requests for information, or other requests for interpretation or clarification which AES or D/FD submitted to any person or entity relating to the FBHE Handcuff equipment.

**REQUEST 32:**   All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records of the progress of the design, procurement

and/or construction and installation of the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 33:**    All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records of the progress of the design, procurement and/or construction and installation of the FBHE Handcuff equipment.

**REQUEST 34:**    All documents which constitute, pertain or relate in any way to reports or meetings relating to the Project, including, without limitation, job meeting minutes, coordination meeting minutes, progress reports, cost reports and daily reports, monthly and/or other periodic reports.

**REQUEST 35:**    All documents evidencing, referring to or relating to any and all damages purportedly suffered or sustained by AES as a result of any problems with or failures of the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 36:**    All documents evidencing, referring to or relating to any and all damages purportedly suffered or sustained by AES as a result of any problems with the FBHE Handcuff equipment.

**REQUEST 37:**    Any and all insurance policies concerning the Project.

**REQUEST 38:**    All documents referring to or relating to any damages claimed by AES against D/FD and/or any other subcontractor, sub-subcontractor, supplier, vendor or other person or entity furnishing any work, labor, services, materials, equipment or other items in connection with the CDS and/or the EPS equipment.

**REQUEST 39:**    All documents referring to or relating to any damages claimed by AES against D/FD and/or any other subcontractor, sub-subcontractor, supplier, vendor or other person

13

or entity furnishing any work, labor, services, materials, equipment or other items in connection with the FBHE Handcuff equipment.

**REQUEST 40:**     All documents which evidence, refer to or relate to AES' withholding backcharges from D/FD relating to the CDS and/or the EPS equipment, or the Water Treatment System.

**REQUEST 41:**     All documents which evidence, refer to or relate to AES' withholding backcharges from D/FD relating to the FBHE Handcuff equipment.

**REQUEST 42:**     All documents which evidence, refer to or relate to the assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 43:**     All documents which evidence, refer to or relate to the assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement relating to the FBHE Handcuff equipment.

**REQUEST 44:**     All documents which evidence, refer to or relate to performance guarantees under the Agreement relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 45:**     All documents relating to any warranty obligations for the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 46:**     All documents relating to any warranty obligations for the FBHE Handcuff equipment.

**REQUEST 47:**     All documents which comprise, refer or relate in any way to AES' internal memoranda, correspondence or other form of internal communication regarding the CDS and/or the ESP equipment, or the Water Treatment System.

14

**REQUEST 48:**    All documents which comprise, refer or relate in any way to AES' internal memoranda, correspondence or other form of internal communication regarding the FBHE Handcuff equipment.

**REQUEST 49:**    All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 50:**    All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the FBHE Handcuff equipment.

**REQUEST 51:**    All documents which constitute, pertain or relate in any way to AES' operations manual for the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 52:**    All documents which constitute, pertain or relate in any way to AES' maintenance guidelines and records for the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 53:**    Any and all inspection reports, testing reports or other documents, data compilations or tangible things referring to or relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**REQUEST 54:**    Any and all documents related to the operation or maintenance of the Closed Cooling Cycle.

**REQUEST 55:**    Any and all inspection reports, testing reports or other documents, data compilations or tangible things referring to or relating to the FBHE Handcuff equipment.

**REQUEST 56:**    All documents relating to the power plant's compliance or failure to comply with air emissions standards, including but not limited to any such standards imposed by the U.S. Environmental Protection Agency and any agency of the government of Puerto Rico.

**REQUEST 57:**    Any and all documents relating to the water spray lances/water injection nozzles within the CDS and ESP equipment, including, but not limited to, documents relating to the maintenance, testing or inspection of the lances/nozzles, the atomization of water by the lances/nozzles, and the water flow rate through the lances/nozzles.

**REQUEST 58:**    Any and all documents relating to the operating temperature within the CDS and ESP equipment, including, but not limited to, any documents relating to the CDS "outlet temperature" and the "flue gas approach temperature".

**REQUEST 59:**    Any and all documents relating to the Rigitrodes, the collector plates or the discharge electrodes within the CDS and ESP equipment.

**REQUEST 60:**    Any and all documents comprising, relating to or referring to the "Test and Monitoring Plan" prepared by EEC for the CDS and ESP equipment.

**REQUEST 61:**    Any and all documents relating to the vacuum/pressure relief valves on the ash bins of the CDS and ESP equipment, including, but not limited to, any and all documents relating to the maintenance or inspection of those valves.

**REQUEST 62:**    Any and all documents relating to the chloride content of the water used within the CDS and ESP equipment, including, but not limited to, any records of the daily testing of the water.

**REQUEST 63:**    Any and all documents related to any testing of the water used in the Closed Cooling Water Cycle.

16

**REQUEST 64:**    Any and all documents relating to the chloride content of the ash within the CDS and ESP equipment.

**REQUEST 65:**    Any and all documents relating to the recirculation of ESP ash into the plant's boilers, including, but not limited to, any and all documents relating to when flyash was injected into the boilers.

**REQUEST 66:**    Any and all documents relating to the operation of the sootblowers within the CDS and ESP equipment, including, but not limited to, any documents relating to any maintenance or inspection of those sootblowers.

**REQUEST 67:**    Any and all documents relating to the constituents or chemical/molecular make-up of the flue gas at the air heater outlet and at the stack during operation of the plant.

**REQUEST 68:**    Any and all documents relating to the in-leakage of outside air into the CDS and ESP equipment.

**REQUEST 69:**    All documents related to any physical or operational modifications AES made to the CDS and/or EPS equipment, the Water Treatment System, or the Closed Cooling Water Cycle.

**REQUEST 70:**    Documents sufficient to identify each and every partner of AES from January 1, 2002 to the present, and for each such partner, documents sufficient to identify the legal residence, principle place of business, and place of incorporation of the partner.

**REQUEST 71:**    All documents related to the design of the closed cooling water cycle.

**REQUEST 72:**    Any and all documents related to the source of the water use at the plant.

**REQUEST 73:**    Any and all documents related to the design and installation of a secondary reverse osmosis system on the Project.

**REQUEST 74:**    Any and all documents related to the Distributed Control System.

**REQUEST 75:**    Any and all documents relating to the Plant Operating Data.

**REQUEST 76:**    All documents which were viewed by or prepared by any person who may be called to testify as an expert witness at the trial of this case and all bibliographies, resumes or curricula vitae regarding any such expert witness who may be called to testify at the trial of this case.

## REQUESTS FOR INSPECTION

**REQUEST 1:**    Any components that were removed from the CDS and/or the ESP equipment, including, but not limited to, any collector plates that were removed.

**REQUEST 2:**    During the next scheduled shut-down of the plant, the CDS and ESP equipment currently installed at the Project.

ALSTOM POWER INC.

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

John Anthony Wolf, Esquire
James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
OBER, KALER, GRIMES & SHRIVER, P.C.
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone: (410) 685-1120
Fax:    (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this _18th_ day of ~~February~~ *March*, 2005, a copy of the

foregoing First Request For Production Of Documents And Things And Entry Upon Land For

Inspection was served, via first-class mail, postage prepaid, on:

John S. Spadaro, Esquire
Murphy Spadaro & Landon
~~824 Market Street, Suite 700~~ — *Wrong Address*
Wilmington, Delaware  19801

Dane H. Butswinkas, Esquire
R. Hackney Wiegmann, Esquire
Mary Beth Long, Esquire
Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005

Attorneys for Plaintiff

Richard R. Wier, Jr.

732667.v2

19

# TAB
# 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,                )
                                      )
                 Plaintiff,           )
                                      )
       v.                             )      C.A. No. 04-1282-JJF
                                      )
ALSTOM POWER, INC.,                   )
                                      )
                 Defendant.           )

## PLAINTIFF AES PUERTO RICO, L.P.'S
## RESPONSES AND OBJECTIONS TO ALSTOM POWER, INC.'S
## FIRST SET OF REQUESTS FOR DOCUMENTS AND INSPECTION

Plaintiff AES Puerto Rico, L.P. (AES P.R.), by and through counsel, hereby responds and objects to Defendant ALSTOM Power, Inc.'s First Set of Requests for Production and Inspection ("First Requests") as follows:

### GENERAL OBJECTIONS

Plaintiff AES P.R. objects generally to the First Requests on the following grounds:

1.     The majority of requests contained in the First Requests are overbroad on their face and would require search for, and production of, documents not reasonably calculated to lead to the discovery of admissible evidence.

2.     AES P.R. objects to each request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, other applicable statutory or common-law privileges, or calls for the production of documents AES P.R. has agreed to keep confidential.

3.     AES P.R. objects to each request to the extent it seeks to impose requirements beyond those provided for in the Federal Rules of Civil Procedure or the Local Rules of this Court.

119895

4.      AES P.R. objects to each definition, instruction, or request that requires it to produce documents that are not within its possession, custody, or control.

5.      AES P.R. objects to each request seeking documents that are publicly available or available from more convenient sources.

6.      AES P.R. objects to each request to the extent it fails to limit the date range of its request. AES P.R. agrees to produce documents generated after November 28, 2002, the date AES P.R. began operating the plant.

7.      In producing documents in response to these requests, AES P.R. does not concede the relevancy, materiality, or admissibility of any document, and hereby preserves all such objections. AES P.R. also expressly reserves the right to object to further discovery on the subject matter of any of these requests.

8.      AES P.R. objects to Definition 1 to the extent it purports to require AES to provide ALSTOM "the physical medium in which [computer data or information] is stored, or a copy thereof, together with a copy of the software which will enable the data or information to be retrieved or reviewed." First, AES P.R. objects to this definition on the basis that the phrase "physical medium" is vague and undefined. Second, AES P.R. objects on the basis that literal compliance is impossible because AES P.R. no longer has some of the software necessary to access certain of its electronic documents. Third, AES P.R. objects to the extent this definition seeks to impose on AES P.R. obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court. Fourth, literal compliance with this request would be extremely costly and would make available to ALSTOM countless documents that are irrelevant to this litigation. Hence, the burden imposed on AES P.R. by this portion of the definition outweighs any possible benefit to ALSTOM.

119895                            - 2 -

9.     AES P.R. objects to Definition 2 to the extent it purports to require AES P.R. to search for responsive documents in deleted files, file fragments, "magnetic tapes of all types," and "any other vehicle for data storage." First, this portion of the definition seeks to impose on AES P.R. obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court. Second, literal compliance with this request would be extremely costly and, given AES P.R.'s agreement to search more easily accessible sources for responsive documents, ALSTOM would receive little benefit from this costly enterprise. Hence, the burden imposed on AES P.R. by this portion of the definition outweighs any possible benefit to ALSTOM.

10.     AES P.R. objects to Definition 3 to the extent it purports to require AES to search "magnetic tapes of all types" and "any other vehicle for digital data storage and/or transmittal." First, this portion of the definition seeks to impose on AES P.R. obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court. Second, literal compliance with this request would be extremely costly and, given AES P.R.'s agreement to search more easily accessible sources for responsive documents, ALSTOM would receive little benefit from this costly enterprise. Hence, the burden imposed on AES P.R. by this portion of the definition outweighs any possible benefits to ALSTOM.

11.     AES P.R. objects to Definition 4 in that it seeks information that is properly requested in an interrogatory, not a document request.

12.     AES P.R. objects to Definition 7 to the extent it calls for production of computers (or information stored on computers) that are not currently in AES P.R.'s custody.

13.     AES P.R. objects to Definition 9 to the extent it seeks information about former officers, directors, employees, agents, contractors, representatives of or attorneys for AES P.R.

and to the extent it seeks any information about AES P.R.-related entities because it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

14.    AES P.R. objects to Definition 10 on the grounds that it is incorrect. Duke/Fluor Daniel Caribbean, S.E. and its constituent partner members are not currently "named as parties to this action."

15.    AES P.R. objects to Definition 13 on the grounds that it is incorrect. AES P.R.'s agreement with Duke/Fluor Daniel Caribbean, S.E. to construct the power plant in Guayama, Puerto Rico is dated April 3, 1996, not April 6, 1996.

16.    AES P.R. objects to Definition 20 on the grounds that it is incoherent.

17.    AES P.R. objects to Instruction 1 as it is incorrect. Federal Rule of Civil Procedure 26(e)(2), not Rule 34, governs the supplementation of responses to requests for production.

18.    AES P.R. objects to Instruction 3 to the extent it seeks to impose requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court. AES P.R. will produce a privilege log that comports with the Federal Rules of Civil Procedure, the Local Rules, and applicable case law. AES P.R. currently is seeking to enter into an agreement with ALSTOM to establish a time for mutual exchange of privilege logs.

19.    AES P.R. objects to Instruction 5 because it seeks to impose on AES P.R. obligations greater than those imposed by Federal Rule of Civil Procedure 34(b).

20.    AES P.R. objects to Instruction 6 on the same grounds it objected to Definitions 2 and 3.

21.    AES P.R. objects to Instruction 7 in that it seeks information that is properly requested in an interrogatory, not a document request.

119895                              - 4 -

04-27-05    02:52pm    From-WSL Copy Room 2, Right            302 225 3674        T-655  P.006    F-282

22.        AES P.R. objects to Instruction 9 on the grounds that it seeks to impose on AES

P.R. obligations greater than those imposed by the Federal Rules of Civil Procedure or the Local

Rules of this Court.  Literal compliance, especially with subparts e, f, g, h, and i, would be

unduly burdensome and would provide little, if any, benefit to ALSTOM.  Hence, the burden

imposed on AES P.R. by this instruction outweighs any possible benefit to ALSTOM.

23.        AES P.R. reserves the right to supplement its production with responsive

documents, as they become available and subject to the limitations noted herein.

24.        In addition to these General Objections, AES P.R. has specific objections to

certain requests set forth below.  By stating these specific objections, AES P.R. does not waive

any of the General Objections that also may apply to specific requests.  AES P.R. hereby

incorporates these General Objections and the limitations on production stated therein into each

of the responses below.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST 1:**     All documents, including indices, directories and catalogs, which

evidence, explain or set forth how AES identifies, organizes and maintains documents or files

relating to the Project, including, but not limited to, Plant Operating Data.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad

and seeks information that is neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence.  AES P.R. further objects to the extent it requests privileged material.

Subject to the general and specific objections specified above, and without waiver thereof, AES

P.R. states that it will produce any non-privileged, responsive indices, directories, and catalogs

related to files for the CDS, ESP, Water Treatment System, and FBHE handcuffs.

**REQUEST 2:**     All documents, written policies, procedures, guidelines, electronic data

or electronic media that refer, evidence or relate to file naming conventions and standards.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents that evidence file-naming conventions and standards related to the CDS, ESP, Water Treatment System, and FBHE handcuffs.

**REQUEST 3:**     All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to diskette labeling standards.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents that evidence diskette labeling standards related to the CDS, ESP, Water Treatment System, and FBHE handcuffs.

**REQUEST 4:**     All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to back up tape rotation schedules.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. further objects to the extent it requests privileged material. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents that evidence back-up tape rotation schedules applicable to documents related to the CDS, ESP, Water Treatment System, and FBHE handcuffs.

**REQUEST 5:**     All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to electronic media retention/destruction schedules.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. further objects to the extent it requests privileged material. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents that evidence media retention/destruction schedules for documents related to the CDS, ESP, Water Treatment System, and FBHE handcuffs.

**REQUEST 6:**     All documents, written policies, procedures, guidelines, electronic data or electronic media that refer, evidence or relate to corporate policies concerning employee use of company computers and data.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. further objects to the extent it requests privileged material. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents that evidence computer and data-use policies covering computers and data with information related to the CDS, ESP, Water Treatment System, and the FBHE handcuffs.

**REQUEST 7:**     Exact copies (sometimes referred to as image copies, or evidentiary copies) of hard drives on desktop, laptop, notebook, palm top or personal digital assistant computers used by AES and/or its employees, agents or representatives in any way relating to the

Project.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  AES P.R. also objects to the extent it requests privileged material. Furthermore, literal compliance with this request would be both costly and would produce extensive amounts of irrelevant information.  Hence, the burden imposed on AES P.R. by this request outweighs any possible benefit to ALSTOM.

**REQUEST 8:**   Exact copies (sometimes referred to as "diskcopies") of diskettes used by AES and/or its employees, agents or representatives in any way relating to the Project.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  AES P.R. also objects to the extent it requests privileged material. Furthermore, literal compliance with this request would produce extensive amounts of irrelevant information.  Hence, the burden imposed on AES P.R. by this request outweighs any possible benefit to ALSTOM.

**REQUEST 9:**   Organization charts in any form, written or otherwise, for AES and all of its respective partners, subsidiaries, divisions, and affiliates.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  AES P.R. further objects to the extent it requests privileged material. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce organizational chart(s) sufficient to document the structure of AES Puerto Rico, L.P., if such chart(s) exist.

**REQUEST 10:**    Any and all lists of AES employees who worked on the Project.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST 11:**    All documents evidencing, referring to or relating to any and all negotiations or discussions leading up to AES' Agreement with D/FD.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for privileged and/or confidential documents.

**REQUEST 12:**    All documents which constitute the Agreement between AES and D/FD pertaining to the Project.

**RESPONSE:**    AES P.R. will produce the Agreement.

**REQUEST 13:**    All documents created or exchanged by AES, D/FD or EEC evidencing, referring to or relating to the application for the air permit submitted to the governmental agency or agencies having authority over the emissions from the Project.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 14:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the Water Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 15:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the CDS and/or the ESP equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad, seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and seeks documents that are already in ALSTOM's possession.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 16:**    All documents which constitue, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the FBHE Handcuff equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any all non-privileged, responsive documents.

**REQUEST 17:**    All documents which constitute, pertain or relate in any way to any engineering documents, plans, drawings or specifications for the Closed Cooling Water Cycle.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrase "Closed Cooling Water Cycle" is vague and the definition of that phrase is incoherent.

**REQUEST 18:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and D/FD concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 19:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ALSTOM concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 20:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and EEC concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

04-27-05    02:54pm    From-MSL Copy Room 2, Right        302 225 3674        T-655  P 013/035  F-282

**REQUEST 21:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between D/FD and EEC concerning or in connection with the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    It is AES P.R.'s current belief that it has no documents that are responsive to this request.

**REQUEST 22:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and any subcontractor, sub-subcontractor, vendor, supplier, consultant or other person or entity (other than D/FD, ALSTOM and EEC) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 23:**    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and D/FD concerning or in connection with the FBHE Handcuff equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 24:**   All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ALSTOM concerning or in connection with the FBHE Handcuff equipment.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 25:**   All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and any subcontractor, sub-subcontractor, vendor, supplier, consultant or other person or entity (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the FBHE Handcuff equipment.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 26:**   All documents which constitute, pertain or relate in any way to subcontracts, purchase orders, agreements or understandings for work performed or requested to be performed of any kind between AES and any subcontractor, independent contractor or

material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 27:**    All documents which constitute, pertain or relate in any way to subcontracts, purchase orders, agreements or understandings for work performed or requested to be performed of any kind between AES and any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the FBHE Handcuff equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to the extent this request calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 28:**    All documents which pertain or relate in any way to sums paid by AES to any subcontractor, independent contractor or material supplier (other than D/FD and ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard to the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad

04-27-05    02:55pm    From-MSL Copy Room 2, Right          302 225 3674          T-655  P.016/035  F-282

and seeks information that is neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence.  AES P.R. also objects to the extent this request calls for the production

of privileged documents.  Subject to the general and specific objections specified above, and

without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive

documents.

**REQUEST 29:**    All documents which pertain or relate in any way to sums paid by AES

to any subcontractor, independent contractor or material supplier (other than D/FD and

ALSTOM) supplying any advice, consultation, labor, services, materials or other items in regard

to the FBHE Handcuff equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad

and seeks information that is neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence.  Subject to the general and specific objections specified above, and

without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive

documents.

**REQUEST 30:**    All documents which constitute, pertain or relate in any way to

requests for information, or other requests for interpretation or clarification which AES or D/FD

submitted to any person or entity relating to the CDS and/or the ESP equipment, or the Water

Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrases

"requests for information" and "requests for interpretation or clarification" are vague and

undefined.  Without further clarification, AES P.R. is unable to respond to this request.

**REQUEST 31:**    All documents which constitute, pertain or relate in any way to

requests for information, or other requests for interpretation or clarification which AES or D/FD

04-27-05     02:55pm     From-MSL Copy Room 2, Right               302 225 3674          T-655   P.017/035   F-282

submitted to any person or entity relating to the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request on the grounds that the phrases "requests for information" and "requests for interpretation or clarification" are vague and undefined. Without further clarification, AES P.R. is unable to respond to this request.

**REQUEST 32:**     All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records of the progress of the design, procurement and/or construction and installation of the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is vague. AES P.R. also objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any Monthly Progress reports it received from its general contractor during the construction of the plant that are in its possession.

**REQUEST 33:**     All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records of the progress of the design, procurement and/or construction and installation of the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is vague. AES P.R. also objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any Monthly Progress reports it received from its general contractor during the construction of the plant that are in its possession.

**REQUEST 34:**    All documents which constitute, pertain or relate in any way to reports or meetings relating to the Project, including, without limitation, job meeting minutes, coordination meeting minutes, progress reports, cost reports and daily reports, monthly and/or other periodic reports.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  AES P.R. also objects to this request to the extent it calls for the production of privileged documents and on the grounds that it is duplicative of ALSTOM's other requests relating to the CDS, ESP, Water Treatment System, and the FBHE handcuffs.

**REQUEST 35:**    All documents evidencing, referring to or relating to any and all damages purportedly suffered or sustained by AES as a result of any problems with or failures of the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is premature. AES P.R. is suffering damages on an on-going basis as a result of the problems that form the basis of this lawsuit, and therefore it is literally impossible to produce "all documents" that relate to AES P.R.'s damages.  AES P.R. also objects to this request to the extent it calls for the production of privileged documents.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce non-privileged, responsive documents currently in its possession that relate to known damages suffered by AES P.R.  As noted in the General Objections above, AES P.R. further reserves the right to supplement this production as it obtains additional documents relating to damages it has suffered.

**REQUEST 36:**    All documents evidencing, referring to or relating to any and all damages purportedly suffered or sustained by AES as a result of any problems with the FBHE

Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is premature.

AES P.R. is suffering damages on an on-going basis as a result of the problems that form the

basis of this lawsuit, and therefore it is literally impossible to produce "all documents" that relate

to AES P.R.'s damages.  AES P.R. also objects to this request to the extent it calls for the

production of privileged documents.  Subject to the general and specific objections specified

above, and without waiver thereof, AES P.R. states that it will produce any non-privileged,

responsive documents currently in its possession that relate to known damages suffered by AES

P.R.  As noted in the General Objections above, AES P.R. further reserves the right to

supplement this production as it obtains additional documents relating to damages it has suffered.

**REQUEST 37:**     Any and all insurance policies concerning the Project.

**RESPONSE:**     AES P.R. objects to this request as irrelevant to the issues in this

litigation.

**REQUEST 38:**     All documents referring to or relating to any damages claimed by AES

against D/FD and/or any other subcontractor, sub-subcontractor, supplier, vendor or other person

or entity furnishing any work, labor, services, materials, equipment or other items in connection

with the CDS and/or the EPS equipments.

**RESPONSE:**     AES P.R. objects to this request to the extent it calls for documents

unrelated to the issues in dispute in this litigation.  Subject to the general and specific objections

specified above, and without waiver thereof, AES P.R. states that there are no non-privileged,

responsive documents.

**REQUEST 39:**     All documents referring to or relating to any damages claimed by AES

against D/FD and/or any other subcontractor, sub-subcontractor, supplier, vendor or other person

or entity furnishing any work, labor, services, materials, equipment or other items in connection with the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request to the extent it calls for documents unrelated to the issues in dispute in this litigation. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that there are no non-privileged, responsive documents.

**REQUEST 40:**     All documents which evidence, refer to or relate to AES' withholding backcharges from D/FD relating to the CDS and/or the EPS equipment, or the Water Treatment System.

**RESPONSE:**     AES P.R. objects to this request on the ground that that the term "backcharges" is vague and undefined. AES P.R. further objects to this request because any such documents would not be relevant to the claims and defenses in this litigation.

**REQUEST 41:**     All documents which evidence, refer to or relate to AES' withholding backcharges from D/FD relating to the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request on the ground that that the term "backcharges" is vague and undefined. AES P.R. further objects to this request because any such documents would not be relevant to the claims and defenses in this litigation.

**REQUEST 42:**     All documents which evidence, refer to or relate to the assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**     AES P.R. objects to this request on the ground that that the phrase "threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement" is vague and undefined. AES P.R. also objects to the extent this request calls for the

119895                              - 19 -

production of privileged documents. AES P.R. further objects to this request because any such documents would not be relevant to the claims and defenses in this litigation.

**REQUEST 43:** All documents which evidence, refer to or relate to the assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement relating to the FBHE Handcuff equipment.

**RESPONSE:** AES P.R. objects to this request on the ground that that the phrase "threatened assessment and/or withholding by AES of any sums due D/FD under the Agreement" is vague and undefined. AES P.R. also objects to the extent this request calls for the production of privileged documents. AES P.R. further objects to this request because any such documents would not be relevant to the claims and defenses in this litigation.

**REQUEST 44:** All documents which evidence, refer to or relate to performance guarantees under the Agreement relating to the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:** AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request because it is vague as to whether it relates specifically to use of consumables, whether it relates more broadly to other performance guarantees, and whether it relates to documents generated on or after the dates of the performance tests. AES P.R. also objects to this request to the extent it calls for the production of privileged documents.

**REQUEST 45:** All documents relating to any warranty obligations for the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:** AES P.R. objects to this request on the grounds that it is overly broad

and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 46:**   All documents relating to any warranty obligations for the FBHE Handcuff equipment.

**RESPONSE:**   AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 47:**   All documents which comprise, refer or relate in any way to AES' internal memoranda, correspondence or other form of internal communication regarding the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 48:**   All documents which comprise, refer or relate in any way to AES' internal memoranda, correspondence or other form of internal communication regarding the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 49:**     All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. AES P.R. further objects to this request on the grounds that it is duplicative of other requests. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents relating to corrosion damage to the ESP equipment.

**REQUEST 50:**     All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the FBHE Handcuff equipment.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. AES P.R. further objects to this request on the grounds that it is duplicative of other requests. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive

documents relating to evidence of tube failures associated with the FBHE handcuffs.

**REQUEST 51:**    All documents which constitute, pertain or relate in any way to AES'
operations manual for the CDS and/or the ESP equipment, or the Water Treatment System.

**RESPONSE:**    AES P.R. will produce any non-privileged, responsive documents.

**REQUEST 52:**    All documents which constitute, pertain or relate in any way to AES'
maintenance guidelines and records for the CDS and/or the ESP equipment, or the Water
Treatment System.

**RESPONSE:**    AES P.R. objects to this request to the extent it calls for the production
of privileged documents. Subject to the general and specific objections specified above, and
without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive
documents.

**REQUEST 53:**    Any and all inspection reports, testing reports or other documents, data
compilations or tangible things referring to or relating to the CDS and/or the ESP equipment, or
the Water Treatment System.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the terms
"inspection reports, testing reports, or other documents" are vague and undefined. AES P.R. also
objects to this request on the grounds that it is overly broad and seeks information that is neither
relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R.
further objects to this request to the extent it calls for the production of privileged documents.
Subject to the general and specific objections specified above, and without waiver thereof, AES
P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 54:**    Any and all documents related to the operation or maintenance of the
Closed Cooling Cycle.

04-27-05    02:57pm    From-MSL Copy Room 2, Right              302 225 3674          T-655  P.025/035  F-282

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrase "Closed Cooling Water Cycle" is vague and the definition of that phrase is incoherent.

**REQUEST 55:**    Any and all inspection reports, testing reports or other documents, data compilations or tangible things referring to or relating to the FBHE Handcuff equipment.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the terms "inspection reports, testing reports, or other documents" are vague and undefined. AES P.R. also objects on the basis that the request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. further objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 56:**    All documents relating to the power plant's compliance or failure to comply with air emissions standards, including but not limited to any such standards imposed by the U.S. Environmental Protection Agency and any agency of the government of Puerto Rico.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to the extent the request calls for the production of privileged material. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce all opacity readings in its possession.

**REQUEST 57:**    Any and all documents relating to the water spray lances/water injection nozzles within the CDS and ESP equipment, including, but not limited to, documents relating to the maintenance, testing or inspection of the lances/nozzles, the atomization of water by the lances/nozzles, and the water flow rate through the lances/nozzles.

RESPONSE:    AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

REQUEST 58:    Any and all documents relating to the operating temperature within the CDS and ESP equipment, including, but not limited to, any documents relating to the CDS "outlet temperature" and the "flue gas approach temperature".

RESPONSE:    AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

REQUEST 59:    Any and all documents relating to the Rigitrodes, the collector plates or the discharge electrodes within the CDS and ESP equipment.

RESPONSE:    AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

REQUEST 60:    Any and all documents comprising, relating to or referring to the "Test and Monitoring Plan" prepared by EEC for the CDS and ESP equipment.

RESPONSE:    AES P.R. objects to this request on the grounds that the phrase "Test and Monitoring Plan" is vague and undefined. Without further clarification, AES P.R. cannot respond to this request.

REQUEST 61:    Any and all documents relating to the vacuum/pressure relief valves on

the ash bins of the CDS and ESP equipment, including, but not limited to, any and all documents relating to the maintenance or inspection of those valves.

**RESPONSE:**    AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 62:**    Any and all documents relating to the chloride content of the water used within the CDS and ESP equipment, including, but not limited to, any records of the daily testing of the water.

**RESPONSE:**    AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 63:**    Any and all documents related to any testing of the water used in the Closed Cooling Water Cycle.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrase "Closed Cooling Water Cycle" is vague and the definition of that phrase is incoherent.

**REQUEST 64:**    Any and all documents relating to the chloride content of the ash within the CDS and ESP equipment.

**RESPONSE:**    AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and

04-27-05     02:58pm     From-MSL Copy Room 2, Right          302 225 3674      T-655   P.028/035   F-282

without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 65:**     Any and all documents relating to the recirculation of ESP ash into the plant's boilers, including, but not limited to, any and all documents relating to when flyash was injected into the boilers.

**RESPONSE:**     AES P.R. objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 66:**     Any and all documents relating to the operation of the sootblowers within the CDS and ESP equipment, including, but not limited to, any documents relating to any maintenance or inspection of those sootblowers.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. AES P.R. also objects to this request to the extent it calls for the production of privileged documents. Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 67:**     Any and all documents relating to the constituents or chemical/molecular make-up of the flue gas at the air heater outlet and at the stack during operation of the plant.

**RESPONSE:**     AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery

04-27-05    02:59pm    From-MSL Copy Room 2, Right           302 225 3674        T-655   P 029/035   F-202

of admissible evidence. AES P.R. also objects to this request to the extent it calls for the

production of privileged documents. Subject to the general and specific objections specified

above, and without waiver thereof, AES P.R. states that it will produce any non-privileged,

responsive documents.

REQUEST 68:    Any and all documents relating to the in-leakage of outside air into the

CDS and ESP equipment.

RESPONSE:    AES P.R. objects to this request to the extent it calls for the production

of privileged documents. Subject to the general and specific objections specified above, and

without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive

documents.

REQUEST 69:    All documents related to any physical or operational modifications

AES made to the CDS and/or EPS equipment, the Water Treatment System, or the Closed

Cooling Water Cycle.

RESPONSE:    AES P.R. objects to this request on the grounds that the phrase

"physical or operational modification" is vague and undefined and on the grounds that the phrase

"Closed Cooling Water Cycle" is vague and the definition of that phrase is incoherent. AES P.R.

cannot respond to the request to the extent it relates to the "Closed Cooling Water Cycle"

because the definition of that term is incoherent. AES P.R. also objects on the grounds that the

request is overly broad and seeks information that is neither relevant nor reasonably calculated to

lead to the discovery of admissible evidence. AES P.R. further objects to this request to the

extent it calls for the production of privileged documents. Subject to the general and specific

objections specified above, and without waiver thereof, AES P.R. states that it will produce any

non-privileged, responsive documents.

**REQUEST 70:**    Documents sufficient to identify each and every partner of AES from January 1, 2002 to the present, and for each such partner, documents sufficient to identify the legal residence, principle place of business, and place of incorporation of the partner.

**RESPONSE:**    AES P.R. objects to this request to the extent it calls for the production of privileged documents.  AES P.R. also objects to the extent it calls for the production of publicly available information.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce documents sufficient to disclose the identity of the partners in AES P.R.

**REQUEST 71:**    All documents related to the design of the closed cooling water cycle.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrase "Closed Cooling Water Cycle" is vague and the definition of that source is incoherent

**REQUEST 72:**    Any and all documents related to the source of the water use at the plant.

**RESPONSE:**    AES P.R. objects to this request on the grounds that the phrase "water use [sic] at the plant" is vague and undefined.  AES P.R. also objects to the request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST 73:**    Any and all documents related to the design and installation of a secondary reverse osmosis system on the Project.

**RESPONSE:**    AES P.R. objects to this request to the extent it calls for the production of privileged documents.  Subject to the general and specific objections specified above, and without waiver thereof, AES P.R. states that it will produce any non-privileged, responsive documents.

**REQUEST 74:**   Any and all documents related to the Distributed Control System.

**RESPONSE:**   AES P.R. objects to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST 75:**   Any and all documents relating to the Plant Operating Data.

**RESPONSE:**   AES P.R. objects to this request on the grounds that the definition of the phrase "Plant Operating Data" is vague.  AES P.R. also objects on the grounds that the request is overbroad and unduly burdensome, and seeks information not relevant to the claims and defenses at issue in this litigation.

**REQUEST 76:**   All documents which were viewed by or prepared by any person who may be called to testify as an expert witness at the trial of this case and all bibliographies, resumes or curricula vitae regarding any such expert witness who may be called to testify at the trial of this case.

**RESPONSE:**   AES P.R. objects to this request on the grounds that production of the requested information is premature and that the request seeks to impose obligations on AES P.R. greater than are imposed by the Federal Rules of Civil Procedure and the Local Rules of this Court.  AES P.R. will provide the appropriate information pursuant to the Rules when required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any scheduling order entered by the Court.

## REQUESTS FOR INSPECTION

**REQUEST 1:**   Any components that were removed from the CDS and/or the ESP equipment, including, but not limited to, any collector plates that were removed.

**RESPONSE:**   In an April 15, 2005, letter, AES P.R. explained to ALSTOM that it had removed parts of the ESP collector plates during the November 2003 and/or January 2004

119895                          - 30 -

04-27-05    02:59pm    From-MSL Copy Room 2, Right              302 225 3674        T-655  P.032/035  F-282

shut downs and that AES P.R. provided samples of the corroded materials to ALSTOM at that time. AES P.R. agrees to make available to ALSTOM samples of any components that are removed during future shutdowns.

**REQUEST 2:**    During the next scheduled shut-down of the plant, the CDS and ESP equipment currently installed at the Project.

**RESPONSE:**    During the November 2003 and/or January 2004 shutdowns, ALSTOM inspected the CDS equipment. In a voice message of April 7, 2005, and letters of April 12, 2005, and April 15, 2005, counsel for AES P.R. explained that AES P.R. had scheduled a shutdown of Unit 2 on April 15, 2005 and that AES P.R. would be amenable to ALSTOM inspecting Unit 2 at that time, assuming AES P.R. and ALSTOM could reach an agreement about various items related to the inspection. Counsel for AES P.R. further explained that AES P.R. has not yet scheduled Unit 1 for a shutdown, but that AES P.R. was coordinating the shutdown with the Puerto Rico Electric Power Authority and that the shutdown would likely occur around November 2005. AES P.R. remains open to working with ALSTOM to coordinate inspections of each unit, subject to the parties reaching agreement with respect to the issues raised in the April 12, 2005 letter.

/s/ John S. Spadaro
John S. Spadaro, Bar No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

04-27-05    03:00pm    From-WSL Copy Room 2, Right          302 225 3674       T-655  P.033/035  F-282

OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: April 27, 2005                          Attorneys for AES Puerto Rico, L.P.

119895                          - 32 -

04-27-05    03:00pm    From-MSL Copy Room 2, Right                302 225 3674        T-656   P.034/035   F-282

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AES PUERTO RICO, L.P., | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 04-1282-JJF |
| ALSTOM POWER, INC., | ) |
| Defendant. | ) |

### NOTICE OF SERVICE

On April 27, 2005, Plaintiff served Plaintiff's Responses and Objections to

ALSTOM Power, Inc.'s First Set of Requests for Documents and Inspection, along with a copy

of this Notice of Service, by hand delivery, as follows:

> Richard R. Weir, Esq.
> Daniel W. Scialpi, Esq.
> 1220 Market Street, Suite 600
> Wilmington, DE 19801

and provided a copy by facsimile as follows:

> James E. Edwards, Esq.
> Anthony F. Vittoria, Esq.
> Michael Schollaert, Esq.
> Ober, Kaler, Grimes & Schriner
> Fax: (410) 547-0699


Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, Bar No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

119895

04-27-05     03:00pm     From-WSL Copy Room 2, Right          302 225 3674          T-655   P.035/035   F-282

OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: April 27, 2005                    Attorneys for AES Puerto Rico, L.P.