# TAB 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 03-544-JJF |
| ALSTOM POWER, INC., | * | |
| Defendant, | * | |

\* \* \* \* \* \* \* \* \* \*

**ALSTOM POWER, INC.'S
SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:  AES Puerto Rico, L.P.
c/o John S. Spadaro, Esquire
Murphy Spadaro & Landon
824 Market Street, Suite 700
Wilmington, DE 19801

Pursuant to Fed. R. Civ. P. 34, Defendant, ALSTOM Power, Inc. ("ALSTOM") hereby serves its Second Request for Production of Documents to Plaintiff, AES Puerto Rico, L.P. ("AES"). AES shall file a written response within 30 days of service of this Request.

**DEFINITIONS**

1. "Document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including, but not limited to correspondence, messages, contracts, checks, memoranda or notes of telephone or other oral conversations, studies, surveys, charts, reports, minutes, notes, diaries, logs, schedules, cancelled checks, graphs, invoices, bills, computer reports, photographs, videotapes, releases, newspaper or magazine articles, books, financial statements, ledgers, transcripts, affidavits, tapes, tape recordings, phonograph recordings, e-

mails, electronic files, electronically stored data, whether originals, copies, or drafts, however produced or reproduced. If any of the data or information requested below is stored in such a way as to be retrieved by computer, then in respect to such data or information, the term "document" shall also include the physical medium in which such data or information is stored, or a copy thereof, together with a copy of the software which will enable the data or information to be retrieved and reviewed.

    2. "Electronic data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and

labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3. The term "computer" shall be construed in its broadest possible sense and includes, but is not limited to, any means of storing or processing magnetic, graphic, photographic or other descriptive materials or any retrievable data or information including without limitation computers, word processors, personal computers, network terminals, hard-drives, computer network systems, mainframes, or other means of creating or storing information in magnetic form under the custody, possession or control of AES, its past and present officers, directors, partners, agents, predecessors, successors, affiliates, representatives, employees, attorneys, and any other person or entity employed by or acting on behalf of AES.

4. "Person" means any natural person, corporation, partnership or other private organization or governmental or legal entity.

5. "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

6. "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

7. "Betz" refers collectively to Betz-Dearborn – A Division of Hercules Incorporated, GE Betz, Inc. and GE Global New Construction, Inc.

8. "Plant" means the 454-megawatt, co-generation, coal-fired facility, in its entirety, located in Guayama, Puerto Rico.

3

9. "Project" means the design, construction and commissioning of the Plant and includes any negotiations or contracting relating to the design, construction and commissioning of the Plant.

10. "Personal file" means all documents and electronic data created, received or otherwise obtained in the regular course of AES's business by an officer, employee or agent of AES that is maintained or stored by that particular officer, employee or agent at his or her home or in the office(s), cubicle(s), desk(s), file drawer(s), bookshelves or computers assigned to him or her by AES or in any other location that is readily accessible to that officer, employee or agent.

## REQUEST FOR DOCUMENTS – INSTRUCTIONS

1. This request for production of documents is continuing in nature, so AES shall supplement its response to this request for production of documents in accordance with Rule 34 of the Federal Rules of Civil Procedure.

2. This request includes the production of all non-identical copies of requested documents, including drafts and copies upon which notes or comments have been made.

3. If any document responsive to this request is not produced due to a claim of privilege to a part or parts of the document (including a claim that all or a portion of the document constitutes work product), describe each such document and the factual basis for the claim of privilege. Documents shall be deemed to have been adequately listed and described for the purpose of this instruction when the following information has been provided:

   a. The place, approximate date and manner of preparation of the document;

   b. The basis on which the privilege is claimed;

   c. The name of each person who participated in the preparation of the document;

    d. The name and corporate position, if any, of each person other than attorneys representing you to whom the content of the document has been communicated in the past whether by copy, exhibition, reading or substantial summarization;

    e. The nature of the document and a brief description of its subject matter; and

    f. Each addressee, recipient or possessor of the document.

5. To the extent that any request is objected to on grounds other than privilege, set forth the factual and legal basis for the objection. If you object in part to any request, produce all documents responsive to the remainder of that request and set forth the factual and legal basis for the portion of the request to which you object.

6. Documents required to be produced are not limited to "paper" documents, but also include electronic data and electronic media and all forms of documents listed in the documents definition above.

7. In seeking information to respond to this document production request, you are required to examine all possible forms of storing textual, verbal or numerical information, and your examination may not be limited to paper or other forms of "hard copy" records. In searching for non-paper sources of information, you are required to search all computer or other electronic or optical forms of information storing formats, including:

    a. so-called floppy disks;

    b. removable drive media, of all kinds;

    c. hard drives used by individuals;

    d. hard drives shared by multiple users;

    e. storage media used by network systems;

    f.    storage media not maintained on-line, including but not limited to backup tapes or similar archival storage media, wherever and by whomever stored or retained;

    g.    file servers;

    h.    optical media, including "write-once-read-many" ("WORM") media or other optical formats, including rewritable optical formats;

    i.    portable computers, included but not limited to, "notebook" computers, "laptop" computers, or other similar portable devices;

    j.    palmtop, pocket size or similar portable information devices on which information is stored in digital form;

    k.    systems that preserve "voice mail" or similar messages in analog or digital form; and

    l.    all systems, whether included in (a)-(k) above, that preserve electronic mail or similar messages in any form, including, but not limited to, systems on the desktop of electronic mail users, systems on servers, and systems that are "offline" methods of preservation of such messages, whether tape, optical or otherwise.

8.    The documents and things requested shall be produced at the office of AES, or such other location(s) as agreed to by the parties.

9.    If it is your contention that documents responsive to the following requests have already been produced, identify those documents by Bates number in your Response.

## REQUESTS FOR DOCUMENTS

**REQUEST NO. 77:** All documents comprising, evidencing, referring to or relating to any and all communications, transmissions (written or oral), reports, or other tests or evaluations performed by Betz concerning or in connection with the Plant or the Project, including, but not limited to the following:

    a.    The Water Management Report (revs. 0-7);

    b.    The Project Services Agreement;

    c.    The contract referred to in the first paragraph of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

    d.    Any and all documents exchanged between AES and Betz relating to the "review cycle" referred to in the first paragraph of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

    e.    Any and all documents related to the joint commissioning of the "Water Treatment Modification" referred to in the third to last bullet point of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

    f.    Any and all documents relating to the "[e]quipment estimates received from GE-Betz and DFD" referred to in the second bullet point of the document Bates numbered AESPR 006869, a copy of which is attached hereto at Tab 1;

    g.    Any and all other documents relating to water sampling, make-up source evaluations, water balance conceptual designs, water chemistry modeling and characterization, chemical treatment program development, cooling system operations and maintenance ("O&M") costs, chemicals and additives used in the plant water system, and spreadsheets listing all commodities and chemicals used in the plant water system including concentrations, expected annual usage and actual annual cost.

**REQUEST NO. 78:** All documents evidencing referring to or relating to the use of limestone and lime at the Plant, for the time period of December 1, 2002 to the present, including, but not limited to, the following:

    a.    Any and all documents evidencing or comprising the measurement and calculation of lime consumption, as referred to in the first bullet point of the document Bates numbered AESPR 006865, a copy of which is attached hereto at Tab 1;

    b.    Any and all documents evidencing or comprising the measurement and calculation of the "annual cost of $3M for additional lime usage", as referred to in the third bullet point of the document Bates numbered AESPR 006869, a copy of which is attached hereto at Tab 1;

    c.    Any and all other documents relating to the amount of limestone or lime used at the Plant, or the cost of the limestone or lime;

    d.    Any and all documents relating to the chemical composition of the limestone or lime.

**REQUEST NO. 79:** Any and all documents relating to the mapping of the corrosion by AES, as called for in paragraph 1.6 of Part III – General Terms of the Purchase Order between ALSTOM and Duke/Fluor Daniel Caribbean S.E.

**REQUEST NO. 80:** Any and all documents, whether in hard-copy or electronic form, comprising the operating data from the Distributed Control System ("DCS"), for the time period of December 1, 2002 to the present, for the following instruments/parameters/tag numbers:

| Parameter | Tag No. | Reference |
|---|---|---|
| Temperature | TIR-101 | D900 Sheet 3 Rev. 4 |
| Weigh Belt Feeder | FDR-812 | EEC O&M Vol. 1, page 6-4 |
| Amount of hydrated lime set point | AIC-931 | EEC O&M Vol. 1, page 6-4 |
| Lime feed control | AIC-819 | EEC O&M Vol. 1, page 6-4 |
| Weigh belt hydrated lime usage rate | WIR-817 | EEC O&M Vol. 1, page 6-5 |
| Pressure switch | PISLH-611 | EEC O&M Vol. 1, page 6-6 |
| Differential Air Pressure Switch | PDSH-600A/B | EEC O&M Vol. 1, page 6-6 |
| Temperature Transmitter | TIC-606 | EEC O&M Vol. 1, page 6-7 |
| Pressure switch | PISLH-702 | EEC O&M Vol. 1, page 6-9 |
| Temperature Transmitter | TIC-703 | EEC O&M Vol. 1, page 6-9 |
| Differential Pressure Controller | PDIC-105 | EEC O&M Vol. 1, page 6-12 |
| Valve Position Controllers | ZIC-442, 481, 522, 562 | EEC O&M Vol. 1, page 6-12 |
| Gas Temperature | TI-106A, 106B, 106C | D900 Sheet 3 Rev. 4 |
| Low Level Switch | LSL-40/445/485/525 | EEC O&M Vol. 1, page 6-15 |
| Low-Low Level Switch | LSL-403/447/487/524 | EEC O&M Vol. 1, page 6-15 |
| CDS Temperature Control Valve | TV-106 | EEC O&M Vol. 1, page 6-17 |
| Pump Discharge Pressure | PT-200A or 200B | EEC O&M Vol. 1, page 6-17 |
| Stack Opacity Signal | FCA-001 | EEC O&M Vol. 1, page 6-21 |
| Boiler Load | FCA-002 | EEC O&M Vol. 1, page 6-21 |
| Precipitator system On/Off | FCHS-001R | EEC O&M Vol. 1, page 6-21 |
| Temperature Controller | TIC-302 | D900 Sheet 5 Rev. 4 |

**REQUEST NO. 81:** The Excel spreadsheets that were originally attached to an e-mail from WeiLi Yu dated January 30, 2004, a copy of which is attached hereto at Tab 2 and is Bates number HOGN-EMAIL-000118.

**REQUEST NO. 82:** Any and all documents comprising the recordation (or "logging") of the readings of the thermocouples referred to in an e-mail from WeiLi Yu dated January 23, 2004, a copy of which is attached hereto at Tab 3 and is Bates number AESPR-029125.

**REQUEST NO. 83:** The Excel spreadsheet that was originally attached to an e-mail from Paul Stinson dated October 8, 2003, a copy of which is attached hereto at Tab 4 and is Bates number WARD-EMAIL-020678.

**REQUEST NO. 84:** Any and all documents relating to or comprising the "moisture testing" and/or "moisture measuring" as referred to in an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198, including, but not limited to, the Precipitator Hopper Ash Moisture Content spreadsheet, as referred to in e-mails from David Stone dated January 16 and 20, 2004, copies of which are attached at Tab 6, and are Bates numbered AESPR-028523 and AESPR-028626, respectively.

**REQUEST NO. 85:** Any and all documents comprising the recordation (or "logging") of the pressure of the CDS nozzles, as referred to in an e-mail from Csaba Little dated February 12, 2004, a copy of which is attached hereto at Tab 7 and is Bates number AESPR-028272.

**REQUEST NO. 86:** Any and all documents relating to the CDS spray nozzles, for the time period December 1, 2002 through the present, including, but not limited to:

      a.    Any and all documents relating to the operating hours of each of the CDS nozzles, as referred to an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198;

      b.    Any and all documents relating to the checking of each of the nozzles spray patterns, as referred to an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198;

      c.    Any and all documents comprising, currently or at any time, CDS Nozzle Cleaning Logs, examples of which is shown in the photographs attached hereto at Tab 8;

      d.    The "parts records" relating to the CDS nozzles, and the CDS nozzle tips and swirlers, as referred to on the second page of an e-mail from Paul Stinson dated January 30, 2004, a copy of which is attached hereto at Tab 2, and is Bates numbered HOGN-EMAIL-000118 to HOGN-EMAIL-000119;

      e.    Any and all other documents relating to the maintenance, cleaning, replacement, repair, testing, or inspecting of the CDS nozzles from December 1, 2002 until the present.

**REQUEST NO. 87:** Any and all documents relating to the opacity of the plant from December 1, 2002 until the present, including, but not limited to, the "EtaPro opacity data" referred to in a January 2, 2004 e-mail from Paul Stinson, a copy of which is attached hereto as Tab 9 and is Bates numbered AESPR-029020.

**REQUEST NO. 88:** Any and all documents relating to "the CDS spray-water quality data", as referred to in a January 2, 2004 e-mail from Paul Stinson, a copy of which is attached hereto as Tab 9 and is Bates numbered AESPR-029020, from December 1, 2002 until the present.

**REQUEST NO. 89:** Any and all documents relating to the measurement of the CDS/ESP flue gas wet bulb temperature, from December 1, 2002 until the present, as referred to on page 7-14 of EEC O&M Manual Volume 1, a copy of which is attached hereto at Tab 10 and is Bates numbered EEC-06067.

**REQUEST NO. 90:** Any and all documents relating to the measurement of the CDS/ESP flue gas dew point temperature from December 1, 2002 until the present.

**REQUEST NO. 91:** Any and all CDS/ESP start-up logs.

**REQUEST NO. 92:** Any and all documents relating to the measurement of the level of oxygen ($O_2$) at the air-heater outlet and at the stack.

**REQUEST NO. 93:** Any and all documents relating to the electrical readings of the ESP T/R sets.

**REQUEST NO. 94:** All documents evidencing, referring, relating or constituting the basis for AES's damages estimates as set forth in AES's responses to ALSTOM's Interrogatory No. 10.

**REQUEST NO. 95:** All documents created or that will be created evidencing, referring or relating to the AES's inspection, maintenance, cleaning, testing or repairs of the Unit 1 CDS and/or ESP for the shutdown in October of 2005.

**REQUEST NO. 96:** All documents evidencing, referring or relating to any change or modification made to the operational guidelines set forth in Vol. 1 of EEC's Operation and Maintenance Manual by ALSTOM or EEC.

**REQUEST NO. 97:** The Plant Operations Manual referred to in a November 24, 2003 letter from Allan B. Dyer to Mr. William Jarvis, a copy of which is attached hereto at Tab 11, and is Bates numbered W-005-01676.

**REQUEST NO. 98:** All documents evidencing, referring or relating to attempts to achieve Plant opacity at any level below 10%.

**REQUEST NO. 99:** All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ENSR International concerning or in connection with the Plant or the Project.

**REQUEST NO. 100:** All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and Steven A. Benson, President of Microbeam Technologies, Inc. or AES and Microbeam Technologies, Inc. concerning or in connection with the Plant or the Project.

**REQUEST NO. 101:** All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and Stone & Webster, Inc. concerning or in connection with the Plant or the Project.

**REQUEST NO. 102:** All books of account and accounting records, whether in hard-copy or electronic form, relating to AES's claimed damages in this matter.

**REQUEST NO. 103:** All videotapes regarding the construction, operation, or maintenance of the CDS or ESP, including, but not limited to, the tapes entitled "CDS Scrubber And Electrostatic Precipitator", "CDS Scrubber – An Introduction of Precipitator &

Components", "Base Theory of Operation", "Precipitator & Components: An Introduction of Start Up & Shut Down of APCS And Components", and all continuations of those tapes, which are located in the Control Room of the Plant and are depicted in the photograph attached hereto at Tab 12.

**REQUEST NO. 104:** All documents comprising, evidencing, referring to or relating to alternatives, options, and avenues discussed or pursued by AES concerning its obligation to achieve zero discharge compliance.

**REQUEST NO. 105:** All documents comprising, evidencing, referring to or relating to AES's modification or planned modification of the Plant to inject make-up water into the boiler.

**REQUEST NO. 106:** All documents comprising, evidencing, referring to or relating to CEMS from December 1, 2002 until the present.

**REQUEST NO. 107:** All documents comprising, evidencing, referring to or relating to control room alarm logs from December 1, 2002 until the present.

**REQUEST NO. 108:** All documents comprising, evidencing, referring to or relating to AES's measurement, calculation, or recording of the CDS and/or ESP dew point for water, hydrochloric acid, or sulfuric acid.

**REQUEST NO. 109:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Unit #2 Boiler & Auxiliaries" and "Unit #2 Daily Readings & Checklist", as depicted in photograph B of Tab 8.

13

**REQUEST NO. 110:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Standard Operating Procedure" and "Site Air Emission Units Construction Permits – Amendment", as depicted in the photograph attached at Tab 13.

**REQUEST NO. 111:** All documents that are currently, or have ever been contained in the Plant Control Room binder entitled "Control Room Reference Operating Instructions and Notes", as depicted in the photograph attached at Tab 14.

**REQUEST NO. 112:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Water Samples Log Book", an example of which is depicted in the photograph attached to Tab 15.

**REQUEST NO. 113:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Boiler Daily Notes", "Unit 1 Daily Readings & Checklist" and "PREPA & AES", as depicted in the photograph attached at Tab 16.

**REQUEST NO. 114:** The personal file of AES's Al Dyer relating to the Plant and/or the Project.

**REQUEST NO. 115:** The personal file of AES's Ron McParland relating to the Plant and/or the Project.

**REQUEST NO. 116:** The personal file of AES's Paul Stinson relating to the Plant and/or the Project.

**REQUEST NO. 117:** The personal file of AES's Elias Sostre relating to the Plant and/or the Project.

**REQUEST NO. 118:** The personal file of AES's Csaba (Little) Kiss relating to the Plant and/or the Project.

**REQUEST NO. 119:** The personal file of AES's Tracy Jarvis relating to the Plant and/or the Project.

**REQUEST NO. 120:** The personal file of AES's David Stone relating to the Plant and/or the Project.

**REQUEST NO. 121:** The personal file of AES's WeiLi Yu relating to the Plant and/or the Project.

**REQUEST NO. 122:** The personal file of AES's Stewart J. Ferguson relating to the Plant and/or the Project.

**REQUEST NO. 123:** The personal file of AES's Calvin Kotrla relating to the Plant and/or the Project.

**REQUEST NO. 124:** The personal file of AES's Ernest Pagaduan relating to the Plant and/or the Project.

**REQUEST NO. 125:** The personal file of AES's Harry Bonilla relating to the Plant and/or the Project.

**REQUEST NO. 126:** The personal file of AES's Rod Jorgensen relating to the Plant and/or the Project.

**REQUEST NO. 127:** The personal file of AES's Gary Bates relating to the Plant and/or the Project.

**REQUEST NO. 128:** The personal file of AES's Radames Rodriguez relating to the Plant and/or the Project.

                                      ALSTOM POWER INC.

                                      James E. Edwards, Esquire
                                      Anthony F. Vittoria, Esquire
                                      Michael A. Schollaert, Esquire
                                      OBER, KALER, GRIMES & SHRIVER, P.C.
                                      120 East Baltimore Street
                                      Baltimore, Maryland 21202-1643
                                      Phone: (410) 685-1120
                                      Fax:   (410) 547-0699

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 25th day of October, 2005, a copy of the foregoing Second Request For Production Of Documents was served, via first-class mail and facsimile, on:

John S. Spadaro, Esquire
Murphy Spadaro & Landon
824 Market Street, Suite 700
Wilmington, Delaware 19801

Dane H. Butswinkas, Esquire
R. Hackney Wiegmann, Esquire
Mary Beth Long, Esquire
Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Anthony D. Vittoria

774189