# TAB 20

OBER | KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**James E. Edwards, Jr.**
jeedwards@ober.com
410-347-7330

**Offices in**
Maryland
Washington, D.C.
Virginia

February 9, 2006

<u>VIA FACSIMILE AND FIRST-CLASS MAIL</u>

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005

> Re:   AES Puerto Rico, LP v. ALSTOM Power Inc.
>          Civil Action No. 04-1282-JJF

Dear Dan:

        This is in response to your message to me dated February 2, 2006, in which you attempted to "memorialize" agreements made during our telephone call regarding discovery issues on February 1.  Your message presents an incomplete summary of the call and, therefore, requires a response.  In addition, this letter will set forth ALSTOM's position with respect to several issues that were left open pending review of deposition transcripts and the like after the conference call.

        With regard to concerns raised by ALSTOM during the telephone conference, we have the following comments:

- In responding to ALSTOM's interrogatory regarding the identity and responsibilities of persons having knowledge of discoverable information, AES simply provided a list of names.  The interrogatory properly requires a description of each person's responsibilities and a summary of the discoverable information known to them.  As a compromise to resolve this dispute, as set forth in Mr. Vittoria's e-mail message, we indicated a willingness to look at your attempt to organize these individuals into subgroups based upon their responsibilities in connection with the subject matter of this case, which must be clearly identified.

- We discussed the depositions of AES's corporate designees with respect to its claim for damages and electronic and paper discovery.  ALSTOM objected to the untimely supplementation of AES's answer to ALSTOM's interrogatory relating to damages on the eve of a deposition, which had been scheduled for a considerable period of time.  ALSTOM also objected to AES's failure to produce all documents relating to its claim for damages prior to the deposition.  We agreed to review the transcript while you did the same and

O B E R | K A L E R
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 2

determine whether the deposition should be continued. As set forth below, the deposition of AES's corporate designee with respect to its claim for damages should be continued. Similarly, ALSTOM objected to the inability of AES's corporate designee to answer questions and address subjects relating to electronic discovery that were clearly set forth in ALSTOM's Notice of Deposition. We have subsequently reviewed the transcript and the Notice of Deposition. As set forth below, the deposition should be continued as well.

- Given that he worked for Environmental Elements Corporation in connection with the design and supply of equipment at issue in this litigation and then provided non-litigation related consulting services to AES in connection with that same equipment, John Toher is a fact witness. In addition, you advised that AES engaged Mr. Toher last winter as a prospective expert witness who might develop opinions to be presented at trial. Prior to that engagement, materials exchanged between AES and Mr. Toher would not have been prepared in anticipation of litigation or for trial and would be discoverable. Thus, if AES asserts the privilege with regard to the exchange of materials with Mr. Toher prior to his engagement as a prospective trial expert, a privilege log should be produced at this time so that we can assess the basis for any claim of privilege. Depending upon whether Mr. Toher is identified by AES as an expert whose opinions may be presented at trial, in which case exchanges between Mr. Toher and AES will be discoverable, or is merely an individual engaged in anticipation of litigation or for trial who will not offer such expert opinions, in which case some of those exchanges may not be discoverable, we will ascertain whether a further privilege log is required. We are prepared to provide a privilege log relating to communications with Altran prior to its engagement as a prospective trial expert and request that AES do the same with Mr. Toher.

- In light of the discovery of communications among AES, D/FD Caribbean, ALSTOM, and EEC relating to the prevention of corrosion in the electrostatic precipitator dating back to February, 2000, and perhaps even earlier, we requested production of electronic documents, including electronic mail, for this period. In the past, AES has indicated that it would be difficult to retrieve certain electronic mail, some of which we now understand may be available only on back-up tapes. In addition, there is a second category of electronic mail exchanged during the construction of the Project that we believe has not been produced. This is based, in part, on our analysis of electronic mail messages produced by AES with hard-copy documents that are not contained in AES's electronic production of electronic mail. It is confirmed by AES's indication that it lacks many of the electronic mail communications with D/FD Caribbean that ALSTOM obtained during discovery in a lawsuit with D/FD. At least at one time, such electronic mail should have been on AES's servers. During the

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 3

conference call, we agreed to look at the disclosure you made to Mr. Regner regarding the cost of retrieving the former category of electronic mail. As to the latter category of electronic mail, we requested, but did not receive, an explanation of its status. As set forth below, production of the electronic mail in both categories (or an explanation of why it cannot be produced) is required.

- We also questioned the production of CEMS data in 15 minute intervals. At his deposition, Mr. Sostre testified that it would not be difficult to obtain this information in six minute intervals, the period of time that is germane based upon the specifications with regard to opacity. You agreed to determine what would be required in order to produce the CEMS data in six minute intervals. We are examining the documents produced recently in Puerto Rico to determine whether, in fact, those documents contain comprehensive CEMS data in six minute intervals. If the documents do not contain a complete record of the CEMS data in six minute intervals during the period of time that is relevant in this case, AES should produce that data in either electronic or paper form or facilitate ALSTOM's access to the data on an expedited basis.

- We discussed the scheduling of depositions. Bill Jarvis is not available the week of February 20. He is available in early March. Tim Maidenford is traveling to Europe and involved in critical commissioning meetings the last two weeks in February. He is available March 7 or 8. He is in Kentucky and suggests that we take the deposition at a hotel near the Cincinnati airport, which is fine with us. We requested a notice of deposition for the corporate designee's deposition, regarding the handcuffs issue which we received on February 7. We are identifying who should appear and hope to know the answer tomorrow or early next week. On February 6, we received notice of AES's intention to take the deposition of Tom Coleman. Mr. Coleman is still employed by ALSTOM. He is willing to travel from his project site in New Hampshire to Windsor, Connecticut for the deposition. He would be available for deposition late in the week of February 20 or the following week. ALSTOM requested the availability of Mr. Dyer, Doug Tomlin, and Ron McParland for depositions. ALSTOM also now requests that AES provide available dates for the deposition of Tracy Jarvis. If any of these individuals is no longer employed by AES, please provide last known contact information so that we can issue an appropriate subpoena. ALSTOM also will provide another notice of deposition for a corporate designee for AES early next week.

With regard to concerns raised by AES during the conference call, we have the following comments:

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 4

- ALSTOM recently provided two CDs to AES containing responsive electronic mail for Tom Barber, as requested, and supplemental production for a number of other custodians previously produced. In earlier discussions, we had indicated a belief that the electronic mail being produced covered the period of time that was relevant to the case. Subsequently, we reviewed the electronic mail for all of the custodians to confirm that belief and requested that ALSTOM's IT personnel confirm whether additional electronic mail was available during the period in question. Based upon that undertaking, we determined that additional electronic mail should be produced, and it has been provided. You were going to review supplemental production of electronic mail for Karl Kognefelt, Linda Rothe, and Frank Gabrielli, if any, all of whom have been deposed.

- ALSTOM agreed to provide a letter stipulating to the authenticity of a document authored by Frank Gabrielli that was produced subsequent to his deposition. We will review your letter dated January 24, 2006 in preparing that letter.

- We agreed to confirm whether Mr. Gabrielli has any other discoverable documents in his possession. We have done so and can confirm that Mr. Gabrielli has no such documents.

- ALSTOM is not still collecting documents from Ed Bulewich, Fred Campbell, and Steve Francis. ALSTOM is reviewing electronic mail for production for prospective witnesses identified recently by AES.

- You inquired regarding the status of ALSTOM's privilege log relating to electronic documents. We indicated that it should be produced early next week. We forwarded the privilege log to you on February 8. We did not discuss AES's reservation of rights with regard to ALSTOM's assertion of the privilege over these documents as indicated in your parenthetical. No such waiver of the privilege has occurred. Indeed, both sides have produced documents and data to one another subsequent to December 31. Despite assurances that all of AES's documents and data had been produced as of December 31, this includes AES's recent document production in Puerto Rico, which contains numerous documents that should have been produced in AES's initial document production.

- ALSTOM is following up to determine whether it can locate Control Room Logs for the period after September 21, 2002.

- We are attempting to determine whether the so-called Maidenford Daily Commissioning Report is complete.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 5

With regard to several open discovery issues, ALSTOM's position is as follows:

- The deposition of AES's corporate designee with respect to electronic discovery must be continued. There are numerous instances in which the witness, Mr. Hernandez, could not answer questions falling clearly within the scope of the categories for examination in the Notice of Deposition. Examples of these are found at pages 40 - 45 (regarding the shared servers), pages 59 - 62 (regarding the retrieval of electronic mail), pages 63 - 66 (regarding the retrieval of electronic mail), page 68 (regarding the cost to retrieve electronic mail from back-up tape), pages 73 - 75 (relating to the preservation of electronic mail), and pages 79 -80 (relating to the retrieval of electronic mail). One colloquy at pages 79 - 80 of the transcript is particularly telling.

> Q:   Are you aware of the steps that were taken to retrieve, collect, and produce those e-mails in this case?
>
> A:   No, I'm not aware.

Because this witness was largely unfamiliar with subjects relating to shared servers maintained in Indianapolis and then in Arlington and with the process of identifying, retrieving, and copying electronic mail for production to ALSTOM, including the cost to do so, none of which was done in Puerto Rico, AES should make a separate designee from the IT Group in Arlington available to address these issues.

- The deposition of AES's corporate designee with respect to damages also must be continued. We received AES's Supplemental to ALSTOM's Interrogatory No. 10, relating to damages, on the eve of the deposition and while Mr. Vittoria, who was to take the deposition, was traveling to Puerto Rico. The Supplemental Response to Interrogatory No. 10 broadly expands the components of AES's claim for damages and dramatically increased the amount claimed. Moreover, in mid-January, we learned that "a small number of boxes" would be available at the facility on January 16, two days before Mr. Dyer's deposition. Despite efforts to expedite the process, we obviously did not receive those documents until after the deposition had been taken. In fact, the production included 13 boxes. Further, based upon the index provided with those documents and our preliminary review of them, a significant number of those documents would have been reviewed in preparation for that deposition if they had been provided earlier. Because Mr. Vittoria already was in Puerto Rico,

O B E R | K A L E R
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 6

he attempted to conduct the deposition based upon the Supplemental Answer to
Interrogatory No. 10, which he did not receive until his arrival in Puerto Rico the
day before the deposition. He also did so without the benefit of the documents
that had not yet been produced. While we do not intend to simply re-take the
deposition, it should be continued for the purpose of follow-up inquiry regarding
components of the claim for damages set forth in the Supplemental Answer for
the first time and documents produced subsequent to the deposition.

       •    As set forth above, there are two categories of electronic mail that
AES has failed to produce to ALSTOM. The first of these categories is the
electronic mail that dates back to the earlier stages of the Project. Such e-mail
apparently is stored on back-up tapes. Based upon the discovery of discussions
among AES, D/FD Caribbean, ALSTOM, and EEC dating back to early 2000
relating to the pollution control equipment and the prevention of corrosion, these
back-up tapes undoubtedly contain responsive electronic mail of material
witnesses with knowledge of discoverable information. Your earlier
communication with Jeff Regner of this office is vague and would not satisfy
AES's burden to establish that retrieval of this relevant electronic mail would be
overly burdensome. Moreover, the corporate designee with regard to electronic
discovery issues was wholly unfamiliar with the prospective cost of this exercise.
For that reason, AES should produce discoverable electronic mail on the back-up
tapes in question.

      Under the Default Standard For Discovery Of Electronic Documents
issued by the United States District Court for the District of Delaware, as a
general proposition, "the cost of discovery shall be borne by each party." The
Default Standard provides that the court will only apportion the cost of electronic
discovery "upon a showing of good cause." In order to minimize AES's costs of
retrieval, ALSTOM can agree to limit the number of individuals whose electronic
mail must be searched and arrive at an agreed set of search terms to be run over
that electronic mail. Apart from that, AES is obligated to retrieve this electronic
mail from the back-up tapes and make it available to ALSTOM.

      Further, there are strong indications that AES has either failed to preserve
or has not produced more recent electronic mail relating to the Project. Again,
this is based upon the existence of hard copies of electronic mail messages to or
from AES users that did not appear in AES's electronic production of electronic
mail and AES's acknowledgement that it does not have all of the electronic mail
exchanges with its EPC contractor, D/FD Caribbean. ALSTOM is entitled to an
explanation of the circumstances surrounding the failure to preserve or produce
this electronic mail, which should be afforded by its corporate designee for
electronic discovery.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
February 9, 2006
Page 7

We look forward to discussing these matters with you during our conference call on February 10.  If you have any questions in the interim, please call me.

Sincerely yours,

James E. Edwards, Jr.

JEEJr/bak

# TAB
# 21

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 15, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

Re:    **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Jim:

This letter follows up on various issues we discussed during our teleconference last Friday.

First, you requested more detailed information concerning the backup tapes that may contain AES-PR e-mail from the old "First Class" e-mail system that was replaced in early 2002. I was able to learn the following information from The AES Corporation. The back-up tapes of First Class e-mail to which I referred were created for The AES Corporation by an outside vendor in September 2001. Because the tapes contain e-mail from the obsolete "First Class" e-mail system, it is both time consuming and exceptionally expensive to restore the information on them and process them for production. Specifically, it would take one to two months just to load the tapes onto a computer server that could process them, at a cost of approximately $5,000 to $10,000. Only after that work is complete could we determine what the date ranges are of the e-mails on the tapes and for which users the tapes contain data. It would then take several days to a week per individual user to convert the e-mail boxes into a usable format, thus restoring several e-mail boxes would take several weeks. The cost for doing so for even half-a-dozen users is expected to be in the range of $75,000 to $200,000.

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 2

As you know, in its April 27, 2005 response to ALSTOM's first set of requests for production, AES-PR objected to the production of documents pre-dating November 28, 2002. Because the back-up tapes were created in 2001, it is highly improbable that they would contain anything of significance to this litigation. Moreover, as explained above, given the difficulties in restoring the data from these back-up tapes, the information could not be produced until well after the fact-discovery cut-off, well after the deadline to file dispositive motions in the case, and quite possibly could not be made available until after trial.

Second, your letter to me of Friday afternoon states incorrectly that Mr. McParland "apparently reported to" me that he "will be coming to the United States in March 2006." As I explained in our teleconference, Mr. McParland, a former AES-PR employee, indicated to me that he might be in the United States at some point in March. I have now left Mr. McParland two messages asking for clarification with respect to his plans but have not heard back. I will let you know if he responds to me.

Third, this will confirm that we have agreed to the following deposition dates for ALSTOM witnesses: Mr. Coleman on February 23 in Windsor and William Jarvis on March 2 in Windsor. In light of your request to take two depositions in Puerto Rico during the first full week of March, we request that Mr. Maidenford's deposition proceed in the Cincinnati area on March 6. We have noticed a 30(b)(6) deposition on the FBHE handcuffs for February 24 and you have not yet determined whether that date poses any conflict. As for the depositions ALSTOM will be taking, we can now confirm that Mr. Tomlin can be available for a deposition in Pittsburgh on February 28 and Mr. Dyer can be available for a deposition in Guayama, Puerto Rico on March 10.

Fourth, you requested to continue the Rule 30(b)(6) deposition concerning document collection issues with an employee of The AES Corporation in Arlington, Virginia concerning "the shared servers maintained in Indianapolis and then in Arlington" and "the process of identifying, retrieving, and copying electronic mail for production to ALSTOM, including the cost to do so." While we disagree that Mr. Hernandez did not testify about these issues, and while we seriously doubt the utility of such a deposition, The AES Corporation has agreed to make a witness available for this purpose as it relates to AES-PR documents. We can produce him for a deposition at my office. The witness, of course, will not testify about the review and processing of data by Williams & Connolly LLP, including but not

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 3

limited to the conversion of data to a Concordance format for review and production to ALSTOM.

Fifth, later this week I will provide you with additional information concerning the list of employees and others performing specified job functions. Shortly we will provide you with a privilege log for Mr. Toher's documents that predate the date of his retention as a litigation consultant, as well as our analysis of how to handle the Rothe, Gabrielli, and Hognefelt documents that were among the over 36,000 documents ALSTOM produced over a month late. We are still waiting for the following from ALSTOM: (1) the stipulation you promised weeks ago concerning the document Mr. Vittoria produced the day after Mr. Gabrielli's deposition; (2) the electronic documents for Mr. Bulewich, Mr. Campbell, and Mr. Francis that you agreed to produce in a letter to me dated January 17, 2006; (3) confirmation as to whether ALSTOM is able or unable to locate its commissioning log(s) for September through November 2002, and (4) confirmation as to whether ALSTOM can locate Mr. Maidenford's Daily Commissioning Reports for the missing dates that we identified.

Sincerely,

Daniel D. Williams

# TAB
# 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,                    *

        Plaintiff,                       *

        v.                                *       C.A. No. 04-1282-JJF

ALSTOM POWER INC.,                        *

        Defendant.                       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**AMENDED NOTICE OF**
**DEPOSITION OF CORPORATE DESIGNEE**
**(DOCUMENTS & THINGS)**

Defendant ALSTOM Power, Inc., by undersigned counsel and pursuant to Rule 30(b)(6)

of the Federal Rules of Civil Procedure, hereby gives notice that it will take the deposition upon

oral examination of AES Puerto Rico, L.P. before a notary public or other such person

authorized to administer oaths beginning at 9:30 a.m. on Thursday, January 19, 2006, and

continuing until the deposition is completed, at the Molino Inn Hotel, Avenido Pedro Albizo

Campos KM 2.1 Carr. 54, Guayama, Puerto Rico 00764, or at such other location as the parties

shall agree.  The deposition shall be recorded by stenographic and/or sound means.

**DEFINITIONS**

For purposes of this Notice of Deposition, certain terms are defined below:

1.  "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware

limited partnership, and any current or former officers, directors, employees, agents, contractors,

representatives of or attorneys for AES or AES related entities.

2.  "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

3.  "Electronic data" means everything within the meaning of the term "document" as that term is used under Rule 34 of the Federal Rules of Civil Procedure that either is, or has been, created, received, filed, stored, or maintained in electronic form, including, but not limited to, e-mail messages and attachments, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  Such term includes information or files contained or retained on any electronic device, including hand-held devices, laptop, desktop, network and home computer systems, floppy disks, DVD-ROMs, CD ROMs, zip disk/drives, servers, hard drives, and/or any other computerized storage device, whether or not these files have previously been converted to hard copy format.

4.  "Hard-copy documentation" means everything within the meaning of the term "document" as that term is used under Rule 34 of the Federal Rules of Civil Procedure other than "electronic data", defined above.

5.  The "Project" means the engineering, design, construction, commissioning and operation of a coal-generated power plant for AES Puerto Rico, L.P. in Guayama, Puerto Rico.

## AREAS OF EXAMINATION

The Deponent shall designate such person or persons as are necessary to respond to the areas of examination set forth below.

2

1.      The identity of custodians of hard-copy documentation relevant to the Project or this action maintained by AES and the nature and type of the hard-copy documentation within the custody and control of each such custodian.

2.      The location of AES's hard-copy documentation relevant to the Project or this action maintained by AES and the nature and type of this hard-copy documentation.

3.      All information relating to when and how hard-copy documentation created, received, filed, stored, or maintained by AES relating to the Project or the subject matter of this action has been preserved and/or segregated.

4.      All information relating to retention, preservation or destruction policies maintained by AES applicable to hard-copy documentation that was created, received, filed, stored, or maintained in connection with the Project or the subject matter of this action.

5.      All information relating to efforts undertaken by AES to preserve, and not destroy, hard-copy documentation created, received, filed, stored, or maintained in connection with the Project or the subject matter of this action, including, but not limited to, the date upon which AES commenced such efforts.

6.      All information relating to the manner in which hard-copy documentation created, received, filed, stored, or maintained by AES in connection with the Project has been preserved, collected and prepared for review by AES or its counsel and for production in response to discovery requests by ALSTOM in this action.

7.      Any information regarding the known failure to preserve hard-copy documentation relating to the Project or the subject matter of this action.

8.      The identity of the custodians of computer hardware, including laptop and desktop computers, servers and networks, computer software and electronic data relevant to the Project or

3

this action maintained by AES and the nature and type of the electronic data within the custody and control of each such custodian of electronic data.

9.     The nature and location of all computer hardware, including laptop and desktop computers, servers and networks, and software utilized by AES for the purpose of creating, receiving, filing storing, or maintaining electronic data that is relevant to the Project or this action.

10.     The hardware, including laptop and desktop computers, servers and networks, and software programs utilized by AES to create, maintain, and store e-mail messages and related attachments, including the means by which e-mail messages were backed up and preserved and the cost of retrieving those e-mails.

11.     The hardware, including laptop and desktop computers, servers and networks, and software programs utilized by employees and agents of AES to create and maintain electronic data other than e-mail messages and related attachments, including the means by which such electronic data was backed up and preserved and the cost of retrieving that data.

12.     All information relating to when and how electronic data created, received, filed, stored, or maintained by AES relating to the Project or the subject matter of this action has been preserved and/or segregated.

13.     All information relating to retention, preservation or destruction policies maintained by AES applicable to electronic data that was created, received, filed, stored, or maintained in connection with the Project or the subject matter of this action.

14.     All information relating to efforts undertaken by AES to preserve, and not delete or destroy, electronic data created, received, filed, stored, or maintained in connection with the Project or the subject matter of this action, including, but not limited to, the date upon which AES commenced such efforts.

4

15.    All information relating to the manner in which electronic data created, received, filed, stored, or maintained by AES in connection with the Project has been preserved, collected and prepared for review by AES or its counsel and for production in response to discovery requests by ALSTOM in this action.

16.    The location of any back-up tapes of computer data, and the cost of retrieving data from those back-up tapes.

17.    Any information regarding the known failure to preserve electronic data or documentation relating to the Project or the subject matter of this action.

18.    The identity, nature, and location of AES's books of account and accounting records, contracts, purchase orders, invoices, and other documents, whether in hard-copy or electronic form, relating to its claimed damages in this matter.

19.    The location of any pieces of the collector plates removed from the ESP any time after the discovery of corrosion in November, 2003.


ALSTOM POWER INC.


James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER, P.C.
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:    (410) 547-0699

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 29th day of December 2005, a copy of the foregoing

Amended Notice of Deposition of Corporate Designee (Documents & Things) was served via

facsimile and first-class mail on:

John S. Spadaro, Esquire                    Dane H. Butswinkas, Esquire
Murphy Spadaro & Landon                    R. Hackney Wiegmann, Esquire
1011 Centre Road, Suite 210                Mary Beth Long, Esquire
Wilmington, Delaware 19805                 Daniel D. Williams, Esquire
                                           Williams & Connolly LLP
                                           725 Twelfth Street, N.W.
                                           Washington, D.C. 20005


_____
Anthony F. Vittoria

6

# TAB
# 23

**Vittoria, Anthony**

| | |
|---|---|
| **From:** | Vittoria, Anthony |
| **Sent:** | Friday, May 13, 2005 9:36 AM |
| **To:** | Williams, Daniel |
| **Cc:** | 'Boatman, Jeb'; Schollaert, Michael; Edwards, James |
| **Subject:** | AES v. ALSTOM |

Dan,

We wholeheartedly agree with the notion expressed in your recent letter that we should be addressing the electronic discovery issue in a cooperative and collegial manner. That is exactly what we are attempting to do. In that regard, set forth below are the metadata fields that we propose be included in any electronic document exchange. This metadata will make the electronic documents fully searchable. That is, you would be able to conduct computer searches for specific authors, recipients and date ranges. You would also be able to conduct key words searches in the text of the e-mails. Such search capability is simply impossible with TIF or PDF image files. The ability to conduct searches on the metadata would enable both sides to utilize the information and documentation far more efficiently -- and far more quickly -- than if PDF or TIF only files are produced. Indeed, considering the amount of electronic documentation that is ultimately going to be produced, the only realistic way either side will be able to review and analyze the produced documentation prior to the mediation would be if the metadata were included.

There are other drawbacks to TIF and PDF image files, including the fact that the image only files contain only a portion of the information that is associated with each particular electronic document, and the fact that attachments (such as spreadsheets) do not translate well to image files. Indeed, it is our belief that if we started producing TIF or PDF image only files now, we will simply have to go back and produce the metadata at a later date. This would be a waste of both of our clients' time and resources.

That being said, here are the metadata fields that we propose should be exchanged:

1. Folder
2. File Size
3. Email Subject
4. From
5. To
6. CC
7. BCC
8. Date Sent
9. Time Sent
10. Date Received
11. Time Received
12. Attachment
13. Filename
14. Pages
15. Document Extension
16. Source
17. OCR Text

In addition, we propose that the following metadata fields be produced for the attachments:

1. Subject
2. Author
3. Keywords
4. Comments
5. Date Created
6. Last Modified

We have a test sample we are ready to produce to you immediately. If AES is ready to produce its sample, it is simply most logical to do so, talk next week about the metadata, and then start producing electronic documents with all of the metadata, rather than simply the TIF or PDF files.

We will call later this morning to discuss these issues.

1

Thanks,
Tony

**Anthony F. Vittoria**
410-347-7692
afvittoria@ober.com

O B E R | K A L E R
*Attorneys at Law*
www.ober.com
443-263-4192 -- Fax
120 East Baltimore Street
Baltimore, Maryland 21202

# TAB
# 24

LAW OFFICES
## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 3, 2005

**VIA E-MAIL AND FIRST CLASS MAIL**

Anthony F. Vittoria, Esquire
Ober Kaler Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

            Re:    **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Tony:

        In light of Magistrate Judge Thynge's suggestion that we proceed expeditiously with discovery in this case, I write to inform you that AES Puerto Rico, L.P. is ready to begin immediately a rolling production of its electronic documents, together with the metadata in the format that ALSTOM requested.

        I understand from our earlier correspondence on this issue that ALSTOM has been reviewing its electronic documents for some time now. Please let me know when you would like to begin the exchange.

        I look forward to hearing from you soon.

                                Sincerely,

                                Daniel D. Williams