# TAB 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,        *

      Plaintiff,       *

    v.          *    C.A. No. 03-544-JJF

ALSTOM POWER, INC.,      *

      Defendant,     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ALSTOM POWER, INC.'S
### SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

TO:    AES Puerto Rico, L.P.
       c/o John S. Spadaro, Esquire
       Murphy Spadaro & Landon
       824 Market Street, Suite 700
       Wilmington, DE 19801

Pursuant to Fed. R. Civ. P. 34, Defendant, ALSTOM Power, Inc. ("ALSTOM") hereby

serves its Second Request for Production of Documents to Plaintiff, AES Puerto Rico, L.P.

("AES"). AES shall file a written response within 30 days of service of this Request.

## DEFINITIONS

1. "Document" shall mean any written or graphic matter or other means of preserving

thought or expression, and all tangible things from which information can be processed or

transcribed, including, but not limited to correspondence, messages, contracts, checks,

memoranda or notes of telephone or other oral conversations, studies, surveys, charts, reports,

minutes, notes, diaries, logs, schedules, cancelled checks, graphs, invoices, bills, computer

reports, photographs, videotapes, releases, newspaper or magazine articles, books, financial

statements, ledgers, transcripts, affidavits, tapes, tape recordings, phonograph recordings, e-

mails, electronic files, electronically stored data, whether originals, copies, or drafts, however produced or reproduced. If any of the data or information requested below is stored in such a way as to be retrieved by computer, then in respect to such data or information, the term "document" shall also include the physical medium in which such data or information is stored, or a copy thereof, together with a copy of the software which will enable the data or information to be retrieved and reviewed.

2. "Electronic data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and

labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3.  The term "computer" shall be construed in its broadest possible sense and includes, but is not limited to, any means of storing or processing magnetic, graphic, photographic or other descriptive materials or any retrievable data or information including without limitation computers, word processors, personal computers, network terminals, hard-drives, computer network systems, mainframes, or other means of creating or storing information in magnetic form under the custody, possession or control of AES, its past and present officers, directors, partners, agents, predecessors, successors, affiliates, representatives, employees, attorneys, and any other person or entity employed by or acting on behalf of AES.

4.  "Person" means any natural person, corporation, partnership or other private organization or governmental or legal entity.

5.  "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

6.  "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

7.  "Betz" refers collectively to Betz-Dearborn – A Division of Hercules Incorporated, GE Betz, Inc. and GE Global New Construction, Inc.

8.  "Plant" means the 454-megawatt, co-generation, coal-fired facility, in its entirety, located in Guayama, Puerto Rico.

3

9. "Project" means the design, construction and commissioning of the Plant and includes any negotiations or contracting relating to the design, construction and commissioning of the Plant.

10. "Personal file" means all documents and electronic data created, received or otherwise obtained in the regular course of AES's business by an officer, employee or agent of AES that is maintained or stored by that particular officer, employee or agent at his or her home or in the office(s), cubicle(s), desk(s), file drawer(s), bookshelves or computers assigned to him or her by AES or in any other location that is readily accessible to that officer, employee or agent.

## REQUEST FOR DOCUMENTS – INSTRUCTIONS

1. This request for production of documents is continuing in nature, so AES shall supplement its response to this request for production of documents in accordance with Rule 34 of the Federal Rules of Civil Procedure.

2. This request includes the production of all non-identical copies of requested documents, including drafts and copies upon which notes or comments have been made.

3. If any document responsive to this request is not produced due to a claim of privilege to a part or parts of the document (including a claim that all or a portion of the document constitutes work product), describe each such document and the factual basis for the claim of privilege. Documents shall be deemed to have been adequately listed and described for the purpose of this instruction when the following information has been provided:

    a. The place, approximate date and manner of preparation of the document;

    b. The basis on which the privilege is claimed;

    c. The name of each person who participated in the preparation of the document;

4

d. The name and corporate position, if any, of each person other than attorneys representing you to whom the content of the document has been communicated in the past whether by copy, exhibition, reading or substantial summarization;

e. The nature of the document and a brief description of its subject matter; and

f. Each addressee, recipient or possessor of the document.

5.    To the extent that any request is objected to on grounds other than privilege, set forth the factual and legal basis for the objection.  If you object in part to any request, produce all documents responsive to the remainder of that request and set forth the factual and legal basis for the portion of the request to which you object.

6.    Documents required to be produced are not limited to "paper" documents, but also include electronic data and electronic media and all forms of documents listed in the documents definition above.

7.    In seeking information to respond to this document production request, you are required to examine all possible forms of storing textual, verbal or numerical information, and your examination may not be limited to paper or other forms of "hard copy" records.  In searching for non-paper sources of information, you are required to search all computer or other electronic or optical forms of information storing formats, including:

a.    so-called floppy disks;

b.    removable drive media, of all kinds;

c.    hard drives used by individuals;

d.    hard drives shared by multiple users;

e.    storage media used by network systems;

5

f.   storage media not maintained on-line, including but not limited to backup tapes or similar archival storage media, wherever and by whomever stored or retained;

g.   file servers;

h.   optical media, including "write-once-read-many" ("WORM") media or other optical formats, including rewritable optical formats;

i.   portable computers, included but not limited to, "notebook" computers, "laptop" computers, or other similar portable devices;

j.   palmtop, pocket size or similar portable information devices on which information is stored in digital form;

k.   systems that preserve "voice mail" or similar messages in analog or digital form; and

l.   all systems, whether included in (a)-(k) above, that preserve electronic mail or similar messages in any form, including, but not limited to, systems on the desktop of electronic mail users, systems on servers, and systems that are "offline" methods of preservation of such messages, whether tape, optical or otherwise.

8.   The documents and things requested shall be produced at the office of AES, or such other location(s) as agreed to by the parties.

9.   If it is your contention that documents responsive to the following requests have already been produced, identify those documents by Bates number in your Response.

## REQUESTS FOR DOCUMENTS

**REQUEST NO. 77:** All documents comprising, evidencing, referring to or relating to any and all communications, transmissions (written or oral), reports, or other tests or evaluations performed by Betz concerning or in connection with the Plant or the Project, including, but not limited to the following:

a.   The Water Management Report (revs. 0-7);

b.   The Project Services Agreement;

6

c.    The contract referred to in the first paragraph of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

d.    Any and all documents exchanged between AES and Betz relating to the "review cycle" referred to in the first paragraph of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

e.    Any and all documents related to the joint commissioning of the "Water Treatment Modification" referred to in the third to last bullet point of the document Bates numbered AESPR 006868, a copy of which is attached hereto at Tab 1;

f.    Any and all documents relating to the "[e]quipment estimates received from GE-Betz and DFD" referred to in the second bullet point of the document Bates numbered AESPR 006869, a copy of which is attached hereto at Tab 1;

g.    Any and all other documents relating to water sampling, make-up source evaluations, water balance conceptual designs, water chemistry modeling and characterization, chemical treatment program development, cooling system operations and maintenance ("O&M") costs, chemicals and additives used in the plant water system, and spreadsheets listing all commodities and chemicals used in the plant water system including concentrations, expected annual usage and actual annual cost.

**REQUEST NO. 78:** All documents evidencing referring to or relating to the use of limestone and lime at the Plant, for the time period of December 1, 2002 to the present, including, but not limited to, the following:

a.    Any and all documents evidencing or comprising the measurement and calculation of lime consumption, as referred to in the first bullet point of the document Bates numbered AESPR 006865, a copy of which is attached hereto at Tab 1;

b.    Any and all documents evidencing or comprising the measurement and calculation of the "annual cost of $3M for additional lime usage", as referred to in the third bullet point of the document Bates numbered AESPR 006869, a copy of which is attached hereto at Tab 1;

c.    Any and all other documents relating to the amount of limestone or lime used at the Plant, or the cost of the limestone or lime;

d.    Any and all documents relating to the chemical composition of the limestone or lime.

**REQUEST NO. 79:** Any and all documents relating to the mapping of the corrosion by AES, as called for in paragraph 1.6 of Part III – General Terms of the Purchase Order between ALSTOM and Duke/Fluor Daniel Caribbean S.E.

**REQUEST NO. 80:** Any and all documents, whether in hard-copy or electronic form, comprising the operating data from the Distributed Control System ("DCS"), for the time period of December 1, 2002 to the present, for the following instruments/parameters/tag numbers:

| Parameter | Tag Nos. | Reference |
|---|---|---|
| Temperature | TIR-101 | D900 Sheet 3 Rev. 4 |
| Weigh Belt Feeder | FDR-812 | EEC O&M Vol. 1, page 6-4 |
| Amount of hydrated lime set point | AIC-931 | EEC O&M Vol. 1, page 6-4 |
| Lime feed control | AIC-819 | EEC O&M Vol. 1, page 6-4 |
| Weigh belt hydrated lime usage rate | WIR-817 | EEC O&M Vol. 1, page 6-5 |
| Pressure switch | PISLH-611 | EEC O&M Vol. 1, page 6-6 |
| Differential Air Pressure Switch | PDSH-600A/B | EEC O&M Vol. 1, page 6-6 |
| Temperature Transmitter | TIC-606 | EEC O&M Vol. 1, page 6-7 |
| Pressure switch | PISLH-702 | EEC O&M Vol. 1, page 6-9 |
| Temperature Transmitter | TIC-703 | EEC O&M Vol. 1, page 6-9 |
| Differential Pressure Controller | PDIC-105 | EEC O&M Vol. 1, page 6-12 |
| Valve Position Controllers | ZIC-442, 481, 522, 562 | EEC O&M Vol. 1, page 6-12 |
| Gas Temperature | TI-106A, 106B, 106C | D900 Sheet 3 Rev. 4 |
| Low Level Switch | LSL-40/445/485/525 | EEC O&M Vol. 1, page 6-15 |
| Low-Low Level Switch | LSL-403/447/487/524 | EEC O&M Vol. 1, page 6-15 |
| CDS Temperature Control Valve | TV-106 | EEC O&M Vol. 1, page 6-17 |
| Pump Discharge Pressure | PT-200A or 200B | EEC O&M Vol. 1, page 6-17 |
| Stack Opacity Signal | FCA-001 | EEC O&M Vol. 1, page 6-21 |
| Boiler Load | FCA-002 | EEC O&M Vol. 1, page 6-21 |
| Precipitator system On/Off | FCHS-001R | EEC O&M Vol. 1, page 6-21 |
| Temperature Controller | TIC-302 | D900 Sheet 5 Rev. 4 |

8

**REQUEST NO. 81:**  The Excel spreadsheets that were originally attached to an e-mail from WeiLi Yu dated January 30, 2004, a copy of which is attached hereto at Tab 2 and is Bates number HOGN-EMAIL-000118.

**REQUEST NO. 82:**  Any and all documents comprising the recordation (or "logging") of the readings of the thermocouples referred to in an e-mail from WeiLi Yu dated January 23, 2004, a copy of which is attached hereto at Tab 3 and is Bates number AESPR-029125.

**REQUEST NO. 83:**  The Excel spreadsheet that was originally attached to an e-mail from Paul Stinson dated October 8, 2003, a copy of which is attached hereto at Tab 4 and is Bates number WARD-EMAIL-020678.

**REQUEST NO. 84:**  Any and all documents relating to or comprising the "moisture testing" and/or "moisture measuring" as referred to in an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198, including, but not limited to, the Precipitator Hopper Ash Moisture Content spreadsheet, as referred to in e-mails from David Stone dated January 16 and 20, 2004, copies of which are attached at Tab 6, and are Bates numbered AESPR-028523 and AESPR-028626, respectively.

**REQUEST NO. 85:**  Any and all documents comprising the recordation (or "logging") of the pressure of the CDS nozzles, as referred to in an e-mail from Csaba Little dated February 12, 2004, a copy of which is attached hereto at Tab 7 and is Bates number AESPR-028272.

**REQUEST NO. 86:**  Any and all documents relating to the CDS spray nozzles, for the time period December 1, 2002 through the present, including, but not limited to:

9

a. Any and all documents relating to the operating hours of each of the CDS nozzles, as referred to an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198;

b. Any and all documents relating to the checking of each of the nozzles spray patterns, as referred to an e-mail from Paul Stinson dated January 21, 2004, a copy of which is attached hereto at Tab 5 and is Bates number AESPR-028198;

c. Any and all documents comprising, currently or at any time, CDS Nozzle Cleaning Logs, examples of which is shown in the photographs attached hereto at Tab 8;

d. The "parts records" relating to the CDS nozzles, and the CDS nozzle tips and swirlers, as referred to on the second page of an e-mail from Paul Stinson dated January 30, 2004, a copy of which is attached hereto at Tab 2, and is Bates numbered HOGN-EMAIL-000118 to HOGN-EMAIL-000119;

e. Any and all other documents relating to the maintenance, cleaning, replacement, repair, testing, or inspecting of the CDS nozzles from December 1, 2002 until the present.

**REQUEST NO. 87:** Any and all documents relating to the opacity of the plant from December 1, 2002 until the present, including, but not limited to, the "EtaPro opacity data" referred to in a January 2, 2004 e-mail from Paul Stinson, a copy of which is attached hereto as Tab 9 and is Bates numbered AESPR-029020.

**REQUEST NO. 88:** Any and all documents relating to "the CDS spray-water quality data", as referred to in a January 2, 2004 e-mail from Paul Stinson, a copy of which is attached hereto as Tab 9 and is Bates numbered AESPR-029020, from December 1, 2002 until the present.

**REQUEST NO. 89:** Any and all documents relating to the measurement of the CDS/ESP flue gas wet bulb temperature, from December 1, 2002 until the present, as referred to on page 7-14 of EEC O&M Manual Volume 1, a copy of which is attached hereto at Tab 10 and is Bates numbered EEC-06067.

**REQUEST NO. 90:**  Any and all documents relating to the measurement of the CDS/ESP flue gas dew point temperature from December 1, 2002 until the present.

**REQUEST NO. 91:**  Any and all CDS/ESP start-up logs.

**REQUEST NO. 92:**  Any and all documents relating to the measurement of the level of oxygen ($O_2$) at the air-heater outlet and at the stack.

**REQUEST NO. 93:**  Any and all documents relating to the electrical readings of the ESP T/R sets.

**REQUEST NO. 94:**  All documents evidencing, referring, relating or constituting the basis for AES's damages estimates as set forth in AES's responses to ALSTOM's Interrogatory No. 10.

**REQUEST NO. 95:**  All documents created or that will be created evidencing, referring or relating to the AES's inspection, maintenance, cleaning, testing or repairs of the Unit 1 CDS and/or ESP for the shutdown in October of 2005.

**REQUEST NO. 96:**  All documents evidencing, referring or relating to any change or modification made to the operational guidelines set forth in Vol. 1 of EEC's Operation and Maintenance Manual by ALSTOM or EEC.

11

**REQUEST NO. 97:**  The Plant Operations Manual referred to in a November 24, 2003 letter from Allan B. Dyer to Mr. William Jarvis, a copy of which is attached hereto at Tab 11, and is Bates numbered W-005-01676.

**REQUEST NO. 98:**  All documents evidencing, referring or relating to attempts to achieve Plant opacity at any level below 10%.

**REQUEST NO. 99:**  All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and ENSR International concerning or in connection with the Plant or the Project.

**REQUEST NO. 100:**  All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and Steven A. Benson, President of Microbeam Technologies, Inc. or AES and Microbeam Technologies, Inc. concerning or in connection with the Plant or the Project.

**REQUEST NO. 101:**  All documents comprising, evidencing, referring to or relating to any and all communications and transmissions (written or oral) between AES and Stone & Webster, Inc. concerning or in connection with the Plant or the Project.

**REQUEST NO. 102:**  All books of account and accounting records, whether in hard-copy or electronic form, relating to AES's claimed damages in this matter.

**REQUEST NO. 103:**  All videotapes regarding the construction, operation, or maintenance of the CDS or ESP, including, but not limited to, the tapes entitled "CDS Scrubber And Electrostatic Precipitator", "CDS Scrubber – An Introduction of Precipitator &

Components", "Base Theory of Operation", "Precipitator & Components: An Introduction of Start Up & Shut Down of APCS And Components", and all continuations of those tapes, which are located in the Control Room of the Plant and are depicted in the photograph attached hereto at Tab 12.

**REQUEST NO. 104:**  All documents comprising, evidencing, referring to or relating to alternatives, options, and avenues discussed or pursued by AES concerning its obligation to achieve zero discharge compliance.

**REQUEST NO. 105:**  All documents comprising, evidencing, referring to or relating to AES's modification or planned modification of the Plant to inject make-up water into the boiler.

**REQUEST NO. 106:**  All documents comprising, evidencing, referring to or relating to CEMS from December 1, 2002 until the present.

**REQUEST NO. 107:**  All documents comprising, evidencing, referring to or relating to control room alarm logs from December 1, 2002 until the present.

**REQUEST NO. 108:** All documents comprising, evidencing, referring to or relating to AES's measurement, calculation, or recording of the CDS and/or ESP dew point for water, hydrochloric acid, or sulfuric acid.

**REQUEST NO. 109:**  All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Unit #2 Boiler & Auxiliaries" and "Unit #2 Daily Readings & Checklist", as depicted in photograph B of Tab 8.

13

**REQUEST NO. 110:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Standard Operating Procedure" and "Site Air Emission Units Construction Permits – Amendment", as depicted in the photograph attached at Tab 13.

**REQUEST NO. 111:** All documents that are currently, or have ever been contained in the Plant Control Room binder entitled "Control Room Reference Operating Instructions and Notes", as depicted in the photograph attached at Tab 14.

**REQUEST NO. 112:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Water Samples Log Book", an example of which is depicted in the photograph attached to Tab 15.

**REQUEST NO. 113:** All documents that are currently, or have ever been contained in the Plant Control Room binders entitled "Boiler Daily Notes", "Unit 1 Daily Readings & Checklist" and "PREPA & AES", as depicted in the photograph attached at Tab 16.

**REQUEST NO. 114:** The personal file of AES's Al Dyer relating to the Plant and/or the Project.

**REQUEST NO. 115:** The personal file of AES's Ron McParland relating to the Plant and/or the Project.

**REQUEST NO. 116:** The personal file of AES's Paul Stinson relating to the Plant and/or the Project.

**REQUEST NO. 117:** The personal file of AES's Elias Sostre relating to the Plant and/or the Project.

14

**REQUEST NO. 118:** The personal file of AES's Csaba (Little) Kiss relating to the Plant and/or the Project.

**REQUEST NO. 119:** The personal file of AES's Tracy Jarvis relating to the Plant and/or the Project.

**REQUEST NO. 120:** The personal file of AES's David Stone relating to the Plant and/or the Project.

**REQUEST NO. 121:** The personal file of AES's WeiLi Yu relating to the Plant and/or the Project.

**REQUEST NO. 122:** The personal file of AES's Stewart J. Ferguson relating to the Plant and/or the Project.

**REQUEST NO. 123:** The personal file of AES's Calvin Kotrla relating to the Plant and/or the Project.

**REQUEST NO. 124:** The personal file of AES's Ernest Pagaduan relating to the Plant and/or the Project.

**REQUEST NO. 125:** The personal file of AES's Harry Bonilla relating to the Plant and/or the Project.

**REQUEST NO. 126:** The personal file of AES's Rod Jorgensen relating to the Plant and/or the Project.

15

**REQUEST NO. 127:** The personal file of AES's Gary Bates relating to the Plant and/or the Project.

**REQUEST NO. 128:** The personal file of AES's Radames Rodriguez relating to the Plant and/or the Project.

ALSTOM POWER INC.

James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER, P.C.
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone: (410) 685-1120
Fax:    (410) 547-0699

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 25th day of October, 2005, a copy of the foregoing

Second Request For Production Of Documents was served, via first-class mail and facsimile, on:

John S. Spadaro, Esquire
Murphy Spadaro & Landon
824 Market Street, Suite 700
Wilmington, Delaware  19801

Dane H. Butswinkas, Esquire
R. Hackney Wiegmann, Esquire
Mary Beth Long, Esquire
Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005

Anthony F. Vittoria

774189

17

# TAB 10

**FILE COPY**

# OBER | KALER
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Anthony F. Vittoria
afvittoria@ober.com
410-347-7692

**Offices In**
Maryland
Washington, D.C.
Virginia

September 1, 2005

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005

Re:     *AES Puerto Rico, LP v. ALSTOM Power Inc.*
        Civil Action No. 04-1282-JJF

Dear Dan:

I am writing regarding AES's woefully deficient and defective electronic document production in this matter. Despite a series of conversations and correspondence – including the exchange of sample productions – AES has failed to produce what was agreed upon by the parties. Indeed, aspects of AES's initial electronic document production raise questions regarding the loss or destruction of relevant information and evidence.

A.     The Deficiencies In AES's Electronic Document Production

AES produced a total of 544 separate electronic documents, which comprised a total of 622 megabytes (.6 gigabytes) of memory. In contrast, ALSTOM simultaneously produced to AES 37,519 separate electronic documents, which comprised a total of 3.7 gigabytes – approximately six times the amount of information provided by AES.

Of the 544 separate documents, AES produced only 136 electronic e-mail documents. Of those 136 e-mails, 28 electronic e-mail documents had been produced in such a manner that some, or most, of the metadata that should have accompanied those electronic documents was lost or destroyed. Specifically, there were 18 electronic e-mail documents (Bates numbers AESPR-028499 to AESPR-020519) that were produced in PDF format. Apparently, all but one of those e-mails required some sort of redaction.[1]

To accomplish this "redaction", it appears that AES first converted those electronic documents to hard-copy form by printing them and then redacted certain portions of the newly created hard-copy documents. Following the redaction, AES converted the hard-copy documents into PDF files and included them in its production of electronic documents. In this process, however, AES lost or destroyed much of the crucial metadata that originally

---

[1] In addition, AES failed to provide a basis for the redaction of a portion of these electronic e-mail documents.

OBER|KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 2

accompanied the non-redacted electronic documents, including (1) the subject of the e-mail, (2) from whom the e-mail was sent, (3) to whom the e-mail was sent, (4) to whom the e-mail was carbon-copied (e.g. the "CC" information), (5) the date the e-mail was sent, (6) the time the e-mail was sent, (7) the date the e-mail was received, (8) the time the e-mail was received and (9) the author of the e-mail. Most importantly, however, the metadata for these 18 e-mails contained no optical character recognition ("OCR") data, thereby rendering essentially useless the production of these 18 e-mails in "electronic" format.[2]

In addition to the 18 "redacted" e-mails, there were 10 other electronic e-mail documents that were produced in some format other than the MS-Outlook format in which the other 108 electronic e-mail documents had been produced.[3] For some reason, AES failed to produce all of the required metadata for these e-mails, as well. Specifically, all 10 of these e-mails were missing the following metadata: (1) from whom the e-mail was sent, (2) to whom the e-mail was sent, (3) to whom the e-mail was carbon-copied (e.g. the "CC" information), (4) the date the e-mail was sent, (5) the time the e-mail was sent, (6) the date the e-mail was received, (7) the time the e-mail was received and (8) the author of the e-mail. In addition, only 1 of those 10 e-mails (Bates number AESPR-028520 to AESPR-029521) had the "e-mail subject" metadata. A list containing the Bates numbers for the subject e-mails is attached hereto.

Another problem with AES's initial electronic document production is that it produced electronic e-mail documents for a very limited period of time. Specifically, the e-mails contained in AES's first electronic document production date from September 16, 2003 through May 12, 2005. ALSTOM has repeatedly explained to AES that there is a great deal of information and documentation – whether in hard-copy or electronic format – dating prior to the fall of 2003 that is relevant and material to the issues in this case.

Incredibly, AES also failed to produce a single e-mail that was sent by or to someone at D/FD, AES's primary contact on the Project. It is simply not credible that there was not a single e-mail exchanged between the twelve AES individuals whose e-mails were allegedly produced and anyone at D/FD – the entity to whom AES paid over $400M – relating to the ESP, CDS or FBHE handcuff equipment during the entire seven years in which D/FD was involved with this Project.

Finally, AES represented that it produced e-mails from 12 separate individuals, including Al Dyer, AES's Project Manager. Unbelievably, however, AES produced only 44 e-mails that were either received (either directly or by "CC") or sent by Mr. Dyer. AES's production would suggest that AES's Project Manager sent or received only about 2 e-mails a month (for the 20 month period provided by AES) relating to the two issues about which AES is now claiming

---

[2] Another document, Bates numbered AESPR-029085 through AESPR-029096, was produced in PDF format resulting in the loss or destruction of all of the same metadata that had been lost or destroyed for the 18 "redacted" e-mails.

[3] Those 10 e-mails had document extensions of either OFT, HTM or TXT.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 3

over $14 million in damages. Contradicting that, however, is AES's own hard-copy document production which shows that Mr. Dyer received more "responsive" e-mails during this period than were produced in electronic form. Specifically, there were several e-mails that AES produced in hard-copy format that it did not produce in electronic format, including at least 5 e-mails received by Mr. Dyer during the 20 month period produced by AES.[4] Moreover, ALSTOM has in its database a total of 117 e-mails that were sent either by or to Mr. Dyer – and ALSTOM's database does not include any e-mails exchanged solely between AES and D/FD, AES's primary contact on the Project.

Likewise, it is apparent that AES has failed to produce a significant number of e-mails sent either to or by all of the other people whose e-mails were allegedly produced, including Paul Stinson, an engineer who was intimately involved with the corrosion issue, Elias Sostre, AES's Operation Team Leader/Control Room Supervisor, Weili Yu, AES's E&I Maintenance Team Leader, and Ron McParland, AES's Project Engineering Manager. ALSTOM has in its database 98 e-mails that were sent either by or to Paul Stinson. AES, however, only produced a total of 76 e-mails that were sent by or to Paul Stinson. ALSTOM has 93 e-mails that were sent by or to Elias Sostre. In stark contrast, AES produced only 21 e-mails sent by or to Mr. Sostre. ALSTOM has a total of 48 e-mails that were sent by or to WeiLi Yu in its database; AES, on the other hand, produced only 15. Finally, ALSTOM has a total of 451 e-mails that were sent by or to Ron McParland; incredibly, AES produced only 14.

The facts that (1) AES failed to produce any e-mails to or from D/FD, its primary contact on this project, (2) AES failed to produce e-mails in electronic format that it had already produced in hard-copy format, and (3) ALSTOM is in possession of hundreds of AES e-mails in its own limited electronic document database that were not produced by AES establishes that AES has failed to produce even a semblance of the responsive electronic e-mail documents in its possession, custody or control.

B.    The Defects In AES's Electronic Document Production

Despite the exchange and review of electronic document production samples, AES failed to provide some of the metadata that it agreed to produce. Specifically, AES failed to produce any of the "Custodian" metadata information. This data indicates from whose computer/file/directory the subject electronic document was retrieved. Accordingly, while AES has represented that it produced electronic documents from 12 different individuals, ALSTOM has no way of confirming that representation. In addition, ALSTOM has no way of determining from whose custody a specific electronic document was retrieved. This information is critical for a myriad of reasons, including authentication issues.

In addition, AES failed to provide the relative file path information in the "NativeFile" metadata field that automatically links the user to the subject document in its native file format.

---

[4] The Bates numbers of those five e-mails are (1) AESPR 004147, (2) AESPR 025862, (3) AESPR 025858, (4) AESPR 025854 and (5) AESPR 025743.

OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 1, 2005
Page 4

AES provided this information/link (highlighted in yellow) in its sample, but failed to do so in this initial electronic document production. As a result, ALSTOM is essentially unable to move between the metadata of the subject document and the document in its native format.

Likewise, AES failed to produce any "BCC" metadata for any of the electronic documents that it produced.

There were also some apparently inadvertent defects in AES's production. First, there were 15 electronic documents that should have had data in the "ParentID" metadata field, but did not. A list containing the Bates numbers of those documents is attached hereto. In addition, there were no TIF or PDF images associated with the metadata for the document or documents at Bates numbers AESPR-029160 through AESPR-029171. Finally, the images associated with the electronic documents with "GIF" extensions were completely undecipherable. A list containing the Bates numbers of those documents is attached hereto.

Because AES has (1) failed to produce highly relevant and responsive electronic documents, (2) may have lost or destroyed certain relevant and material information, and (3) failed to produce certain metadata agreed to by the parties, it is imperative that AES immediately supplement its electronic document production and cure the defects in its first production.

I look forward to hearing from you in the near future regarding these matters.

Sincerely,

Anthony F. Vittoria

Attachment
cc:    James E. Edwards, Jr., Esquire
       Michael A. Schollaert, Esquire

AFV
772096

## Bates Numbers of Defective AES Electronic Documents

### Defective "Redacted" E-Mails With Missing Metadata

AESPR-028499 to AESPR-020519

### Defective OFT, HTM Or TXT E-Mails With Missing Metadata

AESPR-028436 to AESPR-028438
AESPR-028520 to AESPR-028521
AESPR-028522
AESPR-028551
AESPR-028590 to AESPR-028591
AESPR-028623 to AESPR-028625
AESPR-029020
AESPR-029053 to AESPR-029054
AESPR-029055 to AESPR-029056
AESPR-029098.

### Electronic Document Attachments Missing "ParentID" Metadata

AESPR-028480 to AESPR-028486
AESPR-028531 to AESPR-028535
AESPR-028536 to AESPR-028540
AESPR-028541 to AESPR-028544
AESPR-028546 to AESPR-028547
AESPR-028583 to AESPR-028585
AESPR-028627 to AESPR-028628
AESPR-029044 to AESPR-029045
AESPR-029063
AESPR-029064
AESPR-029065
AESPR-029072 to AESPR-029077
AESPR-029098
AESPR-029111 to AESPR-029113
AESPR-029136 to AESPR-029152

### Undecipherable "GIF" Electronic Documents

AESPR-028274
AESPR-028296
AESPR-028361
AESPR-028365

AFV
772073

# TAB 11

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 9, 2005

## VIA E-MAIL AND FIRST CLASS MAIL

Anthony F. Vittoria, Esquire
Ober Kaler Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

Re:     **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Tony:

Your September 1, 2005 letter incorrectly characterizes AES-PR's partial electronic document production to date as "deficient and defective" and unjustifiably accuses AES-PR of document destruction. Your letter rests its charge of document destruction on faulty assumptions that have no connection whatsoever to reality. To the extent that you make these charges for purposes of attempting to generate a discovery dispute, such conduct is highly inappropriate.

Below I attempt to respond to the specific issues you raise in your letter while putting to the side your unwarranted and gratuitous characterizations of our document production.

1.     Your letter complains that Alstom's initial electronic document production was larger than AES-PR's, it cites specifically the number of e-mails produced from various individuals, and it complains about the date range for the documents produced to date. As you know, both sides are engaged in a rolling production of documents, and you can expect to receive additional electronic documents from AES-PR. Indeed, Alstom itself has a huge quantity of e-mails that it has yet to produce in this litigation and we are waiting patiently for you to complete your review of them. With respect to the total number of documents

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
September 9, 2005
Page 2

produced, if Alstom ultimately produces more electronic documents than AES-PR, that will reflect the fact that Alstom has more such documents.

2.    Your letter claims that, for "28 electronic e-mail documents, . . . some, or most, of the metadata that should have accompanied those electronic documents was lost or destroyed." Consistent with the Court's Default Standard for Discovery of Electronic Documents, we have retained these documents in their native format. Accordingly, the metadata has been neither lost nor destroyed.

3.    Your letter claims that documents redacted and produced in PDF format do not include necessary metadata, "most importantly, . . . , optical character recognition ('OCR') data, thereby rendering [them] essentially useless." The assertion that a PDF document that cannot be searched by a computer using OCR technology is essentially useless blinks reality – such documents need only be read by a human being to be put to use. OCR data is not metadata that need be produced under the Court's Default Standard – it is simply an identical copy of the text on the face of the document that is in a computer-searchable format. Should Alstom need to make these fully legible documents computer searchable through OCR technology, it could have the PDF files scanned, thereby generating the OCR data itself. If you require actual metadata for the small group of documents on which there are redactions, please let me know which metadata fields you need.

4.    Your letter claims that AES-PR failed to produce "Custodian" metadata. The "Custodian" metadata field is generated only when certain document formats are used. My understanding is that, because the documents AES-PR has produced were not stored in a format for which this metadata field was used, such data was never created, and thus has never existed. As you know, we are under no obligation to create new metadata in response to your document requests.

5.    Your letter complains about the absence of "NativeFile" hyperlinks to link documents automatically to the native-file format of the document. As you know, we have agreed that, with specified exceptions, the parties are not exchanging native-file format documents. For documents being produced as TIF images, there would be no occasion to have such a hyperlink. Moreover, we have no agreement to provide hyperlinks between documents, and the Court's Default Standard does not require them. It is sufficient that we have produced document

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
September 9, 2005
Page 3

sets (such as an e-mail and its attachment) next to each other. Rather than hyperlink, you need only look to see what document is next in the sequence.

6.    Contrary to the claim in your letter, AES-PR has not omitted any "BCC" metadata that exists in the records it has produced. It is possible that none of the documents produced to date contains any "BCC" recipients.

7.    Your letter complains that various "GIF" files are "completely undecipherable." My understanding is that these files contain the AES-PR logo, and will confirm.

Finally, we currently are reviewing the list of documents attached to your letter to determine if the documents are indeed "defective" or "incomplete" as you claim.

Sincerely,

Daniel D. Williams

# TAB 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 04-1282-JJF |
| ALSTOM POWER, INC., | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**AFFIDAVIT OF MICHAEL A. SCHOLLAERT**

PURSUANT TO the terms and provisions of 28 U.S.C. § 1746(2), the undersigned makes oath in due form of law as follows:

1.    I, MICHAEL A. SCHOLLAERT, am over 18 years of age and am competent to testify as a witness.  I am an attorney at Ober, Kaler, Grimes & Shriver, A Professional Corporation and, as such, represent ALSTOM Power Inc. ("ALSTOM") in the above-captioned lawsuit.

2.    After the discovery dispute hearing on December 7, 2005, ALSTOM and AES Puerto Rico, L.P. ("AES") agreed to hold bi-weekly conference calls in an attempt to informally resolve any discovery disputes between the parties.

3.    During a conference call on December 20, 2005, AES requested ALSTOM to produce electronic mail ("e-mail") exchanged between AES and D/FD Caribbean, S.E. ("D/FD") that was referenced in ALSTOM's motion to compel electronic documents on which the Court heard argument on December 7, 2005.

4.    AES is the owner of a coal-fired power plant in Guayama, Puerto Rico (the "Plant") and D/FD was the prime contractor responsible for the design and construction of the

1 of 2

Plant. ALSTOM obtained the e-mail through discovery in a separate lawsuit between ALSTOM and D/FD relating to the Plant.

5.      In response to AES's request for the AES-D/FD e-mail in ALSTOM's possession, ALSTOM inquired as to the reason why AES did not already have the e-mail.  In response to ALSTOM's inquiry, AES stated that it was possible that some e-mail between AES and D/FD was "not retained in the ordinary course." As such, AES requested ALSTOM to produce e-mails that were, at one time, in AES's possession.

6.      During a subsequent discovery conference call between ALSTOM and AES on February 10, 2006, ALSTOM again raised concerns regarding e-mail that AES failed to produce to ALSTOM and sought an explanation for AES's failure to produce such documents.

7.      After AES refused to acknowledge the existence of e-mails that it failed to produce to ALSTOM, ALSTOM "agreed to disagree" over AES's failure to produce such documents.  AES then requested, and ALSTOM agreed to provide, examples of those e-mails sufficient to apprise AES of ALSTOM's position regarding AES's discovery failures.  The examples were to generally describe categories of e-mails AES failed to produce to ALSTOM.

8.      On February 15, 2006, ALSTOM provided examples of e-mails sufficient to show AES's production of electronic documents remained incomplete.


I declare under penalty of perjury that the foregoing is true and correct. Executed on February 22, 2006.

                                        _____
                                        Michael A. Schollaert

# TAB
# 13

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

December 29, 2005

**Via Federal Express**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

Re:   **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

Enclosed please find two CDs of electronic data that ALSTOM requested relating to the Plant's boiler, which are Bates-stamped AESPR 300448 – 300449, as well as a CD with an additional production in Concordance format of miscellaneous electronic documents. We have now completed our production of paper and electronic documents. We reserve the right to supplement our production if responsive documents are discovered in the future.

In addition, enclosed please find a CD of electronic documents responsive to the subpoena for John Toher. The documents are Bates-stamped JT-02843 – JT-30116. This production completes Mr. Toher's response to ALSTOM's document subpoena.

Sincerely,

Daniel D. Williams

Enclosures

# TAB
# 14

# OBER KALER

A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Anthony F. Vittoria**
afvittoria@ober.com
410-347-7692

**Offices In**
Maryland
Washington, D.C.
Virginia

December 29, 2005

*VIA FASCIMILE & FIRST-CLASS MAIL*
Jeb Boatman, Esquire
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

      Re:    *AES Puerto Rico v. ALSTOM Power, Inc.*

Dear Jeb:

      I am writing regarding certain concerns that we have regarding AES's hard-copy and electronic document production in this matter.

      In regard to AES's hard-copy document production, we continue to discover examples of documentation that ALSTOM has requested and has obtained from non-parties, but that has not been produced by AES, even though AES has, or should have, that documentation in its possession. The most obvious example are the three versions of the PSD air permit issued by EPA in 1998, 2001 and 2004. While AES did produce a preliminary decision on the permit that was issued by EPA in 1998 prior to the public comment period (AESPR– 087250 to 087281), it has failed to produce any of the final permits. AES has also failed to provide the documentation relating to the 2001 and 2004 modifications to the permit – documentation that AES surely has because it was the entity that requested the modifications.

      As mentioned during the December 7 hearing before Judge Farnan, it is not just this specific documentation that ALSTOM is concerned about. Rather, the fact that AES has failed to produce these documents is strong indication that AES has failed to produce other relevant documentation about which ALSTOM is unaware.

      ALSTOM has concerns regarding the adequacy of AES's efforts to preserve and retrieve all of the electronic documents responsive to ALSTOM's requests. First, there are still many extremely relevant e-mails that AES has failed to produce. A striking example is an August 13, 2003 e-mail from AES's Ron McParland to ALSTOM's Bill Jarvis and D/FD's Mike Norris. The subject line of that e-mail contained the phrase "Additional data for CDS/ESP Operation", while the entire text of the e-mail is the following: "Please find attached the Aug, 2003 (to date) emission reports, along with our



Jeb Boatman, Esquire
December 29, 2005
Page 2

ESP, CDS consultants reports. Tks RM". A copy of this e-mail was produced by ALSTOM as JARV-EMAIL-033909 but has not been produced by AES.

Not only has AES failed to produce that specific e-mail, but the attachments to that e-mail show that AES has failed to produce other electronic documentation that was specifically requested by ALSTOM. In particular, two of the attachments to the e-mail are "Daily Opacity Reports" for August 11, 2003 and August 12, 2003 (JARV-EMAIL-033933 through 033936). While AES has produced opacity data in the form of Excel spreadsheets, each of those spreadsheets contain several thousand data points for meters, gauges, valves and thermocouples in which ALSTOM is not interested. The Daily Opacity Reports attached to Mr. McParland's e-mail show that AES was tracking and recording opacity data separate and apart from all of that other extraneous data. In addition, the Daily Opacity Reports provide more and better information than the Excel spreadsheets. In particular, the Daily Opacity Reports report the opacity in 6 minute increments, rather than the 15 minute increments of the Excel spreadsheets. In addition, the Daily Opacity Reports clearly indicate that the data contained in the report are "Six Minute Averages"; the Excel spreadsheets do not indicate whether the data are averages or simply "snap-shots" taken at fifteen minute intervals. As a result, the Daily Opacity Reports provide better information because they more closely track the EPA PSD permit, which requires AES to report an "exceedance" if the opacity is greater than a specific level over a six minute average. AES has failed to produce any of these Daily Opacity Reports, despite ALSTOM's request for this information and their indisputable relevance to the issues in this case.

In addition to particular e-mails that have not been produced, it appears that AES may not be capturing e-mails for all of the relevant "custodians". In particular, ALSTOM has compared the list of twenty-five individuals for whom AES has collected electronic mail from central servers (as stated in your e-mail dated December 20, 2005) with the list of individuals within the various e-mail list-serve, or "group", categories, as well as the electronic mail and hard copy documents already produced by AES. Based upon this comparison, it is apparent that several names are noticeably absent from your December 20 list, including, but not limited to, Stewart Ferguson, Paul Stinson, Calvin Kotrla, William Vela, Jerry Cagle, Rod Jorgenson, Wilbert de la Paz and Richard Wylie.

We have also recently come across documentation regarding a "shared drive" employed by AES on the Project (AESPR-088626). This is the first we have heard of such a drive and seek your confirmation that AES has searched that drive for responsive documentation.

Finally, please confirm that we have received all of the documents relating to AES's imposition of a litigation hold to preserve documents related to the AES Puerto Rico project. During our conference call on Tuesday, December 20, 2005, Dan indicated

OBER | KALER
A Professional Corporation

Jeb Boatman, Esquire
December 29, 2005
Page 3

AES may no longer possess certain responsive documents or electronic mail dating prior to August 2003, ostensibly because those documents may not have been retained in the ordinary course of business. However, all of those documents should have been preserved because of the AES – D/FD litigation, which commenced on or about June 9, 2003. While we are in possession of a preservation request dated September 29, 2004 (AESPR 007242) in reference to AES's lawsuit against ALSTOM, AES has not produced any additional documents – specifically, any such letters or notices issued pursuant to the litigation with D/FD.

We look forward to receiving your prompt reply to the foregoing. If we do not speak beforehand, have a joyful New Year's Eve.

Sincerely,

Anthony F. Vittoria

AFV
cc:    ALSTOM Power, Inc.
       James E. Edwards, Jr., Esq.
       Michael A. Schollaert, Esq.

779150

# TAB 15

# OBER | KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Anthony F. Vittoria**
afvittoria@ober.com
410-347-7692

**Offices In**
Maryland
Washington, D.C.
Virginia

January 6, 2006

## *VIA FASCIMILE & FIRST-CLASS MAIL*

Daniel D. Williams, Esquire
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

   Re: *AES Puerto Rico v. ALSTOM Power, Inc.*

Dear Dan:

  I am writing in response to your letter and e-mail of January 5, 2006 regarding discovery in this case.

  In your e-mail you discuss AES's electronic document production as well as some concerns that AES has regarding ALSTOM's hard-copy document production.  In regard to AES electronic document production, ALSTOM has already expressed, in our letter dated December 29, 2005, concerns regarding the individuals for whom AES has collected e-mails from its central servers.  As we stated in that letter, ALSTOM's concerns were not confined to the individuals listed in that letter.

  While we appreciate AES's willingness to gather, review and produce central server e-mail for Paul Stinson, Calvin Kotrla, William Vela, Jerry Cagle, Rod Jorgenson and Richard Wylie, ALSTOM believes that additional individuals possess relevant e-mail which should have been produced by the agreed upon and Court approved deadline of December 31, 2005. ALSTOM's request for supplemental documentation is not a "sideshow", as you described it during our conference call on January 4, 2006.  Rather, the information that AES has failed to produce goes to the heart of this case – the operation and maintenance of the Plant – and ALSTOM is entitled to all of that documentation in AES's possession.  AES's subjective determination that certain employees possess relevant, non-duplicative, responsive e-mail while others do not is not the appropriate standard for the production of discoverable information. Indeed, ALSTOM is very concerned that it has taken repeated requests, and motions, for AES to produce relevant documents that should have been produced months ago.

  Accordingly, ALSTOM requests AES to supplement its production of electronic documents by collecting, reviewing, and producing electronic documents for the following additional AES employees:  Rick Ames; Marco Aresti; Chip Bergeron; Jerry Cagle; Julio Colon;



OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
January 6, 2006
Page 2

Lou Conti; Luis Cruz; Rod Jorgenson; Calvin Kotrla; Luis Lasanta; Eric Lundberg; Gary Martin; Carlos Reyes; Paul Stinson; Hassan Tariq; Richard Trifonoff; William Vela; and Richard Wylie.

In regard to documents relating to the installation of the baffles in the ESP, ALSTOM has produced a large amount of both hard-copy and electronic documentation relating to those baffles. Indeed a quick search of ALSTOM's electronic document production reveals hundreds of documents relating to this subject, including documents discussing the rationale behind the installation of the baffles (*see, e.g.*, ROTH-EMAIL-002443 through 002446), the design of the baffles (*see, e.g.*, WARD-EMAIL-005897 through 005900), the shipping of the baffles (*see, e.g.*, WARD-EMAIL-005772), the installation of the baffles (*see,e.g.*, WARD-EMAIL-005765) and the cost of the baffles (*see, e.g.*, JARV-EMAIL-039960). Accordingly, ALSTOM does not believe that there are other documents relating to that issue in its possession that it has not produced. If AES is aware of additional documentation, please let us know, and we will re-search ALSTOM's documents.

ALSTOM appreciates that AES has agreed to search for additional EPA documents as set forth in your letter of January 5, 2006. As stated during our January 4 conference call, ALSTOM is troubled by AES's production to date because it has discovered a large amount of documentation, obtained from third-parties, that are or should be in AES's possession, including reports and applications to EPA, as well as correspondence and drafts exchanged with AES's environmental consultant, ENSR.

In regard to the Daily Opacity Reports, ALSTOM is very concerned that those documents are just turning up now when they are directly responsive to document requests issued well over nine months ago. Accordingly, ALSTOM requests that AES provide ALSTOM with copies of those documents as soon as possible *and* conduct another search of its files to ensure that other similar documentation in AES's possession is produced to ALSTOM.

As to AES's position that ALSTOM's request for "litigation hold" documentation is "irrelevant", we believe that AES's position is untenable. Any documentation that would indicate what other relevant documentation is or should have been preserved, for whatever reason, is relevant to this matter. Accordingly, ALSTOM renews its request that AES produce any such documentation that it has not already produced.

In regard to ALSTOM's electronic document production, ALSTOM has explained that the delay in producing Tom Barber's e-mail was the result of a simple miscommunication – e-mails for Tom Barker, rather than Tom Barber, were collected inadvertently. That being said, ALSTOM is expediting the collection and review of Mr. Barber's e-mails and will produce them as soon as possible. Likewise, ALSTOM has explained that the delay in producing its electronic document privilege log is attributable to a technical issue with ALSTOM's vendor. Again, ALSTOM is expediting the completion of the log and will produce it as soon as possible.

O B E R | K A L E R
A Professional Corporation

Daniel D. Williams, Esquire
January 6, 2006
Page 3

Finally, ALSTOM appreciates the offer that AES made regarding the DCS system at the Plant. In particular, you stated that AES would not object to ALSTOM having one of its employees or an outside vendor access the DCS system at the Plant for the purpose of directly obtaining the data in which ALSTOM is interested. ALSTOM intends to take AES up on this offer and is currently attempting to locate an individual who has the appropriate knowledge and training.

Thank you for your prompt attention to these matters.

Sincerely,

Anthony F. Vittoria

AFV
cc:     ALSTOM Power, Inc.
        James E. Edwards, Jr., Esq.
        Michael A. Schollaert, Esq.

779788

# TAB
# 16

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 5, 2006

**Via Email & U.S. MAIL**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

Re:    **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

This letter is in response to your letter of December 29, 2005. Although I believe we addressed most of the issues in your letter on our discovery call on Wednesday, this letter seeks to memorialize those communications and to provide you with an update.

First, AES-PR continues to believe that it has collected all relevant EPA information that it possesses. As you know, AES-PR produced over 1300 pages of EPA-related information, including the EPA's final permitting decision regarding the 1998 permit. *See* AES-PR AESPR 076044 - 076179. However, next week Jeb will be at the Plant and will re-confirm that we have produced all of the responsive paper documents that can be located.

Second, as Jeb mentioned on the phone on Wednesday, on December 19, 2005, AES-PR produced the Ron McParland email and its attachments that your letter claims AES-PR has not produced. As to the broader concern you express regarding the adequacy of AES-PR's efforts to retrieve documents in response to ALSTOM's requests, I can assure you that AES-PR has engaged in a systematic process of gathering, reviewing, and producing responsive documents (both hardcopy and electronic) and that those efforts fully conformed to the requirements of the Federal Rules.

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 5, 2006
Page 2

As to the Daily Opacity Reports you mention, the data in those reports is stored in the Plant's CEMS computer system. We believe that the information contained in those reports substantially duplicates the hundreds and hundreds of pages of opacity data that AES-PR has already provided ALSTOM. As you know, last month and again on Wednesday, we have offered to make the plant's central computer systems for operating data available to your technician to make a copy of whatever data you believe you require. We have agreed to provide reasonable access for you to do so at any time during fact discovery. In addition, we conferred with our client following Wednesday's call and discovered that a number of the types of daily reports you described in your letter have been printed and are available in paper format as well as from the CEMS system. I can make these reports available to your copy service at the Plant at your convenience.

Third, I sent you an email listing the individuals for whom AES-PR has collected central-server email and have agreed to collect email for all but one of the individuals listed in your December 29 letter. We will be sending you a list on Friday of around half a dozen ALSTOM employees for whom it appears ALSTOM has not collected email and who should have responsive, nonduplicative email that we would request you produce.

Fourth, as Jeb confirmed on the phone, AES-PR has collected, reviewed, and produced documents from AES-PR's shared drive.

Fifth, you ask that we confirm that AES-PR has produced all documents "relating to AES's imposition of a litigation hold to preserve documents related to the AES Puerto Rico project." We have produced the memorandum establishing a litigation hold for this litigation. Information concerning other litigation to which Alstom was not a party is not relevant to this lawsuit and has not been gathered or produced. Moreover, many of the communications concerning other unrelated litigations are privileged.

Finally, I would like to re-confirm two issues we raised on Wednesday's call. First, we remain very troubled that ALSTOM has missed the court-imposed deadline for producing its privilege log for electronic documents. Given that we have serious questions about ALSTOM's privilege log relating to hardcopy documents (we'll be sending a letter soon laying out those concerns), we are deeply troubled that you indicated it could be as long as two weeks before we receive that log – nearly three weeks after the court-imposed deadline.

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 5, 2006
Page 3

       Second, we also remain concerned about ALSTOM's failure to produce all email documents for Mr. Barber, who is a central witness in this litigation, and are equally concerned that you indicated it could be up to two weeks until we receive those documents, which will put us receiving those documents after the start of depositions in this matter.  Given the importance of Mr. Barber to this litigation, I trust that you will gather and produce his email as promptly as possible.

       Please don't hesitate to call if you have questions before our next scheduled discovery call.

       Sincerely,

       Daniel D. Williams

# TAB 17

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JAMES L. TUXBURY
ATTORNEY AT LAW
(202) 434-5509
jtuxbury@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 26, 2006

**Via Email & U.S. Mail**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

> Re:    **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

On January 6, 2006, you wrote to ask that AES-PR collect central-server email for a number of individuals. As you know, on January 20, 2006, AES-PR produced central-server email for seven of those persons.

That leaves outstanding ALSTOM's request with respect to the following additional individuals:

Rick Ames
Marco Aresti
Chip Bergeron
Julio Colon
Lou Conti
Luis Cruz
Luis Lasanta
Eric Lundberg
Gary Martin
Carlos Reyes
Hassan Tariq
Richard Trifonoff

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 26, 2006
Page 2

For most of these individuals, AES-PR believes either they do not have responsive emails or
their responsive emails already have been produced. Nonetheless, in the spirit of cooperation,
AES-PR will produce (or re-produce) emails for the persons on your list other than Rick Ames,
Chip Bergeron, and Gary Martin. We plan to produce these e-mails by January 30, 2006.

To the best of our knowledge, Mr. Ames, Mr. Bergeron, and Mr. Martin never were
employed by AES-PR, and played no significant role with respect to the issues involved in this
litigation. We believe any communications with them about the matters in dispute are reflected
in documents already produced. If you believe otherwise, please let us know the basis for your
understanding.

Sincerely,

James L. Tuxbury

# TAB
# 18

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JEB BOATMAN
ATTORNEY AT LAW
(202) 434-5974
jboatman@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 20, 2006

**Via Federal Express**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

Re:     **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

Enclosed please find central-server email (bates range AESPR 303222 - AESPR 351209) for Bill Vela, Calvin Kotrla, Jerry Cagle, Paul Stinson, Rick Wylie, Rod Jorgensen, and Wilbert Delapaz.

I hope this finds you and your colleagues well.

Sincerely,

Jeb Boatman

Enclosures

# TAB
# 19

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JAMES L. TUXBURY
ATTORNEY AT LAW
(202) 434-5509
jtuxbury@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 30, 2006

**Via Federal Express**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD  21202-1643

    Re:    **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

    Enclosed please find a CD containing central-server emails for Marco Aresti, Julio Colon, Lou Conti, Luis Cruz, Luis Lasanta, Hassan Tariq, and Richard Trifonoff.  This CD also contains documents and emails related to the Crystallizer and emissions graphics.  The bates range for this production is AESPR 351210 – AESPR 398878.

    We searched the central-server emails for Eric Lundberg and Carlos Reyes but have learned that there are no email accounts for these two former employees on the central server. Please call if you have any questions.

Sincerely,

James L. Tuxbury