# Tab B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P., <br><br> Plaintiff, <br><br> v. <br><br> ALSTOM POWER, INC., <br><br> Defendant. | Civ. No. 04-1282-JJF |

## DECLARATION OF DANIEL D. WILLIAMS

I, DANIEL D. WILLIAMS, declare as follows:

1. I am an attorney with Williams & Connolly LLP and I represent AES Puerto Rico, L.P. ("AES-PR") in the above-captioned matter. I am admitted *pro hac vice*. This declaration is based on my personal knowledge except where otherwise noted.

2. I accepted service of a December 21, 2004 subpoena issued by ALSTOM Power, Inc. ("ALSTOM") to AES-PR demanding production of documents in a lawsuit in which AES-PR was not a party. I negotiated with ALSTOM's counsel, Jeffrey Regner, Esq., of Ober, Kaler, Grimes, and Shriver, concerning the scope of that subpoena. As part of those negotiations, on April 12, 2005, I wrote to Mr. Regner and advised him that certain backup tapes of AES-PR's former e-mail system existed, but, "the tapes have never been . . . converted" "to a readable format" and the cost to prepare them for production was estimated to "be in the hundreds of thousands of dollars." The former e-mail system I referenced was AES-PR's "First Class" e-mail system. I have been informed that AES-PR stopped using the First Class e-mail system in mid-2002 and at that time began using Microsoft Outlook for e-mail.

3. In light of the cost involved in restoring the First Class backup tapes, the tapes were never restored in response to ALSTOM's non-party subpoena to AES-PR.

4. In December 2005, the parties met and conferred regarding discovery in this litigation. During that meeting, ALSTOM's counsel asked whether AES-PR would restore the backup tapes I had discussed previously with Mr. Regner from the former First Class e-mail system. I explained to ALSTOM's counsel that, in light of the extraordinary cost of doing so and the fact that the tapes pre-date the relevant timeframe of the events in dispute in this litigation, AES-PR would do so only if ALSTOM would pay for restoration and processing of the backup tapes. ALSTOM declined to do so.

5. I received a letter from ALSTOM's counsel on January 24, 2006 complaining that, at a deposition of AES-PR's corporate designee on document collection issues, according to ALSTOM, the designee had not provided adequate testimony concerning the cost to restore the First Class backup tapes and accordingly ALSTOM was "demand[ing] that AES search its servers, archives and backup tapes for any and all 'aesc.com' e-mails" at its own expense. On or about February 1, 2006, I met and conferred by teleconference with ALSTOM's counsel concerning his January 24, 2006 letter and explained that I had provided the cost information to ALSTOM's counsel previously when responding to ALSTOM's non-party subpoena.

6. On February 9, 2006, counsel for ALSTOM wrote to me to say that ALSTOM believed the information I had provided previously with respect to the non-party subpoena was insufficient.

7. In response to ALSTOM's request for more detailed information, I confirmed the cost estimates and, on February 15, 2006, wrote to counsel for ALSTOM to transmit them. The cost estimate to produce documents for half-a-dozen users was $75,000 to $200,000. I further

2

explained that it would take one-to-two months just to prepare the data tapes for review, and still longer before documents on the tapes actually could be produced.

8. I had a teleconference with ALSTOM's counsel on the afternoon of February 15, 2006 after ALSTOM's counsel had received my letter. On that teleconference, I explained that we were working with the industry leader in electronic discovery, Kroll-Ontrack, and that Kroll-Ontrack had advised that, in light of the obsolescence of the First Class e-mail system, there was no way to expedite the restoration and retrieval of the information from the backup tapes. When ALSTOM's counsel responded that he believed his technical consultant would testify that the process should not take so long, I said that, if ALSTOM's vendor could restore the tapes more quickly, ALSTOM should tell me who the vendor was so that AES-PR could consider using it.

9. ALSTOM's counsel never followed up with any proposal to expedite restoration of the First Class backup tapes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief. Executed on this _9_th day of March, 2006, at San Juan, Puerto Rico ~~Washington, D.C.~~

Daniel D. Williams

3