**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

————————————————————

AES PUERTO RICO, L.P.,

               Plaintiff,

      v.

ALSTOM POWER, INC.,

              Defendant.

————————————————————

Civ. No. 04-1282JJF

**OPPOSITION OF PLAINTIFF AES PUERTO RICO, L.P. TO
ALSTOM'S SECOND MOTION TO COMPEL PRODUCTION OF
ELECTRONIC DOCUMENTS OR, IN THE ALTERNATIVE, FOR
SANCTIONS**

     Defendant ALSTOM Power Inc.'s ("ALSTOM") Motion to Compel

complains that plaintiff AES Puerto Rico, L.P. ("AES-PR") employees - *in the*

*ordinary course of business* - did not save each and every email in 2002 and 2003,

well before this lawsuit was filed.  ALSTOM requests that this Court give an

adverse-inference instruction at trial if AES-PR cannot produce the documents that

no longer exist.  But AES-PR had no obligation to save each and every e-mail sent

or received in the months and years before this lawsuit was filed.  ALSTOM's

motion, which is short on facts and devoid of any legal support, should be denied for

the following reasons:

     **First**, ALSTOM cannot meet the legal standard for an adverse

inference because, as it acknowledges, there is no evidence that AES-PR

129759

*intentionally* destroyed emails, which is required before it would be proper to give an adverse-inference instruction.

**Second**, ALSTOM's supposed "evidence" of missing documents falls well short of establishing that AES-PR destroyed documents that it was required to maintain. Indeed, AES-PR produced versions of many of the documents ALSTOM claims are missing from its production.

**Third**, ALSTOM's motion is nothing more than an attempt to deflect attention from its own failure to meet its discovery obligations.

## BACKGROUND

## I.    OVERVIEW OF ACTION[1]

This litigation arises from a warranty claim relating to accelerated corrosion in the electrostatic precipitators ("ESP") provided by ALSTOM for the AES-PR power plant. The accelerated corrosion in the ESP was discovered in November 2003, about one year after AES-PR took possession of the power plant from ALSTOM. Upon discovery of the corrosion, AES-PR informed ALSTOM that the accelerated corrosion was covered by the warranty ALSTOM had provided for the ESP, and asked ALSTOM for its assistance in remedying the problems. ALSTOM appeared to recognize that the corrosion was covered by its warranty, but purported to pass the warranty claim to its subcontractor, Environmental Elements

---

[1] ALSTOM's motion contains a surprisingly extensive preview of its arguments for trial. In this Opposition, AES-PR will not address ALSTOM's allegations that do not pertain to this motion, except to say that AES-PR disagrees with ALSTOM's factual assertions and legal arguments.

Corp.  Throughout the first half of 2004, ALSTOM continually assured AES-PR that it was taking steps to remedy the accelerated corrosion.  It was only after months of delay by ALSTOM that AES-PR was forced to file this lawsuit in September 2004. AES-PR then promptly circulated a document retention letter that instructed relevant AES-PR employees not to destroy electronic or hard copy documents related to this litigation.  *See* Tab 1.

## II.    AES-PR'S ELECTRONIC DOCUMENT PRODUCTION

AES-PR has satisfied its discovery obligations for the production of electronic documents.  It  has produced over 70,000 responsive electronic documents.  AES-PR conducted a careful, extensive search for electronic documents and it believes its electronic document production is complete.

## <u>ARGUMENT</u>

## I.    ALSTOM HAS NOT MET ANY OF THE ELEMENTS FOR IMPOSING AN ADVERSE INFERENCE.

ALSTOM's motion seeks relief in the form of an adverse-inference instruction, but ALSTOM has not met any of the elements for such an instruction.[2] The rationale for an adverse inference is that, "a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] . . . "  *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (*quoting Nation-wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)).  To obtain an

---

[2] Significantly, ALSTOM fails even to mention the legal requirements for an adverse inference instruction.

adverse-inference instruction based on spoliation of evidence, "a party must establish that the evidence in question was under the adverse party's control and that the evidence was suppressed; that is, the evidence must have been destroyed intentionally and not just lost or accidentally destroyed." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995); *accord In re DaimlerChrysler AG*, 2003 WL 22951696, *1 (D. Del. Nov. 25, 2003). Moreover, the party must also establish that the evidence was "relevant to an issue in a case," Brewer, 72 F.3d at 334; *In re Daimler Chrysler AG*, and that it was reasonably foreseeable at the time the evidence was destroyed that it would be discoverable, *see Scott v. IBM*, 196 F.R.D. 233, 248 (D.N.J. 2000).

### A.     AES-PR DID NOT INTENTIONALLY DESTROY ANY DOCUMENTS.

Instead of providing evidence that AES-PR intentionally destroyed documents, ALSTOM argues that, if there *were* any missing documents, they simply were not retained in the ordinary course of business. *See* Mot. at 5, *accord* Mot. Tab 12 (Schoellart Aff. ¶ 3). But to be entitled to an adverse inference instruction, a party must show that any destruction of evidence was intentional – not simply lost, accidentally destroyed or not retained in the ordinary course of business. *Brewer*, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed."); *see also Harding v. Careerbuilder, LLC*, 2006 WL 460896, *4 (3d Cir. Feb. 27, 2006) (citing *Brewer* in finding that without evidence that documents were intentionally destroyed or concealed, there can be no adverse inference drawn); *Doe v. Goldstein's*

*Deli*, 82 Fed. Appx. 773, 776 (3d Cir. Dec. 19, 2003) (no adverse inference, in part, because "no evidence to suggest that [document destruction] was taken to gain some kind of advantage"); *In re DaimlerChrysler AG*, 2003 WL 22951696, *1 (D. Del. Nov. 25, 2003) (in reviewing degree of fault under sanction analysis, court found there could be no sanction because destruction of evidence was not intentional). ALSTOM points to *absolutely no evidence* that could possibly give rise to any inference of *intentional* destruction of documents, and it does not even argue that any intentional destruction took place.

### B. ALSTOM HAS NOT ESTABLISHED THAT ANY ALLEGED MISSING EMAILS WOULD BE RELEVANT TO AN ISSUE IN THIS CASE.

ALSTOM's motion to compel also fails to establish - or even assert - how any of the supposedly missing documents are relevant to an issue in this litigation. *See Brewer*, 72 F.3d at 334; *see also In re DaimlerChrysler AG*, 2003 WL 22951696 at *2 ("Defendants must show a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the [lost material] would have produced evidence favorable to his cause.") (internal quotation omitted). In fact, ALSTOM cannot even say for certain that there are missing responsive emails. Instead, ALSTOM merely assumes there are missing emails based on ALSTOM's comparative numerical "analysis" of AES-PR's production. That is not sufficient to support the severe discovery sanction ALSTOM seeks.

### C.    ALSTOM CANNOT SHOW THAT AES-PR DESTROYED EMAILS THAT IT WAS REQUIRED TO MAINTAIN.

The final requirement for an adverse-inference instruction is that the party seeking the instruction show that it was reasonably foreseeable that the destroyed document would be discoverable.  *See Mosaid Technologies Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004).  Here again, ALSTOM has failed to provide any evidence.  ALSTOM's motion is premised on the absurd notion that AES-PR was obligated to maintain each and every email from 2002 to the present.  A party, however, is not required to maintain each and every document that ever was in its possession, but only those that it "knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation."  *Scott v. IBM*, 196 F.R.D. at 249.  In its motion, ALSTOM is intentionally vague on when the duty to maintain documents allegedly began.  Instead, ALSTOM uses the amorphous term "relevant time period," *see* Mot at 6, to describe a time period that apparently extends as far back as January 2003, over ten months before the accelerated corrosion that is the subject of AES-PR's warranty claim was discovered, *see* Mot., Tab 30.  In fact, of the eleven "missing" emails cited by ALSTOM, <u>nine</u> pre-date the discovery of the accelerated corrosion.[3]  It simply is not

---

[3] ALSTOM cites two emails from Al Dyer from June 2004, which it contends should have been produced.  ALSTOM concedes that pursuant to "analysis" it could find only a few emails from Mr. Dyer that were not produced.  But more importantly, around June 2004, ALSTOM continually was assuring AES-PR that it was making progress on resolving AES-PR's warranty claim.  In fact, William Jarvis of ALSTOM told Mr. Dyer that "[ALSTOM] once again wish[es] to insure [sic] you that we will continue to help AES find the root cause and evaluate potential solutions to this corrosion."  Mot at Tab 29.  Thus, there was no reason for Mr. Dyer to foresee in June 2004 that litigation would ensue.

possible that AES-PR could have foreseen that ALSTOM would fail to honor its

warranty obligation with respect to its corrosion warranty in the months before the

corrosion was discovered, because prior to the discovery of the corrosion, AES-PR

could not have foreseen that it would be making a claim on the corrosion warranty.

Moreover ALSTOM ignores this Court's own standard for when the

duty to retain all electronic documents attaches.  Under this Court's electronic

discovery rules, AES-PR was obligated only "within the first thirty days of

discovery" to develop a procedure "to preserve the integrity of all relevant electronic

documents."  *See* District Court of Delaware Default Standard for Discovery of

Electronic Documents.  The Complaint in this action was filed on September 20,

2004, and a little after a week of filing of the Complaint, AES-PR instructed its

employees to preserve any and all electronic documents related to this litigation.

## II.    ALSTOM'S "ANALYSIS" OF AES-PR'S ELECTRONIC PRODUCTION IS FLAWED.

ALSTOM's so-called "analysis" of AES-PR's electronic production is

seriously flawed.  Indeed, AES-PR produced copies of nearly all of the documents

ALSTOM's motion claims are missing.

First, ALSTOM claims to have "tested" whether AES-PR's electronic

production is complete by looking at email messages exchanged between the parties

with regard to three specific individuals and comparing how many emails AES-PR

produced versus how many ALSTOM produced.  *See* Mot. at 6.  But its test,

considering only three individuals and employing "keyword searches," is simplistic

and inapt in that it failed to include many key terms found in responsive documents in this litigation. *See* Mot. at 7-8 (listing keyword searches but failing to include terms such as "corrosion," "warranty," "handcuffs," "FBHE," "wet bulb," "flue gas," and "outlet temperature," all of which are central to issues in dispute in this litigation).

Second, most of the specific documents that ALSTOM references in its Motion either were produced by AES-PR[4], pre-date the discovery of the accelerated corrosion, or both. For example, ALSTOM complains that three documents from Paul Stinson -- all of which pre-date the discovery of the accelerated corrosion -- were produced by ALSTOM, but "were not produced by AES[-PR]." Mot. at 7. In fact, AES-PR produced all three of these emails. *See* Tabs 2-4. While the versions AES-PR produced came from employees other than Mr. Stinson, the fact remains that AES-PR produced to ALSTOM *the very documents ALSTOM claims it did not receive*. Indeed, it took AES-PR's counsel only a few minutes to locate these emails in AES-PR's production. As another example, ALSTOM claims that "incredibly" AES-PR did not produce a January 2003 email from D/FD to ALSTOM and AES-PR employees. *See* Mot. at 9, Tab 30. But what is incredible is that ALSTOM would make such a claim when AES-PR *produced that exact email. See* Tab 5. There is no

---

[4] Indeed, the *entirety* of Section IV.D of ALSTOM's motion, *see* Mot. at 9, is about documents that ALSTOM acknowledges AES-PR produced.

excuse for ALSTOM to have filed its motion to compel without first searching to see if AES-PR had produced the documents ALSTOM claims were missing.[5]

## III.    ALSTOM HAS NOT PARTICIPATED IN DISCOVERY IN GOOD FAITH.

ALSTOM seeks discovery sanctions against AES-PR notwithstanding its own failure to participate in discovery in good-faith.  Thus, not only does ALSTOM lack any legal or factual basis for the relief it seeks, but its own conduct should preclude it from receiving the extraordinary relief its motion requests.

This Court held a discovery hearing on December 7, 2005 at which it directed the parties to attempt to resolve their discovery disputes and, if possible, submit a mutually agreed Discovery Dispute Resolution Plan to the Court within ten days.  The parties did so.  *See* D.I. 62; D.I. 65.  While AES-PR has honored its commitments under that Plan, ALSTOM has not:

- ◦    The Plan required the parties to complete their document productions by December 30, 2005, yet ALSTOM failed to produce over 25% of its electronic documents until well after that date.  *See* D.I. 65 ¶ 3.  It produced 36,000 documents on January 31, 2006 and another 9,000 documents on February 25, 2006, just two weeks before the close of fact discovery.  Moreover, the February 25th production of 9,000 documents was made *after* ALSTOM filed this motion.

- ◦    During the first week of January, both parties compiled and exchanged lists of persons for whom they believed the other side had failed to collect electronic documents but should have.  In response to ALSTOM's list of 18 individuals, AES-PR agreed to produce documents for all but three of them and did so by January 30, 2006.  In contrast,

---

[5] ALSTOM claims in its motion that AES-PR's failure to specifically refute the claims in its February 15, 2006 email, *see* Mot., Tab 21, is evidence that the emails are missing.  *See* Mot. at 6.  That assumption -- like numerous others ALSTOM makes in its motion -- is unfounded.

ALSTOM refused to produce any documents for seven of the ten persons AES-PR identified.[6] And for the remaining three persons, ALSTOM waited until February 25 to produce the documents.

◦ Two of the six ALSTOM fact witnesses AES-PR has deposed admitted under oath that they had not searched their files for responsive documents. ALSTOM engineer Frank Gabrielli testified he was "never requested to do a search" for responsive documents, and that he turned over only "some" of his responsive documents. *See* Tab 6 (Gabrielli Deposition excerpt, pp. 240, 241). One of the documents Mr. Gabrielli had not produced was a document AES-PR's counsel had specifically requested of ALSTOM's counsel, only to be told the document did not exist. *See* Tab 7 ¶ 4. Without explanation, ALSTOM then produced the document the day <u>after</u> Mr. Gabrielli's deposition. *See id.* ALSTOM commissioning engineer Tom Coleman similarly testified at his deposition that he "did not" "produce documents to [ALSTOM's] attorneys," that he "did not" "search [his] computer at [his] office" for such documents, and that he "did not" "search [his] files in [his] office for documents in connection with this litigation." *See* Tab 8 (Rough Draft Coleman Deposition, p. 127). ALSTOM has provided no explanation why Mr. Coleman, one of the principal ALSTOM engineers responsible for commissioning the AES-PR facility, did not gather and produce his responsive documents.

◦ ALSTOM has ignored other discovery deadlines set by Court order and the Federal Rules of Civil Procedure. For example, even though this Court's December 16, 2005 Order required the parties to exchange privilege logs by December 30, 2005, D.I. 65 at ¶ 4, ALSTOM waited until February 8, 2006 to produce its electronic-document privilege log. When AES-PR served <u>one</u> interrogatory on ALSTOM on December 23, 2005, ALSTOM waited until February 7, 2006, two weeks past the due date, to respond, and even then, it failed to provide a properly verified response.

◦ Finally, and perhaps most tellingly, ALSTOM has failed to honor its promise to this Court to participate in regular teleconferences with opposing counsel to resolve discovery disputes. The parties had agreed "to confer via telephone conference on a bi-weekly basis to monitor the progress of discovery and attempt to resolve further discovery

---

[6] ALSTOM claimed that it already had produced documents for Ray Hickey, but a review of his production revealed only two emails. Mr. Hickey was deposed in this matter and his testimony suggests that he regularly received e-mails about the AES-PR project.

disputes" so as to avoid baseless discovery motions like the ones ALSTOM has filed. *See* D.I. 62. Yet on February 21, 2006 – the same week ALSTOM filed two motions to compel – ALSTOM's counsel declined to participate on the parties' previously-scheduled teleconference because he had "forgotten about the call." *See* Tab 9. He then promised to re-schedule, but instead of doing so, filed the instant motion and another one the same week. *See id.*

ALSTOM's motion to compel fails because AES-PR has satisfied fully its obligation to produce electronic documents and because there is absolutely no legal basis for the relief ALSTOM seeks. Even if the motion had any merit -- which it does not -- it should be denied in light of ALSTOM's abject failure to honor its commitments to this Court with respect to discovery.

## CONCLUSION

Defendant's motion is baseless. Plaintiff has met its discovery obligations under the Federal Rules. AES-PR respectfully requests that ALSTOM's motion be denied and that AES-PR be awarded its costs and fees in opposing the motion.

Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas                      /s/ John S. Spadaro
R. Hackney Wiegmann                     John S. Spadaro (Bar No. 3155)
Daniel D. Williams                      MURPHY SPADARO & LANDON
WILLIAMS & CONNOLLY LLP                 1011 Centre Road, Suite 210
725 Twelfth Street, N.W.                Wilmington, DE 19805
Washington, D.C. 20005                  Tel. (302) 472-8100
Tel. (202) 434-5000                     Fax (302) 472-8135
Fax (202) 434-5029

Dated:  March 13, 2006                  Attorneys for AES Puerto Rico, L.P.

129759                          11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282JJF |
| | ) | |
| ALSTOM POWER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

---

### NOTICE OF SERVICE

On March 13, 2006, Plaintiff served Plaintiff AES Puerto Rico, L.P.'s

Opposition to ALSTOM's Second Motion to Compel Production of Electronic

Documents or, in the Alternative, for Sanctions by hand-delivery, on:

> Richard R. Weir, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road
> Suite 200
> Wilmington, Delaware 19806

and by e-mail and first class mail, postage prepaid, on:

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643

> /s/ John S. Spadaro
> John S. Spadaro

129759