# TAB
# 6

1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF DELAWARE

3

4

5 AES PUERTO RICO, L.P., )

6      Plaintiff,          )

7 VS.                      )    No. 04-1282-JJF

8 ALSTOM POWER, INC.,      )

9      Defendant.          )

10

11

12

13

14

15

16      VIDEOTAPED DEPOSITION OF FRANK GABRIELLI, a witness

17 called on behalf of the Plaintiff, pursuant to the Federal

18 Rules of Civil Procedure, before Esmeralda Guzman, a

19 Certified Shorthand Reporter and Notary Public in and for

20 the State of Connecticut, taken at Alstom Power, Inc., 2000

21 Day Hill Road, Windsor, Connecticut, taken on Thursday,

22 January 12, 2006, commencing at 10:09 a.m.

23

24

Page 238

1    A. I think I did, yes.

2    Q. Would you have that e-mail in your computer?

3    A. I think I do.

4    Q. I'll ask you to get that e-mail and produce it to

5 us before you leave this evening.

6    A. Okay.

7    Q. I was waiting to see if your lawyer was going to

8 object.

9    A. No, no, it's just that I have to go back to my

10 computer, my system, and all that.

11    Q. If you'd like, I'd be willing to say you can

12 provide it to your lawyer as long as your counsel will

13 stipulate on the record he'll turn it over to us tomorrow.

14    MR. VITTORIA: I have to take a look

15    at the report. I'm not going to be able to

16    stipulate to anything. To look at the

17    document.

18    MR. WILLIAMS: If it's not

19    privileged, will you turn it over tomorrow,

20    Mr. Vittoria?

21    MR. VITTORIA: I'll have to take a

22    look at it.

23    MR. WILLIAMS: To make a

24    determination as to whether you'll turn

Page 239

1    over a non-privileged document tomorrow?

2    MR. VITTORIA: I don't know how long

3    the document is, Dan. It could be five

4    hundred pages long. I'm not going to be

5    able to turn over something. I'm not going

6    to stay up until two o'clock this morning

7    reading through a document to make sure

8    that it's not privileged and could be

9    turned over tomorrow. So I'm not going to

10    put on the record that I will produce it

11    tomorrow if it's not privileged because I

12    won't necessarily know.

13    Q. (By Mr. Williams) Mr. Gabrielli, how long do you

14 think your comments were on the Altran report?

15    A. My e-mails normally are not that long, so you

16 know, but I don't remember if I did any kind of markup of

17 the document or anything. That's the problem.

18    Q. So certainly fewer than twenty pages?

19    A. I would think so.

20    MR. WILLIAMS: I'll ask again that

21    you produce it at the end of this

22    deposition then.

23    MR. VITTORIA: And you can ask.

24    MR. WILLIAMS: And will you?

Page 240

1    MR. VITTORIA: I will do my best.

2    Q. (By Mr. Williams) Do you recall anything else you

3 did with respect to the corrosion of the AES Puerto Rico

4 facility after September 2004?

5    A. I don't really recall doing anything else after

6 that, after the review of the report. I think that was my

7 last contact with them.

8    Q. Is it your general practice to save e-mails you

9 send that relate to work matters?

10    A. If it relates to clients, subject matter,

11 technical matters that I could use in the future as a

12 reference, I keep those.

13    Q. Did there come a time when you were asked to

14 gather your paper documents relating to the work you did

15 with respect to the AES Puerto Rico facility?

16    A. I don't recall ever receiving any notice to do so.

17    Q. Do you recall ever gathering up all of your paper

18 documents about the AES Puerto Rico project and turning

19 them over to anyone?

20    A. No, I started reviewing some of this information

21 as we talked this morning once I found out I was being

22 deposed.

23    Q. Have you provided your counsel with a copy of

24 every piece of paper that you have relating to the

Page 241

1 corrosion of the ESP collector plates at the AES Puerto

2 Rico facility?

3    A. I gave him whatever, I mean, whatever I had, I

4 think. Whether I gave him everything I have, I don't know,

5 but I give him all of the various correspondence that I

6 could find.

7    Q. So you never made a search to make sure you gave

8 him every single document you had relating to it?

9    A. My filing system is not that great, so you know, I

10 can't swear I gave him everything, no.

11    Q. What about electronic documents? Did there come a

12 time when you were asked to search your computer for all

13 documents relating to this litigation?

14    A. Not per se, no. I mean, I did it on my own, but I

15 was never requested to do a search.

16    Q. And when you say you did it on your own, do you

17 mean you looked at them for your own review so you could

18 prepare for this deposition today?

19    A. Correct.

20    Q. But you didn't turn them over to anyone?

21    A. Some documents I did give copies to Tony.

22    Q. Some you did?

23    A. Yes.

24    Q. Now, I'm not going to ask what your counsel told

61 (Pages 238 to 241)