# TAB 7

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 24, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

   Re: **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Jim:

   Thank you for your letter concerning additional ALSTOM employees from whom AES-PR has requested electronic documents. I appreciate your willingness to search for and produce the electronic documents for Mr. Bulewich, Mr. Campbell, and Mr. Francis. As for the seven additional persons AES-PR identified, while reserving the right to move to compel production of their electronic documents in the future, we are willing to table this request until after we have had an opportunity to review the additional electronic documents ALSTOM has agreed to produce. Last week we sent you electronic documents for seven of the persons ALSTOM identified in its request to AES-PR for additional electronic documents. We will respond shortly with our position with respect to the remaining persons ALSTOM identified.

   We have a number of pressing open discovery issues that I hope we can resolve quickly. Below I list them, and I suggest that we review them on our next bi-weekly discovery conference call.

   1) We are waiting to receive electronic documents for the three individuals identified above, as well as for Mr. Barber. Please advise when we can expect to receive these documents.

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
January 24, 2006
Page 2

2)  We have not yet received ALSTOM's electronic privilege log. Please advise when we can expect to receive it.

3)  Mr. Gabrielli testified at his deposition that he had responsive paper and electronic documents that he had not produced in this litigation. On January 13, 2006, I wrote to Tony Vittoria to request them, but I have not received a response. Please advise when we can expect to receive Mr. Gabrielli's documents.

4)  During his deposition, Mr. Gabrielli testified that he had written an e-mail concerning the inadequacy of Altran's September 2004 report about the AES-PR ESP corrosion, and he said he believed he had retained a copy of the e-mail. You may recall that, when we met at your offices in December, I specifically asked if such a document existed, and Mr. Vittoria later informed me that he had confirmed that all of Mr. Gabrielli's responsive documents had been produced. At Mr. Gabrielli's deposition, when Mr. Gabrielli testified that he had exactly the e-mail I had previously inquired about (but which was not among the documents ALSTOM had produced), I asked him to produce it then and there so that I could question him about it. Mr. Vittoria refused to allow Mr. Gabrielli to do so, but Mr. Vittoria then turned the e-mail over to me the next day. In light of the foregoing, we request that ALSTOM stipulate that the document, a copy of which is enclosed with this letter, is an authentic copy of an e-mail that Mr. Gabrielli wrote to William Jarvis on or about September 13, 2004 providing Mr. Gabrielli's professional assessment of the September 2004 Altran report on the corrosion in AES-PR's ESPs.

5)  Your letter of last week says that ALSTOM has not yet been able to confirm whether there is an ALSTOM control room log post-dating September 21, 2002 and that, in any event, it has not yet located such a log. When reviewing ALSTOM's paper documents in Windsor, in Box No. P-00119, we found a 29-page excerpt of the log under a fax cover page from "Abigail" to Gary Mattice. A copy of the cover page is enclosed. The pages attached to the fax cover are numbered non-contiguously from pages 97 through 152, and the date-range for the faxed excerpts begins with October 26, 2002, thus it is clear that this log existed at some point. Please confirm for us whether ALSTOM is able to locate this log.

6)  On January 9, 2006, I wrote to Mr. Vittoria concerning deficiencies we have identified with ALSTOM's hard-copy document privilege log. I requested that ALSTOM either produce specified documents or explain its basis for refusing to do so. I have not received a response to that letter.

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
January 24, 2006
Page 3

      7)    ALSTOM's response to AES-PR's Interrogatory No. 14 was due on January 23, 2006, but we have not received it and no notice of service has been filed with the Court.

      By my calculation, our next discovery conference call should take place this week. If it would be possible for us to schedule the teleconference for Wednesday, please e-mail me as to your availability. Otherwise, because I will be out of the office on Thursday and most of Friday, I suggest we have the conference call early next week.

      Sincerely,

      Daniel D. Williams /gk

Enclosures

cc:    Anthony Vittoria, Esquire (via e-mail)
       Michael Schollaert, Esquire (via e-mail)

**Frank Gabrielli**
09/13/2004 04:02 PM
Phone: + 1-860-285-5746
Dept: PD&T Mechanical Sys & Materials Eng

To: William M Jarvis/USWIN01/Power/ALSTOM@GA
cc: Frank Gabrielli/USWIN01/Power/ALSTOM@GA, Karl Hognefelt/USKNL01/Power/ALSTOM@GA
Subject: Re: AES/PR: Final Draft Altran Report

Security Level:?   Internal

Bill,

I reviewed the referenced report. It is basically a collection of analytical data/results without a root cause analysis. The report provides a reference to show the exceptionally high corrosion rate of these plates when compared to other "wet" corrosion processes but provides no discussion or evaluation of the analytical results that would account for this aggressive corrosion. A conclusion was made that "Chemical analysis confirms the scale on the outside of the plates to be an iron oxide corrosion product. This type of oxide is typical of that expected for corrosion with sulfuric acid." It is well established that iron oxide is the corrosion by-product of almost all aqueous corrosion processes (of carbon steel). Also, there were no analytical results that provided a direct link to sulfuric acid or even a discussion of a possible scenario that would form a reasonable basis for sulfuric acid corrosion. As a matter of fact, the ESD spectrums of chemical substances at the metal surface indicate chlorine (chlorides) to be more abundant than sulfur and in some cases it is the only significant corrosive species present (figure 22). The impact of chorides( hydrochloric acid) or the significance of their presence at the metal/scale interface (corrosion zone) seemed to have been ignored.

I would not classify this as an assessment or root cause analysis report.

Frank


William M Jarvis

---

**William M Jarvis**
09/10/04 08:39 AM
Phone: +1-860-285-9059
Dept:

---

To: Frank Gabrielli/USPPL/AAP-TEMP, Karl Hognefelt/USKNL01/Power/ALSTOM
cc:
Subject: AES/PR: Final Draft Altran Report

Security Level:?   Internal

Gentelmen,

At long last the report on the study of the AES/PR ESP plates commissioned by Liberty Mutual.

Would appreciate comments from your group.

**AES TOTAL ENERGY PROJECT
ALSTOM POWER INC
2 X 250 MW CFB BOILERS
GUAYAMA, PUERTO RICO**

No. of pages including cover sheet: 29

DATE:       April 3, 2003

TO:         Gary Mattice

FAX NO.:    1-860-285-9527

FROM:       Abigail

FAX NO.:    1 (787) 866-8638

PHONE NO.: 1 (787) 866-0045

E-MAIL:     areyes427@prtc.net

SUBJECT:    Copies of Control Room Log Book as requested

Have a nice day ☺

ALDEC05 - 01184