# TAB 8

Page 1

ROUGH DRAFT    ROUGH DRAFT    ROUGH DRAFT

JUDICIAL DISTRICT OF REPLACE AT REPLACE

------------------------------------X

AES PUERTO RICO, LP

VS            Civ. No. 04-1282-JJF

ALSTOM POWER, INS.

------------------------------------X

ROUGH DRAFT of the Deposition of Thomas Coleman taken in accordance with the Federal Rule of Civil Procedure at the Law Offices of Cowdery Ecker & Murphy, 760 Main Street Hartford, Connecticut, Before Holly Murphy, a Licensed Shorthand Reporter and Notary Public, in and for the State of Connecticut at 9:38 AM on February 23, 2006.

Holly Murphy, License No. 177
DEL VECCHIO REPORTING SERVICES
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE, MADISON, CT  06443
203 245-9583  800 839-6867
FAX 203 245-2760
HARTFORD     NEW HAVEN          STAMFORD

Page 126

```
     Do you' that?
 A.  Yes I do.
 Q.  EEC was the entity developing the
/STARTS up procedures for the CDS is that
correct?
 A.  That is correct.
 Q.  Did you agree that EEC had not been
able to clearly demonstrate proven start up
procedures for the CDS until sometime in October
2002?
     MR. EDWARDS: Same objection.
 A.  This letter is DFD's posturing, if you
would call it that, on several items. One thing
they failed to mention in here is they're the
same deficiencies with the auxiliary equipment
that they supplied including the RO unit,
including the water treatment facility which has
a direct effect on this equipment.
     The procedures as stated before needed to
be modified and changed. They went through the
same process that we did with their supplied
equipment.
     What we're seeing here is only in my
opinion posturing on their part and failure to
mention any of their deficiencies on their
```

Page 127

```
 1  supplied equipment.
 2   Q.  So it's not unusual for procedure /TOS
 3  change during the commissioning phases of the
 4  project regardless of what the equipment is is
 5  that right?
 6   A.  That is correct.
 7   Q.  Did you produce documents to the
 8  attorneys at Ober Kaler in connection with this
 9  litigation?
10   A.  No I did not.
11   Q.  You didn't provide any documents to Mr.
12  Edwards or any of the attorney at Ober Kaler in
13  connection with this litigation?
14   A.  No I did not.
15   Q.  Did you search your computer at your
16  office for documents relate /TODZ this
17  litigation?
18   A.  No I did not.
19   Q.  Did you search your files in your
20  office for documents in connection with the
21  litigation?
22   A.  No I did not.
23   Q.  Do you have a home computer?
24   A.  Yes I do.
25   Q.  Do you keep any business document /OPBS
```

Page 128

```
 1  your home computer?
 2   A.  No.
 3   Q.  Did you search your AOL e-mail account
 4  for documents responsive to this litigation?
 5   A.  No I mean there no I done keep my
 6  e-mail my personal for more than whatever the
 7  holding time is. If I need to keep them
 8  typically now I don't even use my personal
 9  computer. Everything goes through my company
10  laptop.
11   Q.  Did you prepare for this deposition?
12   A.  Yes.
13   Q.  What did do you to prepare for this
14  deposition?
15      MR. EDWARDS: I instruct you that you
16  are not to discuss the contents of any discussion
17  that you had with Alstom counsel in responding to
18  that question. So we do not invade the attorney
19  client privilege.
20   Q.  Let me ask it differently to help did
21  you meet with Mr. Edwards or any of the attorneys
22  at /OE cay in connection with preparing for this
23  deposition just basically yes or no?
24   A.  Yes.
25   Q.  How long did who did you meet with?
```

Page 129

```
 1   A.  Mr. Edwards.
 2   Q.  When did you met with Mr. Edwards?
 3   A.  Yesterday /AOFRPB.
 4   Q.  How long did you meet with Mr. Edwards?
 5   A.  Approximately four hours.
 6   Q.  Did you review any documents in
 7  connection with that meeting?
 8   A.  Yes.
 9       MS. SAGERSON: That's all I have.
10
11  CROSS EXAMINATION
12  BY MR. EDWARDS:
13   Q.  Showing you what was marked as exhibit
14  7 during the course of your deposition. You had
15  a discussion with counsel about item number 15 in
16  this exhibit which is a page that end in Bates
17  number 6355 I believe.
18       Do you recall that discussion?
19   A.  Yes, I do.
20   Q.  What are the nozzle quick disconnects?
21   A.  The nozzle quick disconnects are what
22  attaches the flexible hose that runs from the
23  nozzle, injection nozzle to the supply header.
24  The nozzle quick disconnects allows you to
25  separate the system. Separate the flexable hose
```