IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 04-1282-JJF |
| ALSTOM POWER INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF
<u>"AESC.COM" E-MAIL AND ASSOCIATED ELECTRONIC DOCUMENTS</u>**

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE  19801
(302) 888-3222

James E. Edwards
Anthony F. Vittoria
Michael A. Schollaert
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland  21202-1643
(410) 685-1120
Fax:  (410) 547-0699

Counsel for Defendant ALSTOM Power Inc.

Date:  March 17, 2006

ALSTOM Power Inc. ("ALSTOM"), defendant, by its counsel, pursuant to Fed. R. Civ. P. 37(a)(2)(B) and Rules 7.1.2 and 7.1.3 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware ("Local Rules"), hereby files this reply to Plaintiff's Opposition to Defendant's Motion to Compel Production of "AESC.COM" E-mail.

## I.    INTRODUCTION

AES Puerto Rico, L.P.'s ("AES") Opposition to Defendant's Motion to Compel Production of "AESC.COM" E-mail and Associated Electronic Documents ("Opposition") is its latest attempt to thwart ALSTOM's efforts to obtain appropriate discovery under the Federal Rules.  While AES attempts to set forth multiple reasons for shielding the production of the requested documents, the Opposition fails to substantiate a valid basis for its continued refusal to produce the relevant and discoverable documents properly requested by ALSTOM.  Under the Federal Rules and this Court's Default Standard for Discovery of Electronic Documents ("Default Standard"), AES is required to produce the requested documents in a timely fashion and solely bear the costs of that production.

## II.    ARGUMENT

**A.    AES Has Failed To Sustain Its Burden Of Showing That The Cost Of Producing The "AESC.COM" E-mail Should Be Shifted To ALSTOM.**

**1.    The Court Should Disregard The Affidavit Submitted By AES.**

As noted in its Motion, ALSTOM served AES with a Rule 30(b)(6) notice of deposition that requested AES to produce a witness that could testify on the steps necessary to retrieve e-mails from back-up tapes and the costs associated with those activities.  The first witness that AES produced could provide none of that information.  Because of AES's failure to produce a

1

competent witness, ALSTOM properly requested that the deposition be reconvened and that, this time, AES produce a witness who could provide the requested testimony.

As correctly set forth in footnote 1 of AES's Opposition, the parties agreed that the deposition would be continued on March 3, 2006, which was after ALSTOM filed the subject motion. What AES neglects to inform the Court is that, again, the witness produced by AES could provide no information as to the costs associated with retrieving the aesc.com e-mail or the time that it would take to retrieve that e-mail:

> Q. Do you know what the costs would be to retrieve AES Puerto Rico e-mail from the AESC.com backup media?
>
> A. I don't know.
>
> Q. Do you know how long it would take?
>
> A. I don't know.

(*See* Tab 1, 30(b)(6) Deposition of Luis Canepari, at 56.)

Under the Federal Rules, AES is obligated, when served with a notice of deposition pursuant to Rule 30(b)(6), to provide a deponent, whether or not an employee of AES, who can provide the information requested in that notice. It is not a sufficient substitute for AES to provide an affidavit, crafted by a lawyer, regarding the issues on which the corporate designee was supposed to provide testimony because ALSTOM cannot examine the affiant on any of the assertions made in the affidavit. This was, of course, AES's intention – to provide some information relevant to this issue insulated from any type of examination.

Pursuant to Rule 30(b)(6), AES could have, and should have, produced the affiant from Kroll Ontrack to testify on its behalf as to the subjects explicitly set forth in ALSTOM's notice of deposition. Accordingly, because AES was obligated to provide testimony on this subject, but failed to do so on <u>two</u> separate occasions, the Court should ignore the affidavit submitted by

2

AES and rule that AES has failed to sustain its burden of showing that the costs of retrieving the e-mail at issue should be shifted to ALSTOM.

> 2. **The Affidavit Indicates That The Costs And Effort Associated With Retrieving The AESC.COM E-Mail Was The Result Of AES's Or Its Consultant's Improper Preservation Techniques.**

Even if the Court decides to consider the affidavit submitted by AES, the affidavit fails to sustain AES's burden of showing that the costs and effort associated with retrieving the aesc.com e-mail should be shifted to ALSTOM. That is simply because the affidavit clearly indicates that the costs and effort needed to retrieve that e-mail have been caused by AES's or its consultants own improper preservation techniques.

Specifically, it is apparent that AES and Kroll Ontrack failed to log its back-up tapes from its servers[1] so as to facilitate the retrieval of the information, if necessary. (*See* Tab 2, Nichols Aff., at ¶ 6.) AES's apparent failure to properly log its back-up tapes significantly increases the cost of retrieving the information because it is now necessary to search all of the related back-up tapes rather than just the back-up tapes containing the First Class e-mail requested by ALSTOM. (*See id*. at ¶¶ 6-7.)

AES should not be permitted to shift costs of retrieval to ALSTOM because the majority of those costs are the result of AES's and Kroll Ontrack's improper preservation of the data and failure to follow standard industry practices in that regard. (*See id.* at ¶ 11.)   Accordingly,

---

[1] When a server is backed up on tape, it is normal practice to create a log documenting when and where the data was collected and onto which specific media it was saved during the data collection. (*See* Tab 2, Nichols Aff., at ¶ 6.) The tape is then labeled to correspond with the log, creating the most efficient way to locate data when it is necessary to restore a specific file, especially when distinguishing between the restoration of a tape from an e-mail server and a tape from a file server. (*Id*.) Even if the exact data that exists on the server is not known, the tapes that are associated with each server should have been labeled to indicate which server's data the tape contains. (*Id*.)

3

AES's request to shift the costs of retrieval of the relevant and discoverable information should be denied.

        **3.**     **The Affidavit Submitted By AES Indicates That Its Consultant Would Employ Inefficient Techniques To Recover The AESC.COM E-mail.**

In addition to the fact that the affidavit submitted by AES indicates that it preserved the e-mail in question in an improper manner, the affidavit also indicates that it intends to retrieve the e-mail using very inefficient techniques. In particular, Mr. Muilenberg seems to indicate that his firm, Kroll Ontrack, would employ only a single computer to retrieve the e-mail in question and utilize that machine for only 40 hours per week. (*See* Tab 2, Nichols Aff., at ¶ 8.) Obviously, utilizing multiple computers – which should be possible for Kroll since it is large enough to service "law firms, Fortune 500 companies . . . and the Department of Defense" – in parallel would increase exponentially the speed of the retrieval of the subject e-mail.

Electronic discovery consultants, such as Kroll Ontrack, are capable of restoring multiple tapes simultaneously, utilizing multiple computers which are capable of carrying out this process 24 hours a day, 7 days a week. (*See id.*) Therefore, by continuously operating multiple computers, AES would be able to restore the data in significantly less time than indicated in its Opposition.[2] It is apparent that AES chose to insulate its testimony from cross examination and inflated time estimates to retrieve the aesc.com e-mail to fulfill its self-serving goal of convincing the Court that the e-mail could not be produced in time to be used at trial.

Once the data is restored, the aesc.com e-mail requires a conversion for filtering and review of the e-mail. While AES asserts in its affidavit that such a process would take 12-24 days (2-3 days per custodian), most electronic service providers can complete the process in a

---

[2] Again, because AES failed to produce an appropriate 30(b)(6) deponent to testify to these matters, ALSTOM is unable to provide a more precise estimate of the time necessary to restore the aesc.com e-mail.

much quicker timeframe. (*See id.* at ¶ 9.)[3]  Finally, once the data is in a useable format, AES stated that it could run search terms and other filtering techniques over the retrieved data, estimating a yield of 360,000 to 840,000 pages based upon "Kroll Ontrack historical averages." The estimates, however, have no reference to the facts of this case.  It is extremely difficult to accurately estimate the amount of pages without restoring a sample of the data. (*See id.* at ¶ 10.) Therefore, it is likely that AES's time and cost estimates for this type of work could be dramatically reduced.

Based upon its own affidavit, AES proposes to employ inefficient techniques to restore the data apparently in an effort to persuade the Court to deny ALSTOM's motion.  The time and cost estimates provided by AES are unnecessarily conservative due to inefficient processes and the failure to account for the resources available to a large electronic discovery consultant. (*See id.* at ¶ 12.)

### 4. Cost-Shifting Is Inappropriate Under The Present Circumstances.

The Opposition by AES fails to justify shifting the costs of retrieving the aesc.com e-mail to ALSTOM.  Contrary to AES's assertion, the Default Standard specifically states, "[g]enerally, the costs of discovery shall be borne by each party." (Default Standard, at ¶ 9.)  Only upon a showing of "good cause" will the Court apportion the costs of discovery. (*Id*.)  AES fails to set forth facts sufficient to establish the extraordinary remedy of cost-shifting.

In this lawsuit, AES seeks approximately $40 million in damages from ALSTOM; ALSTOM does not have a counterclaim against AES.  ALSTOM has, without attempting to shift the costs to AES, incurred substantial costs well beyond the $70,000 to $150,000 alleged in its Opposition to preserve, retrieve and produce its electronic information to AES.  Therefore, the

---

[3] Alternatively, AES could conduct a native review of the files thereby eliminating the cost and time associated with the conversion of the First Class e-mail.

5

facts simply do not support "good cause" sufficient to shift the costs of complying with its discovery obligations to ALSTOM.

Recognizing the presumption that costs are borne by the responding party, in *Zubulake v. UBS Warburg LLC*, the Court adopted a more restrictive test than set forth in *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y. 2002), the case relied upon by AES in its Opposition. *See* 217 F.R.D. 309, 321-23 (S.D.N.Y. 2003) (stating that the *Rowe* factors undercut the presumption that the responding party pays).[4] The *Zubulake* Court employed a three-step analysis to determine whether cost shifting is appropriate. In the first step, the Court must make a threshold determination that "electronic data imposes an 'undue burden or expense' on the responding party," and that the data is "inaccessible." *Id*. at 318, 324. Although the data requested by ALSTOM is stored on back-up tapes and therefore presumptively "inaccessible," AES is unable to satisfy this threshold step because the costs asserted in its Opposition do not impose an undue burden on a Plaintiff seeking to recover approximately $40 million in damages. In the second step, the Court requires a factual showing in support of fee shifting. *Id*. at 324. In doing so, the producing party must restore and produce a sample of the inaccessible materials and meticulously document the amount of time and money spent in its production. *Id*. at 323-24. The affidavit supplied by AES fails to meet this element as well; rather, the affidavit relies upon "historical averages" and estimates that have no basis or relation to this case.

---

[4] In its Opposition, AES quotes the proposition in *Rowe* that the Court ordered cost-shifting where the documents were not "likely to be a gold mine" of important documents. In *Zubulake*, the Court specifically criticized the requirement to demonstrate the likelihood of a "gold mine" of important documents as contrary to Rule 26(b)(1) which permits discovery of "any matter" that is "relevant to a claim or defense." *Zubulake*, 217 F.R.D. at 323.

Finally, the Court employed a seven factor balancing test to determine whether or not to shift the costs, including: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability for each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *Id*. at 322. Even if the Court were to apply these factors, the evidence set forth by AES fails to support shifting the costs to ALSTOM to restore the aesc.com e-mail.

**B.    AES's Complaints Regarding The Timing Of ALSTOM's Motion Are Unfounded.**

In its Opposition, AES complains about the timing of ALSTOM's Motion. AES's complaints are unfounded, however, because the timing of the Motion was forced by AES's Reponses to ALSTOM's Second Set of Interrogatories, AES's refusal to produce a competent 30(b)(6) deponent prepared to testify as to the cost of retrieving data resonant on back-up tapes, AES's protracted electronic document production, and the dictates of this Court's Default Standard. AES highlighted the importance of information and documentation from 2002 and earlier when it alleged, for the first time in November of 2005, that ALSTOM and/or EEC amended the operation and maintenance requirements central to many of the issues in this case. ALSTOM requested production of the documents at issue shortly thereafter.

Rather than rely upon AES's generic representation that retrieval would cost "hundred of thousands" of dollars, ALSTOM noticed a Rule 30(b)(6) deposition for documents specifically listing the "location of any back-up tapes of computer data, and the cost of retrieving data from

7

those back-up tapes," as a topic of examination.[5]  As stated earlier, neither the original deponent who testified on January 16, 2006, nor the second deponent, who testified at the reconvened deposition on March 3, 2006, were prepared or able to testify as to the cost of retrieving data from back-up tapes.

Moreover, AES did not "complete" its electronic document production until January 30, 2006.[6]  Following the completion of that production ALSTOM attempted to "meet and confer" with AES regarding the aesc.com e-mail that AES has refused to produce.  It was only after these conferences that ALSTOM filed its Motion.  This is in strict compliance with the Court's Default Standard, which requires a request for limited accessibility e-mail to be made after the completion of a party's initial electronic document search (Default Standard, at ¶ 9), and the Local Rules' requirement that ALSTOM attempt to resolve the matter prior to seeking intervention by the Court.  (Local Rule 7.1.1.)

Finally, AES never indicated any time constraints with respect to restoring the aesc.com e-mail until February 15, 2005, when AES stated it would take several months to complete the process.  Accordingly, ALSTOM's request was not an "eleventh hour" or untimely request as inappropriately described by AES.  ALSTOM acted with reasonable diligence in pursuing the production of the aesc.com e-mail and associated electronic document only to be met with repeated refusal to produce the requested documents and attempts to otherwise prevent their discovery and ultimate use at trial.

---

[5] It should be noted that ALSTOM originally attempted to schedule the 30(b)(6) deposition for documents and things on November 15, 2005, though issuance of a notice on October 28, 2005.  AES refused to produce a deponent in time for ALSTOM to use that testimony at the December 5, 2005 discovery dispute hearing in which electronic document production was a major issue.

[6] AES has produced electronic documents as recently as March 12, 2006.

C.  **The E-mail In Question Is Indisputably Relevant.**

AES seems to argue in its Motion that any documentation in its possession that is dated prior to November 29, 2002, "could not possibly [be] relevant to the issues in dispute in this litigation." This assertion is quixotic given that AES is relying heavily upon documents that were created in the late summer and early fall of 2002 as a basis for its argument that the Operations and Maintenance Manuals ("O&M Manuals") provided for this equipment were altered or modified. In particular, in response to Interrogatories requesting information relating to any alleged modification of the O&M Manuals, AES responded that:

> In September or October of 2002, EEC and/or ALSTOM presented revised operating procedures to AES-PR in the "EEC Control Room Reference" book . . . In addition, in the fall of 2002, Bill Van Hooser [sic], EEC, orally directed AES-PR personnel to operate the CDS at an outlet temperature at approximately 150 to 152 degrees . . . In addition, ALSTOM and EEC modified the August 2001 EEC O&M Manual procedures by directing commissioning personnel to operate the CDS at an outlet temperature in the 150 to 152 degree range in the period before AES-PR began commercial operation of the Plant on or about November 28, 2002.

(*See* Tab 3, AES's Response to ALSTOM's Second Set of Interrogatories, at Response to Interrogatory No. 15.)

Documents prior to November 29, 2002, are therefore clearly relevant to the facts at issue in this case. Importantly, the contract between ALSTOM and D/FD contains an express integration clause and a provision which provides that the contract, and any documents incorporated therein, cannot be modified or amended without a writing executed by both ALSTOM and D/FD. (*See* Tab 4, at Art. 1.0.) To the extent that AES is asserting that the "revised operating procedures" and oral instructions referenced in its Answers to Interrogatories are valid and binding despite the integration clause and written changes provision, then the

9

information and knowledge exchanged and possessed by the parties at that time is indisputably relevant. AES cannot allege facts, central to issues of this case, occurring prior to November 28, 2002, and simultaneously refuse to produce documents which may tend to confirm or deny those allegations.

Consequently, AES, not ALSTOM, highlighted the importance of documents prior to November 2002 when it submitted it Response to ALSTOM's Second Set of Interrogatories on November 28, 2005. Shortly after receiving AES's response, ALSTOM renewed its request for the aesc.com e-mail during a discovery meeting held on December 9, 2005, pursuant to the Court's request for the parties to informally settle the discovery disputes set forth on the December 7, 2005 discovery hearing. It was that request that led to the present Motion.

Finally, the bulk of AES's damages claims stem from its alleged failure to comply with its environmental permits. Because permitting for the Plant occurred prior to construction of the Plant, documents relating to the permitting process preceding the construction of the Plant are also indisputably relevant.

### III.    CONCLUSION

The aesc.com e-mail that AES has refused to produce is discoverable. AES has not satisfied its burden of showing that it should be allowed to withhold production of that e-mail or apportion some of the cost of producing it to ALSTOM. Accordingly, the Court should compel AES to produce that e-mail, in the format agreed to by the parties, at its own cost and award ALSTOM the fees and costs incurred in filing the Motion to Compel and this Reply.

ALSTOM POWER INC.

/s/ Daniel W. Sciapli
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, Delaware 19806
(302) 888-3222


James E. Edwards, Jr.
Anthony F. Vittoria
Michael A. Schollaert
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
(410) 685-1120
Fax: (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of March, 2006, a copy of the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel Production of "AESC.COM" E-mail was filed with the Court using CM/ECF, which will send copies of those documents to: John S. Spadaro, Esquire, Murphy Spadaro & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware 19805. In addition, courtesy copies were served, via electronic mail, upon Daniel D. Williams, Esquire, Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, D.C. 20005.


/s/ Daniel W. Sciapli
Daniel W. Scialpi (#4146)

11