IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 04-1282-JJF |
| ALSTOM POWER INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO ALSTOM'S SECOND
MOTION TO COMPEL PRODUCTION OF
<u>ELECTRONIC DOCUMENTS OR, IN THE ALTERNATIVE, FOR SANCTIONS</u>**

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, Delaware  19806
(302) 888-3222

James E. Edwards, Jr.
Anthony F. Vittoria
Michael A. Schollaert
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland  21202-1643
(410) 685-1120
Fax:  (410) 547-0699

Counsel for Defendant ALSTOM Power Inc.

Date:  March 20, 2006

ALSTOM Power Inc. ("ALSTOM"), defendant, by its counsel, pursuant to Fed. R. Civ. P. 37(a)(2)(B) and Rules 7.1.2 and 7.1.3 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, hereby files this reply to Plaintiff AES Puerto Rico, L.P.'s Opposition to ALSTOM's Second Motion to Compel Production of Electronic Documents or, in the Alternative, for Sanctions.

## I.   INTRODUCTION

In AES Puerto Rico, L.P.'s ("AES") Opposition to ALSTOM's Second Motion to Compel Production of Electronic Documents or, in the Alternative, for Sanctions ("Opposition"), AES states "there is absolutely no legal basis for the relief ALSTOM seeks" and that the Motion should be denied because of ALSTOM's alleged unclean hands.  Beyond its attempt to divert the Court's attention away from its own discovery failings by pointing to ALSTOM, AES's arguments are not based in fact and should be rejected by the Court.  Further, because AES has effectively admitted that it has failed to produce numerous electronic documents, despite this Court's Order, the Court should grant ALSTOM's motion and order that an adverse inference instruction will be given at the trial of this case.

## II.   ARGUMENT

**A.   ALSTOM Is Legally Entitled To A Spoliation Instruction As A Result Of AES's Failure To Comply With This Court's Order Requiring The Production Of All Electronic Documents**

Although it may choose to ignore legal arguments contrary to its position, AES's discovery failures warrant a spoliation instruction since it has failed to preserve and produce responsive electronic documents despite its obligation to do so.  As one Federal District Court in this Circuit recently observed,  "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or

1

reasonably foreseeable litigation." *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd*., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). When a party has reason to anticipate litigation, it has an affirmative duty to preserve all evidence which <u>might</u> be relevant to the issue of the lawsuit. *In re Wechsler*, 121 F.Supp. 2d 404, 415 (D. Del 2000). Where this duty has been breached, it is within the inherent authority and discretion of the Court to order sanctions so as to maintain its integrity and "level[] the playing field or restor[e] the prejudiced party to the position it would have been [in] without spoliation." *Mosaid Techs.,* 348 F. Supp. 2d at 335.

The sanctions available for the spoliation of evidence include the outright dismissal of a claim, the suppression of evidence, or an adverse inference instruction. The type of sanction imposed directly relates to the conduct and culpability of the spoliating party. *Mosaid Techs.,* 348 F. Supp. 2d at 335. AES seems to take solace in its position that no sanctions are available unless the moving party can prove the evidence was "destroyed intentionally." This, however, is simply not the case. As the Court in *Mosaid Techs* observed, "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference." *Id*. at 338.

AES relies primarily on the case of *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326 (3d Cir. 1995), to support its argument that documents must be intentionally destroyed to warrant a spoliation instruction. *Brewer*, however, discusses the alleged destruction of hard copy documents – an employee's personal file – not electronic documents. Therefore the holding in *Brewer* is easily distinguishable. There has been a shift in the standard for a spoliation instruction with respect to electronic documents as a result of the fundamental difference between hard copy and electronic documents, especially in regards to a party's obligation to preserve electronic documents once litigation becomes reasonably foreseeable. Accordingly, a

2

party's failure to preserve electronic documents, whether or not intentional, is sufficient to warrant a spoliation instruction.

Indeed, in *Mosaid Technologies*, the court considered whether the Third Circuit requires documents to be "knowingly or intentionally" destroyed or whether the accidental or negligent destruction of documents is sufficient to warrant an adverse inference instruction. 348 F. Supp.2d at 337-38. Ultimately, the court concluded that negligent destruction of electronic documents is sufficient to give rise to a spoliation inference. *Id.* at 338; *see also Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).

Accordingly, an adverse inference instruction is appropriate if (1) the party having control of the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were negligently destroyed with a "culpable state of mind"[1] and; (3) the evidence destroyed or withheld is relevant to the claims or defenses. *See Zubulake v. UBS Warburg LLC*, 02 Civ. 1243 (SAS), 2004 U.S. Dist. LEXIS 13574, at *31 (S.D.N.Y., July 20, 2004) (attached at Tab 1.); *accord Mosaid Techs.,* 348 F. Supp. 2d at 335. Whether a spoliation instruction is appropriate is within the sound discretion of the Court. *Mosaid Techs.,* 348 F. Supp. 2d at 335.

### 1. The Evidence Strongly Suggests that Electronic Documents were Destroyed After Litigation Was Reasonably Foreseeable

The first element necessary for a spoliation instruction has been satisfied because of AES's abject failure to issue a litigation hold in a timely fashion, its failure to take any efforts to preserve its electronic documents for months after litigation was reasonably foreseeable, and its failure to begin collecting its electronic documents from its central servers until approximately

---

[1] The "culpable state of mind" element can be satisfied through demonstrating that electronic documents were destroyed, "knowingly, even without intent to [breach a duty to preserve it], or *negligently*." *Residential Funding*, 306 F.3d at 108 (citation omitted) (emphasis in original).

3

21 months after issuing its preservation memorandum.  Such conduct permitted both the intentional and accidental destruction of documents after litigation was reasonably foreseeable.

Throughout discovery in this matter, AES has tacitly admitted that it began preparations to file a lawsuit against ALSTOM in the spring of 2004.  Specifically, AES has asserted the work product doctrine in its privilege log for a document dated April 15, 2004.[2]  Accordingly, AES's duty to ensure the preservation of its electronic documents began in March of 2004.  Notwithstanding the foregoing, AES failed to issue a "litigation hold" or preservation letter until September 29, 2004 – over six months after litigation was reasonably foreseeable.  *See* Opposition at Tab 1.

In addition to the late issuance of the litigation hold, AES took no other efforts to ensure the preservation of its electronic documents beyond the mere issuance of its September 29, 2004 memorandum.  AES's obligation to preserve relevant documents does not end with the implementation of a "litigation hold."  *See Zubulake*, 2004 U.S. Dist. LEXIS 13574, at *31.  As the court observed in *Zubulake*, "[T]o the contrary, that's only the beginning.  Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents."  *Id*. at *31-*32.

Based upon the testimony provided to date, AES failed to take any steps whatsoever to preserve its data beyond issuing a litigation hold.  For instance, when ALSTOM questioned AES's 30(b)(6) deponent with knowledge of AES central e-mail servers, the deponent responded that no preservation efforts had taken place:

---

[2]    As noted in the Motion, it is axiomatic that the protections of the work-product doctrine do not apply unless the party asserting the doctrine prepared the documents in anticipation of litigation.

4

> Q. After October 1, 2004, did AES Corporation take any steps to insure that AES Puerto Rico e-mails were not deleted?
>
> MR. WILLIAMS: Objection to form.
>
> A. Not to the best of my knowledge.
>
> …
>
> Q. Mr. Canepari, did AES Corporation ever take any steps to preserve AES Puerto Rico e-mail in relation to this case?
>
> MR. WILLIAMS: Objection to form. Vague and ambiguous. Parts of it were asked and answered.
>
> A. We were asked to make the CDs. Other than that, doing our normal operation or our normal backups.

(*See* Tab 2, 30(b)(6) Deposition of Luis Canepari, at 82-83.) Furthermore, Miguel Hernandez, who also testified as a 30(b)(6) deponent regarding AES's electronic document production, testified that he did not receive the preservation memorandum despite being the network administrator at the Plant,[3] and that AES took no additional actions to preserve its electronic data.

> Q. Did you receive this document on or about September 29, 2004?
>
> A. No, I didn't receive it.
>
> Q. Were any steps taken in regard to the AES Puerto Rico servers or hardware to ensure that no documents were lost or deleted following September 29th of 2004?

---

[3] AES's failure to provide the preservation memorandum to its network administrator is highly indicative of AES's overall failure to take steps necessary to prevent the destruction of its electronic documents. *See Zubulake*, 2004 U.S. Dist. LEXIS 13573, at *39 ("One of the primary reasons that electronic data is lost is ineffective communication with information technology personnel.").

5

>	A.	That I understand, team leaders took their precautions.
>
>	Q.	Did the network administrator do anything in regard to servers or hardware to ensure that electronic documents were not deleted following September 29th of 2004?
>
>	MS. SAGERSON:	Objection to form.
>
>	A.	No.
>
>	Q.	Did AES Puerto Rico take any steps to ensure that e-mail resident on the Arlington servers were not deleted after September 29th, 2004?
>
>	MS. SAGERSON:	Objection to form.
>
>	A.	That I understand?  No.

(*See* Tab 3, 30(b)(6) Deposition of Miguel Hernandez, at 72-73.)

Moreover, AES did not begin to collect documents from its central servers for production in this litigation until, at the earliest, November or December of 2005 – over a year after AES issued the preservation memorandum and 20 months after the date of documents for which AES is claiming work-product protection.

>	Q.	When did you start collecting e-mails for this litigation?
>
>	A.	End of the year, 2005.
>
>	Q.	Do you know what month?
>
>	A.	Probably November, December.  I received the first one in November.

(*See* Tab 3, 30(b)(6) Deposition of Luis Canepari, at 27.)  As a result, AES either knowingly or recklessly permitted relevant documents to be destroyed, thereby breaching its affirmative duty to preserve otherwise discoverable documents that are relevant to the subject matter of its claims

in this litigation. Accordingly, AES's own conduct resulted in the destruction of evidence for which sanctions are appropriate.

### 2. AES'S Negligent Destruction of Documents is Sufficient to Warrant a Spoliation Instruction

AES's negligent destruction of electronic documents satisfies the "culpable state of mind" requirement for the issuance of an adverse inference instruction. Contrary to AES's position, a party need not intentionally destroy documents to subject it to a spoliation instruction. Because an adverse inference instruction serves a remedial purpose of restoring the prejudiced party to a position it would occupy prior to the spoliation, the spoliating party's intent is not a critical consideration. *See Mosaid Techs.,* 348 F. Supp. 2d at 335; *Residential Funding*, 306 F.3d at 108. As the *Residential Funding* court observed, "[t]he inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." AES's failure to issue a timely litigation hold and failure to take any steps to ensure that documents relevant to this litigation were maintained and preserved for approximately a year and half after litigation was reasonably foreseeable constitute the very negligence that warrants the issuance of an adverse inference instruction.

It is particularly telling that AES failed to take any steps to preserve and retrieve data from its central servers until November of 2005 despite the agreement of counsel to engage in a "rolling production" of electronic documents in the spring of 2005. Such conduct may go beyond mere negligence so as to constitute gross negligence[4] or the willful destruction of potentially relevant documents. *See Zubulake*, 2002 U.S. Dist. LEXIS 13574, at *49-*50.

---

[4] If electronic documents are destroyed as the result of gross negligence, that fact alone may be sufficient to support a finding that the evidence was unfavorable to the grossly negligent party. *Residential Funding*, 306 F.3d at 109.

Because AES failed to preserve and produce relevant electronic documents, ALSTOM has been denied access to discovery to which it was entitled thereby depriving it of documents likely to support its defense.

  **3.  ALSTOM Has Demonstrated the Relevance of the Missing E-mail and Set Forth Plausible Evidence that Additional Electronic Documents Exist But Were Not Produced by AES**

ALSTOM has satisfied the third requirement for an adverse inference instruction because it has demonstrated a likelihood that the additional electronic documents that AES has failed to produce would be detrimental to its case. Contrary to the assertions in AES's Opposition, a party need not conclusively demonstrate that the missing evidence would establish a matter at issue in the underlying action. *In re Wechsler*, 121 F. Supp. 2d 404, 423. Rather, ALSTOM "need only come forward with plausible, concrete suggestions as to what the [lost] evidence might have been." *Id*. ALSTOM's Motion to Compel satisfied its obligation in this regard.[5]

AES criticizes ALSTOM's analysis as "simplistic" because it only considers three individuals and fails to include additional search terms. The simplicity of ALSTOM's analysis, however, unequivocally demonstrates AES's failure to preserve and produce electronic documents clearly relevant to the instant litigation. Furthermore, if ALSTOM made their analysis more "complex" by including additional individuals and keywords, the results would reveal more, not fewer, electronic documents that AES failed to preserve or failed to produce.

---

[5] Moreover, ALSTOM can demonstrate specific documents that would likely be detrimental to AES's case that AES has failed to produce. For example, in a document entitled "Request for Capital Expenditure Approval," AES discusses potential solutions to arrest the corrosion of the ESP. Within that document, AES comments "Duke Fluor Daniel provided technical due diligence and confirms the proposed modification is viable solution to eliminate the chloride contribution to ESP corrosion and continue operating within our zero liquid discharge obligations." (*See* Tab 4.) Despite this statement, AES has failed to produce any substantive documentation reflecting D/FD's due diligence. Such documents would likely assist ALSTOM in the preparation of its defense.

8

While ALSTOM is able to demonstrate that AES has failed to produce documents detrimental to its case that were exchanged with ALSTOM personnel, it simply cannot do so with respect to electronic documents AES exchanged with third parties.  ALSTOM, however, is not required to do so – the examples set forth in the Motion constitute "plausible, concrete suggestions" that AES failed to preserve and failed to produce documents beneficial to ALSTOM's defense.  *In re Wechsler*, 121 F. Supp. 2d at 423.

As a result of the foregoing, AES's conduct warrants the imposition of an adverse inference instruction.

**B.   The Court Should Grant ALSTOM's Motion To Compel Production Of Electronic Documents**

To the extent it does not believe that an adverse inference instruction is appropriate at this juncture, the Court should grant ALSTOM's Motion to Compel and, for a second time, order AES to produce the electronic documents in question and require AES to search its repositories and produce all responsive documents in its possession, custody, or control.  Such relief is warranted where, as here, ALSTOM has demonstrated that AES has failed to satisfy its discovery obligations and AES has failed to rebut those facts.

In addressing certain documents that ALSTOM set forth as examples[6] of documents AES failed to produce, AES contends it produced "copies of nearly all of the documents ALSTOM's motion claims are missing."  Opposition at 8.  AES's statement, however, is simply untrue.  The

---

[6]  For purposes of its Motion to Compel, ALSTOM merely provided examples of documents it can concretely demonstrate AES failed to produce.  ALSTOM has identified numerous other documents that AES has also failed to produce that were not included in the Motion.  However, it is the documents that ALSTOM cannot identify, but has a good faith basis to believe exist, that are particularly troublesome.  At the forefront of ALSTOM's concerns is e-mail exchange internally amongst employees of AES, between AES and its outside consultants, and between AES and D/FD, the general contractor to whom ALSTOM directly provided services.

9

documents attached to AES's Opposition are indisputably distinct from the documents identified by ALSTOM.[7] For example, the document attached at Tab 23 of ALSTOM's motion is simply not the same document attached at Tab 2 of AES's Opposition. Each document in an e-mail string is a unique document for purposes of authentication, chain of custody, and admissibility issues. Moreover, the metadata for the original e-mail no longer exists as that metadata is necessarily altered each time a new message is added to the string. As such, AES has indisputably failed to produce the documents identified by ALSTOM in its Motion.

In addition, AES's argument that its production of certain hard copy documents, rather than electronic documents, complies with its discovery obligation is legally insufficient.[8] Printouts are not exact duplicates of original electronic documents because they do not contain the same information as the electronic copy. *See Armstrong, et al. v. Executive Office of the President*, 1 F.3d 1274, 1283 (D.C. Cir. 1993). Thus, despite the clear legal requirement that it do so, AES has fallen far short of producing all of its electronic documents.

For these reasons, the Court should grant ALSTOM's motion to compel the production of relevant and discoverable e-mail requiring AES to search all of its repositories, including back-up systems, to ensure the production of <u>all</u> responsive documents.

---

[7] While it is true that AES produced an exact duplicate of one e-mail used as an example in ALSTOM's Motion to Compel, AES failed to produce the metadata for that document in the format agreed to by the parties. It was that failure by AES which prevented ALSTOM from locating the document within AES's electronic document collection. AES's failure further demonstrates the importance of producing metadata in the proper format, which AES has failed to do for hundreds, if not thousands, of its electronic documents.

[8] Indeed, AES fails to even respond to Section IV.E of ALSTOM's Motion. *See* Opposition at FN 4 (erroneously referring to Section IV.D of ALSTOM's Motion).

**C.     ALSTOM's Alleged Conduct In Discovery**

In its Opposition to ALSTOM's Motion, AES attempts to improperly deflect attention from its own discovery failures by taking the offensive against ALSTOM. Because ALSTOM's conduct has absolutely no relevance to the present Motion, ALSTOM will not address AES's improper allegations. ALSTOM, however, denies AES's characterization of ALSTOM's conduct through the course of discovery. If ALSTOM's conduct fell short of its discovery obligation, AES would surely have filed a motion of its own to seek relief from ALSTOM's alleged failures. The absence of such a motion is telling, and ALSTOM respectfully requests that the Court ignore those portions of the Opposition in which AES has adopted "the best defense is a good offense" tactic.

## IV.     CONCLUSION

AES undeniably failed to produce relevant and responsive electronic documents pursuant to ALSTOM's discovery requests. Although AES's failures in that regard are a cause of concern, it is the unknown substance and quantity of electronic documents that AES has failed to produce that gives rise to the need for sanctions to level the playing field and constitutes the central basis of ALSTOM's Motion. Because ALSTOM has demonstrated the existence of the destruction of some electronic documents and the plausible, concrete suggestion that AES failed to produce electronic documents exchanged with third parties, the Court should grant ALSTOM's motion to compel and provide an adverse inference instruction to the jury or other such relief the Court deems appropriate.

ALSTOM POWER INC.


/s/ Daniel W. Scialpi
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, Delaware  19806
(302) 888-3222

James E. Edwards, Jr.
Anthony F. Vittoria
Michael A. Schollaert
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland  21202-1643
(410) 685-1120
Fax:  (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 20th day of March, 2006, a copy of the foregoing Defendant's Reply to Plaintiff's Opposition to ALSTOM's Second Motion to Compel Production of Electronic Documents or, in the Alternative, for Sanctions was filed with the Court using CM/ECF, which will send copies of those documents to:  John S. Spadaro, Esquire, Murphy Spadaro & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware 19805.  In addition, a courtesy copy was served, via first-class mail, upon Daniel D. Williams, Esquire, Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, D.C. 20005.


/s/ Daniel W. Scialpi
Daniel W. Scialpi (#4146)