# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. No. 04-1282-JJF |
| ) | |
| ALSTOM POWER, INC., ) | |
| ) | |
| Defendant. ) | |

## SURREPLY OF PLAINTIFF AES PUERTO RICO, L.P. IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL "AESC.COM" EMAIL AND ASSOCIATED ELECTRONIC DOCUMENTS

**1.   ALSTOM's Argument To Disregard The Kroll Declaration Is Misleading.**

ALSTOM relies on a deposition excerpt from the continuation of the Rule 30(b)(6) deposition of AES-PR on document collection issues to argue that the Court should disregard the Declaration of Kroll Associates ("Kroll") regarding the difficulty and cost of producing the archived AESC.com emails.

Before continuation of AES-PR's Rule 30(b)(6) deposition, the parties met and conferred about the scope of the testimony. Both sides agreed that, because AES-PR's e-mail is stored on computer servers of its ultimate corporate parent, The AES Corporation ("AES"), AES-PR would produce Mr. Canapari, an AES employee, to testify about AES's efforts to copy electronic documents off AES's central servers and how those servers are maintained. The parties specifically agreed that Mr. Canapari would not be in a position to testify about "review and

processing of data by Williams & Connolly" for production. That agreement is memorialized in a 2/15/06 letter from counsel for AES-PR to counsel for ALSTOM. *See* Tab A. ALSTOM's reply argues that the Court should disregard the Declaration submitted by Kroll, the litigation consulting firm retained years ago by Williams & Connolly to archive the email in question because Mr. Canapari was not knowledgeable about the costs for Kroll to restore and produce the e-mail; but the parties agreed that such testimony, which relates to the "review and processing of data by Williams & Connolly," would be outside the scope of the deposition. Had ALSTOM wanted to hear from a witness from Kroll, it should have said so before the deposition. In light of the parties' agreement, it is improper for ALSTOM to argue in its reply that the witness did not testify about Kroll's knowledge.

## II.  ALSTOM's New Theory of Relevance Is Flawed.

ALSTOM's reply contains a new theory as to why the First Class e-mails it demands are relevant, but its new theory, like its old one, fails. In its initial Motion, ALSTOM argued that it needed the archived First Class e-mail backup tapes restored because they may contain information from 2000 and 2001 that may be relevant to this lawsuit. *See* Mot. 5-6. When AES-PR explained in its opposition that those early events are not important to any issue actually in dispute, *see* Opp. 7-8, ALSTOM argued for the first time on reply that it needs documents from September and October 2002. But the archived backup tapes ALSTOM demands be restored were created in December 2001, see Opp. Tab C ("Muilenburg Decl.") ¶ 4, and AES-PR stopped using the aesc.com "First Class" e-

2

mail system in summer 2002, so communications from September and October 2002 would not even be contained on the backup tapes.

### III. ALSTOM Has Not Identified Any Vendor Who Could Restore the Backup Tapes More Quickly.

AES-PR's Opposition explains that, in February 2006, AES-PR advised ALSTOM that it would take several months to restore and process the backup tapes. See Opp. at 5-6. When ALSTOM said it could be done faster, AES-PR asked for the name of a vendor who could expedite the process, but ALSTOM provided none. *See id.* ALSTOM attaches to its reply a declaration from a self-described "computer forensic expert/consultant," see Reply Tab 2 ("Nichols Aff.") ¶ 3, who criticizes Kroll's estimate of the time necessary to restore the First Class backup tapes. But neither the affidavit nor the reply brief identify any company that could restore the data tapes more quickly -- presumably because there is none. ALSTOM's expert's speculation about how Kroll could restore the backup tapes more quickly are belied by the expert's inability to locate any alternative vendors who could perform the task more quickly than Kroll.

### IV. ALSTOM's Refusal To Pay Anything for the Restoration of the Backup Tapes Proves their Unimportance.

ALSTOM argues -- again for the first time in its reply -- that AES-PR should bear the full cost to restore the archived First Class backup tapes based on what it deems to have been an insufficient effort to catalog the tapes late 2001 and early 2002 -- years before this litigation began. *See* Reply at 3. But AES-PR was under no obligation to ALSTOM to archive backup tapes at all back in 2002 -- much

3

less to log the data in the manner that an unknown defendant would claim years later was most convenient to it. ALSTOM cites no law for its remarkable assertion that cost shifting would be inappropriate where a party -- years before the events giving rise to a lawsuit -- has not backed up its obsolete data system in a manner that will expedite processing for some unknown purpose in the future.

                    Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: March 23, 2006

/s/ John S. Spadaro
John S. Spadaro (Bar No. 3155)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Attorneys for AES Puerto Rico, L.P.

## **CERTIFICATE OF SERVICE**

On March 23, 2006, Plaintiff served its Surreply in Opposition to Defendant's Motion to Compel "AES.COM" Email and Associated Electronic Documents by e-mail and first class mail, postage prepaid, on:

> Richard R. Weir, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road
> Suite 200
> Wilmington, Delaware 19806

and,

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643


/s/ John S. Sparado

# Tab A

LAW OFFICES
## WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 15, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

   Re: **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Jim:

   This letter follows up on various issues we discussed during our teleconference last Friday.

   First, you requested more detailed information concerning the backup tapes that may contain AES-PR e-mail from the old "First Class" e-mail system that was replaced in early 2002. I was able to learn the following information from The AES Corporation. The back-up tapes of First Class e-mail to which I referred were created for The AES Corporation by an outside vendor in September 2001. Because the tapes contain e-mail from the obsolete "First Class" e-mail system, it is both time consuming and exceptionally expensive to restore the information on them and process them for production. Specifically, it would take one to two months just to load the tapes onto a computer server that could process them, at a cost of approximately $5,000 to $10,000. Only after that work is complete could we determine what the date ranges are of the e-mails on the tapes and for which users the tapes contain data. It would then take several days to a week per individual user to convert the e-mail boxes into a usable format, thus restoring several e-mail boxes would take several weeks. The cost for doing so for even half-a-dozen users is expected to be in the range of $75,000 to $200,000.

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 2

      As you know, in its April 27, 2005 response to ALSTOM's first set of requests for production, AES-PR objected to the production of documents pre-dating November 28, 2002. Because the back-up tapes were created in 2001, it is highly improbable that they would contain anything of significance to this litigation. Moreover, as explained above, given the difficulties in restoring the data from these back-up tapes, the information could not be produced until well after the fact-discovery cut-off, well after the deadline to file dispositive motions in the case, and quite possibly could not be made available until after trial.

      Second, your letter to me of Friday afternoon states incorrectly that Mr. McParland "apparently reported to" me that he "will be coming to the United States in March 2006." As I explained in our teleconference, Mr. McParland, a former AES-PR employee, indicated to me that he *might* be in the United States at some point in March. I have now left Mr. McParland two messages asking for clarification with respect to his plans but have not heard back. I will let you know if he responds to me.

      Third, this will confirm that we have agreed to the following deposition dates for ALSTOM witnesses: Mr. Coleman on February 23 in Windsor and William Jarvis on March 2 in Windsor. In light of your request to take two depositions in Puerto Rico during the first full week of March, we request that Mr. Maidenford's deposition proceed in the Cincinnati area on March 6. We have noticed a 30(b)(6) deposition on the FBHE handcuffs for February 24 and you have not yet determined whether that date poses any conflict. As for the depositions ALSTOM will be taking, we can now confirm that Mr. Tomlin can be available for a deposition in Pittsburgh on February 28 and Mr. Dyer can be available for a deposition in Guayama, Puerto Rico on March 10.

      Fourth, you requested to continue the Rule 30(b)(6) deposition concerning document collection issues with an employee of The AES Corporation in Arlington, Virginia concerning "the shared servers maintained in Indianapolis and then in Arlington" and "the process of identifying, retrieving, and copying electronic mail for production to ALSTOM, including the cost to do so." While we disagree that Mr. Hernandez did not testify about these issues, and while we seriously doubt the utility of such a deposition, The AES Corporation has agreed to make a witness available for this purpose as it relates to AES-PR documents. We can produce him for a deposition at my office. The witness, of course, will not testify about the review and processing of data by Williams & Connolly LLP, including but not

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 3

limited to the conversion of data to a Concordance format for review and production to ALSTOM.

   Fifth, later this week I will provide you with additional information concerning the list of employees and others performing specified job functions. Shortly we will provide you with a privilege log for Mr. Toher's documents that predate the date of his retention as a litigation consultant, as well as our analysis of how to handle the Rothe, Gabrielli, and Hognefelt documents that were among the over 36,000 documents ALSTOM produced over a month late. We are still waiting for the following from ALSTOM: (1) the stipulation you promised weeks ago concerning the document Mr. Vittoria produced the day after Mr. Gabrielli's deposition; (2) the electronic documents for Mr. Bulewich, Mr. Campbell, and Mr. Francis that you agreed to produce in a letter to me dated January 17, 2006; (3) confirmation as to whether ALSTOM is able or unable to locate its commissioning log(s) for September through November 2002, and (4) confirmation as to whether ALSTOM can locate Mr. Maidenford's Daily Commissioning Reports for the missing dates that we identified.

                Sincerely,

                Daniel D. Williams