# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SURREPLY OF PLAINTIFF AES PUERTO RICO, L.P.
## IN OPPOSITION TO ALSTOM'S SECOND MOTION TO COMPEL
## PRODUCTION OF ELECTRONIC DOCUMENTS OR,
## IN THE ALTERNATIVE, FOR SANCTIONS

**1.    ALSTOM's Reply Invokes the Wrong Legal Standard for Adverse Inference Instructions in the Third Circuit.**

ALSTOM's reply repeatedly cites the Southern District of New York's decision in *Zubalake v. UBS Warburg, LLC*, as establishing the legal standard governing its request for an adverse inference instruction. *See* Reply at 3-4,7. ALSTOM disregards direct precedent from the Third Circuit, which this Court is bound to follow. The Third Circuit in *Brewer v. Quaker State Oil Refining Corp.*, required that, in order for sanctions for destruction of documents to be imposed, a party must establish that the "evidence was suppressed; that is, the evidence must have been destroyed intentionally and not just lost or accidentally destroyed." 72 F.3d 326, 334 (3d Cir. 1995). *Brewer* has not been overturned, and its standard has consistently been applied by courts in this Circuit. *See e.g., In re DaimlerChrysler AG*, 2003 WL 22951696, *1 (D. Del. Nov. 25, 2003) (applying *Brewer*); *Mosaid*

*Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (applying *Brewer* as controlling authority on motion for adverse inference instruction).

ALSTOM contends that *Mosaid* departed from *Brewer* and established a new controlling standard for adverse inference instructions in this Circuit. *See* Reply at 2-3 (contending that it need show only "negligent destruction" to obtain an adverse inference instruction). ALSTOM misreads *Mosaid* in several respects. First, *Mosaid* specifically relied upon *Brewer* as the controlling authority. *See* 348 F. Supp. 2d at 336. Second, contrary to ALSTOM's suggestion, the district court in *Mosaid* did not sanction the defendant based on finding of "negligent destruction;" instead, *Mosaid* held that the defendant in fact intentionally destroyed evidence. *Id.* at 338 ("[the party's] actions go far beyond mere negligence, demonstrating knowing and intentional conduct"). Third, even *Mosaid*'s dictum regarding "negligent destruction" does not support ALSTOM's theory because *Mosaid* states that negligent destruction may be sufficient where "common sense dictates that the party is more likely to have been threatened by that [destroyed] evidence." *Id.* at 338. Finally, the facts of *Mosaid* are far different from those in the current action. In *Mosaid*, the defendant never put a litigation hold in place, even after receiving discovery requests, and as a result did not produce a single responsive email. *Id.* Here, AES-PR put a litigation hold in place nine days after filing its Complaint (in full compliance with this Court's rules governing electronic discovery) and produced tens of thousands of responsive electronic emails.

**II.    ALSTOM's Reply Presents a Misleading Picture of the Steps Taken by AES-PR's to Preserve Documents.**

ALSTOM argues that AES-PR did not take steps to retrieve e-mails from its computers' central servers until November or December 2005. *See* Reply at 7. ALSTOM focuses narrowly on the activities of staff at AES-PR's parent corporation, The AES Corporation ("AES"), and ignores the steps undertaken by AES-PR's own personnel to retain and produce electronic documents. Indeed, ALSTOM knows from AES-PR's rolling production that AES-PR employees were instructed to search for and retain responsive documents in their personal email accounts before the end of 2005. *See* Tab A (Deposition of Miguel Hernandez, p. 62). The email accounts of AES-PR employees reside on the same central server that IT personnel at AES later searched as a backstop in November and December 2005. But ALSTOM's reply would have the Court believe, incorrectly, that no e-mails resident on the central computer servers were gathered for production prior to Mr. Canapari's activities. As demonstrated by Mr. Hernandez's deposition testimony, that suggestion simply is not true.

**III.    ALSTOM Cannot Show that AES-PR Failed to Preserve Documents That It Was Required to Maintain.**

ALSTOM's reply raises the new argument that, as of March 2004, AES-PR should have retained all responsive documents, but AES-PR did not put a litigation hold in place until September 2004. *See* Reply at 4. But ALSTOM cites no facts or law to support its March 2004 preservation date. Instead, the facts show that it was appropriate for AES-PR to issue its litigation hold instruction when it

3

did in September 2004. Moreover, ALSTOM's instruction in September 2004 to retain *all* responsive electronic documents went above and beyond this Court's E-discovery default rules that require development of a retention procedure within the first 30 days of discovery. *See* District Court of Delaware Default Standard for Discovery of Electronic Documents.

Equally important, ALSTOM still has not shown that there are any "missing" documents that were destroyed as a result of any alleged delay in the institution of the litigation hold. In fact, despite a supposedly thorough "analysis" of AES-PR's document production, ALSTOM can show only two allegedly "missing" emails after ALSTOM's arbitrary March 2004 preservation date - - and ALSTOM has identified no prejudice from the fact that either of these documents was missing. ALSTOM also complains about allegedly missing emails from 2002 and 2003, but there is no dispute that AES-PR -- like ALSTOM -- was under no obligation to preserve email during that time period (when the events giving rise to this litigation had not yet occurred).

Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

/s/ John S. Spadaro
John S. Spadaro (Bar No. 3155)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Dated:  March 23, 2006

Attorneys for AES Puerto Rico, L.P.

4

## CERTIFICATE OF SERVICE

On March 23, 2006, Plaintiff AES Puerto Rico, L.P. served its Surreply

in Opposition to ALSTOM's Second Motion to Compel Production of Electronic

Documents or, in the Alternative, for Sanctions by e-mail and first class mail,

postage prepaid, on:

> Richard R. Weir, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road
> Suite 200
> Wilmington, Delaware 19806

and,

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643

/s/ John S. Spadaro

Tab A

AES Puerto Rico LP v. Alstom Power, Inc.  Miguel Hernandez                    Volume 1

```
                                                              Page 1

    IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF DELAWARE

    AES PUERTO RICO, L.P. * C.A. NO.: 04-1282(JJF)
    .
    Plaintiff *
    .
    VS. *
    .
    ALSTOM POWER, INC. *
    .
    Defendant *
    . . * . . . . * . * . * . * * * * * * * * * * * * * * * * * * * * * *


      (B) (6) DEPOSITION OF MR. MIGUEL HERNANDEZ

    DATE : January 19, 2006

    TIME: : 3:00 P.M.

    OFFICE : Ober, Kaler, Grimes & Shriver, P.S.C.
    120 East Baltimore Street
    Baltimore, Maryland 21202-1643

    HELD AT : Axtmayer, P.S.C.
    350 Ponce de León Avenue
    Suite 404
    Hato Rey, Puerto Rico

    APPEARANCES

    FOR PLAINTIFF:

    Ann Segerson, Esq.

    FOR DEFENDANT:

    Anthony Vittoria, Esq.
    Michael Schollaert, Esq.
    Liana T. Loyola, Esq.

    NOTARY PUBLIC:

    Liana T. Loyola, Esq.
```

AES Puerto Rico LP v. Alstom Power, Inc.  Miguel Hernandez                    Volume 1

Page 62

A No.

Q Mr. Hernández, are you familiar with the

concept of "Metadata"?

A Poorly, poorly. I don't use it.

Q Were you involved... Well, let's step back.

At any point, did AES Puerto Rico search its servers,

that are located at the plant, for electronic documents

to produce to Alstom in this case?

A Yes, because it's on line.

Q What do you mean "on line"?

A They're always on the server, the e-mail

server.

Q Okay. I'm talking about non-e-mail documents

that are resident of the box servers at the plant.

A I'm sorry, I got lost.

Q Did AES Puerto Rico ever search the five

servers, located at the plant, for non-e-mail electronic

documents produced to Alstom in this case?

A To my understanding, yes.

Q Were you involved in that activity?

A No.

Q And who was?

A I believe the people that were involved in

that data.

Q So you did not personally... You were not

ffa7bff4-f45b-4587-94e8-5302d65e526f