# Tab 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,          :
                                :
          Plaintiff,            :
                                :
     v.                         :      Civil Action No. 04-1282-JJF
                                :
ALSTOM POWER, INC.,             :
                                :
          Defendant.            :

## ORDER

WHEREAS, the Court held a discovery conference on December 7, 2005;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.  Defendant's Motion To Compel Production Of Electronic Documents (D.I. 39), Defendant's Motion To Compel Corporate Designee Deposition, Or, In The Alternative, To Postpone "Discovery Dispute" Hearing (D.I. 43), Plaintiff's Motion For Clarification Of Scheduling Order (D.I. 48), Plaintiff's Motion To Compel Production Of Documents (D.I. 49), Supplement To Defendant's Motion To Compel Production Of Electronic Documents (D.I. 53), Defendant's Motion To Compel Answer To Interrogatory (D.I. 55), and Defendant's Motion To Compel Production Of Documents (D.I. 58) are **DENIED WITH LEAVE TO RENEW**.

2.  Counsel has until **December 20, 2005** to agree upon and submit a discovery dispute resolution plan.

**A 001**

3.   If counsel cannot agree to a discovery dispute resolution

plan, counsel is to appear on **December 20, 2005 at 10:00**

**a.m. in Courtroom 4B.**

December __X__, 2005

_____
UNITED STATES DISTRICT JUDGE

# **Tab 2**

# RICHARD R. WIER, JR., P.A.

### ATTORNEY AT LAW

RICHARD R. WIER, JR.*

———

DANIEL W. SCIALPI

*ALSO ADMITTED IN PA

1220 MARKET STREET, SUITE 600
WILMINGTON, DELAWARE 19801

www.Wierlaw.com

(302) 888-3222
FAX (302) 888-3225

RWier@Wierlaw.com
DScialpi@Wierlaw.com

December 15, 2005

The Honorable Joseph J. Farnan, Jr.
United States District Court for the
District of Delaware
844 North King Street
Wilmington, Delaware 19801

> Re:  AES Puerto Rico, L.P. v. ALSTOM Power Inc.
> Case No. 04-1282 JJF

Dear Judge Farnan:

We are writing to the Court on behalf of the parties to this case. Pursuant to the Court's direction at the discovery dispute conference held on December 7, 2005, enclosed please find a proposed Discovery Dispute Resolution Plan (the "Plan") prepared jointly by the parties for the Court's approval. Set forth below is a more complete summary of the agreements reached by counsel that are reflected in the Plan.

On December 9, 2005, counsel for AES Puerto Rico, L.P. ("AES-PR") and ALSTOM Power Inc. ("ALSTOM") met to discuss and attempt to resolve the discovery disputes in the case. At that meeting, the parties agreed on a detailed protocol and set forth specific deadlines to complete all discovery in this matter. To that end, the parties have further agreed to confer via telephone conference on a bi-weekly basis to monitor the progress of discovery and attempt to resolve further discovery disputes.

The parties agreed to make all hard-copy and electronic documents available for inspection on or before December 30, 2005. Both parties have also agreed to make portions of the documents available for inspection on an interim basis as they are assembled, reviewed, and ready for production prior to December 30, 2005. During the week of December 19, 2005, ALSTOM, at its own expense, will make its documents available to AES-PR in Windsor,

Connecticut. Finally, the parties have discussed specific categories of documents to be produced within the agreed timeframe and will work together to ensure that a full and convenient production occurs.

With regard to electronic mail, the parties have discussed their respective processes and have achieved a greater understanding of each other's practices. In producing electronic mail, the parties will exchange the agreed upon levels of metadata where that metadata is available. To the extent that there are any questions regarding the metadata that accompanies the parties' respective electronic productions, the parties will have their e-discovery liaisons meet and confer prior to bringing any issue to the attention of the Court.

The parties agreed to a preliminary deposition schedule for a first round of depositions. The deposition of fact witnesses shall be concluded by the close of discovery on March 10, 2006. Mr. John Toher, an expert consultant for AES-PR who may be identified by AES-PR as a testifying expert, also is a fact witness in this case. Should AES-PR decide not to designate Mr. Toher as a testifying expert witness, AES-PR will notify ALSTOM and permit ALSTOM to depose Mr. Toher as a fact witness – even if ALSTOM has already taken or noticed seven "fact" witness and three Rule 30(b)(6) depositions – after the March 10, 2006 deadline, but before April 2, 2006.

The Discovery Dispute Resolution Plan sets forth a schedule for expert witness disclosures in accordance with the discussions with the Court at the conference on December 7. Further, the parties have agreed that the deposition of each expert submitting an Affirmative or Answering Disclosure will occur within three weeks of the submission of the Disclosure, while the deposition of each expert submitting a rebuttal Disclosure will be taken within two weeks of the submission of that Disclosure. The deposition of an expert submitting a Rebuttal Disclosure will be limited to that Rebuttal Disclosure, but will be permitted even if the expert's deposition had been taken in regard to an Affirmative Disclosure. These expert depositions will not count toward the numeric limits imposed in the Court's Rule 16 Scheduling Order entered on October 7, 2005. In setting forth the timeline of expert depositions, the parties recognize that some of the depositions of expert witnesses will occur beyond the March 10, 2006 discovery deadline.

Finally, the parties resolved the dispute regarding AES-PR's Answer to ALSTOM's Interrogatory No. 2. During the week of December 12, 2005, ALSTOM will submit requests for the identities of AES-PR employees performing specific job functions. ALSTOM's requests will be limited by the relevant timeframe, and AES-PR will endeavor to ascertain the identity of those individuals requested by ALSTOM. AES-PR will timely Answer ALSTOM's narrowed Interrogatory by listing the requested individuals performing the requested job functions.

Based upon these agreements and the enclosed Discovery Dispute Resolution Plan, the parties believe that it will not be necessary for the Court to hold the follow-up conference currently scheduled for December 20, 2005 at 10:00 a.m. As set forth in the Court's Order dated December 8, 2005, however, the parties retain the right to renew their respective motions to

compel should full discovery not be provided by either party.

We appreciate your consideration of this matter.

Respectfully yours,

/s/ Daniel W. Scialpi

Daniel W. Scialpi (#4146)

Enclosure

cc:    James E. Edwards, Jr., Esquire/Anthony F. Vittoria, Esquire
       John S. Spadaro, Esquire
       Daniel D. Williams, Esquire

A 005

# **Tab 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,                    *

      Plaintiff,                       *

   v.                                    *    C.A. No. 04-1282-JJF

ALSTOM POWER INC.,                        *

      Defendant.                       *

   *    *    *    *    *    *    *    *    *    *    *

### DISCOVERY DISPUTE RESOLUTION PLAN

WHEREAS, the Court held a discovery conference on December 7, 2005, and, by an Order dated December 8, 2005, the Court issued a ruling on pending discovery motions and directed AES Puerto Rico, L.P. ("AES-PR") and ALSTOM Power Inc. ("ALSTOM"), the parties, to submit a discovery dispute resolution plan by December 20, 2005; and

WHEREAS, at the Court's direction, the parties met and conferred to resolve areas of dispute;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    **Inadvertent Disclosure:** In order to facilitate the timely exchange of discovery, the parties will exchange documents with the understanding that inadvertent production or disclosure of documents protected by the attorney-client privilege or work product doctrine shall not constitute a waiver of such privilege or protection. Any such inadvertently produced documents shall be returned to the party producing them, and any applicable privilege and protection shall be maintained.

1 of 3

A 006

2.    **Expert Discovery:**

The parties shall make disclosures with regard to expert witnesses under Rule 26(a)(2) on the following schedule:

(i)    Plaintiff's Affirmative Disclosures:  **February 27, 2006**

(ii)    Defendant's Answering Disclosures:  **March 20, 2006**

(iii)    Plaintiff's Rebuttal Disclosures:  **April 3, 2006**

Within three weeks of the submission of the Affirmative Disclosures, if any, Defendant is entitled to depose each expert who submitted an Affirmative Disclosure. Likewise, within three weeks of the submission of the Answering Disclosures, if any, Plaintiff is entitled to depose each expert who submitted an Answering Disclosure. Following the submission of the Rebuttal Disclosures, if any, Defendant is entitled to take the deposition of each expert who has filed a Rebuttal Disclosure – as to the Rebuttal Disclosure, solely – even if the expert's deposition had previously been taken in regard to an Affirmative Disclosure.

Such depositions shall be in addition to those authorized under Section I of the Court's Rule 16 Scheduling Order entered on October 7, 2005.

3.    **Document Production:**  The parties shall make all responsive hard copy and electronic documents available for production to the requesting party by **December 30, 2005.** In the interim, the parties shall, on an interim basis, make available for review any documents that are assembled, reviewed, and ready for production prior to December 30, 2005.

2 of 3

A 007

4.    **Privilege Log**: Each party shall produce its privilege log with regard to hard copy and electronic document production to the opposing party on or before **December 30, 2005.**

5.    **Answers to Interrogatories**: Pursuant to the agreement between ALSTOM and AES-PR, ALSTOM shall limit its interrogatory in the manner in which it agreed with AES-PR and AES-PR shall supplement its Answer to ALSTOM's revised Interrogatory No. 2.

6.    **Hearing**: The hearing currently scheduled for December 20, 2005 at 10:00 a.m. is canceled.

December 16, 2005

_____
United States District Judge

3 of 3

A 008

# Tab 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | * | |
| Plaintiff, | * | |
| v. | * | C.A. No. 04-1282-JJF |
| ALSTOM POWER INC., | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## NOTICE OF DEPOSITION OF CORPORATE DESIGNEE

ALSTOM Power, Inc., defendant, by undersigned counsel, and pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, hereby gives notice that it will take the deposition upon oral examination of AES Puerto Rico, L.P. before a notary public or other such person authorized to administer oaths beginning at 9:00 a.m. on Tuesday, December 20, 2005, and continuing until the deposition is completed, at the offices of Williams & Connolly, LLP, 7725 Twelfth Street, N.W., Washington, D.C. 20005-5901, or at such other location as the parties shall agree. The deposition shall be recorded by stenographic and/or sound means.

## DEFINITIONS

For purposes of this Notice of Deposition, certain terms are defined below:

1.      "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

2.      "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives, or attorneys of ALSTOM.

**A 009**

3.    "D/FD" refers to Duke/Fluor Daniel Caribbean, S.P., a Puerto Rico partnership, and its constituent partner members or partners, and any of its or their officers, directors, employees, agents, representatives of, or attorneys for D/FD.

4.    The "Project" means the engineering, design, and construction of a coal-generated power plant for AES Puerto Rico, L.P. in Guayama, Puerto Rico.

5.    The "EPC Contract" means the Agreement for Engineering, Procurement, and Construction Services  Between AES and Duke/Fluor Daniel Caribbean S.P. dated as of April 3, 1996 with respect to the Project.

6.    "CDS" refers to the Circulating Dry Scrubber equipment provided by ALSTOM for the Project.

7.    "ESP" refers to the Electrostatic Precipitator equipment provided by ALSTOM for the Project and referred to in your Complaint.

8.    "FBHE Handcuffs" refers to the fluidized bed heat exchanger handcuff equipment provided by ALSTOM for the Project and referred to in your Complaint.

9.    "Water Treatment Systems" refers to the plant equipment used to treat the water used in the CDS and ESP.

## AREAS OF EXAMINATION

The Deponent shall designate such person or persons as are necessary to respond to the areas of examination set forth below.

1.    The identity, nature, and location of AES's books of account and accounting records, contracts, purchase orders, invoices, and other documents, whether in hard-copy or electronic form, relating to its claimed damages in this matter.

2

2.     Any damages claimed by AES against D/FD or ALSTOM and/or any other subcontractor, sub-subcontractor, supplier, vendor, or other person or entity furnishing any work, labor, services, materials, equipment, or other items in connection with the CDS and/or the ESP.

3.     Any damages claimed by AES against D/FD or ALSTOM and/or any other subcontractor, sub-subcontractor, supplier, vendor, or other person or entity furnishing any work, labor, services, materials, equipment, or other items in connection with the FBHE Handcuffs.

4.     Any backcharges assessed by AES against D/FD under the EPC Contract relating to the CDS and/or the EPS, or the Water Treatment System.

5.     Any backcharges assessed by AES against D/FD under the EPC Contract relating to the FBHE Handcuffs.

6.     The assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the EPC Contract relating to the CDS and/or the ESP, or the Water Treatment System.

7.     The assessment or threatened assessment and/or withholding by AES of any sums due D/FD under the EPC Contract relating to the FBHE Handcuffs.

8.     The "Reverse Osmosis System" referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories, including the purported rationale for installing the reverse osmosis system, how that rationale relates to any of the breaches of warranty alleged in this case, and any costs incurred by AES in procuring the design and construction of the system.

9.     The "Crystallizer – brine concentrator" referred to in AES's Responses to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including the purported rationale for installing the "Crystallizer – brine concentrator," how that rationale relates to any of

3

the breaches of warranty alleged in this case, the estimate for the "Crystallizer – brine concentrator" set forth in AES's Response, the basis for that estimate, and when AES intends to purchase and install the "Crystallizer – brine concentrator," if ever.

10.    The "Stabilization Program" referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories, including the nature of the "Stabilization Program," the costs allegedly associated with the "Stabilization Program," and how the "Stabilization Program" relates to any of the breaches of warranty alleged in this case.

11.    The replacement collecting plates purchased for Unit 2, as referred to in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories: including the composition of those plates; how the composition of those plates may differ from the composition of the original plates; how, when, and from whom the replacement collecting plates were procured; the cost of these replacement collecting plates; any estimates that were sought or received by AES for other replacement plates; the current location of the plates; when AES intends to install the replacement plates, if ever; and the cost of installing the replacement collector plates.

12.    The "ESP Curtains Fabrication Rigitrodes Material & labor" referred to in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories, including: the composition of those curtains and rigitrodes; the costs of those curtains and rigitrodes; the rationale for installing the curtains and rigitrodes; how that rationale relates to any of the breaches of warranty alleged in this case; the current location of the of the curtains and rigitrodes; when AES intends to install the curtains and rigitrodes, if ever; and the cost of installing the replacement collector plates.

4

13.    The other costs identified in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories, including costs for the labor provided by PIC and Combustion Engineering, the services provided by Brand Scaffold, the freight provided by ICE, and the consulting services provided by Raymond, FL Smidth Airtech, the purported rationale for incurring the cost of the labor/services/freight/consulting, and how the identified labor/services/freight/consulting relates to any of the breaches of warranty alleged in this case.

14.    The "Replacement Collection Plates for Unit 1" referred to in AES's Response to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including: the purported rationale for the "Replacement Collection Plates for Unit 1;" how that rationale relates to any of the breaches of warranty alleged in this case; the estimate for the "Replacement Collection Plates for Unit 1" set forth in AES's Responses; the basis for that estimate; when AES intends to purchase and install the "Replacement Collection Plates for Unit 1," if ever; and the cost of installing these replacement collector plates.

15.    The "Labor to install all plates" " referred to in AES's Response to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including: the rationale for incurring the cost of that labor; how that rationale relates to any of the breaches of warranty alleged in this case; how AES determined the estimate for the labor set forth in AES's Responses to ALSTOM's Interrogatories; the basis for that estimate; and when AES intends to perform that labor, if ever.

16.    The material and labor identified in AES's Response to Interrogatory No. 12 of ALSTOM's First Set of Interrogatories relating to the FBHE Handcuffs, including the rationale for incurring the cost of that material and labor and how that rationale relates to any of the breaches of warranty alleged in this case.

5

17.    The usage, including the amounts and associated costs, of limestone and hydrated lime at the Project both before and after the installation of the Reverse Osmosis System referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories.

18.    Any operational cost savings AES has experienced after the completion of any of the work for which it is seeking damages in this matter.

19.    Any other damages claimed by AES that allegedly relate to the ESPs or the CDSs.

20.    Any other damages claimed by AES that allegedly relate to the FBHEs

James E. Edwards, Jr., Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER, P.C.
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:     (410) 547-0699

Attorneys for ALSTOM Power Inc.

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

6

A 014

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 22nd day of November 2005, a copy of the foregoing

Notice of Deposition of Corporate Designee was served, via first-class mail, postage prepaid, on:

John S. Spadaro, Esquire  
Murphy Spadaro & Landon  
1011 Centre Road, Suite 210  
Wilmington, Delaware 19805

Dane H. Butswinkas, Esquire  
R. Hackney Wiegmann, Esquire  
Mary Beth Long, Esquire  
Daniel D. Williams, Esquire  
Williams & Connolly LLP  
725 Twelfth Street, N.W.  
Washington, D.C. 20005


Anthony F. Vittoria

7

# Tab 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,            \*

      Plaintiff,             \*

   v.                     \*     C.A. No. 04-1282-JJF

ALSTOM POWER INC.,          \*

      Defendant.           \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### AMENDED NOTICE OF
### DEPOSITION OF CORPORATE DESIGNEE
### (DAMAGES)

ALSTOM Power, Inc., defendant, by undersigned counsel, and pursuant to Rule 30(b)(6)

of the Federal Rules of Civil Procedure, hereby gives notice that it will take the deposition upon

oral examination of AES Puerto Rico, L.P. before a notary public or other such person

authorized to administer oaths beginning at 9:30 a.m. on Wednesday, January 18, 2006, and

continuing until the deposition is completed, at the Molino Inn Hotel, Avenido Pedro Albizo

Campos KM 2.1 Carr. 54, Guayama, Puerto Rico 00764, or at such other location as the parties

shall agree. The deposition shall be recorded by stenographic and/or sound means.

### DEFINITIONS

For purposes of this Notice of Deposition, certain terms are defined below:

1.    "You" or "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a

Delaware limited partnership, and any current or former officers, directors, employees, agents,

contractors, representatives of or attorneys for AES or AES related entities.

2.    "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives, or attorneys of ALSTOM.

3.    "D/FD" refers to Duke/Fluor Daniel Caribbean, S.P., a Puerto Rico partnership, and its constituent partner members or partners, and any of its or their officers, directors, employees, agents, representatives of, or attorneys for D/FD.

4.    The "Project" means the engineering, design, construction, commissioning and operation of a coal-generated power plant for AES Puerto Rico, L.P. in Guayama, Puerto Rico.

5.    The "EPC Contract" means the Agreement for Engineering, Procurement, and Construction Services Between AES and Duke/Fluor Daniel Caribbean S.P. dated as of April 3, 1996 with respect to the Project.

6.    "CDS" refers to the Circulating Dry Scrubber equipment provided by ALSTOM for the Project.

7.    "ESP" refers to the Electrostatic Precipitator equipment provided by ALSTOM for the Project and referred to in your Complaint.

8.    "FBHE Handcuffs" refers to the fluidized bed heat exchanger handcuff equipment provided by ALSTOM for the Project and referred to in your Complaint.

## AREAS OF EXAMINATION

The Deponent shall designate such person or persons as are necessary to respond to the areas of examination set forth below.

1.    Any damages claimed by AES against D/FD or ALSTOM and/or any other subcontractor, sub-subcontractor, supplier, vendor, or other person or entity furnishing any work, labor, services, materials, equipment, or other items in connection with the CDS and/or the ESP.

2

A 017

2.    Any damages claimed by AES against D/FD or ALSTOM and/or any other subcontractor, sub-subcontractor, supplier, vendor, or other person or entity furnishing any work, labor, services, materials, equipment, or other items in connection with the FBHE Handcuffs.

3.    The "Reverse Osmosis System" referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories, including the decision making process involved in deciding to install the System, the purported rationale for installing the reverse osmosis system, how that rationale relates to any of the breaches of warranty alleged in this case, and any costs incurred by AES in procuring the design and construction of the system.

4.    The "Crystallizer – brine concentrator" referred to in AES's Responses to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including the decision making process involved in deciding to install the Crystallizer, the purported rationale for installing the "Crystallizer – brine concentrator," how that rationale relates to any of the breaches of warranty alleged in this case, the estimate for the "Crystallizer – brine concentrator" set forth in AES's Response, the basis for that estimate, and when AES intends to purchase and install the "Crystallizer – brine concentrator," if ever.

5.    The "Stabilization Program" referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories, including the nature of the "Stabilization Program," the costs allegedly associated with the "Stabilization Program," and how the "Stabilization Program" relates to any of the breaches of warranty alleged in this case.

6.    The replacement collecting plates purchased for Unit 2, as referred to in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories: including the composition of those plates; how the composition of those plates may differ from the composition of the original plates; how, when, and from whom the replacement collecting plates

3

were procured; the cost of these replacement collecting plates; any estimates that were sought or received by AES for other replacement plates; the decision making process involved in deciding to purchase the replacement plates and the rationale for the purchase of the replacement plates; how that rationale relates to any of the breaches of warranty alleged in this case; the current location of the plates; when AES intends to install the replacement plates, if ever; and the cost of installing the replacement collector plates.

7.    The "ESP Curtains Fabrication Rigitrodes Material & labor" referred to in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories, including: including the composition of those curtains and rigitrodes; the costs of those curtains and rigitrodes; the decision making process involved in deciding to purchase the curtains and rigitrodes and the rationale for the purchase of the curtains and rigitrodes; how that rationale relates to any of the breaches of warranty alleged in this case; the current location of the curtains and rigitrodes; when AES intends to install the curtains and rigitrodes, if ever; and the cost of installing the curtains and rigitrodes.

8.    The other costs identified in AES's Response to Interrogatory No. 10 of ALSTOM's First Set of Interrogatories, including costs for the labor provided by PIC and Combustion Engineering, the services provided by Brand Scaffold, the freight provided by ICE, and the consulting services provided by Raymond, FL Smidth Airtech, the purported rationale for incurring the cost of the labor/services/freight/consulting, and how the identified labor/services/freight/consulting relates to any of the breaches of warranty alleged in this case.

9.    The "Replacement Collection Plates for Unit 1" referred to in AES's Response to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including: the purported rationale for the "Replacement Collection Plates for Unit 1;" how that rationale relates to any of

4

the breaches of warranty alleged in this case; the estimate for the "Replacement Collection Plates for Unit 1" set forth in AES's Responses; the basis for that estimate; when AES intends to purchase and install the "Replacement Collection Plates for Unit 1," if ever; and the cost of installing those replacement collector plates.

10.     The "Labor to install all plates" " referred to in AES's Response to Interrogatory Number 10 of ALSTOM's First Set of Interrogatories, including: the rationale for incurring the cost of that labor; how that rationale relates to any of the breaches of warranty alleged in this case; how AES determined the estimate for the labor set forth in AES's Responses to ALSTOM's Interrogatories; the basis for that estimate; and when AES intends to perform that labor, if ever.

11.     The material and labor identified in AES's Response to Interrogatory No. 12 of ALSTOM's First Set of Interrogatories relating to the FBHE Handcuffs, including the rationale for incurring the cost of that material and labor and how that rationale relates to any of the breaches of warranty alleged in this case.

12.     The usage, including the amounts and associated costs, of limestone and hydrated lime at the Project both before and after the installation of the Reverse Osmosis System referred to in AES's Responses to Interrogatory Numbers 9 and 10 of ALSTOM's First Set of Interrogatories.

13.     Any operational cost savings AES has experienced after the completion of any of the work for which it is seeking damages in this matter.

14.     Any other damages claimed by AES that allegedly relate to the ESPs or the CDSs.

15.     Any other damages claimed by AES that allegedly relate to the FBHE Handcuffs.

5

16.    Any changes, modifications or alterations to any of the damages claims

previously asserted by AES against ALSTOM.


James E. Edwards, Jr., Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER, P.C.
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:     (410) 547-0699

Attorneys for ALSTOM Power Inc.

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

6

A 021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 29th day of December 2005, a copy of the foregoing

Amended Notice of Deposition of Corporate Designee (Damages) was served, via facsimile and

first-class mail on:

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, Delaware 19805

Dane H. Butswinkas, Esquire
R. Hackney Wiegmann, Esquire
Mary Beth Long, Esquire
Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

_____
Anthony F. Vittoria

7

A 022

# Tab 6

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 13, 2006

**Via Email & U.S. Mail**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

**Re:    AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

A small number of boxes will be available at the plant on Tuesday, January 16, 2006 for ALSTOM's review. Please let me know when you would like to have your copy service pick up the documents for copying.

Also, there are a number of outstanding discovery issues on ALSTOM's part that I would appreciate you addressing at your earliest convenience. First, AES-PR still has not received all email for Mr. Barber – a central witness in this litigation. Second, AES-PR still has not received ALSTOM's electronic-document privilege log. Third, AES-PR has not heard from ALSTOM regarding the myriad concerns we wrote to you about regarding ALSTOM's hardcopy privilege log. Fourth, AES-PR still has not heard from ALSTOM regarding the ALSTOM control room log that ALSTOM has failed to produce.

Finally, as you know, Mr. Gabrelli testified in his recent deposition that he has responsive documents that ALSTOM has not made available to AES-PR. Given Mr. Gabrelli's centrality to this case, I am deeply troubled by that admission. I trust that you will take all necessary steps to ensure that AES-PR has access to those documents in short order and that you will also confirm that ALSTOM has gathered all responsive documents for all of its others employees as well.

A 023

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 13, 2006
Page 2

Please feel free to call if you have any questions.

Sincerely,

*Daniel D. Williams/ju*

Daniel D. Williams