# Tab 19

LAW OFFICES

# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D.C. 20005-5901

## T E L E C O P Y

TO:                    Anthony Vittoria, Esquire
                       Ober, Kaler, Grimes & Shriver

TELECOPY NUMBER:    (443) 263-4192

---

FROM:              Daniel D. Williams

TELEPHONE:         (202) 434-5263

DATE:              March 10, 2006

NUMBER OF PAGES INCLUDING THIS PAGE:    18

MESSAGE:

IF THERE ARE ANY PROBLEMS RECEIVING THIS TRANSMISSION, PLEASE
CALL (202) 434-5386 <u>IMMEDIATELY</u>.  THANK YOU.

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.

Telecopy Number (202) 434-5029

**A 188A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,

      Plaintiff,

      v.

ALSTOM POWER, INC.,

      Defendant.

Civ. No. 04-1282-JJF

### AES PUERTO RICO, L.P.'S RESPONSES TO ALSTOM POWER, INC.'S THIRD SET OF INTERROGATORIES AND SUPPLEMENTAL RESPONSES TO SPECIFIED INTERROGATORIES

Plaintiff AES Puerto Rico L.P. ("AES-PR") objects and responds to Defendant ALSTOM Power, Inc.'s ("ALSTOM's") third set of interrogatories and supplements its response to specified interrogatories as follows:

### GENERAL OBJECTIONS

The following general objections are incorporated in, and serve as additions to, each of AES-PR's responses and objections to each of ALSTOM's specific interrogatories.

A. AES-PR objects to ALSTOM's interrogatories to the extent that they call for information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable statutory or common law privileges or immunities. To the extent that any interrogatory may be construed as seeking the disclosure of information subject to these privileges or immunities, AES-PR invokes the same.

A 189

B. AES-PR objects to ALSTOM's interrogatories to the extent that they seek confidential or proprietary information of third parties as to which AES-PR has entered into agreements to protect the confidentiality of such information.

C. AES-PR objects to Definition (A) to the extent that it purports to impose on AES-PR any obligations greater than those imposed by the Federal Rules of Civil Procedure and the rules and orders of the Court.

D. AES-PR objects to Definition (D) to the extent that it calls for information from contractors or agents of AES-PR that is not properly imputed to AES-PR. AES-PR further objects to the definition to the extent that it defines "AES" to include "AES related entities." AES-PR is answering solely on behalf of itself.

E. AES-PR objects to Definition (I) to the extent that it attempts to characterize the document Bates-stamped EEC-05970 through EEC-06331.

F. AES-PR objects to Definition (K)[1] as overbroad and unduly burdensome. AES-PR is providing in these responses information sufficient "to identify" persons and things as that term is reasonably understood. AES-PR further objects to the definition regarding identification of persons because it presupposes that each person to be identified could be compelled to be a witness in Court.

---

[1] ALSTOM's Second Set of Interrogatories contains two Definitions titled Definition (K). *Compare* p. 2 *with* p. 3. This Objection relates to the Definition (K) on page 3.

2

F. AES-PR objects to Definition (L)[2] to the extent that its use of the term "writing" or "document" exceeds the definition set forth in the Fed. R. Civ. P. 34.

G. These interrogatory responses and objections are not intended to be, and shall not be construed as, an agreement or concurrence by AES-PR with ALSTOM's characterization of any facts, circumstances, or legal obligations.

H. AES-PR objects to ALSTOM's interrogatories to the extent they attempt to impose requirements beyond those set forth in Fed. R. Civ. P. 33 or the rules or orders of the Court.

I. These interrogatory responses reflect AES-PR's present knowledge based on reasonable inquiries to date. Consistent with Instruction (A), AES-PR expressly reserves the right to supplement its interrogatory responses in the future.

---

[2] ALSTOM's Second Set of Interrogatories contains two Definitions titled Definition (L). *Compare* p. 2 *with* p. 3. This Objection relates to the Definition (L) on page 3.

3

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

The following responses and objections are made subject to and

without waiver of any of the general objections set forth above.

### INTERROGATORY NO. 19

If you contend that the installation of the secondary reverse osmosis
system at the Plant identified in AES's Supplemental Response to ALSTOM Power
Inc.'s Interrogatory No. 10 was a direct, proximate, and foreseeable result of
ALSTOM's alleged breach of the ESP Corrosion Warranty, state in detail the basis
for your contention, and identify all documents that refer or relate to and all
persons with knowledge of the subject matter of your answer to this Interrogatory.

RESPONSE: AES-PR objects to this interrogatory on the ground that

it calls for a legal conclusion and its requests for identification are overbroad and

unduly burdensome. Subject to the foregoing general and specific objections, AES-

PR states that the installation of the secondary reverse osmosis system was an

immediate and necessary step to arrest the severe accelerated corrosion described

in the Complaint in this action. The pollution control equipment supplied by

ALSTOM, by design, was to operate without accelerated corrosion and in

compliance with the Plant's environmental permits when using high-chloride water.

The equipment ALSTOM supplied, however, could not do so. Accordingly, the

secondary reverse osmosis system was installed so that low-chloride water could be

used in the CDS, which allowed the pollution control equipment to operate in

compliance with the Plant's environmental permits and without causing accelerated

corrosion. AES-PR has identified the persons with knowledge of this subject matter

in its multiple responses to Interrogatory No. 2, as well as in depositions in this

matter, and AES-PR incorporates those responses and that testimony as if fully set

4

forth herein. AES-PR supplements this response by referring ALSTOM to the

documents AES-PR is producing in response to ALSTOM's requests for production

of documents. See Fed. R. Civ. P. 33(d).

INTERROGATORY NO. 20

   If you contend that the proposed installation of the brine crystallizer at
the Plant identified in AES's Supplemental Response to ALSTOM Power Inc.'s
Interrogatory No. 10 is a direct, proximate, and foreseeable result of ALSTOM's
alleged breach of the ESP Corrosion Warranty, state in detail the basis for your
contention, and identify all documents that refer or relate to and all persons with
knowledge of the subject matter of your answer to this Interrogatory.

   RESPONSE: AES-PR objects to this interrogatory on the ground that

it calls for a legal conclusion and its requests for identification are overbroad and

unduly burdensome. Subject to the foregoing general and specific objections, AES-

PR states that AES-PR's plant was designed to be a zero-liquid-discharge facility.

The brine crystallizer to be installed at the Plant is necessary for the Plant to

operate without accelerated corrosion of its ESPs and at the same time comply with

its zero-liquid-discharge environmental permit. The pollution control equipment

supplied by ALSTOM, by design, was to operate without accelerated corrosion and

at the same time consume specified quantities of high-chloride water. The

equipment ALSTOM supplied, however, could not do so. Because the CDS

equipment cannot consume high chloride water without causing accelerated

corrosion in the ESPs, the Plant must install the brine crystallizer as an alternative

mechanism to dispose of the high chloride water without causing accelerated

corrosion in the ESPs. AES-PR has identified the persons with knowledge of this

5

A 193

subject matter in its multiple responses to Interrogatory No. 2, as well as in

depositions in this matter, and AES-PR incorporates those responses and that

testimony as if fully set forth herein. AES-PR supplements this response by

referring ALSTOM to the documents AES-PR is producing in response to

ALSTOM's requests for production of documents. See Fed. R. Civ. P. 33(d).

## SUPPLEMENTAL RESPONSES TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 14

Set forth in detail and itemize each element of damage which you contend you are entitled to recover in this action, describing in detail how you computed each element of damage and the provision(s) in the Purchase Order pursuant to which you contend that you are entitled to recover such damages, and identify all documents which refer or relate to and all persons with knowledge of the subject matter of your answer to this Interrogatory.

SUPPLEMENTAL RESPONSE: AES-PR supplements its response to

Interrogatory No. 14 by adding to it the following:

AES-PR supplements this response by referring ALSTOM to the expert

reports of Jack R. McDonald, Ph.D. and Stuart A. Rosenberg, CPA, CVA

that AES-PR served on ALSTOM on February 27, 2006.

### INTERROGATORY NO. 15

If you contend that D/FD, ALSTOM or EEC amended, modified, supplemented, superceded, changed or altered the EEC O&M Manual Volume 1, whether orally or in writing, state in detail the basis for your contention, including in your answer whether the amendment, modification, supplementation, supercession, change, alteration was oral or written, and by whom it was issued.

SUPPLEMENTAL RESPONSE: AES-PR supplements its response to

Interrogatory No. 15 by adding to it the following:

6

In November 2002, EEC and/or ALSTOM presented additional revised operating procedures to AES-PR, including but not limited to procedures titled "CDS Cold Start-up" dated November 14, 2002. Those revised procedures supplemented and superceded the August 2001 EEC O&M Manual.

In addition, ALSTOM and EEC modified the August 2001 EEC O&M Manual procedures when their commissioning personnel demonstrated how to operate and maintain the pollution control equipment between July 2002 and July 2003 in a manner different from that set forth in the August 2001 O&M manual.

INTERROGATORY NO. 16

If you contend that you were ever instructed to operate either CDS at the Plant with an outlet flue gas temperature of below 152 degrees Fahrenheit, identify who gave you the instruction, set forth the substance of the instruction that was given, when and on how many occasions the instruction was given, and state whether the instruction was given orally or in writing on each such occasion.

SUPPLEMENTAL RESPONSE: AES-PR supplements its response to Interrogatory No. 16 by adding to it the following:

At least the following five EEC and ALSTOM commissioning personnel instructed AES-PR personnel, verbally or in writing, to operate on occassion the CDS with an outlet temperature of below 152 degrees: Tim Maidenford, Tom Coleman, Joe Ortega, Bill Van Hooser, and Dave Edsall. Others may have done so as well.

INTERROGATORY NO. 17

If you contend that ALSTOM waived, or is otherwise estopped from relying upon, the conditions precedent to the ESP Corrosion Warranty that the system be operated and maintained "in accordance with Contractor's Operation and Maintenance Manuals, Owner's specified operating parameters, and typical system

7

operation at baseload and specified capacities", state in detail the basis for your contention, including in your answer whether the bases of the alleged waiver or estoppel were oral or written representations, and the identity of the person or persons who made those representations.

SUPPLEMENTAL RESPONSE: AES-PR supplements its response to

Interrogatory No. 17 by adding to it the following:

EEC and ALSTOM's commissioning personnel demonstrated how to

operate and maintain the pollution control equipment between July 2002 and July

2003 in a manner different from that set forth in the August 2001 O&M manual.


/s/ John S. Spadaro
John S. Spadaro
Bar No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: March 10, 2006                    Attorneys for AES Puerto Rico, L.P.

8

## VERIFICATION

I, Allan B. Dyer, declare under penalty of perjury that:

    1.    I am President of AES Puerto Rico, L.P.

    2.    I have read the foregoing AES Puerto Rico, L.P.'s Responses to

ALSTOM Power, Inc.'s Third Set of Interrogatories and Supplemental Responses to

Specified Interrogatories and, to the best of my knowledge, information and belief,

they are true and accurate.

    _03/08/06_
    Date

Allan B. Dyer

9

A 197

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

On March 10, 2006, Plaintiff served AES Puerto Rico, L.P.'S Responses

to ALSTOM Power, Inc.'s Third Set of Interrogatories and Supplemental Responses

to Specified Interrogatories, along with a copy of this Notice of Service, by hand

delivery, on:

> Richard R. Weir, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road, Suite 200
> Wilmington, Delaware 19806

and by facsimile and first class mail, postage prepaid, on:

> Anthony F. Vittoria, Esq.
> James E. Edwards, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643

> Respectfully submitted,

> /s/ John S. Spadaro
> John S. Spadaro
> Bar No. 3155
> MURPHY SPADARO & LANDON

1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated:  March 10, 2006                Attorneys for AES Puerto Rico, L.P.

2

A 199

# Tab 20

**To be Supplemented
Upon Receipt of Transcript**

# Tab 21

1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF DELAWARE

3   ------------------------------------X

4   AES PUERTO RICO, L.P.,                  :

5               Plaintiff                   :   ORIGINAL

6         v.                                :   Case No.:

7   ALSTOM POWER, INC.,                     :   04-1282-JJF

8               Defendant                   :

9   ------------------------------------X

10

11          Deposition of LUIS CANEPARI

12             Washington, D.C.

13          Friday, March 3, 2006

14                1:35 p.m.

15   Job No.:  1-74202

16   Pages 1 - 97

17   Reported by:  Lynn Schindler

18

19

20

21

22                                            **A 201**


L.A.D
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW  •  Suite 850, Washington, D.C. 20036
Tel: 202.861.3410  •  800.292.4789  •  Fax: 202.861.3425
Web: ladreporting.com  •  E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD  •  Baltimore, MD  •  Greenbelt, MD  •  McLean, VA

DEPOSITION OF LUIS CANEPARI
CONDUCTED ON FRIDAY, MARCH 3, 2006

27

1    move, we move the whole mailbox to the other group,

2    but the whole thing is one.

3    BY MR. VITTORIA:

4        Q    When did you start collecting e-mails for

5    this litigation?

6        A    End of year, 2005.

7        Q    Do you know the month?

8        A    Probably November, December.  I received the

9    first one in November.

10       Q    So does each AES Puerto Rico have its own --

11   his or her own folder of e-mails?

12           MR. WILLIAMS:  Objection to the form of the

13   question.

14       A    Each person, or each AES Puerto Rico

15   personnel or contractor that was approved to have an

16   e-mail account will have his own folder in the server.

17   BY MR. VITTORIA:

18       Q    And are those subfolders to a larger AES

19   Puerto Rico folder?

20           MR. WILLIAMS:  Objection to form.

21   Mischaracterizes the witness's testimony.

22       A    In practice, we group them in a folder that

DEPOSITION OF LUIS CANEPARI
CONDUCTED ON FRIDAY, MARCH 3, 2006

35

1    A    I'm familiar with the concept of metadata.

2    Q    What steps did you take to preserve the

3  metadata for the e-mails that you collected for this

4  litigation?

5    A    We copy it into CDs and send them.  Standard

6  format.

7    Q    Were any programs used to insure that the

8  metadata was not altered?

9         MR. WILLIAMS:  Objection to form.

10  Ambiguous.  And he just testified yes.

11         MR. VITTORIA:  Dan, stop testifying.

12         MR. WILLIAMS:  I'm not going to have you

13  admonishing me in the deposition.

14         Go ahead and answer the question again.

15         MR. VITTORIA:  Even though when you're

16  acting improperly and unprofessionally?

17         MR. WILLIAMS:  Go ahead and answer the

18  question again.

19         MR. VITTORIA:  And unethically, I might add.

20         MR. WILLIAMS:  All right.  Is there a

21  question pending or not?  Because we're going to have

22  a deposition where you ask questions and he gives

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202) 861-3410  (800) 292-4789  (301) 762-8282  (703) 288-0026  (410) 539-3664

A 203

DEPOSITION OF LUIS CANEPARI
CONDUCTED ON FRIDAY, MARCH 3, 2006

58

1      A     No.

2    BY MR. VITTORIA:

3      Q     But you don't know sitting here right now?

4      A     I don't know.

5          MR. WILLIAMS:  We've been going for an hour.

6    Can we take a break now?

7          MR. VITTORIA:  Sure.

8          (Discussion off the record.)

9          MR. WILLIAMS:  Mr. Canepari has one answer

10   he'd like to clarify.

11         THE WITNESS:  I contacted the old e-mail

12   administrator who was here when First Class was

13   implemented.  He clarified that First Class is a

14   stand-alone system, such as Lotus Notes, it doesn't

15   need another interface.  So it's basically a

16   stand-alone system.  And that we started rolling out

17   Exchange, Outlook interface in 2001, and we phased it

18   out for like a year until we finalized it.  Some could

19   have access to both systems for a while.

20   BY MR. VITTORIA:

21     Q     And who is it you spoke with?

22     A     I spoke with Brad Galura?

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202) 861-3410  (800) 292-4789  (301) 762-8282  (703) 288-0026  (410) 539-3664

A 204

DEPOSITION OF LUIS CANEPARI
CONDUCTED ON FRIDAY, MARCH 3, 2006

59

1      Q      Can you spell that for me?

2      A      G-A-L-U-R-A.

3      Q      Where is Brad located?

4      A      Arlington, AES office.

5      Q      And you have an understanding now as to what

6  First Class e-mail system is?

7          MR. WILLIAMS:  Objection to form.  Lack of

8  foundation.  Mischaracterizes the prior testimony.

9      A      Yes.

10 BY MR. VITTORIA:

11     Q      What is that?

12     A      First Class is a stand-alone system for

13 e-mail communications.

14     Q      Is it synonymous with the AESC.com system?

15     A      Yes.  It has AESC at the end.

16     Q      Mr. Canepari, I'm handing you what was

17 previously marked as Exhibit 7 and ask you to take a

18 look at it.  Have you seen this document before?

19          MR. WILLIAMS:  Objection to form.  Outside

20 the scope of the issues for which Mr. Canepari is here

21 to testify.

22     A      I have seen this e-mail before.