# Tab 25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.          * C.A. NO.:  04-1282(JJF)
                               *
      Plaintiff                *
                               *
        Vs.                    *
                               *
ALSTOM POWER, INC.,            *
                               *
      Defendant                *
******************************

THE 30(B)(6) DEPOSITION OF MR. ALLAN DYER
(CORPORATE DESIGNEE)

DATE      :    January 18, 2006

TIME:     :    9:30 A.M.

OFFICE    :    Ober, Kaler, Grimes & Shriver, P.S.C.
               120 East Baltimore Street
               Baltimore, Maryland 21202-1643

HELD AT   :    Axtmayer, P.S.C.
               250 Ponce de León Avenue
               Suite 404
               Hato Rey, Puerto Rico

APPEARANCES

FOR PLAINTIFF:

      Daniel D. Williams, Esq.

FOR DEFENDANT:

      Anthony Vittoria, Esq.

NOTARY PUBLIC:

      Liana I. Loyola, Esq.

---

**CRESPO & RODRIGUEZ, INC.**
Taquígrafos de Récord
TELS: (787) 758-5930 / (787) 763-8018
FAX: (787) 767-8217
A-6 Yale Street, Santa Ana
Río Piedras, Puerto Rico 00927



120

1    MR. WILLIAMS:

2        Objection to form; they were there by then.  It's

3    incoherent.

4    MR. VITTORIA:

5        Dan, please don't testify.  Number one, that's

6    factually incorrect. But, number two, it's improper.

7    MR. WILLIAMS:

8        Okay.  Objection to form.

9    THE DEPONENT:

10       A    Do you refer to March, 2004?

11   BY MR. VITTORIA:

12       Q    Yes.

13       A    As of March, 2004, the best I can recall, we

14   still believed we needed to be, needed to have those

15   plates on site as soon as possible.

16       Q    Okay.  I'm going to hand you what's been

17   marked as Exhibit No. 10, and ask you to take a look at

18   it.

19   MR. VITTORIA:

20       I think there's two copies there.  Is there?

21   MR. WILLIAMS:

22       There is not.

23   MR. VITTORIA:

24       They might be stapled together.  Here's the other

25   one.



1    A    No, I know it just becomes an issue.

2    Q    Okay, I want to refer you back to Exhibit No.

3    4, to the supplemental responses to the interrogatories.

4    Page 3.  And we're in the collections plate chart for

5    "various". You testified earlier that that's an esti-

6    mate?  Is that correct?

7    A    That is correct, sir.

8    Q    On what is that estimate based?

9    A    That estimate I believe is based on the mate-

10   rial, or the price we paid for Unit 1.

11   Q    Unit 2?

12   A    Pardon me, Unit 2, you're correct.

13   Q    You would agree with me, wouldn't you, that

14   the corrosion in Unit 1 is not as bad as the corrosion

15   in Unit 2, correct?

16   MR. WILLIAMS:

17       Objection to form.

18   THE DEPONENT:

19   A    No, I wouldn't agree with you.

20   (Whereupon, a document was marked for identification as

21   Exhibit 14 of the deposition.)

22   BY MR. VITTORIA:

23   Q    I'm handing you what's been marked as Exhibit

24   No. 14, and I ask you to take a look at it.

25

**CRESPO & RODRIGUEZ, INC.**
TEL. (787) 758-5930 • FAX: (787) 767-8217

156

1      MR. WILLIAMS:

2          Mr. Vittoria, would you identify for the record

3      what's been redacted on this exhibit, the black marks in

4      the lefthand margin?

5      MR. VITTORIA:

6          Nothing's been redacted; those are hole punches.

7      MR. WILLIAMS:

8          Not in the document that was produced though,

9      right?

10     MR. VITTORIA:

11         I don't know that sitting here.

12     MR. WILLIAMS:

13         So you don't know if anything was underneath those

14     holes?

15     MR. VITTORIA:

16         I do not.  Now I'm not gonna be deposed.  The

17     exhibit is the exhibit. And, again, Mr. Williams, if you

18     have any questions, you can ask them; not of me, but of

19     the Witness.

20     MR. WILLIAMS:

21         And my only concern is if you're using altered

22     documents.

23     MR. VITTORIA:

24         Dan, if you continue with the comments...

25



**CRESPO & RODRIGUEZ, INC.**
TEL. (787) 758-5930 • FAX: (787) 767-8217

A 279

1    much lesser degree on the technical aspect.  And a

2    variety of people.

3         Q    Within AES Puerto Rico, do you know any

4    specific individual by name that was involved in that

5    decision?

6         A    Sure.

7         Q    Can you recall them here today?

8         A    AES Puerto Rico employees, are you asking for?

9         Q    Yes.

10        A    I'm an AES Puerto Rico employee. I was

11   involved in that decision. Ron McParland, at that time,

12   was an AES employee. Tracy Jarvis was an AES employee,

13   at that time. Ernest Pagaduan, who was an AES employee

14   at that time, was involved. David Stone, who is still an

15   AES employee, was involved at that time. And then a

16   variety of technicians, mechanics.

17        Q    Okay.

18        A    Do you want... Well, I'd be speculating more

19   on their names, which...

20        Q    No, I think that's fine.

21   (Whereupon, a document was marked for identification as

22   Exhibit 16 of the deposition.)

23        A    Do I still need this?

24        Q    Not for the time being. Mr. Dyer, I'm handing

25   you what's been marked as Exhibit No. 16, and I'd ask



**CRESPO & RODRIGUEZ, INC.**
TEL. (787) 758-5930 • FAX: (787) 767-8217

A 280

187

1    you to take a look at it.

2         A    Okay, I've had a quick review of it.

3         Q    Do you recognize the document?

4         A    I recognize something similar to this.  This

5    is a capital request form that we have.  I don't see our

6    company logo on it anywhere, so... But it looks like

7    something that we would submit.

8         Q    Do you know who was the author of this

9    particular document, Exhibit No. 16?

10   MR. WILLIAMS:

11        Objection to form; he said he didn't know who

12   created this, or what this document is.

13   THE DEPONENT:

14        I would assume that this document would've been

15   authored by several people, to prepare it for approval,

16   and... who led the effort, I don't know.

17   BY MR. VITTORIA:

18        Q    Were you one of the individuals that helped

19   author this document?

20   MR. WILLIAMS:

21        Can you repeat the question?

22   BY MR. VITTORIA:

23        Q    Were you one of the individuals who helped

24   author this document?

25

1  BY MR. VITTORIA:

2      Q    Are you aware that prior to the discovery of

3  the corrosion, Tracy Jarvis had contacted G.E. Betz

4  about the chlorides in the water used for the CDS?

5  MR. WILLIAMS:

6      Objection.   The Witness is not here to testify

7  based on personal knowledge.

8      I will instruct you not to answer that question.

9  MR. VITTORIA:

10      You're gonna instruct him not to answer a question

11  that's not privileged?

12  MR. WILLIAMS:

13      About his personal awareness about something that's

14  not one of the 16 topics listed on the notice.

15  MR. VITTORIA:

16      You're instructing him not to answer.

17  MR. WILLIAMS:

18      Which of the 16 topics are you specifically re-

19  ferring to, Mr. Vittoria?

20  MR. VITTORIA:

21      This is in relation to Subject No. 3, the need for

22  the reverse osmosis system.

23  MR. WILLIAMS:

24      The words "the need for the reverse osmosis system"

25  are not present in Item No. 3, are you are aware.  Is



**CRESPO & RODRIGUEZ, INC.**
TEL. (787) 758-5930 • FAX: (787) 767-8217

A 282

1    there another number where you think that "the need for

2    the reverse osmosis system" shows up on the notice of

3    topics?

4    MR. VITTORIA:

5        Dan, I'm not gonna argue about this. Are you

6    instructing your Witness not to answer that question?

7    MR. WILLIAMS:

8        Did you not hear me?

9    MR. VITTORIA:

10        A question that's not privileged?

11    MR. WILLIAMS:

12        Where is "the need for the reverse osmosis system"

13    identified in your notice of topics?

14    MR. VITTORIA:

15        The purported rationale for installing the reverse

16    osmosis system, in No. 3.

17    MR. WILLIAMS:

18        Well, he's prepared to testify about that.

19    MR. VITTORIA:

20        And I'm asking him about that.  I am also entitled

21    to investigate that issue, and I am doing so. And you

22    are instructing your client not to answer?

23    MR. WILLIAMS:

24        About what he personally knows about a communi-

25    cation before discovery of any corrosion? Yes.



1    BY MR. VITTORIA:

2        Q    Isn't it true that AES Puerto Rico concluded

3    that there was no relation between temperature and

4    opacity?

5    MR. WILLIAMS:

6        Objection, same objection.  You may answer.

7    THE DEPONENT:

8        A    In my opinion, to the best of my knowledge, we

9    have not come to that conclusion if you put chloride

10   water into that factor, which you omitted from your

11   question.

12   MR. WILLIAMS:

13       To be fair, the question is unclear whether he was

14   referring to chloride water or not.

15   (Whereupon, a document was marked for identification as

16   Exhibit 20 of the deposition.)

17   BY MR. VITTORIA:

18       Q    Okay, I hand you what has been marked as

19   Exhibit 20, and I ask you to take a look at it.

20       A    Okay.

21       Q    Do you recognize this document?

22   MR. WILLIAMS:

23       Objection to form.  Mr. Dyer is not here to testify

24   about his personal knowledge.  He is testifying about

25   the specific issues in the notice for deposition, to the



1   questions as to AES Puerto Rico's knowledge.

2   BY MR. VITTORIA:

3        Q    Do you recognize the document, Mr. Dyer?

4   MR. WILLIAMS:

5        I... Do you have... Whose testimony are you asking

6   for?...The company's on one of the 16 issues, or Mr.

7   Dyer personally?

8   MR. VITTORIA:

9        I'm asking a question, do you recognize the

10  document?

11  MR. WILLIAMS:

12       And I'm asking... First, the "you" is ambiguous.

13  Second of all, this doesn't relate to any of the 16

14  issues on the deposition notice. I've been very patient

15  today with you going beyond your deposition notice, but

16  I think we've reached the point where it's just

17  inappropriate.  This has nothing to do with the RO

18  system.  The words "RO" don't appear on the document.

19       It has nothing to do with any rationale relating to

20  the RO system.

21       And now you're asking Mr. Dyer about his personal

22  testimony, about his personal information about a

23  document, and that's not appropriate in a 30(b)(6)

24  deposition, as you well know.

25



**CRESPO & RODRIGUEZ, INC.**
TEL. (787) 758-5930 • FAX: (787) 767-8217

A 285

# Tab 26

Abigail Reyes

| | | |
|---|---|---|
| **From:** | Ernest Pagaduan | **Sent:** Sun 1/11/2004 4:15 PM |
| **To:** | Puerto Rico People | |
| **Cc:** | | |
| **Subject:** | U1 force outage | |
| **Attachments:** | | |

EXHIBIT
NUMBER 14

A E S - D A M

Unit 1 forced Outage Update.

As we all know unit 1 tripped Friday night, the trip was due to ISH FBHE tube leaks.
The ISH FBHE was inspected today, the extent of the damage is as or more severe than our last tube leak that we experienced in September. The damaged tubes are concentrated on the south east section. A visual inspection revealed there were at least 42 tube sections that were damaged.
At this time the damaged tubes are being removed and will be analyzed for root cause by our engineering department and outside expertise ( Bill and Paul ).Our estimated time of completion for this task is Saturday the 17th. The long term repair as we know now but may change depending on our expertise will be to relocate handcuffs as was done to U2. This modification will be conducted on our Fin SH FBHE and Fin RH FBHE also.

Preliminary inspection to our ESP was conducted, the severity at this point is probably 25% of what we saw in U2. Most of damage is concentrated on the west side and on the trailing edge of the #2 mechanical field and towards the center of the entire ESP. Other visual damages located at the different mechanical fields were of a lesser degree but at approximately the same area ( towards the center of the entire ESP ).
Our assesment is that the repairs can be completed in 5 days. Our plan is to utilize CE and AES personal for the repair efforts.

Some exposed tubes on our coal chutes presented more problems to the reliability of this unit..
JTThorpe will be on site Tuesday afternoon for all of our major refractory repairs.

There will be other mechanical / operation and I&E task during this outage. we will have a schedule of task tomorrow for everyone to view.

Mahalo
Ernest

# Tab 27

| From: | Bill Vela |
|-------|-----------|
| Sent: | Tuesday, February 3, 2004 11:14 AM |
| To: | Ron McParland; Tracy Jarvis; David Stone; Carlos Reyes; Al Dyer |
| Subject: | FW: Waste Water Disposal Permitting |

Below is ENSR's preliminary opinion on sending our waste water to the ash pugmill or yard.

William Vela
AES Puerto Rico
(787) 866-8117 ext.239

**CONFIDENTIALITY: This e-mail and any attachments are confidential and may be privileged. If you are not a named recipient, please notify the sender immediately and do not disclose the contents to another person, use it for any purpose or store or copy the information in any medium.**

-----Original Message-----
**From:** Shea, Dave [mailto:DShea@ensr.com]
**Sent:** Tuesday, February 03, 2004 10:34 AM
**To:** Bill Vela
**Cc:** Hall, Bob; Urban, Dave
**Subject:** RE: Waste Water Disposal Permitting

Bill: My understanding is that after you install the second RO system, you plan to send the concentrated brine to the pug mill to be mixed with the ash or as dust suppression on the manf. aggregate yard. I checked the EIS and this proposed activity appears to be in line with what was presented in Sections 4.9.1 and 4.9.2. Also, this proposed activity has no effect upon the PSD permit, the construction permit or the Title V application. My opinion is that you are already covered and don't need any permits except for what you mentioned about modifying your waste water treatment system permit to include the new equipment.

I'll check with Dave Urban in our office. He's doing lots of wastewater work for PREPA.

-----Original Message-----
**From:** Bill Vela [mailto:Bill.Vela@AES.com]
**Sent:** Tuesday, February 03, 2004 8:18 AM
**To:** Shea, Dave; Hall, Bob; eduardo.delrio@erm.com
**Subject:** Waste Water Disposal Permitting

Our current path for arresting the problem of corrosion in our Electrostatic Precipitators (ESP) is to improve the water quality of the water we use to control the temperature at the Circulating Dry Scrubber (CDS).

Currently our waste water system generates two waste streams; 1. sludge from a clarifier, 2. brine from a reverse osmosis unit. Our original design (water balance) has us sending the sludge to a holding tank and then to the ash mixer or pugmill for wetting the ash for manufactured aggregate. The brine can go to the CDS or the pugmill (on the water balance drawing, but the system was not installed to supply the pugmill).

We suspect the high chloride content in the brine waste water is causing the accelerated corrosion in the ESP. One proposal we are evaluating is to install a second reverse osmosis to further concentrate the brine solution, recycle the water and send the concentrated brine to a holding tank for use in the pugmill or as dust suppression spray water on the manufactured aggregate yard. The dust suppression is an activity we already do using fire hoses, a water truck and fixed sprinkler system. We currently use fresh water for this.

Earlier this year we modified our waste water treatment system permit to include a sludge press to dewater the sludge, recycle the water and separate the sludge. We would then mix the sludge with ash in the aggregate yard or send it off-site for land fill disposal.

AESPR-143669

**A 287**

Are there any specific permitting / environmental approvals we need to obtain for these modifications and activities? We know we have to modify our waste water treatment system permit to include the new equipment. Possible ARPE permits for any big foundations, holding tank, etc. Any thing required for spraying waste water or mixing our sludge wastes water on our ash yard? Anything else we may be missing?

William Vela
AES Puerto Rico
(787) 866-8117 ext.239

**CONFIDENTIALITY: This e-mail and any attachments are confidential and may be privileged. If you are not a named recipient, please notify the sender immediately and do not disclose the contents to another person, use it for any purpose or store or copy the information in any medium.**

This email has been scanned for all viruses by the MessageLabs service.

**************************************************************************************
Information contained in this communication is confidential and privileged proprietary information for business use purposes only. Unauthorized use, distribution, copying or disclosure is prohibited. If you received this communication in error, please contact the sender immediately. Thank you.
Note: this email message was swept for computer viruses.
**************************************************************************************

This email has been scanned for all viruses by the MessageLabs service.

AESPR-143670

# Tab 28

**To be Supplemented
Upon Receipt of Transcript**

# Tab 29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-mc-10069-MLW |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION OF ENSR CORPORATION TO
## ALSTOM'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## IMPROPERLY WITHHELD

ALSTOM Power Inc. ("ALSTOM") served a document subpoena on

ENSR Corporation ("ENSR"). On or about December 2, 2005, ENSR produced well

over 1,000 electronic and hard documents to ALSTOM. ENSR also informed

ALSTOM that it was withholding about 140 documents as privileged on behalf of

AES Puerto Rico, LP ("AES-PR") because they relate to work ENSR performed

pursuant to its retention by AES-PR's legal counsel. The withheld documents are in

our possession. ENSR provided revised privilege logs to ALSTOM on March 9,

2006. ENSR opposes ALSTOM's motion to compel production of the withheld

documents and defers to AES-PR's arguments as set forth in AES-PR's Opposition

to ALSTOM's Motion to Compel the Production of Documents Improperly Withheld.

Respectfully submitted,

Jon Mahoney

General Counsel
ENSR Corporation
2 Technology Park Drive
Westford, MA 01886
Tel. (978) 589-3033

Dated:  March 23, 2006

Attorney for ENSR Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AES PUERTO RICO, L.P.,     ) | |
|     ) | |
|     Plaintiff,     ) | |
| v.     ) | No. 06-mc-10069-MLW |
|     ) | |
| ALSTOM POWER, INC.,     ) | |
|     ) | |
|     Defendant.     ) | |

**[Proposed] ORDER**

Upon consideration of Defendant ALSTOM Power Inc.'s Motion to
Compel Production of Documents Improperly Withheld in Response To This Court's
Subpoena *Duces Tecum*, Following an In-Camera Review and For Other Relief, it is
this ____ day of March 2006, hereby

**ORDERED** that the motion is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE

A 292

## CERTIFICATE OF SERVICE

On March 24, 2006, ENSR served ENSR's Opposition to ALSTOM's

Motion to Compel Production of Documents Improperly Withheld by email and first

class mail, postage prepaid, on:

> Maureen Mulligan, Esq.
> 100 North Washington Street
> Boston, Massachusetts 02114

and,

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643

/s/ Jon Mahoney

3

A 293