# Tab E

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 5, 2006

**Via Email & U.S. MAIL**

Anthony F. Vittoria, Esq.
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD  21202-1643

    Re:    **AES Puerto Rico, LP v. ALSTOM Power, Inc.**

Dear Tony:

    This letter is in response to your letter of December 29, 2005. Although I believe we addressed most of the issues in your letter on our discovery call on Wednesday, this letter seeks to memorialize those communications and to provide you with an update.

    First, AES-PR continues to believe that it has collected all relevant EPA information that it possesses. As you know, AES-PR produced over 1300 pages of EPA-related information, including the EPA's final permitting decision regarding the 1998 permit. *See* AES-PR AESPR 076044 - 076179. However, next week Jeb will be at the Plant and will re-confirm that we have produced all of the responsive paper documents that can be located.

    Second, as Jeb mentioned on the phone on Wednesday, on December 19, 2005, AES-PR produced the Ron McParland email and its attachments that your letter claims AES-PR has not produced. As to the broader concern you express regarding the adequacy of AES-PR's efforts to retrieve documents in response to ALSTOM's requests, I can assure you that AES-PR has engaged in a systematic process of gathering, reviewing, and producing responsive documents (both hardcopy and electronic) and that those efforts fully conformed to the requirements of the Federal Rules.

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 5, 2006
Page 2

      As to the Daily Opacity Reports you mention, the data in those reports is stored in the Plant's CEMS computer system. We believe that the information contained in those reports substantially duplicates the hundreds and hundreds of pages of opacity data that AES-PR has already provided ALSTOM. As you know, last month and again on Wednesday, we have offered to make the plant's central computer systems for operating data available to your technician to make a copy of whatever data you believe you require. We have agreed to provide reasonable access for you to do so at any time during fact discovery. In addition, we conferred with our client following Wednesday's call and discovered that a number of the types of daily reports you described in your letter have been printed and are available in paper format as well as from the CEMS system. I can make these reports available to your copy service at the Plant at your convenience.

      Third, I sent you an email listing the individuals for whom AES-PR has collected central-server email and have agreed to collect email for all but one of the individuals listed in your December 29 letter. We will be sending you a list on Friday of around half a dozen ALSTOM employees for whom it appears ALSTOM has not collected email and who should have responsive, nonduplicative email that we would request you produce.

      Fourth, as Jeb confirmed on the phone, AES-PR has collected, reviewed, and produced documents from AES-PR's shared drive.

      Fifth, you ask that we confirm that AES-PR has produced all documents "relating to AES's imposition of a litigation hold to preserve documents related to the AES Puerto Rico project." We have produced the memorandum establishing a litigation hold for this litigation. Information concerning other litigation to which Alstom was not a party is not relevant to this lawsuit and has not been gathered or produced. Moreover, many of the communications concerning other unrelated litigations are privileged.

      Finally, I would like to re-confirm two issues we raised on Wednesday's call. First, we remain very troubled that ALSTOM has missed the court-imposed deadline for producing its privilege log for electronic documents. Given that we have serious questions about ALSTOM's privilege log relating to hardcopy documents (we'll be sending a letter soon laying out those concerns), we are deeply troubled that you indicated it could be as long as two weeks before we receive that log – nearly three weeks after the court-imposed deadline.

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esq.
January 5, 2006
Page 3

  Second, we also remain concerned about ALSTOM's failure to produce all email documents for Mr. Barber, who is a central witness in this litigation, and are equally concerned that you indicated it could be up to two weeks until we receive those documents, which will put us receiving those documents after the start of depositions in this matter. Given the importance of Mr. Barber to this litigation, I trust that you will gather and produce his email as promptly as possible.

  Please don't hesitate to call if you have questions before our next scheduled discovery call.

        Sincerely,

        Daniel D. Williams