# Tab G

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 15, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

    Re:    **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Jim:

    This letter follows up on various issues we discussed during our teleconference last Friday.

    First, you requested more detailed information concerning the backup tapes that may contain AES-PR e-mail from the old "First Class" e-mail system that was replaced in early 2002. I was able to learn the following information from The AES Corporation. The back-up tapes of First Class e-mail to which I referred were created for The AES Corporation by an outside vendor in September 2001. Because the tapes contain e-mail from the obsolete "First Class" e-mail system, it is both time consuming and exceptionally expensive to restore the information on them and process them for production. Specifically, it would take one to two months just to load the tapes onto a computer server that could process them, at a cost of approximately $5,000 to $10,000. Only after that work is complete could we determine what the date ranges are of the e-mails on the tapes and for which users the tapes contain data. It would then take several days to a week per individual user to convert the e-mail boxes into a usable format, thus restoring several e-mail boxes would take several weeks. The cost for doing so for even half-a-dozen users is expected to be in the range of $75,000 to $200,000.

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 2

      As you know, in its April 27, 2005 response to ALSTOM's first set of requests for production, AES-PR objected to the production of documents pre-dating November 28, 2002. Because the back-up tapes were created in 2001, it is highly improbable that they would contain anything of significance to this litigation. Moreover, as explained above, given the difficulties in restoring the data from these back-up tapes, the information could not be produced until well after the fact-discovery cut-off, well after the deadline to file dispositive motions in the case, and quite possibly could not be made available until after trial.

      Second, your letter to me of Friday afternoon states incorrectly that Mr. McParland "apparently reported to" me that he "will be coming to the United States in March 2006." As I explained in our teleconference, Mr. McParland, a former AES-PR employee, indicated to me that he *might* be in the United States at some point in March. I have now left Mr. McParland two messages asking for clarification with respect to his plans but have not heard back. I will let you know if he responds to me.

      Third, this will confirm that we have agreed to the following deposition dates for ALSTOM witnesses: Mr. Coleman on February 23 in Windsor and William Jarvis on March 2 in Windsor. In light of your request to take two depositions in Puerto Rico during the first full week of March, we request that Mr. Maidenford's deposition proceed in the Cincinnati area on March 6. We have noticed a 30(b)(6) deposition on the FBHE handcuffs for February 24 and you have not yet determined whether that date poses any conflict. As for the depositions ALSTOM will be taking, we can now confirm that Mr. Tomlin can be available for a deposition in Pittsburgh on February 28 and Mr. Dyer can be available for a deposition in Guayama, Puerto Rico on March 10.

      Fourth, you requested to continue the Rule 30(b)(6) deposition concerning document collection issues with an employee of The AES Corporation in Arlington, Virginia concerning "the shared servers maintained in Indianapolis and then in Arlington" and "the process of identifying, retrieving, and copying electronic mail for production to ALSTOM, including the cost to do so." While we disagree that Mr. Hernandez did not testify about these issues, and while we seriously doubt the utility of such a deposition, The AES Corporation has agreed to make a witness available for this purpose as it relates to AES-PR documents. We can produce him for a deposition at my office. The witness, of course, will not testify about the review and processing of data by Williams & Connolly LLP, including but not

WILLIAMS & CONNOLLY LLP

James E. Edwards, Jr., Esquire
February 15, 2006
Page 3

limited to the conversion of data to a Concordance format for review and production to ALSTOM.

      Fifth, later this week I will provide you with additional information concerning the list of employees and others performing specified job functions. Shortly we will provide you with a privilege log for Mr. Toher's documents that predate the date of his retention as a litigation consultant, as well as our analysis of how to handle the Rothe, Gabrielli, and Hognefelt documents that were among the over 36,000 documents ALSTOM produced over a month late. We are still waiting for the following from ALSTOM: (1) the stipulation you promised weeks ago concerning the document Mr. Vittoria produced the day after Mr. Gabrielli's deposition; (2) the electronic documents for Mr. Bulewich, Mr. Campbell, and Mr. Francis that you agreed to produce in a letter to me dated January 17, 2006; (3) confirmation as to whether ALSTOM is able or unable to locate its commissioning log(s) for September through November 2002, and (4) confirmation as to whether ALSTOM can locate Mr. Maidenford's Daily Commissioning Reports for the missing dates that we identified.

      Sincerely,

      Daniel D. Williams