# Tab I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,         \*

       Plaintiff,          \*

       v.             \*     C.A. No. 04-1282-JJF

ALSTOM POWER, INC.,       \*

       Defendant,       \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ALSTOM POWER, INC.'S SUPPLEMENTAL ANSWERS TO
## AES PUERTO RICO, L.P.'S SECOND SET OF INTERROGATORIES

ALSTOM Power Inc. ("ALSTOM"), defendant, pursuant to Rule 33 of the Federal Rules of Civil Procedure, provides this supplemental response to the Second Set of Interrogatories served by AES Puerto Rico, L.P. ("AES-PR") in this action.

### INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS

A.    The information furnished in these Answers is not based solely upon the knowledge of the executing party, but includes the knowledge of the parties' agents, representatives and, except to the extent the same is privileged, its attorneys. The word usage and structure of these Answers is that of the attorney for the executing party and is not, and does not purport to be, that of the executing party.

B.    ALSTOM objects to the Instructions and Definitions incorporated in the Interrogatories to the extent that they are inconsistent with, or purport to impose a duty beyond that imposed by the Federal Rules of Civil Procedure and disavows any obligation to comply with such Instructions and Definitions.

C.    ALSTOM objects to any Interrogatory which purports to request information in the possession, custody or control of anyone other than ALSTOM.

D.    ALSTOM objects to any Interrogatory to the extent that it seeks disclosure of information protected from discovery by the attorney/client privilege or the work-product doctrine.

E.    ALSTOM reserves the right to amend or supplement any of its responses if it secures new or different information during its investigation of this matter.

F.    ALSTOM objects to these Interrogatories to the extent that they seek information not relevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence.

G.    ALSTOM objects to any Interrogatory which purports to require it to attach documents of any kind to its Answers to Interrogatories on the basis that such Interrogatory is beyond the scope of the Federal Rules.

## ANSWERS

### INTERROGATORY NO. 14:

If you contend that AES-PR has failed to satisfy any conditions precedent to recovery under the corrosion warranty at issue in this litigation, for each and every such alleged condition precedent:

a)    state the specific language of the alleged condition precedent that you contend AES-PR failed to satisfy and identify the document, and page of the document, that you contend sets forth the condition precedent;

b)    if the alleged condition precedent incorporates by reference language in any other document, state the specific language in each such other document that you claim constitutes the condition precedent and identify the document, and page of the document, where you claim such language is located;

c)    state the complete factual basis for your contention that AES-PR allegedly has failed to satisfy the alleged condition precedent; and

2

d)      provide the date of any notice ALSTOM provided to AES-PR regarding the alleged failure to satisfy the alleged condition precedent, identify the person to whom the notice was given, and if the notice was given in writing, identify the document reflecting such notice.

**ANSWER TO INTERROGATORY NO. 14:**

ALSTOM objects to this Interrogatory because it is overly broad and unduly burdensome. In addition, ALSTOM states that Interrogatory No. 14 is a compound interrogatory and, therefore, is counted and treated as four separate interrogatories by ALSTOM pursuant to Federal Rule of Civil Procedure 33(a). Finally, ALSTOM objects to this Interrogatory because the term "condition precedent" is vague and undefined. To the extent a response is required and without waiving these objections, ALSTOM states as follows:

ALSTOM entered into a Purchase Order (the "Purchase Order") with Duke/Fluor Daniel Caribbean, S.E. ("D/FD") pursuant to which ALSTOM supplied the equipment at issue in this case. Alleging the existence of an assignment of certain of D/FD's rights under the Purchase Order, AES has filed this action against ALSTOM, contending, among other things, that ALSTOM breached the corrosion warranty under the Purchase Order. For purposes of this Answer, ALSTOM will assume that the "corrosion warranty" referenced by AES in the Interrogatory is found at Section 1.6 of Part III of the General Terms of the Purchase Order. Without admitting AES's standing to assert a claim under the Purchase Order, AES has failed to satisfy a number of conditions precedent required of anyone making a claim under the corrosion warranty.

(a)      Under Article 1 of the Signature Document, the Contract Documents that comprise the Purchase Order include, among other things, the Signature Document, the

3

Scope of Work, the Commercial Terms, the General Terms, and "the exhibits, drawings, specifications, and documents referred to therein...." The Contract Documents contain a number of legal conditions precedent to AES-PR's claim under the corrosion warranty in Sections 1.6, 1.8, and 1.9 of Part III of the General Terms of the Purchase Order.

Section 1.6 of the General Terms of the Purchase Order states:

The Contractor shall warrant for a period of twenty-four (24) months from performance acceptance the scrubbers, precipitators, induced draft fans, interconnecting duct work and duct work from the induced draft fans to the stack flange against the consequences of accelerated corrosion outside of the industry standards for power-generated facilities with dry scrubbing systems to the extent that the corrosion has materially affected or is reasonably expected to materially affect in the next two (2) years (i) the structural integrity of the Equipment of any portion thereof or (ii) that ability of the Equipment to mechanically perform.  Contractor's corrosion guarantee is conditioned upon operation and maintenance of the system in accordance with Contractor's Operation and Maintenance manuals, Owner's specified operating parameters,  and typical system operation at baseload and specified capacity factors.  Corrosion shall be monitored by a mutually agreed upon mapping program to be conducted by Owner.  Upon demonstration that corrosion exceeds the level described above, the Contractor and Owner shall use best faith efforts to mutually agree on the appropriate remedial actions.   In the event that the parties are unable to reach a mutual agreement either as to the extent of corrosion or the appropriate remedy, the issue shall be referred to a mutually agreeable third party mediator.  There shall be no re-warranty or extended warranty obligations, as set forth in Article 1.3, applicable to this Article 1.6

Section 1.8 of the General Terms of the Purchase Order states:

Consumable items, normal wear and tear (e.g. including, but not limited to, wear on refractory surfaces and maintenance thereof and/or sacrificial items such as weld overlay, tube shields, etc.) and erosion, corrosion or chemical attack to any portion of the boiler system caused in whole or part by deviations in the fuel or feedstocks from the limits specified in the Contract are excluded from any warranty obligations of the Contractor.

Section 1.9 of the General Terms of the Purchase Order states:

Contractor's representatives shall have reasonable access to test and operating records, the equipment, and other information they deem

<u>necessary to satisfy themselves of the validity of a claim under this warranty.</u>

The portions of these provisions that constitute condition precedent to recovery under the Corrosion Warranty are underlined above. In addition, Section 1.6 provides that the Corrosion Warranty "is conditioned upon operation and maintenance of the system in accordance with the Contractor's Operation and Maintenance manuals, Owner's specified operating parameters, and typical operation at baseload and specified capacity factors." Thus, in addition to the language quoted above from the General Terms of the Purchase Order, the Operation and Maintenance manuals (the "O&M Manuals") and the Specifications, in their entirety, constitute a part of the specific language of the conditions precedent that AES-PR has failed to satisfy in attempting to make a claim under the Corrosion Warranty.

(b)     One of the conditions precedent, which is found at Section 1.6 of the General Terms of the Purchase Order, provides that the corrosion guarantee is "conditioned upon operation and maintenance of the system in accordance with the Contractor's Operation and Maintenance manuals, Owner's specified operating parameters, and typical system operation...." As such, Section 1.6 of the General Terms of the Purchase Order incorporates the O&M Manuals and the Specifications identified in the Contract Documents by reference in their entirety. Thus, each and every term of such O&M Manuals and the Specifications is a part of the conditions precedent. AES had the O&M Manuals and the Specifications in its possession throughout the period of time in which it was operating the equipment at issue. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ALSTOM also has produced copies of the O&M Manuals and Specifications to AES in discovery.

(c)    AES has not demonstrated that the corrosion observed at the Plant constitutes "accelerated corrosion outside of the industry standards for power-generated facilities with dry scrubbing systems" as that phrase is used in the corrosion warranty. The corrosion has not materially affected, and/or is not reasonably expected to materially affect, structural integrity of the equipment or any part thereof, or the ability of the equipment to mechanically perform. To the contrary, for a period of two (2) years after performance acceptance and at all times relevant to this action, corrosion did not materially affect either the structural integrity of the equipment or any portion thereof or the ability of the equipment to mechanically perform. AES has failed to satisfy this condition precedent to a claim under the corrosion warranty.

AES failed to monitor the corrosion through an agreed upon mapping program as required under Section 1.6 of the General Terms of the Purchase Order. This failure also constitutes a failure to satisfy a condition precedent to a claim under the corrosion warranty. Moreover, when it contended that accelerated corrosion was present, AES failed to agree upon, or attempt to agree upon, a mutually acceptable remedy to the corrosion with ALSTOM, and, in the absence of an agreement with ALSTOM either as to the extent of the corrosion or the appropriate remedy, AES failed to refer, or attempt to refer, the matter to a mutually agreeable third-party mediator prior to taking action to remedy the alleged violation of the corrosion warranty. Instead, AES unilaterally chose to implement the remedies for which it is now improperly seeking to recover damages from ALSTOM. As such, AES failed to satisfy additional conditions precedent to its claim in this action.

As set forth in Section 1.6 of the General Terms of the Purchase Order, as a condition precedent to asserting a claim for accelerated corrosion, AES was required to operate and maintain the equipment in accordance with the O&M Manuals, Owner's specified operating parameters, and typical system operation at baseload and specified capacity factors. Based on discovery to date, AES failed to satisfy these conditions in numerous respects.

AES failed to operate the Plant at a minimum 30°F flue gas approach temperature to adiabatic saturation, failed to measure and record the wet bulb temperature, failed to measure and record the chloride content of the CDS spray water to establish the appropriate flue gas approach temperature, failed to measure and record the chloride content of the fly ash to establish the appropriate flue gas approach temperature, failed to increase the CDS outlet temperature during sootblowing cycles, failed to maintain, inspect, clean, and routinely replace the CDS spray water nozzles and their component parts, failed to maintain an adequate CDS differential pressure, failed to maintain adequate water pressure to the CDS spray nozzles, failed to properly calibrate the equipment, and failed to routinely inspect, adjust, operate, and otherwise maintain the equipment in accordance with the O&M Manuals and specified operating parameters. AES increased the CDS inlet temperature above 280°F at 100 percent of Boiler MCR, the temperature that is specified in the operating parameters in Section 4.1 of the O&M Manuals. AES failed to record and maintain documentation and support where such documentation and records were specifically required to be kept by the O&M Manuals. Such failures to operate and maintain the system in accordance with the O&M Manuals and specified operating parameters also constitute a failure by AES to operate the

equipment in accordance with typical system operations at baseload and specified capacity factors.

Under Section 1.8 of the corrosion warranty, the warranty is conditioned upon compliance with specification for fuel and feedstock. Based on the discovery conducted to date, including the absence of required documentation, the water and ash chloride levels exceeded the specifications set forth in the contract documents. As a result, AES has failed to satisfy a condition precedent to its claim in this action.

Under Section 1.9 of the General Terms of the Purchase Order, ALSTOM's representatives were to have reasonable access to test and operating records, the equipment, and any other information deemed necessary to satisfy themselves of the validity of a claim under the corrosion warranty. Despite requests by ALSTOM, AES failed to provide ALSTOM access to all of the records that AES was required to maintain under the terms of the Purchase Order and other documents reasonably requested by or required by ALSTOM to assess the validity of AES's claim under the warranty. Instead, AES unilaterally determined methods for repairing the alleged accelerated corrosion, disposed of evidence of the alleged corrosion, and, in doing so, failed to satisfy conditions precedent to its claim in this action.

(d)    ALSTOM has no obligation to provide notice to AES of AES's failure to satisfy express conditions precedent to a claim under the terms of the Purchase Order. Nevertheless, after AES advised ALSTOM that it had discovered corrosion and before AES asserted a claim under the warranty, ALSTOM attempted to collaborate with AES personnel to better understand the problem and identify its cause. Among other things, ALSTOM deployed a representative, Karl Hognefelt, of its pollution control group in

8

Knoxville, Tennessee to the site on or about November 23, 2005. Mr. Hognefelt met with several representatives of AES, including Paul Stinson. Mr. Hognefelt created a trip report, dated November 26, 2003, and ALSTOM provided a copy of that report to AES. At that time, and on numerous occasions thereafter, ALSTOM requested operating records and other data relating to the alleged accelerated corrosion, which AES failed to provide.

Indeed, despite numerous requests for proper operating and maintenance data, including requests made throughout the course of this litigation, AES has failed to provide the requested data. Without such data, AES cannot establish the conditions precedent to a claim under the corrosion warranty.

ALSTOM reserves the right to supplement this Answer as additional information becomes available and in accordance with the Federal Rules of Civil Procedure.

I solemnly affirm that the content of these Supplemental Answers to Interrogatories is true based on my personal knowledge and on documents and information available to me.

ALSTOM POWER INC.

By: William M. Jarvis,
Project Manager

9

AS TO OBJECTIONS:

ALSTOM POWER INC.

_____

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, Delaware   19806
(302) 888-3222

_____

James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:     (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this ___10th___ day of March, 2006, a copy of the foregoing ALSTOM Power, Inc.'s Supplemental Answers to AES Puerto Rico, L.P.'s Second Set of Interrogatories was served by hand delivery on John S. Spadaro, Esquire, Murphy Spadaro & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware 19805, and by facsimile and overnight mail on Daniel D. Williams, Esquire, Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, D.C. 20005, attorneys for AES Puerto Rico, L.P.

James E. Edwards, Jr.