# Tab P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AES PUERTO RICO, L.P., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ALSTOM POWER, INC., )<br>)<br>Defendant. )<br>) | No. 06-mc-10069-MLW |

**OPPOSITION OF PLAINTIFF AES PUERTO RICO, L.P. TO
ALSTOM'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
INPROPERLY WITHHELD IN REPONSE TO THIS COURT'S SUBPOENA
*DUCES TECUM*, FOLLOWING AN IN-CAMERA REVIEW AND FOR OTHER
RELIEF**

ALSTOM Power, Inc.'s Motion to Compel Production of Documents Improperly Withheld In Response To This Court's Subpoena *Duces Tecum*, Following an In-Camera Review and For Other Relief is ALSTOM's *eighth* motion to compel in conjunction with its litigation with AES Puerto Rico, LP ("AES-PR") in the District Court of Delaware. To date, none of those motions have been granted and five have been denied. This motion, like the others, is built on baseless assertions and lacks legal support. There are a number of independent reasons why this Court should reject ALSTOM's motion. **First**, ENSR Corporation's privilege logs and the Declaration of AES-PR's outside environmental counsel submitted with this Opposition establish that AES-PR's counsel retained ENSR to assist in providing legal advice to AES-PR and that the withheld emails relate to the

provision of that legal advice. **Second**, the documents on ENSR's privilege logs are clearly attorney work product (which ALSTOM does not even challenge).

## BACKGROUND

The litigation underlying this motion arises from a warranty claim asserted by AES-PR relating to accelerated corrosion in pollution control equipment provided by ALSTOM in the construction of an AES-PR power plant. The accelerated corrosion was discovered in November 2003, about one year after AES-PR took possession of the power plant from ALSTOM. Upon discovery of the corrosion, AES-PR informed ALSTOM that the accelerated corrosion was covered by the warranty ALSTOM had provided for the equipment, and asked ALSTOM for its assistance in remedying the problem. ALSTOM passed the warranty claim to its subcontractor, Environmental Elements Corporation, and after months of delay by ALSTOM, AES-PR was forced to file suit in September 2004 in the District Court for the District of Delaware.

About one year later, during discovery, ALSTOM served ENSR with a document subpoena. On or about December 2, 2005, ENSR produced well over 1,000 electronic and hard-copy documents to ALSTOM. ENSR also informed ALSTOM that on behalf of AES-PR it would be withholding about 140 hard-copy and electronic documents as privileged. Over one month later, on January 6, 2006, ALSTOM's counsel, Michael Schollaert, wrote to ENSR requesting a privilege log identifying the electronic documents that were being withheld. *See* Mot, Tab F.

About one week later, on January 13, 2006, ENSR provided the requested logs. *See* Tab 1.

On February 22, 2006 -- just over two weeks before the end of fact discovery -- Mr. Schollaert again wrote to ENSR claiming that ENSR had no privilege to assert, and asked that ENSR produce all of the withheld documents. *See* Tab 2. ENSR wrote to Mr. Schollaert on February 27, 2006, informing him that ENSR was asserting privilege on behalf of AES-PR. *See* Tab 3. ENSR also arranged for a meet and confer pursuant to Local Rule 37.1 to be held on March 6, 2006. During that call, ALSTOM's counsel was informed that AES-PR's outside environmental counsel, Deborah Jennings of DLA Piper Rudnick Gray Cary US LLP, had retained ENSR to assist her in providing legal advice to AES-PR. *See* Tab 4; *see also* Tab 5, Declaration of Deborah H. Jennings ("Jennings Decl.") ¶ 3. ALSTOM also was informed that ENSR was not asserting its own privilege, but rather was asserting AES-PR's privilege. *See* Tab 4. During that call, ALSTOM's counsel for the first time questioned the sufficiency of the information provided in the January 13, 2006, privilege logs. *See id.* Two days later, on March 8, 2006, AES-PR's counsel received a letter requesting more information about specific items on the January 13, 2006 privilege log. *See* Tab 6. Despite nearly six weeks of inaction on its own part, ALSTOM's counsel requested that ENSR and AES-PR respond in one day. *See* Tab 7. Despite the short time frame, ENSR, with AES-PR's assistance, produced revised privilege logs (the "Privilege Logs") on March 9, 2006. *See* Tab 8-10. ENSR also produced six emails and a handful of attachments

3

previously withheld as privileged. *See* Tab 8. ENSR asserted the attorney-client communication privilege and attorney work product privilege for the remaining 131 withheld electronic emails. *See* Tab 9. ENSR also withheld four hard-copy documents on behalf of AES-PR, asserting the attorney-client communication privilege for three of them and the self-critical analysis privilege on one. *See* Tab 10. The privilege logs produced on March 9, 2006 provide the basis on which the documents are being withheld. On March 10, 2006, ALSTOM filed the instant motion to compel.

## DISCUSSION

### I. THE WITHHELD EMAILS ARE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS AND ATTORNEY WORK PRODUCT.

As a general matter, the party asserting a privilege has the burden of establishing that the privilege applies. *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). That burden must be demonstrated by "a fair preponderance of the evidence." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D.Mass. 2000).

#### A. Attorney-Client Privilege.

The attorney-client privilege protects communications between client and attorney for the purpose of obtaining legal advice. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). "[T]he interest in preserving a durable barrier against disclosure of privileged attorney-client information is shared both by particular litigants and by the public, and it is an interest of considerable magnitude." *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 11 (1st Cir. 1998). The elements of the

4

attorney-client privilege are: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *U.S. v. Bisanti*, 414 F.3d 168, 171 (1st Cir. 2005). The attorney-client privilege extends to agents of the attorney who are "employed to assist a lawyer in rendering legal advice." *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002).

    1.    <u>The Emails Withheld by ENSR on Behalf of AES-PR Clearly are Protected by the Attorney-Client Privilege.</u>

The emails withheld by ENSR[1], on behalf of AES-PR, meet the requirements for protected attorney-client communications. *See* Tabs 9-10.[2] In fact many of them are direct or forwarded communications from AES-PR's outside environmental counsel, Deborah Jennings to AES-PR. *Id.* Ms. Jennings and other AES-PR outside environmental counsel, such as Eli Matos, were retained to provide environmental legal advice to AES-PR. *See* Jennings Decl. ¶ 2. Although Ms.

---

[1] AES-PR has withdrawn its privilege claim for three emails previously withheld and asked ENSR to produce as soon as possible documents 76-78 on ENSR's privilege log.

[2] The only document withheld on behalf of AES-PR not withheld pursuant to the attorney-client privilege is hard copy document ENSR02875-02907, which is withheld under the self-critical analysis privilege. This Court has recognized the validity of this privilege. *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 217 (D.Mass. 1980). This document was created to insure compliance with the relevant environmental regulations and laws, and disclosure of such a document could have a chilling effect on compliance with such regulations. *See id.*

Jennings was not a direct party to every withheld email,[3] all the withheld documents pertain directly to the legal advice provided by Ms. Jennings to AES-PR. *See* Jennings Decl. ¶ 5 (during 2002 to 2004 Ms. Jennings's work included: performance testing, permit modifications, permitting disputes, and a threatened EQB enforcement action); Tabs 9 and 10. These communications were intended and understood to be confidential. *See* Jennings Decl. ¶ 8; *see also* Tab 9 (several emails stamped "privileged and confidential"). Furthermore, there was no waiver of the privilege by involving ENSR in these communications because ENSR was specifically retained by Ms. Jennings to assist her in providing legal advice to AES-PR. *See* Jennings Decl. ¶ 3 ("I retained ENSR Corporation to assist me . . . so as to enable me to provide legal advice to AES-PR"); *see also Cavallaro*, 284 F.3d at 247 (attorney client privilege extends to agents of attorney who assist in providing legal advice).

    2.    <u>ALSTOM's Sole Basis to Challenge AES-PR's Attorney-Client Privilege Claim is a Mistaken View of ENSR's Relationship with AES-PR.</u>

ALSTOM's challenge to AES-PR's assertion of attorney-client privilege is based solely on a mistaken – and unsubstantiated -- belief that ENSR only provided environmental consulting services directly to AES-PR. *See* ALSTOM Mot.

---

[3] Documents 22, 23, 29, and 30 are communications amongst AES-PR employees, ENSR, and AES-PR's outside corporate counsel discussing the subject matters of Ms. Jennings's representation. Documents 53-54, 89-91, and 94 are communications between ENSR and AES-PR in which the scope of ENSR's work with Ms. Jennings is discussed. Finally, documents 7-8, 20-21, 28, 45, 52, 67, 70, 72-73, 93, 122 and 123 reflect communications with Deb Jennings or her legal advice.

¶ 3 ("ENSR . . . provided environmental consulting services to AES"). But Ms. Jennings's Declaration is clear that, with respect to the withheld documents, ENSR was assisting Ms. Jennings in providing legal advice. *See* Jennings Decl. ¶¶ 3,5,7,8. Although ENSR may have provided direct consulting work for AES-PR on some subject matters, for the withheld documents, ENSR's work for Ms. Jennings clearly falls within the scope of the attorney-client privilege. *See Cavallaro*, 284 F.3d at 247. Indeed, ALSTOM concedes that if ENSR assisted AES-PR's counsel in providing legal services, its motion is without merit. *See* Mem. at 5 (acknowledging privilege claim improper only if "AES engaged ENSR solely to provide consulting services").

ALSTOM's sole legal citation in support of its position, *In re Grand Jury Matter*, 147 F.R.D. 82 (E.D.PA. 1992), is inapposite. That decision rests on the premise that the environmental consultant was *solely providing environmental advice to the client, and not assisting in legal advice*. *See In re Grand Jury Matter*, 147 F.R.D. at 85. But here, as established by Ms. Jennings's Declaration, ENSR was assisting AES-PR's environmental counsel in providing legal advice to AES-PR. *See* Jennings Decl. ¶ 3. That is the definition of protected attorney-client communications. *See Cavallaro*, 284 F.3d at 247.[4]

---

[4] *In re Grand Jury Matter* also was a grand jury investigation, which has a "unique significance" in our government, and "the public's claim to each person's evidence [is] stronger . . . in the context of a valid grand jury subpoena." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 142 (D. Mass. 2004) (*quoting In re Sealed Case*, 676 F.2d 793, 806 (D.C. Cir. 1982)).

7

## B. Attorney Work Product.

"The work product doctrine . . . reflects the strong policy underlying the orderly prosecution and defense of legal claims." *United States v. Nobles*, 422 U.S. 225, 236-37 (1975). It protects against disclosure of materials prepared in anticipation of litigation by "a party, her attorney, or her representative." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) (*citing Maine v. United States Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002). The work product doctrine creates a "zone of privacy" for a party, the attorney, "and in many cases his non-attorney 'representative.'" *In re Grand Jury Subpoena*, 220 F.R. D at 141. A document is entitled to work product protection if it was prepared in anticipation of litigation by or at the request of counsel. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

Again, ENSR's privilege log and Ms. Jennings's Declaration establish the elements of the attorney work product privilege.[5] The withheld communications and attached documents were created by AES-PR's counsel or at counsel's request. *See* Tab 11 and 12. Moreover, the documents were created in anticipation of litigation. *See* Jennings Decl. ¶ 6 ("because of that prior litigation, during my

---

[5] ALSTOM's motion and accompanying memorandum cites to ENSR privilege logs that have been superseded. ALSTOM's motion claims to be "true and correct" copies of ENSR's privilege logs - but this is wrong. ENSR provided superseding privilege logs to ALSTOM. *See* Tabs 8-10. These logs provide additional information to support ENSR's assertion of privilege, including the assertions of protection under the work product doctrine. *Id.* ALSTOM cannot simply ignore a superseding privilege log; at the very least it should not fail to inform the Court of the existence of the new logs.

8

representation of AES-PR in 2002 through 2004, I was conscious of the potential for further litigation involving AES-PR's environmental permits"). The environmental permitting process for AES-PR was contentious, *see id.*, and ultimately ended in litigation before the First Circuit in *Sur Contra La Contaminacion v. Environmental Protection Agency*, 202 F.3d 443 (1st Cir. 2000). After that litigation ended, Ms. Jennings continued to perform work for AES-PR that carried the risk of litigation. *See* Jennings Decl. ¶ 6. This Circuit has recognized that a document is protected by the work product privilege if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *State of Me. v. United States Dept. of Interior*, 298 F.3d 60, 68 (1st Cir. 2002). Here, Ms. Jennings was involved in past litigation regarding AES-PR's environmental permits, and it was reasonable to anticipate that similar litigation might arise from the work she did for AES-PR in 2002 to 2004, *see* Jennings Decl. ¶ 6, and thus, the documents are properly withheld under the work product doctrine.

## CONCLUSION

ALSTOM's motion to compel production of the privileged documents withheld by ENSR is based on the mistaken premise that ENSR solely provided environmental consulting services directly to AES-PR. But the evidence in this Opposition establishes that the withheld documents relate to ENSR's work for AES-PR's outside environmental counsel in providing legal advice to AES-PR. AES-PR

respectfully requests that ALSTOM's motion be denied and that AES-PR be awarded its costs and fees in opposing the motion.

                                            Respectfully submitted,

                                            /s/ <u>James V. Hayes</u>
                                            James V. Hayes (BBO # 651802)
                                            James L. Tuxbury
                                            (Pro Hac Vice Admission Pending)
                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth Street, N.W.
                                            Washington, D.C. 20005
                                            Tel. (202) 434-5000
                                            Fax (202) 434-5029

Dated: March 23, 2006                    Attorneys for AES Puerto Rico, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AES PUERTO RICO, L.P., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ALSTOM POWER, INC., )<br>)<br>Defendant. )<br>) | No. 06-mc-10069-MLW |

### [Proposed] ORDER

Upon consideration of Defendant ALSTOM Power Inc.'s Motion to Compel Production of Documents Improperly Withheld in Response To This Court's Subpoena *Duces Tecum*, Following an In-Camera Review and For Other Relief, it is this ___ day of March 2006, hereby

**ORDERED** that the motion is **DENIED**; and it is further

**ORDERED** that AES Puerto Rico, LP shall be awarded its costs and fees incurred in opposing defendant's motion.

_____
UNITED STATES DISTRICT JUDGE