# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

e.    Additional training during startup and testing periods.

f.    Training will be conducted and scheduled as part of an integrated total facility training program. Classroom training will be scheduled to occur early in the plant startup program and will be concluded prior to the startup of equipment provided by the Contractor.

g.    Observation of Owner's operators and maintenance personnel.

3.4.4.2    All training sessions shall commence prior to start-up. Duration of the training program shall be as recommended by the Contractor and agreed upon by DFDC. Contractor shall provide DFDC an outline of the training program and a detailed schedule, for DFDC's review and approval, at least 6 weeks prior to the beginning of Contractor's training program.

3.4.4.3    All training activities by the Contractor will be coordinated by DFDC's training coordinator.

## 4.0    MATERIALS, EQUIPMENT AND SERVICES BY DFDC

### 4.1    PERMANENT FACILITY MATERIALS

4.1.1    DFDC will furnish the following permanent facility materials, equipment, and systems:

4.1.1.1    Foundations for all equipment (allow 1" above floor for leveling equipment).

4.1.1.2    Anchor bolts for all equipment (diameter and number to be determined by Seller). Anchor bolts shall be sized based on A-36 material.

4.1.1.3    Compressed air and instrument air to Seller's terminal points, as required.

4.1.1.4    Water to Seller's terminal points, as required.

4.1.1.5    Steam to Seller's terminal points, as required.

4.1.1.6    Electrical power supplies to Seller's terminal points, as required.

4.1.1.7    Ash removal system from Seller's terminal points.

4.1.1.8    Continuous Emission Monitoring System (CEMS).

4.1.1.9    Unit substations (loadcenters, 4160/480 V) and MCCs.

4.1.1.10    Performance testing.

4.1.1.11    Plant Distributed Control System (DCS).                    **B.026**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

4.1.1.12    All wiring and electrical interconnections to Seller's terminal points.

4.1.1.13    Stack.

4.1.1.14    Lime conveying to Contractor supplied lime storage silo.

4.1.1.15    Limestone preparation building.

4.1.1.16    Limestone storage and unloading system.

4.1.1.17    Limestone conveying from limestone preparation building to limestone storage silos.

4.1.1.18    Steel framed boiler building with roof, including all steel framing, galleries, walkways, platforms, stairs, and ladders around the CFB Boiler based on Contractor's layout requirements.

4.1.1.19    Coal silos.

4.1.2    The building  roofing will be furnished and installed  by DFDC. The installation  will be coordinated with the Contractor to facilitate protecting the building as soon as practical.  All openings in the roof  and  weather proof closures will be provided.

4.1.3    DFDC will retain responsibility for the design, supply, and installation of all 480 volt cable and raceway to the Contractor supplied utilization equipment (motors, transformer/rectifier (T/R) sets, lighting transformers, etc.).

4.1.4    DFDC will retain responsibility for the design, supply, and installation of all exterior lighting systems.

5.0    **TEMPORARY CONSTRUCTION FACILITIES AND UTILITIES**

5.1    <u>FURNISHED BY CONTRACTOR</u>

5.1.1    Except as expressly set forth in Section 5.2 of this document, Contractor shall, as part of the Scope of Work, supply, install, properly maintain, and remove all temporary construction facilities and utilities necessary for full and complete performance of the Work.  Such items shall include, but not necessarily be limited to, those listed below. <u>Contractor shall submit with the proposal</u> his anticipated jobsite, laydown, storage construction and office facilities, identified as to size, time duration,  type of facilities, move-in and move-out dates.  Locations of storage space and office space will be determined by  DFDC prior to mobilization.

5.1.2    All temporary buildings shall be all-metal unless otherwise approved by DFDC and shall be skid- or wheel-mounted and easily relocated.

**B.027**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

5.1.3    All fuels and lubricants used during construction in executing the installation of the Work within the Contractor control.

5.1.4    Transportation facilities on and off site.

5.1.5    Contractor shall make necessary arrangements and obtain installation of telephone equipment and service in its, and its Subcontractors, Suppliers, and Manufacturers' Jobsite offices and shall assume all responsibility for its Jobsite telephone service.

5.1.6    All temporary sanitary facilities, including janitorial services, storage and removal of sewage. Contractor shall provide and enforce the use of acceptable sanitary facilities for all its, and its Subcontractors', Suppliers; and Manufacturers, construction workers and field representatives at the Jobsite. Portable toilets shall be of the chemically treated type obscured from public view and properly maintained. Sanitary facilities in trailers and other temporary structures shall be equipped with holding tanks or shall temporarily connected to the permanent sewer system when it is completed.

5.1.7    Compressed air, gases, and welding rods.

5.1.8    Maintenance of Contractor's laydown, storage and Work areas and roads within such areas. The laydown area roads will be covered with stone by DFDC. Routine maintenance will be handled be DFDC. Any repairs of Contractor's laydown, storage, work area, and roads outside of the scope of routine maintenance will by handled by Contractor.

5.1.9    Rigging, scaffolding, and other equipment for erection.

5.1.10    All cranes and other necessary equipment for lifting and moving equipment and materials. This applies to both on site and to getting the material from the receiving port to the site.

5.1.11    All small tools, rags, gloves, coveralls.

5.1.12    <u>Temporary lighting</u>

5.1.12.1    Contractor shall provide all necessary temporary lighting, wiring, panelboards, switches and other temporary electrical devices, with sufficient outlets so that a 100-foot-long extension cord will reach all operations requiring light or power, and to include proper overcurrent protection for all conductors of the temporary system. This shall include Contractor's offices, as well as other Contractor construction facilities.

5.1.12.2    All temporary power and convenience outlets installed on the Jobsite by Contractor shall be grounding-type outlets requiring a special polarized plug that can be inserted only in the proper manner. All outlets shall be connected to the plant ground grid. All temporary disconnect switches, welding machines, boxes, and other electrical equipment and devices installed on the Jobsite by Contractor shall be grounded solidly to the plant ground grid.

**B.028**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

5.1.12.3   Temporary electrical service and lighting circuits shall be moved as required to maintain progress in the Work. Temporary facilities shall be removed from the Jobsite upon completion of the Work.

5.1.12.4   All electrical work shall be in accordance with all applicable codes and safety standards.

5.1.12.5   Lighting shall be provided as required for Contractor's construction operations, and for the safety and security of Contractor, its Subcontractors, Suppliers, and Manufacturers, other contractors, and the Work during the entire construction period. Temporary lighting intensity shall be based on a minimum of five (5) foot-candles for floor area, with adequate lighting in all stair wells and corridors to meet safety requirements. The materials used for temporary service shall not be used in the permanent Unit unless approved in writing by DFDC.

5.1.12.6   Occasional interruption of electrical service may occur at the Jobsite. Such interruptions are typical during construction activities and shall not be justifiable cause for a claim by Contractor for additional compensation or for an extension of the Contract Time. If the interruptions are not scheduled, are caused by factors within DFDC's control on-site, and occur in excess of more than eight (8) hours per month, the contractor may seek compensation or extension of time or both.

5.1.13     All expendable or consumable construction items and supplies.

5.1.14     All safety items necessary to perform the work and protect the work area including fire protection equipment as required by Contractor's approved safety program, first aid program and safety program. It shall be the responsibility of Contractor to initiate and maintain such programs as may be necessary to comply with requirements set forth by the Occupational Safety of Health Administration and any other local, state and federal regulations.

5.1.15     Containers, ice, cups for drinking water.

5.1.16     First aid facilities for all minor injuries.

5.1.17     Receptacles and transportation off-site of all waste and scrap materials.

5.1.18     Generators for power tools, equipment, heaters and temporary lighting, etc. (at Contractor option).

5.1.19     Contractor shall provide office space for the manufacturers on-site representative throughout the execution of the Contractor work scope. Such office space shall include but not necessarily be limited to an operational telephone, heat, air conditioning, lighting, desk and chair.

**B.029**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

5.1.20    All erection bolts and steel required for the temporary bracing, clamping or suspending of equipment and structures prior to final welding, bolting or riveting of the same.

5.1.21    The Contractor shall be solely responsible for the security and protection of Contractor's materials received and stored on site. Contractor assumes all risk for Contractor's equipment and material.

5.1.22    Temporary office buildings, change rooms, or lunch rooms as required.

5.2    FURNISHED BY DFDC

5.2.1    DFDC shall supply or cause to be supplied the following temporary construction facilities, utilities and services to Contractor, without cost to Contractor, for or in connection with performance of the Work:

5.2.2    Parking facilities.

5.2.3    Construction water and potable water points on jobsite as designated by DFDC's Representative. Connections to and disconnection's from water supply shall be by Contractor. The Contractor shall provide and maintain protection of water source against contamination by back siphonage.

5.2.4    Construction power ( 480 Volts 3 phase) at locations designated by DFDC's Representative to support the erection of the Boilers, Scrubbers, and ESP's. Connections to and disconnection's from power supply shall be by Contractor. The Contractor shall submit with Contractor's proposal an estimate of anticipated construction power requirements.

5.2.5    All permanent plant roads, parking areas and other similar paved all-weather areas shall be for Owner's exclusive use during normal operation of the Unit. Contractor shall not use the permanent parking lots without obtaining DFDC's prior written permission.

5.2.6    Storage and construction areas on the Jobsite shall be enclosed by a security fence provided by DFDC. The furnishing and maintaining of this fence by DFDC shall place no liability on DFDC for the protection of Contractor's tools, Materials, and Equipment.

5.2.7    Controlled access gates will be provided to control movement of delivery, construction and personnel vehicles into and out of the Jobsite. DFDC will provide security services to enforce the restrictions imposed.

5.2.8    Temporary access roads, including laydown area roads, will be covered with stone. Routine maintenance of roads and initial grading of laydown area.

6.0    **PERFORMANCE SCHEDULE AND SEQUENCE OF WORK**

6.1    Specific scheduling shall be determined between the Contractor and DFDC.    **B.030**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 24 of 33

6.2     The normal schedule will be 40 hours per week. Work shall not occur during hours other than those agreed to above without the prior written consent from DFDC which shall not be unreasonably withheld.

7.0     **REPORTING REQUIREMENTS AND COORDINATION MEETINGS**

7.1     Contractor shall prepare and submit to DFDC on-site the following:

7.1.1     Monthly Progress Reports

7.1.2     Weekly Construction Status Reports

7.1.3     Received Material Reports

7.1.4     Testing, Inspection, and Quality Program Reports

7.1.5     Accident Reports

7.1.6     Manufacturer's Field Service Reports

7.1.7     Meeting Minutes

7.1.8     Weekly Manpower and Equipment Reports (daily status)

7.2     Contractor shall be responsible for the preparation of all construction procedures (i.e., test procedures) in a timely manner to assure adequate DFDC review time and to minimize any impact on the progress of the Work.

7.3     Contractor shall maintain on the Jobsite a complete set of files that relate to the construction and start-up of the Unit. A copy of these files, excluding contractors pricing and proprietary information, shall be available to DFDC.

7.4     Contractor shall promptly submit the schedules and reports set forth below.

7.4.1     A summary schedule that includes all major milestones and interface points shall be submitted within 30 days of signing of Contract.

7.4.2     A detailed schedule shall be submitted 30 days prior to mobilization in the field.

7.4.3     A detailed monthly schedule, updated monthly, with weekly status reports, showing scheduled progress versus actual progress giving details of how the work will be completed in relation to the schedule.

7.4.4     Monthly report of project employees specifying county, state, number of emplovees and percentage of total.

**B.031**



Part I
CFB/CDS/ESP

# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 25 of 33

7.4.5   A weekly meeting shall be conducted by DFDC's representative and mandatory attendance by a member of the Contractor's management team is required. Discussions will include work progress, next week's planned activities, safety, and other Work related activities.

7.4.6   Monthly Report of accidents, injuries and first aid cases. Reporting format will be provided by DFDC.

7.4.7   Daily activity report. (form provided by DFDC)

8.0   **DOCUMENTATION REQUIREMENTS**

8.1   ENGINEERING DOCUMENTATION

8.1.1   Contractor shall submit drawings in accordance with the requirements of Section 12.0 of the technical specification listed in Paragraph 2.1.1 of this document.

8.1.2   Contractor shall submit instruction manuals in accordance with the requirements of Section 13.0 of the technical specification listed in Paragraph 2.1.1 of this document.

8.2   CONSTRUCTION DOCUMENTATION

8.2.1   All documents listed below will be maintained by the Contractor and be available to DFDC for review.

8.2.2   Contractor shall submit the following data to DFDC. The data shall be prepared progressively with construction and submitted to DFDC on a mutually agreed upon schedule.

8.2.2.1   The Contractor shall document field changes on a set of blue prints (provided by Contractor). Changes shall be incorporated into the drawings and the drawings labeled "as built". A complete set of as-built drawings will be issued to DFDC prior to final payment with the Contractors name and dated in the title block area. NOTE: No changes that impact the scope of work of other contractors shall be made to issue for construction drawings without the written approval of DFDC's representative.

8.2.2.2   Copies of welder certifications. Certification must be in accordance with the applicable code.

8.2.2.3   Copies of all examination and inspection records and test reports.

8.2.2.4   Preventative maintenance logs during storage and installation ( i.e.. lubrication, shaft rotation, meggering ).

8.2.2.5   Material Safety Data Sheets.                          **B.032**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

8.2.2.6    Weld stress relieving records.

8.2.2.7    Purchase orders (unpriced) and receiving reports for permanent plant materials.

8.2.2.8    All other data required by the specifications, procedures and codes.

8.2.2.9    Equipment alignment records including hot alignments after equipment operation.

9.0    **COMMUNICATIONS**

All communications pursuant to or in connection with this Contract shall be communicated as follows:

9.1    CONTRACTUAL NOTICES

9.1.1    All contractual notices given under this Contract shall be sufficient if in writing and delivered in person to an officer of the party to be notified, or sent to the party to be notified, addressed as follows, by registered mail, telex, facsimile, or cable.

9.1.1.1    Contractual notices to DFDC shall be addressed as follows:

Duke/Fluor Daniel Caribbean S.E.          Duke/Fluor Daniel Caribbean S.E.
P.O. Box 1011                    or      One Coliseum Centre
Charlotte, NC  28210-1011                2300 Yorkmount Road
Attention: (LATER)                       Charlotte, NC  28217
                                         Attention: (LATER)

9.1.1.2    Contractual notices to the Contractor shall be addressed as follows:

ABB CE Process Power Boilers
Combustion Engineering, Inc.
P.O. Box 500
2000 Day Hill Road
Windsor, CT  06095-0500
Attention: (LATER)

9.2    OTHER COMMUNICATIONS TO DFDC

9.2.1    Direct all other communications to the DFDC home office address as follows:

Duke/Fluor Daniel Caribbean S.E.          Duke/Fluor Daniel Caribbean S.E.
P.O. Box 1011                    or      One Coliseum Centre
Charlotte, NC  28210-1011                2300 Yorkmount Road
Attention: (LATER)                       Charlotte, NC  28217
                                         Attention: (LATER)

**B.033**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 27 of 33

9.2.2    Direct all field communications to the DFDC filed office at the following address:

(LATER)

9.2.3    Direct all engineering data to the following address:

Duke/Fluor Daniel Caribbean S.E.
P.O. Box 1011
Charlotte, NC 28210-1011
Attention: R.F. Day

or

Duke/Fluor Daniel Caribbean S.E.
One Coliseum Centre
2300 Yorkmount Road
Charlotte, NC 28217
Attention: R.F. Day

9.2.3.1    Contractor shall include the following information on all engineering transmittals:

a.    Project Number:  367401

b.    Project Name:    AES Puerto Rico

9.2.4    Direct all invoices and supporting documentation to the following address:

Duke/Fluor Daniel Caribbean S.E.
P.O. Box 1011
Charlotte, NC 28210-1011
Attention: Accounts Payable
AES Puerto Rico Project

or

Duke/Fluor Daniel Caribbean S.E.
One Coliseum Centre
2300 Yorkmount Road
Charlotte, NC 28217
Attention: Accounts Payable
AES Puerto Rico Project

## 10.0    CLEAN-UP, SAFETY, WORK RULES AND REGULATIONS

## 10.1    SAFETY

10.1.1    Contractor shall designate a responsible member of its organization on the Jobsite whose duty shall be the enforcement of safety and health regulations. Contractor shall comply with all DFDC, Owner and site safety rules and regulations. All OSHA and other legal standards not specifically referenced in these rules and regulations shall apply when applicable. In the event of conflict of rules, regulations or standards, the more stringent shall apply.

10.1.2    Timely appropriate action shall be taken after an accident to correct the conditions which are the apparent cause of the accident.

**B.034**



Part I
CFB/CDS/ESP

# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 28 of 33

10.1.3     Contractor shall establish and institute aggressive pro-safety attitudes and practices in performing the Work. The program shall be implemented to prevent personal injuries, deaths, and property losses at the Jobsite. The object of the program shall be a total organized safety effort between Contractor and all Subcontractors to eliminate losses to lives and to property and to minimize accidents and injury.

10.1.4     Contractor's duties and responsibilities for the safety and protection of the Work shall continue until completion of the work in accordance with this contract.

10.1.5     Contractor shall designate a responsible member of its organization on the Jobsite whose duty shall be the enforcement of safety and health regulations. The name of such individual shall be identified to DFDC and posted in a conspicuous place(s). This person will be dedicated to safety management full time on site with no other duties for all shifts worked.

10.1.6     The Contractor shall only employ persons in the execution of the Works who are competent, qualified, and, to the best of its knowledge, not under the influence of drugs or alcohol. Contractor shall implement a mandatory pre-employment and "for cause" drug testing program for all of Contractor 's and any Subcontractor's employees in connection with the Project. Contractor shall submit a description of such drug testing program to DFDC for its information. Contractor shall remove from the Works any person employed by Contractor or any Subcontractor who is incompetent or negligent or who is under the influence of drugs or alcohol.

10.2     <u>CLEAN-UP</u>

10.2.1     Contractor shall maintain their work area free from accumulations of waste materials and rubbish at all times. Its responsibilities shall include:

10.2.1.1     Continuous clean-up shall be made to the extent of:

a.     Not allowing accumulations in hazardous quantities or conditions effecting safety and protection of property.

b.     Maintaining open passageways and access to the Work

c.     Preventing interference with Unit operations during start-up.

d.     Preventing the migration of trash and wastes to areas adjacent to the Jobsite.

10.2.1.2     Remove and dispose of rubbish, litter, scrap, boxes, crates, packing materials and other debris resulting from construction operations.

10.2.1.3     Remove waste oil, waste liquids and slurries, and the like from construction and storage areas immediately to a trash and waste storage area for removal from the Jobsite.

**B.035**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 29 of 33

10.2.1.4    Broom clean floors as necessary to meet the requirements of Item 1.a. above.

10.2.1.5    Provide for the proper off-site disposal of any hazardous wastes generated by performance of Contract requirements.

10.2.1.6    Keep construction materials such as scaffolding neatly stacked.

10.2.1.7    Clean all Equipment furnished or installed under the Contract to Manufacturer's recommendations and/or as mutually agreed to by DFDC and Contractor.

10.2.1.8    Furnish and maintain adequate trash receptacles in construction areas.

10.2.1.9    All discarded used and usable welding rods shall be collected and properly stored or removed on a daily basis.

10.2.2    Contractor shall perform immediate clean-up to protect the Work by removing splattered oil, paint, corrosive liquids, cleaning solutions and other such materials from walls, floors and metal surfaces before surfaces are marred. Leave all surfaces of walls, floors, structural steel, gratings, plate work, panels, ceilings, roof, Equipment, pipes, cable tray, etc., free from any contamination resulting from Contractor's operations.

10.2.3    Contractor shall remove the following from Owner's property and from all public and private property used in the Work:

10.2.3.1    All temporary structures.

10.2.3.2    All tools and excess construction materials and equipment.

10.2.3.3    All waste materials, rubbish, etc.

10.3    CONDUCT OF THE WORK

10.3.1    Care and protection, consistent with the Contract requirements, shall be provided to assure that no deterioration occurs while the Equipment and Material is under the care and control of Contractor.

10.3.2    Once the Unit is in operation, DFDC shall require all its personnel, and the personnel of its Subcontractors on Owner's property to confine their activities to areas designated by Owner. Persons under Contractor's control shall not interfere with Owner's plant personnel or disrupt operation of the Unit or any systems in the Unit.

10.3.3    Contractor shall conduct the Work in a manner to avoid unnecessary noise and dust, to keep the Jobsite clean and orderly, to confine activities which necessarily produce dust and dirt, and to keep finished Work clean, orderly and protected.

**B.036**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 30 of 33

10.3.4    Contractor shall conduct the Work with sufficient planning and control to minimize rework and disassembly. All Equipment Manufacturers' erection and installation requirements shall be met.

10.3.5    Contractor shall be responsible for the means, methods, techniques, sequences, and procedures for construction of the Work, and for ensuring that the finished Work complies with the Contract Documents and Project Documents.

10.4    PROTECTION OF THE WORK

10.4.1    Contractor shall provide appropriate protection for all of its work, until acceptance by DFDC, against rain, wind, storms, frost, freezing, condensation, heat, and all other perils as necessary to maintain all Work, Equipment, and Materials free from loss, injury, or damage. At the end of each work day, all Work likely to be damaged shall be adequately protected.

10.4.2    DFDC shall be notified immediately by Contractor at any time operations are stopped due to conditions which make it impossible to continue operations safely or to obtain proper results.

10.4.3    Floors shall be protected by Contractor from damage by proper covering and care when handling heavy equipment, painting, or handling mortar or other such materials, and proper cribbing and shoring shall be used to prevent overloading of floors while moving heavy loads. Contractor shall provide pans under pipe-threading and other appropriate machines to prevent oil from dripping onto floors, and shall restore floors to original condition where they are damaged or stained.

10.4.4    Except as may be approved otherwise in writing by DFDC, loading concrete floors less than twenty-eight (28) days old shall not be allowed until the 28 day strength has been verified by field-cured cylinders.

10.4.5    Contractor shall restrict access to new roofs and keep clear of existing roofs, except as required by the Work. Where access is required, it shall provide protection with plywood, boards or other suitable materials.

10.4.6    Contractor shall protect building siding from damage.

10.5    CONSTRUCTION

Contractor shall provide, institute, and/or implement the following:

10.5.1    Security Program

10.5.1.1    Contractor shall furnish his employees with hard-hats of a color designated by DFDC for identification.

**B.037**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

10.5.1.2   Contractor is responsible for the security of its workers, tools, materials, and equipment on (and to and from) the jobsite. All small tools and construction equipment belonging to Contractor must be clearly identified as such. Tools including personal tools are subject to inspection at the security gate on arrival and departure.

10.5.1.3   Contractor shall be provided with identification passes for all its employees working either directly or indirectly under its supervision.

10.5.2   <u>Radios on Site</u>

10.5.2.1   Hand held radios may be permitted. Approval for use of radios to be obtained through DFDC.

10.5.2.2   Contractor shall obtain any necessary license to operate radios on the jobsite. Any such radios shall operate on a separate dedicated frequency.

10.5.3   <u>Vehicle Identification</u>

10.5.3.1   Vehicle passes will be issued and must be displayed on the dash of each vehicle entering and/or leaving the site and while on the site.

10.6   <u>SIGNS, PUBLICATIONS, AND PHOTOGRAPHS</u>

10.6.1   Cameras or picture taking, except for purposes of recording the progress of construction as specified herein, shall not be allowed on or of the Jobsite or on or of any of Owner's property or facilities except with written permission of DFDC.

10.6.2   The Jobsite shall be maintained free from any and all advertising and signboards of every kind, except those specifically approved in writing by DFDC. Contractor shall place no temporary sign (except as required for safety or by law) on any part of the premises of Owner without the written permission of DFDC. All approved signs shall be placed in appropriate locations where they will not obstruct or endanger traffic or construction operations. They shall be properly maintained and removed upon completion of the Work.

10.7   <u>FIRE PROTECTION</u>

10.7.1   Contractor shall develop a fire prevention and protection program for the Work at the Jobsite, including training of its personnel in fire safety and fire fighting, as appropriate.

10.7.2   The fire prevention program shall comply with the applicable provisions for safety and protection set forth in the applicable parts of the National Fire Protection Association Bulletin No. 241, Building Construction Operations.

10.7.3   Contractor shall carefully supervise and monitor its operations and housekeeping to prevent fires.

**B.038**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 32 of 33

10.7.4    Contractor shall take precautionary measures to prevent Jobsite fires, with special attention directed toward welding and other hot construction operations. Contractor shall provide adequate blankets to prevent welding sparks from starting fires or damaging Equipment and Materials.

10.7.5    When construction fires occur, all fire fighting equipment provided shall be used effectively to control and extinguish the fire regardless of the cause.

10.7.6    Storage of flammable materials, such as fuels, paint, solvents, cleaning fluids, etc., shall be provided in a separate building(s) expressly for this purpose. The building(s) shall be equipped with a proper fire extinguisher(s) and shall be located in accordance with the applicable codes.

10.7.7    Dry, chemical type fire extinguishers shall be provided by DFDC throughout the Jobsite. Number, location, installation, inspection, and maintenance of the equipment shall be in compliance with Federal and Puerto Rican safety and fire protection codes and Owner's requirements.

## 11.0    QUALITY CONTROL

11.1    Contractor shall be responsible for performing quality workmanship and shall conduct the quality control measures necessary to ensure the Work conforms to the specified standards, practices, drawings, and specification requirements.

11.2    Contractor shall implement the Quality Assurance/Quality Control system as defined in Part III General terms - Article 2.0, entitled Inspection, Testing and Quality Control.

11.3    Contractor's inspection system shall require personnel of its organization to perform, or cause to be performed, inspections of the scope and character necessary to ensure conformance to the specified requirements. Contractor shall provide an inspection activity that adequately covers all manufacturing and construction operations and that, as a minimum, performs the inspection, testing and documentation requirements defined in the Scope of Work.

## 12.0    CONSTRUCTION MANAGEMENT

12.1    Contractor shall maintain an adequate construction management staff to meet all of its Contract obligations.

12.2    Contractor shall schedule and coordinate all construction activities with DFDC. Coordination and scheduling of Contractor's Subcontractors to assure completion of the Work as specified shall be the responsibility of Contractor.

**B.039**



# DUKE/FLUOR DANIEL
## CARIBBEAN S.E.

Revision: 1
February 4, 1998
Page: 33 of 33

12.3    Contractor shall be responsible for providing and maintaining sufficient construction equipment and labor personnel at the Jobsite to assure that the Work is completed on schedule.

12.4    Supervision - Contractor shall keep at the Jobsite, during the progress of the Work, a competent erection superintendent, a welding superintendent, and any necessary competent assistants against whom DFDC has no reasonable objection. The welding superintendent's duties will include welder testing, qualification, records and procedures along with the maintenance and surveillance of the quality control and assurance programs including interpretation of NDE test results.

12.5    Contractor shall provide at least one (1) full-time superintendent at the Jobsite during normal working hours. In addition, supervisors and foremen shall be provided at all times to appropriately supervise Contractors Jobsite services and work in progress. Normal construction work schedule will be forty (40) hours per week, exclusive of recognized holidays.

**B.040**



## PART II
## COMMERCIAL TERMS

**1.0  CONTRACT PRICE, NTP, and NO SHOP**

1.1    Full compensation to Contractor for full and complete performance by Contractor of all the Work, compliance with all terms and conditions of this Contract, and for Contractor's payment of all obligations incurred in, or applicable to, performance of the Work shall be the total Lump Sum Contract Price of **One Hundred Nineteen Million DOLLARS ($119,000,000)**. At the end of the project, Contractor will provide a reasonable and appropriate itemized breakdown of the Contract Price to Owner if requested.  This breakdown will not be subject to audit.

1.2    It is agreed and understood by Contractor and D/FDC that Contractor's and D/FDC's performance obligations, excluding Section 2.0 of Part II, shall commence immediately upon receipt of the Notice to Proceed (NTP) from D/FDC and that none of the performance obligations set forth in this contract shall become effective unless and until such notice is given and delivered to Contractor.

1.3    Unless this agreement is otherwise terminated pursuant to the terms and conditions contained herein, for the term described in Section 2.2 of Part II of this Agreement, DFDC shall not entertain, solicit, or otherwise investigate or procure offers from any other parties with respect to the services described in Part I - Scope of Work.

**2.0  PRICING BASIS**

2.1    The Contract Price set forth herein is firm for the duration of the Work and includes all Contractor's costs, expenses, overhead and profit for complete performance of the Work.

2.2    The Contract Price set forth herein is firm and shall remain valid as long as a notice to proceed is issued on or prior to February 1,1999.

**3.0  PRICING FOR CHANGES**

Adjustments to the Contract Price for any change, other than those expressly stated in Section 2.0 above, in the Scope of Work shall be in accordance with the provisions of the Article 16 entitled CHANGES and Article 19 entitled CLAIMS as set forth in PART III.

**B.041**

**4.0  TAXES**

4.1    The Contract Price as set forth herein includes those taxes and fees set forth in the Article 43 entitled <u>Taxes, Duties and Fees</u> in PART III.

4.2    DFDC is required to obtain correct taxpayer identification numbers from all noncorporate payees who receive payment for services, rents, royalties or interest that would be subject to IRS Form 1099 reporting.  Twenty percent back-up tax withholding will be imposed

1

on all Form 1099 reportable payments made to Contractor if Contractor fails to provide a correct taxpayer identification number.

4.3    Contractor will be compensated for any increase in tax rates, license fees, and permit fees or any new taxes, licenses or permits imposed after the effective date of the Contract; provided however that this provision shall be limited to sales, use, and excise taxes assessed against the Work and to licenses and permits required specifically for the Work.

5.0    <u>PAYMENT TERMS</u>

DFDC agrees to make payment to Contractor by wire transfer based upon the Progress Payment Schedule (Attachment 13.B to this Part II) providing verification has been established that the milestone event(s) tied to that specific payment has been satisfactorily completed.    Invoices will not be paid prior to completion of the stated milestone nor earlier than the listed invoice date.    Contractor's performance of its obligations hereunder will not be considered complete until, without limitation, DFDC is in receipt, in proper form, of all engineering data requirements, drawings, parts and spare parts lists and instructions manuals.    Payment Terms, including retainage requirements, shall be in accordance with the provisions of the Price and Payment Articles as set forth in PART III.

6.0    <u>DETERMINATION OF UNITS</u>

All units of Work performed for the Contract Price set forth in Article 1.0, and Pricing for Changes in Article 3.0 of this PART II shall be determined and documented in accordance with the provisions set forth in the Article entitled <u>Documentation and Right of Audit</u> set forth in PART III.

7.0    <u>SPECIAL INVOICING INSTRUCTIONS</u>

7.1    The cut-off date for Contractor's progress invoice shall be five (5) calendar days after the first day of the month covered by such invoice.

7.2    Contractor shall submit separate invoices in original form with three (3) copies complete with all supporting documentation to DFDC`s Office Address shown in Section 12.0 of this Part II.

7.3    Contractor's invoices shall be on a progressive basis and clearly marked with this Contract Number.

7.4    Contractor's invoices shall be cross referenced to the Progress Payment Schedule.

7.5    DFDC shall not be obligated to pay for invoice items which are not in accordance with the Progress Payment Schedule.    DFDC reserves the right to make provisional payment on an invoice in dispute, pending audit and reconciliation of the total charge.

2

PART II
COMMERCIAL TERMS

7.5.1 Only invoices stamped by DFDC, as received by the cut off date as defined in subsection 7.1 and accompanied by Contractor's partial (conditional) lien waivers (in substantially the form shown in Attachment 13.E and in addition to any other documentation or substantion required hereunder or as directed per Article 42.6 of Part III) will be paid by wire transfer within thirty (30) calendar days of the cutoff date. Each authorized and approved change to the Contract is to be invoiced separately in the manner provided in this Article.

7.5.2 Contractor shall sign each invoice certifying that all Work covered by the invoice is complete and that the invoice is correct, authentic and the only one issued for the Work described therein.

7.6 Retainage shall be paid to Contractor in accordance with the terms set forth in Article 42.0 Invoicing and Payment of Part III of this Contract.

## 8.0 BACKCHARGES

A backcharge is a cost sustained by DFDC and chargeable to Contractor, which shall either be paid by Contractor or, at DFDC's option, deducted from amounts owed to Contractor. Without limitation and by way of example only, backcharges may result from:

8.1 Services performed by DFDC, at Contractor's request, for work which is within Contractor's Scope of Work under this Contract, or

8.2 Costs sustained by DFDC as a result of Contractor's non-compliance with the provisions of this Contract or Contractor's act or omission or negligence.

8.3 Upon identification by DFDC of an actual or anticipated backcharge, DFDC will issue Contractor with a written backcharge notice in accordance with Article 19 - Claims of Part III. This Notice shall describe the backcharge Work to be performed (if any), the schedule period for performance, the cost to be charged by DFDC to Contractor for the backcharge and other terms. The backcharge cost shall include:

8.3.1 Labor: at actual cost plus 15% to cover payroll additives;

8.3.2 Material: at actual supplier and freight invoice cost delivered to jobsite;

8.3.3 Construction Equipment: at actual third party rental cost or at DFDC's equipment rental rates whichever may be applicable;

8.3.4 <u>10%</u> shall be added to Paragraph's 8.3.1 through 8.3.3 above for indirect costs, overhead, supervision and administration.

ALDEC05 - 01533

PART II
COMMERCIAL TERMS

Thirty (30) calendar days after commencement of the Backcharge Work or on completion of the Backcharge Work, whichever occurs sooner, DFDC will invoice Contractor for the incurred Backcharge Cost.

9.0   CANCELLATION SCHEDULE

In the event this Contract is canceled in accordance with Article 18.0 - Termination at Duke/Fluor Daniel Caribbean S.E.'s Option of Part III, DFDC agrees to make compensation to Contractor and Contractor agrees to accept as full and complete payment to Contractor for all cancellation charges or claims of Contractor for such Termination, payment based on the Cancellation Schedule (Attachment 13.C to this Part II). Termination and Cancellation Terms shall be in accordance with the provisions of the Termination at Duke/Fluor Daniel Caribbean SE's Option - Article 18.0 as set forth in PART III.

10.0   LIQUIDATED DAMAGES

10.1   GENERAL

DFDC and Contractor agree that, at Release of this Contract, the milestones shown in the Contract Master Schedule (Attachment 13.D to this Part II) of this Contract will be assigned specific dates based on the agreed upon durations from Release. Contractor guarantees the dates that will be established based on the durations stated in the Contract Master Schedule of this Contract to be the firm date for completion by Contractor of all activities pertaining to each specific milestone.

Contractor shall meet the Performance Acceptance and Performance Guarantees set forth in this Section 10.0 on or before the dates specified. The parties agree that failure of Contractor to meet these dates and Performance Guarantees will do DFDC harm and that damages for failure to meet said guarantees are extremely impracticable or impossible to predict or calculate, and accordingly Contractor shall be liable for liquidated damages to DFDC for failure to achieve Performance Acceptance or Performance Guarantees as specified below, which liquidated damages Contractor will pay to DFDC. Contractor acknowledges and affirms that the amounts of liquidated damages set forth herein do not constitute a penalty, but rather are a fair estimate and assessment of damages which are uncertain and not readily ascertainable. The liquidated damages set forth in this Section 10.0 are the sole and exclusive remedies of DFDC for failure of Contractor to meet Performance Acceptance or Performance Guarantees. The parties agree that liquidated damages are in lieu of actual damages and DFDC will not attempt to recover actual damages for Contractor's failure to achieve the guarantees stipulated in this Section 10. All liquidated damages specified herein are cumulative and no liquidated damages shall be deemed to supplement, replace, supersede or in any way reduce any other liquidated damages for which Contractor is responsible.

If liquidated damages for delay and/or performance are not assessed against DFDC by the Owner, and DFDC incurred no additional expense in mitigating the impact of Contractors failure to meet any performance and/or schedule guarantee, then DFDC shall waive liquidated damages for schedule and/or performance. Liquidated Damages for schedule and/or performance shall be waived if the cause of the delay or performance shortfall is beyond the scope of the Contractor's Work

10.2   LIQUIDATED DAMAGES FOR LATE DRAWINGS AND DATA SUBMITTAL

The Contractor recognizes that DFDC will suffer damages in the event of delay in schedules for submittal of Final drawings and data as specified in the DDMISR.

4

**B.044**                                    **ALDEC05 - 01534**

PART II
COMMERCIAL TERMS

Contractor shall submit drawings and data packages to arrive at DFDC on or before the specified dates. Documents submitted shall be in accordance with the requirements of this Contract. Documents that do not meet these requirements will be returned to the Contractor and will not be accepted until resubmitted and received in proper form and content by DFDC. The parties agree that the sum of $500.00 per calendar day is a reasonable and fair estimate of damages and loss which DFDC would suffer for each such calendar day that Contractor is late in submitting each firm drawing package or data package. It is therefore agreed that, in the event of such failure by Contractor, Contractor shall pay to DFDC the sum of $500.00 for each calendar day by which the actual date of each drawing package or data package is later than the said firm drawing package or data package submittal date.

10.3    LIQUIDATED DAMAGES FOR LATE PERFORMANCE ACCEPTANCE

10.3.1 Contractor guarantees that it will, with respect to its performance under this Agreement, perform all things necessary to enable DFDC to achieve Performance Acceptance on or before the Guaranteed Performance Acceptance Date, which is 29 months after the issuance of the Notice to Proceed (NTP) to Contractor, which Performance Acceptance shall be achieved hereunder if and only if:

A.    The Facility has operated as a whole for a period of at least 100 continuous hours and has successfully satisfied the criteria of the 100 hour Performance Test as described in Appendix D of the EPC (Attachment 13.G).

B.    All equipment and facilities necessary for the full, safe and reliable operation of the Facility have been properly constructed, installed, insulated and protected where required, and correctly adjusted, and all portions of the Contractor's Scope of Work can be used for their intended purposes in accordance with all applicable laws and applicable permits.

C.    The Facility, and specifically Contractor's Work, is fully and properly interconnected and synchronized with the electrical system of the Utility by DFDC and all features and equipment of the Facility are capable of operating simultaneously in accordance with the applicable provisions of the Power Purchase Agreement and the detailed written operating procedures developed thereunder (to the extent such procedures are consistent with Prudent Utility Practices and impose requirements that were or should have been reasonably foreseen by Contractor under the circumstances) and all portions of the Facility can legally and safely be placed in commercial operation for their specified purpose.

D.    Owner accepts the Notice of Performance Acceptance, or if Owner has not accepted the Notice of Performance Acceptance, it has not done so for reasons completely exclusive of Work provided by Contractor.

10.3.2 If Contractor fails to perform all things necessary in accordance with Contract Master Schedule (Attachment 13.D) to enable DFDC to achieve Performance Acceptance on or before the guaranteed Performance Acceptance Date, and provided that DFDC has to pay liquidated damages to the Owner for late completion of Performance Acceptance, then Contractor shall be liable to DFDC for liquidated damages as follows:

$$\text{Liquidated Damages} = \$300,000 \times a$$
where:

a  =   Number of days, or partial days, for which Contractor has failed to perform all things necessary to enable DFDC to achieve

5

          ALDEC05 - 01535

PART II
COMMERCIAL TERMS

Performance Acceptance on or before the Guaranteed Performance Acceptance Date.

## 10.4   LIQUIDATED DAMAGES FOR TECHNICAL PERFORMANCE

10.4.1   Contractor guarantees the performance of the equipment and other Work covered by this Contract to be in accordance with the guaranteed data as set forth in the following Confirmed Equipment Specifications (Attachments to Scope of Work - Part I), which Guarantees are sometimes referred to as "Performance Guarantees":

- Circulating Fluidized Bed Boiler Specification W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.00-0001, Revision 0;
- Circulating Dry Scrubber FGDS Specification W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.03-0001, Revision 0; and
- Electrostatic Precipitator Specification W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.03-0002, Revision 0.

10.4.2   Contractor's achievement of these Performance Guarantees will be demonstrated over a four (4) hour test period as set forth in Appendix D Performance Test Plan (Attachment 13.G) which will occur during the Performance Test. Contractor's achievement of these Performance Guarantees will be tested per the methods specified in the Performance Test Plan. (Attachment 13.G).

10.4.3   It is agreed that the actual damages and loss which DFDC would incur as a result of Contractor's default in its obligation to meet the Performance Guarantees would be impractical and difficult to determine and that the sums listed below are a reasonable and fair estimate of the damages and loss which DFDC would suffer by Contractor's failure to meet the Performance Guarantees.  It is, therefore, agreed that Contractor shall pay DFDC the following liquidated damages for any shortfalls in meeting the Performance Guarantees:

A.   Auxiliary Power Consumption:
     $2,733 for each full KW that the Facility is in excess of the guarantee value, as defined in the performance section of the technical specification.

B.   Efficiency:
     The amount shown below for each 0.1% of efficiency that the Facility is below the guarantee value for each of the following operational loads, as defined in the performance section of the technical specification.

| Operational Load | Efficiency Liquidated Damages |
|---|---|
| 100% | $207,500 per 0.1% of efficiency loss |
| 90% | $203,500 per 0.1% efficiency loss |
| 65% | $ 42,900 per 0.1% efficiency loss |
| 50% | $ 11,000 per 0.1% efficiency loss |

C.   Economizer Inlet to Superheater Outlet Pressure Drop:
     $13,500 for each full one psi of superheater or economizer pressure drop that the unit is in excess of the guarantee value, as defined in the performance section of the technical specification.

D.   MCR Steam Flow:
     $265,000 for each full 1000 lb./hr. of main steam flow that the unit is below the guarantee value, as defined in the performance section of the technical specification.

**B.046**

6

PART II
COMMERCIAL TERMS

E.    Boiler Steam Temperature:
      $160,000 for each full 1 degree F of main steam or reheat steam temperature
      that the unit is below the guarantee value, as defined in the performance
      section of the technical specification.

F.    Limestone: (Aragonite)
      $590 per each full pound per hour of Limestone that the Facility is in
      excess of the guarantee value, as defined in the performance section of the
      technical specification.

G.    Lime:
      $6,585 per each full pound per hour of Lime that the Facility is in excess
      of the guarantee value, as defined in the performance section of the
      technical specification.

H.    Urea:
      1)    $17,869 per each full pound per hour of Urea that the Facility is in
            excess of the **85% to 100% MCR** guarantee value, as defined in the
            performance section of the technical specification.
      2)    $1,370 per each full pound per hour of Urea that the Facility is in
            excess of the **Less than 85% MCR** guarantee value, as defined in the
            performance section of the technical specification.

## 10.5    PAYMENT OF LIQUIDATED DAMAGES

10.5.1    Contractor agrees that all sums payable by Contractor to DFDC as
liquidated damages pursuant to this Section 10 shall be paid promptly to DFDC or,
at DFDC's option, may be deducted by DFDC from the price to be paid to Contractor
hereunder.    The liquidated damages are agreed to be a reasonable estimate of
actual damages, not a penalty.

10.5.2    The liquidated damages set forth in this Section 10.0 are the sole and
exclusive remedies of DFDC for failure of Contractor to meet Performance
Acceptance or Performance Guarantees, however, shall not constitute a waiver of
any rights of DFDC to damages or other remedies of DFDC under other Sections of
this Contract not related to Contractor's failure to meet Performance Acceptance
and/or Performance Guarantees.

10.5.3    Contractor's liability for liquidated damages shall be limited in
accordance with Article 52.0 of Part III of this Contract, provided, however, that
liquidated damages shall not be deemed to be incidental, special or consequential
damages.

## 10.6    REMEDIES

10.6.1    In the event the Performance Test results indicate lower than specified
and/or guaranteed performance, Contractor will be given the opportunity, which is
reasonably possible under the circumstances, to rectify the equipment and the unit
will be retested.

10.6.2    In the event of any deficiencies in Contractor's equipment and design
relative to the specifications and/or performance guarantees in the attached
Technical Specification which are not covered by liquidated damages, Contractor
will correct these deficiencies to conform to the performance guarantees as set
out in the specification.

**B.047**

ALDEC05 - 01537

PART II
COMMERCIAL TERMS

### 11.0  EARLY COMPLETION BONUS

If Performance Acceptance occurs before the Guaranteed Performance Acceptance Date, DFDC hereby agrees to pay Contractor an amount equal to $50,000/day for each day by which the occurrence of Performance Acceptance is earlier than the Guaranteed Performance Acceptance Date (the "Early Completion Bonus"); provided, however, that the aggregate amount of such bonus (if any) required hereunder shall not exceed $1,667,500.  DFDC shall pay the Early Completion Bonus, if any, to Contractor within five (5)days of receipt of any funds from Owner for its early completion under the EPC Contract.

In the event ABBCE achieves its Performance Acceptance early, but early completion is not achieved by DFDC under the EPC Contract, then ABBCE shall waive its right to the Early Completion Bonus.

### 12.0  COMMUNICATIONS

Direct Communications To:

> Duke/Fluor Daniel Caribbean S.E.
> P.O. Box 1011
> Charlotte, NC  28201-1011
> ATTN: E. D. Terres, Jr.

Mail All Engineering Data To:

> Duke/Fluor Daniel Caribbean S.E.
> 2300 Yorkmont Road
> Charlotte, NC  28217
> ATTN: R. F. Day Jr.
> Project Number:
> Project Name:  AES Puerto Rico

Invoices and all supporting documents shall be transmitted in original and three (3) copies to:

> Duke/Fluor Daniel Caribbean S.E.
> P.O. Box 1011
> Charlotte, NC  28201-1011
> ATTN:  ACCOUNTS PAYABLE - AES Puerto Rico Project

### 13.0  ATTACHMENTS

A.      Deleted
B.      Progress Payment Schedule
C.      Cancellation Schedule
D.      Contract Master Schedule
E.      Partial Lien Waiver
F.      Final Release Waiver
G.      Performance Test Plan

**B.048**

ALDEC05 - 01538

# PART III - GENERAL TERMS

**1.0  WARRANTIES**

**1.1.1** Contractor warranties Duke/Fluor Daniel Caribbean S.E. ("D/FDC") and Owner that the Work shall comply with the provisions of this Contract and all specifications and drawings referred to in this Contract, and that the Work shall be free from defects in materials and workmanship and in full compliance with any design or engineering furnished by Contractor. Contractor further warranties D/FDC and Owner that all materials, equipment and supplies furnished by Contractor for the Work shall be new and fit for their specified purposes as set forth in this Contract and be in full compliance with the requirements of this Contract. As described in this Agreement, if any defect in the Work in violation of the foregoing warranties arises within the period set forth below, Contractor shall upon receipt of prompt written notice from D/FDC or Owner of such defect promptly furnish, at no cost to D/FDC or Owner, design and engineering, labor, equipment and materials necessary to correct such defect and cause the Work to comply fully with the foregoing warranties.

**1.2** Contractor, at its expense, (including, without limitation, costs of removal, packing, transportation and reinstallation) shall remedy promptly any defective Work which exists during the applicable warranty period as set forth in this Article 1.0, and of which D/FDC gives written notice within a reasonable time after discovery of the defect or damage. Upon such notification by D/FDC, Contractor shall promptly commence and proceed to make all needed adjustments, repairs, additions, corrections, and replacements which arise out of or are necessitated by such defective Work or damage. Contractor shall conduct such warranty work on a overtime schedule basis if D/FDC determines such a schedule is necessary to avoid or minimize the effects of an outage or load reduction and D/FDC shall reimburse Contractor the premium differential for performing warranty work on an overtime basis. Contractor shall coordinate its warranty Work with D/FDC to minimize interference to D/FDC's and Owner's operations. D/FDC will permit reasonable access to as much of the Unit(s) as Contractor may reasonably require for performance of warranty Work, but any costs of uncovering Work shall be the responsibility of the Contractor. Contractor shall perform warranty Work so that such adjustments, repairs, additions, corrections, and replacements do not degrade the performance of, nor impair the use of the Equipment, Materials or other Work in question, other systems, or the Unit(s) as a whole to an extent that the Equipment, Materials, or other Work, systems or Unit(s) will not meet the requirements of this Contract in all respects, and Contractor shall repair or replace all other facilities to the extent they are destroyed or damaged as result of Contractor's performance of warranty Work.

**1.2.1** The Warranty Period means that period extending:

Until twelve (12) months after Performance Acceptance with the following exceptions:

  a.   The warranty period for the Boiler Hot Loop shall be twenty-four (24) months after Performance Acceptance;

  b.   The warranty period shall be extended for corrective Work as set forth below.

**1.2.2** At the mutual agreement of Contractor and D/FDC, warranty Work provided hereunder may be deferred until the time of the Unit's next regularly scheduled maintenance outage, provided that such outage shall commence not later than six (6) months after D/FDC's notice to Contractor of the defective condition, and the warranty provisions hereunder shall apply notwithstanding that such outage occurs

after the time the warranty would otherwise expire. Contractor shall not be liable or responsible for any such warranty work if the outage is not commenced within the stated six (6) months.

1.3 The warranty period shall be extended to cover each of the specific repairs, adjustments, additions, corrections, and replacements furnished under the warranty for a period of twelve (12) months from the date of such repair, adjustment, addition, correction, or replacement, except as provided in the following two paragraphs but in no case shall any warranty or re-warranty obligation of Contractor extend beyond 24 months after Performance Acceptance. A repair, addition, adjustment, correction, or replacement shall be deemed to be completed upon Contractor's submittal to D/FDC of written Notice of Completion unless D/FDC, within ten (10) days thereafter, furnishes Contractor with a written statement of reasons as to why such repair, addition, adjustment, correction, or replacement is not complete. Contractor warrants that the repair, addition, adjustment, correction, or replacement will be consistent with the warranties herein throughout the duration of the applicable warranty period.

1.3.1    In the event any adjustment, repair, addition, correction, or replacement made pursuant to this warranty is ineffective in remedying the defective condition in question, D/FDC shall so notify Contractor in writing prior to expiration of the Warranty Period, as applicable, and Contractor shall proceed to conduct further warranty Work consistent with its obligation under this Article until the defective condition is remedied.

1.3.2 A chronic failure ("Chronic Failure") shall be deemed to occur when any piece of Equipment and/or Materials, or part or component thereof, fails during the Warranty Period and fails a second time during the extended warranty period from the same cause(s). In the event of a Chronic Failure, D/FDC and Contractor shall consult with each other and others as appropriate to reach mutual agreement as to the cause of the failure and as to the appropriate remedy. The warranty for the repair(s) shall then be extended for a period of twelve (12) months from the completion of the repair but in no case shall any warranty or re-warranty obligation of Contractor extend beyond 24 months after Performance Acceptance.

1.4 In the event Contractor shall have been notified in writing of any defects in the Work in violation of Contractor's foregoing guarantees and shall fail to promptly and adequately correct such defects, D/FDC and Owner shall have the right upon written notice to Contractor to correct or to have such defects corrected for the account of Contractor, and Contractor shall promptly pay D/FDC or Owner the reasonable costs incurred in correcting such defects upon submittal of a written claim with back-up documentation supporting written claim.

1.5 In the event of an emergency when, in the reasonable judgment of D/FDC, delay could cause serious loss or damage, the adjustments, repairs, additions, corrections, and replacements necessary to remedy any defective Work may be made by D/FDC, or by a third party chosen by D/FDC, without giving prior notice to Contractor, and the reasonable cost of the remedial work shall be paid by Contractor but Contractor shall have no responsibility or liability (including warranty) for such remedial work. Notice of this course of action will be provided by D/FDC to Contractor as soon as practical.

1.6 The Contractor shall warrant for a period of twenty-four (24) months from performance acceptance the scrubbers, precipitators, induced draft fans, interconnecting duct work and duct work from the induced draft fans to the stack flange against the consequences of accelerated corrosion outside of the industry standards for power-generated facilities with dry scrubbing systems to the extent that the corrosion has materially affected or is reasonably expected to materially affect in the next two (2) years

(i) the structural integrity of the Equipment of any portion thereof or (ii) that ability of the Equipment to mechanically perform. Contractor's corrosion guarantee is conditioned upon operation and maintenance of the system in accordance with Contractor's Operation and Maintenance manuals, Owner's specified operating parameters, and typical system operation at baseload and specified capacity factors. Corrosion shall be monitored by a mutually agreed upon mapping program to be conducted by Owner. Upon demonstration that corrosion exceeds the level described above, the Contractor and Owner shall use best faith efforts to mutually agree on the appropriate remedial actions. In the event that the parties are unable to reach a mutual agreement either as to the extent of corrosion or the appropriate remedy, the issue shall be referred to a mutually agreeable third party mediator. There shall be no re-warranty or extended warranty obligation, as set forth in Article 1.3, applicable to this Article 1.6.

**1.7** Contractor agrees that D/FDC may assign its rights under this warranty and other parts of this Contract to Owner and Owner's Lenders, and Contractor hereby consents to the same and shall fully honor its obligations hereunder in the event of any such assignment.

**1.8** Consumable items, normal wear and tear (e.g. including, but not limited to, wear on refractory surfaces and maintenance thereof and/or sacrificial items such as weld overlay, tube shields, etc.) and erosion, corrosion or chemical attack to any portion of the boiler system caused in whole or part by deviations in the fuel or feedstocks from the limits specified in the Contract are excluded from any warranty obligations of the Contractor.

**1.9** Contractor's representatives shall have reasonable access to test and operating records, the equipment, and other information they deem necessary to satisfy themselves of the validity of a claim under this warranty.

**1.10** ALL IMPLIED WARRANTIES INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED AND WAIVED.

## 2.0 INSPECTION, TESTING AND QUALITY CONTROL

**2.1** Contractor shall inspect all materials, supplies and equipment which are to be incorporated in the Work. In addition, Contractor shall conduct a continuous program of construction quality control for all Work. Contractor's quality control program and inspection procedures for the foregoing shall be submitted in writing to D/FDC for review and approval, and shall be in sufficient detail to delineate those items to be inspected and the manner in which they are to be inspected, and shall adequately describe all construction quality control activities contemplated, including provision for adequate documentation of Contractor's performance of such quality control and inspection.

**2.2** Contractor shall, during the course of performance of the Work hereunder, without additional compensation, make or cause to be made all tests required by this Contract. D/FDC may require additional inspections and tests for which Contractor shall be compensated for. Contractor shall furnish D/FDC with satisfactory documentation of the results of all inspections and tests. For those tests which are specifically listed in the Contract as "D/FDC Witness Tests", D/FDC shall be given not less than five (5) working days notice by Contractor in order that D/FDC and/or Owner may witness any such tests.

**2.3** D/FDC and Owner and their representatives, and others as may be required by applicable laws, ordinances and regulations, shall have the right at all reasonable times to inspect the Work and all

subcontractors' shops for conformance with the Contract. Contractor shall provide, or cause to be provided access and sufficient and safe facilities for such inspections. Neither the failure to make such inspection nor to discover defective workmanship, materials or equipment, nor approval of or payment to Contractor for such Work, materials or equipment shall prejudice the rights of D/FDC or Owner.

**2.4** If Contractor covers any portion of the Work prior to any inspection or test provided for in the specifications, inspection schedule, or as previously requested in writing by D/FDC, the cost of uncovering and covering the work to allow for such inspection or test shall be borne by the Contractor. Reexamination of any Work may be ordered by D/FDC. In the event of such reexamination, if any material, equipment or any part of the Work is determined by D/FDC to be defective, Contractor shall not be reimbursed for uncovering, repair or corrective and restoration costs. If such Work is found to be in accordance with the Contract requirements upon such reexamination, D/FDC shall pay Contractor the cost of uncovering and restoration.

**2.5** Rejection by D/FDC of any or all parts of defective Work for failure to conform with this Contract shall be final and binding unless Contractor demonstrates that such rejection is inappropriate. Such rejected Work shall be promptly corrected or replaced by Contractor at Contractor's expense. If Contractor fails to commence and diligently continue correction or replacement of such rejected Work promptly after receipt of written notice from D/FDC to correct or replace the rejected Work, D/FDC may at its option remove and replace the rejected Work, and Contractor shall promptly reimburse D/FDC for the reasonable costs of such removal and replacement of defective Work.

**2.6** D/FDC and Owner shall use reasonable efforts to perform inspection activities so as to not interfere with Contractor's schedule or work progress.

**2.7** Contractor shall furnish D/FDC with samples of any materials required for testing purposes which D/FDC may require.

**2.8** D/FDC may appoint inspectors to ascertain that the Work is accomplished in accordance with the Contract. Whether in the field or in Contractor's shop, or shops of its subcontractors, suppliers or manufacturers, the inspectors, upon reasonable notice to Contractor, shall have full access to the Work during normal working hours, and shall be given full cooperation. The inspectors shall have the authority to reject any defective Work, Equipment, or Material. The inspectors shall have no authority to permit any deviation from the Contract except as authorized in writing by D/FDC. Duke Fluor Daniel will provide Contractor the names of the authorized inspectors.

## 3.0 CONDITIONS AND RISKS OF WORK

**3.1** Contractor acknowledges that prior to the execution of this Contract, Contractor (a) has made a complete and careful examination of the Facility Site and the surrounding areas, the Contract Document and the drawings and specifications and other information set forth for the Work, (b) has made a complete and careful examination to determine the difficulties and hazards incident to the performance of the Work hereunder, including without limitation (i) the location of the Project, (ii) the general condition of the Facility Site and the surrounding areas excluding any latent subsurface conditions not disclosed to Contractor, (iii) the proximity of the Project to adjacent facilities and structures, (iv) the conditions of the roads, waterways and railroads in the vicinity of the Facility Site, including the conditions affecting shipping and transportation, access, disposal, handling and storage of materials, (v) the labor conditions in the region of the Facility Site, (vi) Applicable Laws and Permits, (vii) the local

weather conditions based upon previous weather data, and (viii) all other matters that might reasonably affect Contractor's performance hereunder of the construction of the Work, and (c) has determined to Contractor's satisfaction the nature and extent of such difficulties and hazards. Contractor takes no responsibility and shall have no liability for pre-existing site conditions not reasonably apparent, including, but not limited to, subsurface conditions, structural integrity of existing steel and structures, and buried or concealed conditions.

3.2 Contractor accepts the risk for its mistake or error relating to all matters within the scope of Section 3.1 hereof and acknowledges and agrees that no increase or adjustment in the Contract Price, the Contract Master Schedule (including all milestones), the Payment Schedule, and the Performance Guarantees will be authorized by D/FDC as result of any such mistake or error but Contractor shall not be responsible for the mistakes or errors of D/FDC, Owner or any of their agents, vendors or contractors of any tier (other than Contractor) relating to all matters within the scope of Article 3.1 hereof.

## 4.0 APPROVED FOR CONSTRUCTION DRAWINGS AND SPECIFICATIONS

4.1 The Work shall be performed using only drawings and specifications marked "Approved for Construction" or equivalent by D/FDC. Such approval shall not relieve Contractor of any obligations under this Contract, nor constitute Duke/Flour Daniel's assumption of responsibility for the accuracy or adequacy of any of Contractor's information or Work incorporated in such documents.

4.2 To the extent possible, Contractor shall perform all Work outside of the areas marked "HOLD" on "Approved for Construction" specifications and drawings to maintain the schedule of Work, but shall not perform any Work in the areas or sections marked "HOLD" on "Approved for Construction" specifications and drawings until revised "Approved for Construction" specifications and drawings are received with the "HOLD" markings deleted.

4.3 If Contractor's schedule will be delayed by "HOLD" markings on specifications and drawings, Contractor shall report such delay to D/FDC in writing not less than ten (10) working days of receipt of such specification and drawings.

4.4 Contractor shall maintain at the work site a complete and current set of "Approved for Construction" drawings and specifications.

## 5.0 INTENT OF SPECIFICATIONS AND DRAWINGS

5.1 The specifications and drawings may not be complete in every detail. Contractor shall comply with their manifest intent and general purpose, taken as a whole, and shall not knowingly make use of any errors or omissions therein to the detriment of the Work. Upon becoming knowledgeable of any conflict, error, omission or discrepancy appear in the drawings, specifications, instructions, in work done by others, or in site conditions, Contractor or D/FDC shall notify the other in writing at once, and D/FDC will issue written instructions to be followed. If Contractor proceeds with any of the Work in question prior to receiving such instructions, then required corrections shall be at Contractor's expense.

5.2 Contractor shall not deviate from the specifications and drawings without prior written approval from D/FDC. Anything shown in the specifications referred to in this Contract or thereafter furnished by D/FDC and not shown in the drawings referred to in this Contract or thereafter furnished by D/FDC, or

shown in such drawings and not shown in such specifications, shall be of like effect as if shown or mentioned in both and shall not be considered to be a conflict.

5.3 Materials shall not be substituted for those specified, nor shall "or equal" items be furnished pursuant to the specifications without D/FDC's prior written approval.

## 6.0 SAFETY

6.1 Contractor shall take necessary safety and other precautions to protect property and persons from damage, injury or illness arising out of the performance of the Work. Contractor shall comply strictly with local, municipal, provincial, state and national laws, orders, and regulations which are applicable to Contractor or to the Work, including without limitation the Occupational Safety and Health Act of 1970 (84 U.S. Statutes 1590), as amended and any state plans approved thereunder, and regulations thereunder, to the extent applicable, and Contractor warrants the materials, equipment and facilities, whether temporary or permanent, furnished by Contractor in connection with the performance of the Work shall comply therewith. At all times while any of Contractor's employees, agents or subcontractors are in Contractor's work area, Contractor shall be responsible for providing them with a safe place of employment, and Contractor shall inspect its work area. To the extent and as provided for in Article 29, Contractor shall indemnify and save harmless D/FDC and Owner, and their officers, employees and agents, from and against any and all claims, loss or liability in any manner arising out of Contractor's failure to comply with this Article.

6.2 Accidents, injuries and illnesses requiring medical attention other that first aid, damage to property of D/FDC, Owner and Contractor, and fires shall be orally reported to D/FDC at the time of the incident. Written reports, satisfactory in form and content to D/FDC, shall be submitted by Contractor promptly after each accident.

6.3 Contractor shall maintain in form and content approved by D/FDC, jobsite accident, injury and illness statistics which shall be available for inspection by, and submitted to, D/FDC upon its written request.

6.4 Contractor shall perform the Work in a manner to minimize marring and scarring of the landscape, and silting of streams. Trash shall not be deposited in streams or waterways, and action shall be taken to eliminate the migration of trash on the Jobsite to these areas. Herbicides and other chemicals and their containers shall not be deposited in or near streams, waterways, fields or pastures. Contractor warrants that it shall comply with all environmental protection permits and licenses, whether obtained by D/FDC or Owner or itself and provided that for D/FDC or Owner obtained permits or licenses that a copy has been provided to Contractor; all environmental laws, rules, regulations and electric utility industry standards and practices applicable to the Work.

## 7.0 CLEANUP

7.1 Contractor shall use its reasonable efforts to keep its work area in a neat, clean and safe condition and remove from the Owner's premises and the vicinity thereof and properly dispose of all debris and rubbish caused by Contractor's operations. Upon completion of the Work, Contractor shall promptly return unused materials furnished by D/FDC and remove from Owner's premises all of Contractor's

equipment, material, scaffolding and like items, leaving Owner's premises and the vicinity clean, safe and ready for use.

7.2 In the event Contractor shall fail to maintain its work area as described above and in a manner satisfactory to D/FDC, and Contractor has failed to effect such cleanup or removal promptly after receipt of written notice to do so, D/FDC shall have the right without further notice to Contractor to perform such cleanup and remove such items on behalf of, and at the expense of Contractor. D/FDC may store items removed at a place of its choosing on behalf of Contractor and at Contractor's risk and expense. D/FDC shall promptly notify Contractor of such place of storage. Contractor shall promptly reimburse D/FDC for the costs of such cleanup, removal and storage.

7.3 On or before completion of the Work, Contractor shall remove, transport and dispose of any Hazardous Material transported onto the Facility Site by Contractor or any of its subcontractors, or created, used or handled as part of Contractor's or any of its subcontractor's construction activities at the Facility Site. All cleanup and disposal shall be conducted in accordance with all Applicable Laws and Applicable Permits. Contractor shall notify D/FDC immediately upon the discovery of the presence of any Hazardous Material on, or the release of Hazardous Material on or from, the Facility Site.

## 8.0 SUBCONTRACTORS AND PURCHASE ORDERS

8.1 Contractor shall not subcontract performance of any work that will be performed at the jobsite and which has a value of $100,000 or greater without first notifying D/FDC of the intended subcontracting and obtaining D/FDC's Notice of Non-Objection in writing of the subcontracting and the subcontractor. Issuing of the Notice of Non-Objection shall not be unreasonably withheld. If requested by D/FDC, Contractors shall furnish D/FDC a copy of the subcontract (with price deleted if the subcontracted work is part of fixed price Work of Contractor under this Contract). Contractor agrees to include applicable Articles from this Contract in subcontracts but shall maintain responsibility for administration of such subcontracts.

8.2 Contractor guarantees that its subcontractors will comply fully with the terms of this Contract applicable to the portion of the Work performed by them. If any portion of the Work which has been subcontracted by Contractor is not prosecuted in accordance with this Contract then upon written notification from D/FDC, Contractor shall take corrective action to assure that the subcontractor's work is brought into compliance with the Contract. If after thirty (30) days of Contractor receiving written notice of such non-conformance, subcontractor has failed to reasonably bring the Work into compliance with the Contract to the reasonable satisfaction of D/FDC, then on written request of D/FDC the subcontractor shall be replaced at no additional cost to D/FDC and shall not be employed again on the Work.

8.3 D/FDC shall have the right from time to time to attend progress review meetings that Contractor holds with its subcontractors.

8.4 Contractor shall only purchase materials and equipment from suppliers listed in attachment 14 of the technical specifications.