## 9.0 TERMINATION FOR DEFAULT

**9.1** In the event that Contractor shall default in the performance of any material obligation to be performed by Contractor under this Contract and shall fail to commence corrective action within five (5) working days following written notice thereof from D/FDC and shall thereafter fail to diligently pursue such corrective action, D/FDC may, without prejudice to any other rights or remedies D/FDC may have, hold in abeyance payments to Contractor for Work not in compliance with the Contract and/or terminate Contractor's right to continue performance of this Contract by written notice to Contractor specifying the date of termination. In the event of such termination, D/FDC may take possession of the Work at the jobsite and any or all materials and plant equipment (whether delivered to the jobsite or on order therefor by Contractor), Contractor's tools and construction equipment at jobsite and finish the Work by whatever method D/FDC may deem expedient.

**9.2** In the event of termination by D/FDC under Section 9.1, Contractor shall, upon request by D/FDC, promptly advise it of all outstanding subcontractors, rental agreements and purchase orders which Contractor has with others pertaining to performance of the Work and furnish D/FDC with complete copies thereof. Upon request by D/FDC, Contractor shall assign to D/FDC or Owner, Contractor's title to materials and plant equipment for the Work and those subcontracts, rental agreements and purchase orders designated by D/FDC. Upon such assignment Contractor shall have no responsibility for work performed under such assigned items after assignment.

**9.3** In the event of termination by D/FDC under Section 9.1, Contractor shall not be entitled to receive any further payment until the Work is completed. Upon completion and final acceptance of the Work, D/FDC will determine the total cost incurred in completing the Work including, without limitation, additional overhead, reasonable legal and other costs incurred by D/FDC to effect such termination and to complete the Work. If the total costs noted above exceed the balance of the Contract price unpaid at the time of the termination, Contractor shall, promptly after receipt of an invoice, pay to D/FDC the amount of such excess which shall be the reasonable actual cost. D/FDC shall have the right to recover from Contractor and is authorized to set-off against and deduct from any excess payable to Contractor any other damages as allowed for under this Contract and suffered by D/FDC or Owner due to said default or event giving rise to the termination or due to other defaults of Contractor in complying with the terms of this Contract. A waiver by D/FDC of one default by Contractor shall not be considered to be a waiver of any subsequent default by Contractor, nor be deemed to amend or modify the terms of this contract.

**9.4** Upon commencement of a case by or against Contractor under applicable bankruptcy law, or any general assignment by Contractor for the benefit of its creditors, or the appointment of a receiver to take charge of Contractor's assets, and provided the same renders Contractor unable to perform its obligations, D/FDC may treat Contractor as in default under Section 9.1 and may exercise any of the remedies of this Article.

**9.5** Contractor shall be considered in default from complying with the express obligations of this Contract whenever by reason of strikes, picketing or disputes of any nature between Contractor, and directed solely at Contractor, and any individual, group or organization at the Jobsite, Contractor persistently, repeatedly, or for any period of twenty (20) consecutive working days, should be unable to supply enough properly skilled workers or proper materials or equipment to execute the Work at the Jobsite.

## 10.0 STOP WORK ORDERS

Upon failure of Contractor or its subcontractor(s) to comply with any of the material requirements of this Contract, D/FDC shall have the authority upon written notice to Contractor to stop any Work of Contractor or its subcontractors affected by such failure until such failure is remedied or to terminate this Contract in accordance with Article 9.0. No part of the time lost due to any such stop orders shall be made the subject of a claim for extension of time or for increased costs or damages by Contractor, unless Contractor demonstrates that the stop work order was inappropriate.

## 11.0 SCHEDULING, REPORTING AND COORDINATION

**11.1** Contractor shall schedule and coordinate the details of the Work being performed to meet the schedule requirements set forth in this Contract. Within thirty (30) calendar days after the signing of this Contract, Contractor shall submit to D/FDC for approval, a summary schedule showing the sequence in which Contractor proposes to perform the Work, the start and completion dates of all separable portions of the Work, materials procurement and delivery plans and any other information specified by D/FDC. Contractor agrees to adhere to the schedule approved by D/FDC and attend and participate in scheduled progress and coordination meetings called by D/FDC.

**11.2** During the performance of Work, Contractor shall submit to D/FDC monthly progress reports on the actual progress and updated schedules as may be required by this Contract or requested by D/FDC. In the event Contractor's performance of the Work is not in compliance with the schedule established for such performance, D/FDC may, in writing, require the Contractor to submit its plan for schedule recovery or exercise any other remedies under this Contract. Contractor shall thereupon take such steps as may be necessary to improve its progress without additional cost to D/FDC.

**11.3** Contractor recognizes that D/FDC, Owner, other contractors and subcontractors may be working concurrently at the Jobsite. Contractor agrees to cooperate with D/FDC, Owner and other contractors so that the project as a whole will progress with a minimum of delays. D/FDC reserves the right to reasonably require Contractor to schedule the order of performance of its Work in such manner as not to interfere with the performance of others.

**11.4** Contractor shall reasonably cooperate with the engineering, construction and other efforts to accommodate the interface requirements of all other contractors and use all reasonable efforts to accommodate the interface requirements of the Utility, the Steam Host(s), the Fuel Supplier(s), all Federal, commonwealth, state and local agencies, all utilities serving the Project and all fuel oil and water suppliers.

**11.5** Contractor shall develop a construction plan for, and oversee the construction of the Work in accordance with the terms and provisions of this Contract. Contractor shall inspect or cause to be inspected all materials and equipment to be incorporated into the Work and shall reject those items determined not to be in compliance with the requirements of this Contract. Contractor shall also oversee the manner of incorporation of the materials and equipment into the Work and the workmanship with which such materials and equipment are incorporated and otherwise coordinate the construction of the Work. Contractor shall require all of its subcontractors to perform any subcontracts such that the work is in compliance with this Contract and, in performing the duties incident to such responsibility, Contractor shall issue to its subcontractors such directives and impose such restrictions as may be required in the construction of the Work to obtain compliance by subcontractors with the relevant terms of this Contract.

Contractor shall review and be fully responsible for all construction services of the Work, including without limitation, all construction services provided by its subcontractors. Contractor shall establish and track the Work management controls systems and provide construction management services pertaining to the Work.

## 12.0 OVERTIME

Unless expressly stated elsewhere in this Contract, Work at the jobsite shall be compatible with D/FDC's Construction starting and quitting times, or other times approved by D/FDC. Scheduled overtime work by Contractor must be approved in advance and in writing by D/FDC and such approval for overtime work shall not be unreasonably withheld by DFDC. Contractor shall notify D/FDC in advance of any incidental spot overtime which Contractor elects to work due to such operations as concrete placement, non-disruptable work activities and emergencies to protect life and/or property. Overtime work, whether scheduled or incidental, shall be to Contractor's account unless the compensation therefor is specifically authorized in writing by D/FDC. In the event D/FDC approves compensation of Contractor's overtime in advance, such compensation as separately authorized shall be limited to the actual cost to Contractor of the premium portion only of all applicable wages, craft fringe benefits, and payroll burdens imposed by any governmental authority and measured by the compensation payable to employees. To establish the amount of payment, Contractor shall submit supporting documents satisfactory in form and content to D/FDC for its verification and approval.

## 13.0 DELAYS

**13.1** In the event Contractor or D/FDC is delayed in performing any of their respective obligations in the Contract (other than the payment of money) and such delay is caused by a Force Majeure Event defined as; acts of God, war, riots, civil insurrection, acts of the public enemy, accidents, acts of civil or military authority, sabotage, epidemics, revolution, injunction, terrorism, quarantine, strikes and labor disputes (except as excluded below), fires, floods, landslides, tidal wave, hurricane, lightning, explosion or earthquakes, or other similar events, beyond the reasonable control of the party delayed, such delay shall be excused and the period of such delay shall be added to the time for performance as required. Force Majeure Events do not include strikes, work stoppages and labor disputes or unrest of any kind involving employees of Contractor or any of its subcontractors employed on the Facility Site (provided, however, that if such events are beyond the control of the Contractor or any of its subcontractors and are not caused by the actions or failure to act of Contractor or any of its subcontractors, such events shall be Force Majeure Events), late delivery of materials or equipment (except to the extent caused by a Force Majeure Event), and economic hardship. In the event any such delay due to the foregoing causes or events occurs or is anticipated, the party delayed or anticipating delay shall promptly notify the other party in writing of such delay or expected delay and the cause and estimated duration of such delay. In the event of a delay due to the foregoing causes or events, whether such delay is excused or not, the party delayed shall, at no cost to the other party, exercise reasonable diligence to shorten and avoid the delay and shall keep the other party advised as to the continuance of the delay and steps taken to shorten or terminate the delay. Contractor shall not in any event be entitled to additional or extra compensation by reason of Contractor having been delayed in performance of its obligations due to the foregoing causes or events whether such delay was excused or not. Contractor or D/FDC shall, within five (5) working days of becoming knowledgeable of the commencement of any such delay, give to the other written notice thereof and of the anticipated results thereof. Within two (2) working days of the termination of any such delay, Contractor or D/FDC shall file a written notice with the other specifying the actual duration of the delay. If the delay was beyond the control and without the fault or negligence of

Contractor or DFDC, as the case may be, and not foreseeable at the effective date of this Contract, Contractor or DFDC shall be entitled to an equitable extension of the time of performance of this Contract, **provided that the extension of time is of no greater scope and of no longer duration than is reasonably required by the delay.** Contractor shall not be entitled to, and hereby expressly waives recovery of, and damages suffered by reason of the delays contemplated by this Section 13.0 and extension of time shall constitute Contractor's sole remedy for such delays.

**13.2** The time of completion of any and all Work items scheduled in the Contract shall not be extended because of non-extraordinary weather conditions or other natural non-extraordinary phenomena including, but not limited to normal rain, high temperature, wet grounds, and high winds.

**13.3** The inability of Contractor to obtain permits or licenses required for the progress of its Work shall not be considered a reason for force majeure claim.

## 14.0 POSSESSION PRIOR TO COMPLETION

D/FDC and/or Owner shall have the right to move into Contractor's working and storage areas and the right to take possession of or use any completed or partially completed part of Contractor's Work as D/FDC or Owner deem necessary for their operations. In the event D/FDC or Owner desire to exercise the foregoing right, D/FDC will so notify Contractor in writing. Such possession or use shall not constitute acceptance of Contractor's Work, and D/FDC and/or Owner shall assume full responsibility for loss, damage or injury associated with such possession or use and such possession or use shall not interfere with Contractor's Work.

## 15.0 NOTICE OF PROJECT COMPLETION

**15.1** When Contractor deems the Work to have achieved Project Completion, including satisfactory completion of such inspections, tests and documentation as are specified in this Contract, Contractor shall, within ten (10) working days thereafter, give a written notice of Project Completion of the Work to D/FDC, specifying the Work completed and the date it was completed. Within ten (10) calendar days after receipt of said notice of Project Completion, D/FDC may inspect the Work and shall either reject the notice of Project Completion and specify defective or uncompleted portions of the Work, or shall give the Contractor a written notice of acceptance of the Work and Project Completion either for the purpose of final payment only, or for the purposes of final payment and final acceptance. The Notice of Project Completion shall be dated as of the date that Contractor provided DFDC with the notice which proved to be acceptable.

**15.2** In the event D/FDC rejects the notice of Project Completion and specifies defective or uncompleted portions of the Work, Contractor shall within five (5) working days, provide for D/FDC's review and approval, a schedule detailing when all defects will be corrected and/or the work will be completed and shall proceed to remedy such defective and uncompleted portions of the Work. Thereafter, Contractor shall again give D/FDC a written notice of Project Completion of the Work, specifying a new date for the completion of the Work based upon the date such defective or uncompleted portions of the Work were corrected. The foregoing procedure shall apply again and successively thereafter until D/FDC has given Contractor written notice of Project Completion for purposes of final payment and final acceptance.

**15.3** If D/FDC to is unable to perform such inspection and notification within ten (10) days as stipulated in 15.1 above, the parties agree to mutually work together to complete such inspection as promptly as is reasonably possible.

## 16.0 CHANGES

**16.1** The Scope of Work shall be subject to change by additions, deletions or revisions thereto by D/FDC. Contractor will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits or written orders.

**16.2** Contractor shall submit to D/FDC within (20) twenty working days after receipt of notice of a change, a takeoff with supporting calculations and firm lump sum pricing for the change together with any adjustments in the schedule guarantees or other Contract requirements required for the performance of Work as changed. The pricing shall be itemized to show the cost for labor (by trades and work classification), material and equipment and shall cover all work involved in the change, whether such work was deleted, added or modified. Amounts related to subcontracts shall be identified as individual line items. In addition, if the proposal includes a time extension (or adjustment of any other Contract requirement), a justification therefor shall also be furnished.

**16.3** Contractor shall not perform changes in the Work in accordance with Sections 16.1 and 16.2 until D/FDC has approved in writing the pricing for the change and any adjustment in the schedule guarantees, or other Contract requirements for performance of the Work, except as set forth in Section 16.4. Upon receiving such written approval from D/FDC, Contractor shall perform the change in accordance with this Contract.

**16.4** Notwithstanding Section 16.3 D/FDC may expressly authorize Contractor in writing to perform the change prior to such approval by D/FDC. Contractor shall not suspend performance of this Contract during the review and negotiation of any change, except as may be directed by D/FDC pursuant to Article 17.0, SUSPENSION OF WORK. If Duke/Flour Daniel has authorized Contractor in writing to perform work prior to the issuance of a change order, Contractor shall then commence such work on a time and material basis. If D/FDC and Contractor are unable to agree on a firm lump sum price then Contractor shall be compensated on a time and material basis. The pricing for time and material shall be as follows:

    I)      Craft labor and Engineering Costs: Labor rates shall include all payroll additives such as payroll taxes, insurance, vacation allowance, subsistence, etc.
    II)     Construction Equipment Cost including rental equipment
    III)    Material
    IV)    Subcontractor Services
    V)     Transportation and Delivery Cost

Items I, III and IV above shall be marked-up as follows to cover overheads, management and profit;
        Item I) Thirty five percent (35%)
        Item III) Twenty Percent (20%)
        Item IV) Ten Percent (10%).

**16.5** Contractor shall not comply with oral changes in the Work. If Contractor believes that any oral notice or instruction received from D/FDC will involve a change in the cost, time to perform or integrity

of the work, it shall require that the notice or instruction be given in writing and shall comply with the provisions of Sections 16.2, 16.3 and 16.4. Any costs incurred by Contractor to perform oral changes shall be for Contractor's account, and Contractor waives any and all rights to claim from D/FDC or Owner for such costs or additional time to perform the Work as a result of compliance by Contractor with such oral changes.

16.6 D/FDC may request minor changes in the Work, consistent with the overall general scope of this Contract, to accommodate unanticipated changes which do not affect schedule or Contract Price. If Contractor believes that any such order entitles it to an adjustment to the Contract Price or schedule or both, it shall provide a written statement of such to D/FDC. Prior to beginning the portion of Work affected by the order, Contractor will prepare a Change Order as described in this Article.

16.7 Contractor is not entitled to claim for damages for anticipated profits on any portion of the Work that may be deleted and which was not performed.

## 17.0 SUSPENSION OF WORK

17.1 D/FDC may at any time, and from time to time, by written or telegraphic notice to Contractor suspend further performance of all or any portion of the Work by Contractor. Said notice of suspension shall specify the date of suspension and the estimated duration of the suspension. Upon receiving any such notice of suspension, Contractor shall promptly suspend further performance of the Work to the extent specified, and during the period of such suspension shall properly care for and protect all Work in progress and materials, supplies, and equipment Contractor has on hand for performance of the Work. Upon the request of D/FDC, Contractor shall promptly deliver to D/FDC unpriced copies of outstanding purchase orders and subcontractors of Contractor for materials, equipment and service for the Work, and shall take such action relative to such purchase orders and subcontracts as may be directed by D/FDC. Contractor shall use its best efforts to utilize its material, labor and equipment in such a manner as to mitigate costs associated with suspension. D/FDC may at any time withdraw the suspension of performance of the Work as to all or part of the suspended Work by written or telegraphic notice to Contractor specifying the effective date and scope of withdrawal, and Contractor shall resume diligent performance of the Work for which the suspension is withdrawn on the specified effective date of withdrawal.

17.2 If Contractor believes that any such suspension or withdrawal of suspension justifies modification of the Contract price or time of completion, Contractor shall comply with the provisions of the procedure set forth in Article 16.0, CHANGES. Contractor shall not be entitled to any prospective profits because of such suspension or withdrawals of suspension.

## 18.0 TERMINATION AT DUKE/FLUOR DANIEL CARIBBEAN S.E.'S OPTION

18.1 D/FDC shall have the right at any time, with or without cause, to terminate further performance of all or part of the Work by written or telegraphic notice to Contractor specifying the date of termination. On the date of such termination stated in said notice, Contractor shall discontinue performance of the Work and shall preserve and protect tools, construction equipment and facilities on jobsite, materials and plant equipment purchased for or committed to the Work (whether delivered to the Jobsite or on order), Work in progress and completed Work (whether at jobsite or other locations) pending D/FDC's instructions and, if requested by it, shall turn over the same to D/FDC, or Owner, including title to said

materials and plant equipment, provided the Contractor has been paid in full for such material and equipment or dispose of same in accordance with D/FDC's instructions.

**18.2** Upon receipt of said notice, Contractor shall advise D/FDC of its outstanding orders and subcontracts pertaining to performance of the terminated work and, upon request, furnish D/FDC with complete copies. Contractor shall place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the Work as is not terminated; Contractor shall promptly make every reasonable effort to procure cancellation, upon terms satisfactory to D/FDC, of all orders and subcontracts to the extent they relate to the performance of Work terminated; or, as directed by D/FDC, shall assign to it or Owner such of its subcontracts and orders as are designated by D/FDC, or shall take such other action relative to such subcontracts or orders as may be directed by D/FDC.

**18.3** If Contractor has reasonably performed all obligations under this Contract up to the date of termination, Contractor shall recover from D/FDC an amount based upon the Cancellation Schedule (Attachment 13.C of Part II) which amount shall constitute complete and full settlement for such termination. In no event shall total payment to Contractor exceed the Contract Price.
**18.4** The provisions of this Contract, which by their nature survive final acceptance of the Work, shall remain in full force and effect after such termination.

## 19.0 CLAIMS

**19.1** Contractor shall give D/FDC written notice within five (5) working days after becoming aware of any event which Contractor believes may give rise to a claim by Contractor for an increase in the Contract Price or in the scheduled time for performance. Within ten (10) working days after becoming aware of such event, Contractor shall supply D/FDC with a statement supporting Contractor's claim, which statement shall include Contractor's detailed estimate of the change in Contract Price and scheduled time occasioned thereby. Contractor shall substantiate its claim with payroll documents, paid invoices, receipts, records of performance and other documents satisfactory to D/FDC and subject to its verification. D/FDC shall give Contractor written notice within five (5) working days upon determining that an action or inaction of Contractor which will result in a claim from D/FDC and D/FDC will submit a detailed claim to Contractor within ten (10) working days for review. Both parties hereby waive any claim or potential claim to the other party which was not reported in accordance with the provisions of this Article. The parties shall negotiate in good faith to reach an agreement, but in no case, except with D/FDC's prior written consent, shall any work be halted pending such agreement, whether or not the claim can be resolved to Contractor's satisfaction, and Contractor shall be bound by the terms and conditions of this Contract to prosecute the Work without delay to its successful completion. D/FDC shall not be bound to any adjustments in the Contract Price or scheduled time for Contractor's claim unless expressly agreed to by D/FDC in writing or otherwise required pursuant to arbitration or court award. No claim hereunder by Contractor shall be allowed if asserted after final payment under this Contract. Contractor's and D/FDC's remedies are limited to those expressly set forth in this Contract.

**19.2** Claims identified by the parties will be considered for resolution by the D/FDC Site Manager and the Contractor Construction Site Manager. Claims which remain unresolved for one (1) month after receipt of substantiating information by D/FDC may, at the discretion of either D/FDC or Contractor, be submitted to the D/FDC Project Director and the Contractor Project Manager for resolution. Should a claim remain unresolved for an additional one (1) month, either party may submit the claim to the D/FDC Vice President - Projects and the Contractor Director of Projects for resolution. This mutually

agreed upon process for resolution of potential claims will not affect the rights and obligations, that are provided under the Contract for either party.

## 20.0 PROTECTION OF MATERIALS, EQUIPMENT AND WORK

**20.1** Contractor shall at all times and at no additional cost to D/FDC, preserve and protect material and equipment used by Contractor in the execution of the Work from damage or loss due to weather, fire, theft, unexplained disappearance or other similar casualty.

**20.2** Contractor shall at all times and at no additional cost to D/FDC, protect from damage due to Contractor's operations, equipment and materials (whether stored or installed), paving, structures and any and all other items on jobsite belonging to Owner, D/FDC or others.

**20.3** The liability, if any, of D/FDC or Owner for any damage to the Work, or to materials, tools and equipment of Contractor or their subcontractors, shall be limited to the deductible of the Builder's All Risk Policy or Tools and Equipment Insurance as applicable. Otherwise, Contractor assumes responsibility.

## 21.0 CONTRACTOR'S CONSTRUCTION EQUIPMENT

Construction equipment obtained or furnished by Contractor which is to be used by Contractor on the jobsite shall be in good operating condition, safe, fit for the uses for which intended, and suitable for the safe, legal and efficient performance of the Work. Such equipment shall be subject to inspection from time to time by D/FDC. Any such equipment of Contractor which is rejected by Duke/Flour Daniel as not conforming with the foregoing shall be promptly brought into compliance without additional cost to D/FDC and without delaying the schedule for performance of the Work by Contractor.

## 22.0 CONTRACTOR'S SHIPMENTS

**22.1** Contractor shall be responsible for arranging all shipments of Contractor supplied materials and equipment to the site of the Work and shall consign such shipments to itself as consignee at the project shipping address, freight fully prepaid. Contractor shall be responsible for making demurrage agreements and settlement with carriers for its shipments.

**22.2** Contractor shall advise Duke/Flour Daniel in advance of all major shipments of Contractor's materials and equipment and shall coordinate with D/FDC the arrival, unloading and release of carriers' equipment. Contractor shall promptly unload its shipments and promptly release carrier's equipment.

**22.3** In the event Contractor may be unable to promptly unload its shipment, Contractor shall notify D/FDC of such inability not less than ten (10) working days in advance of arrival. D/FDC, at its option, may unload or make arrangements for others to unload such shipments for the account and risk of Contractor. Contractor will promptly pay D/FDC for such costs of unloading.

## 23.0 CONTROL OF D/FDC FURNISHED MATERIALS

**23.1** Materials and equipment furnished by D/FDC for the Work, if any, shall be received by Contractor in the presence of Duke/Flour Daniel's authorized representative and quantities thereof shall be checked jointly by Contractor and D/FDC. The delivery and acceptance of all such materials and equipment shall

be recorded in writing, and Contractor shall evidence receipt and acceptance of such materials and equipment by signing forms satisfactory to D/FDC.

23.2  Contractor shall carefully note any visible damage to D/FDC furnished materials and equipment prior to Contractor's acceptance of delivery. After Contractor has accepted delivery of such materials and equipment, Contractor shall assume full responsibility for any loss of or damage to such materials and equipment. Contractor shall notify D/FDC of any materials and equipment supplied to Contractor by D/FDC which are surplus and shall cooperate with D/FDC and Owner in the disposition of such surplus as directed by D/FDC.

23.3  Contractor shall notify D/FDC of any lack of, or requirement for, materials and equipment required under this Contract to be supplied by D/FDC in sufficient time for D/FDC to furnish said materials or equipment in advance of Contractor's need. In the event of misfit of D/FDC furnished materials or equipment, Contractor shall promptly notify D/FDC of such misfit. Contractor shall take all reasonable steps to avoid standby time due to such misfit or lack of D/FDC furnished materials or equipment and to continue progress of other portions of Work pending correction of such misfit and/or the furnishing of materials or equipment.

## 24.0  CARE, CUSTODY, CONTROL AND TITLE TO MATERIALS AND EQUIPMENT

24.1  Good and clear title to all materials and equipment furnished by Contractor under this Contract for the Work shall, except as expressly provided otherwise, elsewhere in the Contract, pass to Owner upon payment in full by D/FDC or incorporation into the permanent plant. Contractor shall ensure that vendors and suppliers from whom Contractor obtains materials and equipment do not retain, encumber or reserve title to or any interest in such items to the extent that D/FDC has paid Contractor for such items.

24.2  Notwithstanding the provisions of Section 24.1, the care, custody and control of Contractor's work incorporated into the permanent plant shall remain with Contractor until operation has been accepted by successful achievement of all the required testing standards and shall thereupon pass to D/FDC unless D/FDC or Owner notify Contractor in writing that such care, custody, and control is assumed by D/FDC or Owner at an earlier date.

## 25.0  CONTRACTOR'S PERSONNEL

25.1  Contractor shall provide an adequate number of qualified and competent supervisory staff, craft persons and other personnel to perform the Work. At all times during the course of the Work, Contractor shall provide at the jobsite a qualified, competent and responsible supervisor who shall be satisfactory to D/FDC. The supervisor shall have authority to represent Contractor and directions given to him and accepted by him shall be binding on Contractor. Upon D/FDC's written request, Contractor shall give the supervisor, in writing, complete authority to act on behalf of, and to bind Contractor in all matters pertaining to the Work and this Contract. Contractor shall furnish D/FDC a copy of the authorization. Contractor shall not transfer or remove any of its supervisory or key personnel from performance of Work without the prior written notice to D/FDC.

25.2  Any employee of Contractor deemed by D/FDC or Owner, in their sole judgment, to be objectionable shall be removed from the jobsite immediately upon D/FDC's request that shall be in

writing and which shall state the reason(s) for such request, and shall be promptly replaced by Contractor at no extra expense to D/FDC.

25.3 If requested by D/FDC, Contractor shall furnish it with the names and addresses of Contractor's subcontractors.

25.4 Subject to Applicable Laws, Contractor agrees that (a) in seeking personnel to perform the Work in Puerto Rico, Contractor and its subcontractors shall give first preference to individuals who (i) have been residents of Puerto Rico for a continuous period of at least one (1) year immediately prior to starting work on the Facility,
(ii) at some time prior to starting work on the Facility, but not necessarily including the period of time immediately prior to starting work on the Facility, were residents of Puerto Rico for a period of at least five (5) consecutive years and have relocated to Puerto Rico in order to perform work on the Facility, or (iii) were born in Puerto Rico or have at least one parent who was born in Puerto Rico and in the opinion of the Utility have sufficient connection with Puerto Rico to be entitled to the preference established in this sentence; and (b) without limitation of the foregoing, not less that 30% of the total personnel hours expended in performance of the Work in Puerto Rico prior to the Commercial operation Date shall be performed by individuals who meet the conditions of (i), (ii) or (iii) in clause (a) above. Without limitation of the foregoing, subject to Applicable Laws, not less than 30% of the Work to be performed in Puerto Rico prior to the Commercial Operation Date and measured by person-hours on an annual basis, shall be performed by business concerns which are owned and controlled by one or more individuals who meet at least one of the three criteria described in clause (a) of the preceding sentence. For purposes of the preceding sentence, owned and controlled means a business (x) which is at least 51% owned by one or more of such individuals (e.g., in the case of a corporate form of organization, such individuals must hold at least 51% of all voting stock of the corporation; in the case of a special partnership, such individuals must hold at least 51% of the beneficial interests in the partnership), and (y) whose management and daily business operations are controlled by one or more of such individuals (who need not be owners of the business). Subject to Applicable Laws, Contractor also agrees to use its best efforts to maximize the hiring of Guayama area residents for the performance of construction labor and to maximize the use of subcontractors that are owned and controlled by Guayama area residents.

25.5 Contractor shall notify D/FDC within 120 days of the date of this Contract as to whether Contractor intends to use any union personnel in connection with the Work at the Facility Site. If any union personnel are used in connection with the Work at the Facility Site, Contractor shall procure one or more project labor agreements (containing "no strike clauses" reasonably satisfactory to D/FDC) covering all union personnel employed in connection with the Work not later than 15 days prior to the first scheduled closing of construction financing for the Facility (provided Contractor has at least 60 days notice of such scheduled closing), and shall keep such agreements in effect at all times while such personnel are so employed. Contractor shall be responsible for all labor relations matters relating to the Work and shall at all times use its best efforts to maintain harmony among the any union personnel employed (if any) and other personnel employed in connection with the Work. Contractor shall at all times use its best efforts and judgment as an experienced Contractor to adopt and implement policies and practices designed to avoid work stoppages, slowdowns, disputes and strikes.

## 26.0 LABOR HARMONY

Contractor agrees that all labor employed by it, its agents, and/or Subcontractor's for Work on the jobsite shall be in harmony with and be compatible with all other labor used by D/FDC or other Contractors.

Whenever Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of the Work, Contractor shall immediately give notice thereof including all relevant information to D/FDC.

## 27.0 EMPLOYMENT CERTIFICATIONS AND PRACTICES

**27.1** Contractor certifies that it has a policy ensuring equal employment opportunity without regard to race, color, national origin, sex, age, religion or handicap, that it maintains no employee facilities segregated on the basis of race, color, religion or national origin and that it is not debarred or suspended from being awarded Federal or Federally assisted contracts.

## 28.0 WORK RULES

Contractor agrees to use its reasonable efforts to comply with D/FDC and Owner's rules governing the conduct of Contractor and Contractor's employees, agents and subcontractors at and about the jobsite. Contractor agrees that it shall ensure that its supervisory personnel, employees, agents and subcontractors at the jobsite comply strictly with such rules. D/FDC and Owner reserve the right to, from time to time, revise any such rules, and Contractor shall comply fully with such rules as revised in accordance with the foregoing provisions.

## 29.0 INDEMNITY

Contractor agrees to defend, indemnify and hold harmless D/FDC and Owner, the Owner's lenders, the Utility, the PREPA, and the Steam Host, the affiliated companies of each, and all of their directors, officers, employees, agents and representatives, from and against:

**29.1** Any claim, demand, cause of action, liability, loss or expense arising by reason of Contractor's actual failure (or if asserted, to defend until proven not liable) to comply with any applicable law, ordinance, regulation, rule or order applicable to Contractor under this Contract, or with this Contract. This Section 29.1 includes, but is not limited to, fines or penalties by government authorities and claims arising from Contractor's actual or asserted failure to pay taxes for which Contractor is liable to pay hereunder.

**29.2** Any claim, demand, cause of action, liability, loss or expense arising from actual violation or infringement of rights (or, if asserted, to defend until proven not liable) in any applicable patent, copyright, proprietary information, trade secret or other property right caused or alleged to be caused by the use of goods, materials, equipment, methods, processes, designs or information, including construction methods, construction equipment and temporary construction facilities, furnished by Contractor or its subcontractors in performance of the Work. Should any goods or services provided by Contractor become the subject of a claim of infringement of a patent, copyright or other property right, Contractor shall, at Contractor's option, either procure for D/FDC and Owner the right to continue using such goods or services, replace same with equivalent, non-infringing goods or services, or modify the goods or services so that the use thereof becomes non-infringing, provided that any such modification or replacement is of equal quality and provides equal performance to the infringing goods or services. Contractor's obligations under this paragraph shall not apply to any goods, equipment processes, methods, designs or information to the extent that it was subsequently altered, modified or changed by D/FDC/Owner or used or operated by D/FDC/Owner in a manner in intended by this Contract.

29.3 Any claim, demand, cause of action, liability, loss or expense arising from injury to or death of third persons (including employees of D/FDC, Owner, Contractor and Contractor's subcontractors) or from damage to or loss of tangible property (but exclusive of property damage to the extent covered by the proceeds of the Builders All Risk Insurance or other insurance provided by D/FDC and/or Owner) caused by any negligent acts or omissions of Contractor or its subcontractors; provided, however, that Contractor's indemnification obligation for damage to the Facility shall not extend beyond the Performance Acceptance Date or during the Warranty Period, if the Contractor and/or its subcontractors is/are on the site to perform Warranty Work.   Contractor's defense and indemnity obligations hereunder include claims and damages arising from non-delegable duties of D/FDC or Owner or arising from use by Contractor of construction equipment, tools, scaffolding or facilities furnished to Contractor by D/FDC or Owner.

29.4 Any claim, demand, cause of action, liability, loss or expense for actual or alleged contamination, pollution, or public or private nuisance, to the extent arising out of any acts or omissions of Contractor, or its subcontractors.

29.5 In the event of joint or concurrent negligence on the part of the D/FDC or any other indemnified party, the liability, and any associated indemnity obligations shall be reduced by the negligence attributable to such indemnified party. Contractor's defense and indemnity obligations shall include the duty to reimburse any reasonable attorneys' fees and expenses incurred by D/FDC or Owner for legal action to enforce Contractor's indemnity obligations, but only to the extent D/FDC or Owner is successful in such actions.

29.6 In the event that the indemnity provisions in this Contract are contrary to the law governing this Contract, then the indemnity obligations applicable hereunder shall be construed to have the same economic effect on the parties.

29.7 With respect to claims against D/FDC or Owner by employees of Contractor or its subcontractors, the indemnity obligations created under this Article 29.0 shall not be limited by the fact of, amount, or type of benefits or compensation payable by or for Contractor, its subcontractors or suppliers under any workers' compensation, disability benefits, or other employee benefits acts or regulations, and Contractor waives, against D/FDC or Owner, any limitation of liability arising from workers' compensation or such other acts of regulations.

29.8 If there is a dispute between the parties regarding Contractor's obligations hereunder,  D/FDC shall be entitled to retain from payments otherwise due Contractor such amounts as shall reasonably be considered necessary to satisfy any claims, suits or liens for damages that fall within Contractor's indemnity obligations under this Article 29.0, until such claims suits or liens have been settled and satisfactory evidence to that effect has been furnished to D/FDC.

29.9 Contractor acknowledges specific payment of $10.00 incorporated into the Contract Price as legal consideration for Contractor's indemnity obligations as may be provided in this Contract.

29.10 <u>Notice and Defense</u>: Promptly after receipt by D/FDC of any claim or notice of the commencement of any action, proceeding or investigation as to which the indemnity provided for this Article applies, such indemnified party shall notify Contractor in writing of such fact. Contractor shall assume on behalf of the indemnified party the defense thereof with counsel of the indemnified party's choice or which shall be reasonably acceptable to D/FDC; provided that such indemnified party shall

have the right to be represented by independent counsel of its own selection and at its own expense. D/FDC and Owner shall provide reasonable support and assistance to the Contractor in connection with the defense of any claim to which the indemnity herein shall apply.

## 30.0 INSURANCE

**30.1** Before any Work is performed under this Contract, Contractor shall, as its sole cost, obtain and maintain in force the following insurance coverages:

**30.1.1** Worker's Compensation Insurance, including occupational illness or disease coverage, or other similar social insurance in accordance with the laws of the nation, state, commonwealth, territory or province exercising jurisdiction over the employee and Employer's Liability Insurance with a limit of $1,000,000 per occurrence and in the aggregate.

**30.1.2** Comprehensive or Commercial General Liability Insurance, including Contractual Liability, Products and Completed Operations Liability (with the Completed Operations coverage to remain in effect for two (2) years following Performance Acceptance), Explosion, Collapse, and Underground Hazards, Personal Injury Liability (with the standard contractual and employee exclusions eliminated), Elevators and Escalators, Employers Liability, and Broad Form Property Damage Liability coverages with a combined single limit of $1,000,000 per occurrence and in the aggregate. Such insurance shall protect against losses arising out of explosion, collapse or underground hazards. The Policy shall name D/FDC, its affiliates, Owner's Lenders and Owner as additional insureds with respect to liability or losses based upon or arising out of Contractor's Work under this Agreement. Contractor shall evidence that such coverage has been extended to the aforesaid additional insureds through provision of either a specific endorsement to its policy or through a Certificate of Insurance issued by its insurance broker on behalf of its insurance company that states that the additional insureds are additional insureds as required herein.

**30.1.3** Automobile Liability Insurance covering use of all owned, non-owned and hired automobiles with a combined single limit of $1,000,000 per occurrence and in the aggregate for bodily injury and property damage liability. This policy shall be endorsed to name D/FDC, its affiliates and Owner and Owner's Lenders as additional insureds with respect to liability based upon or arising out of the activities of Contractor pursuant to this Contract.

**30.1.4** Tools and Equipment Insurance covering physical damage to or loss of all major tools and equipment, office furniture and equipment, and vehicles for which Contractor is responsible throughout the course of the Work.

**30.1.5** "Umbrella" or Excess Liability Insurance, over the Comprehensive or Commercial General Liability, Automobile Liability and Employer's Liability, with a coverage limit of $14,000,000.

**30.2** The foregoing insurance coverages shall be primary and non-contributing with respect to any other insurance or self insurance which may be maintained by D/FDC, Owner, Owner's Lenders, the Electric Utility and Steam Host to which Owner will be furnishing electricity and steam, and the Puerto Rico Aqueduct and Sewer Authority. Contractor's Comprehensive General Liability and Automobile Liability Insurance policies shall contain a Cross Liability and Severability of interest clause. Contractor shall obtain from each of its insurers a waiver of subrogation in favor of D/FDC, its affiliates, Owner,

Owner's Lenders, the Electric Utility and Steam Host to which Owner will be furnishing electricity and steam, and the Puerto Rico Aqueduct and Sewer Authority with respect to losses arising out of or in connection with the Work. Contractor shall cause its insurance underwriters to issue Certificates of Insurance satisfactory in form to D/FDC (ACCORD form or equivalent) evidencing that the coverages, coverage extensions, policy endorsements and waivers of subrogation required under this Contract are maintained in force and that not less than 30 days written notice will be given to D/FDC, Owner and Owner's Lenders prior to any material modification or cancellation of the policies.

30.3 Builder's Risk Insurance covering loss or damages to materials and equipment at the Jobsite that are and/or will be incorporated into the completed Facility shall be provided by D/FDC or Owner. Contractor and its subcontractors shall be additional named insured on the Builders Risk Insurance Policy and such policy shall provide a waiver of subrogation in favor of Contractor. Contractor shall be responsible for the payment of the applicable deductible (**but in no event shall said deductible exceed $25,000 per occurrence**) and other uninsured amounts for each loss or damage to such materials or equipment which are in the care, custody and control of Contractor.

30.4 Changes in Contractor's insurance costs or escalations in premiums related to insurance programs and limits agreed to herein shall not be the basis for any increase in the price of the Work unless such change is due to changes in the Work. However, the additional cost for any other insurance required to be put into place by D/FDC or Owner shall be borne by D/FDC or Owner.

30.5 All insurance coverage provided by the Contractor shall be on an occurrence basis unless such coverage is not commercially available, in which event the parties shall agree upon replacement coverage on a claims made basis which provides, to the fullest extent possible, the same coverage as would be provided on an occurrence basis.

**31.0 BONDS**

**Deleted**

**32.0 CONTRACTUAL RELATIONSHIP**

Contractor represents that it is fully experienced and properly qualified to perform the class of Work provided for herein, and that it is properly equipped, organized and financed to perform such Work. Contractor agrees that it is and at the time of performance of the Work, it will be properly licensed and qualified to do business in all governmental jurisdictions in which it is required for the Work. Upon written request by D/FDC, Contractor shall furnish to it such evidence as D/FDC may require relating to the Contractor's ability to fully perform this Contract. Nothing contained in this Contract or any subcontract awarded by Contractor shall create any contractual relationship between any subcontractor and D/FDC or Owner. Contractor agrees that Contractor is an independent contractor and an employer subject to all applicable unemployment compensation, occupational safety and health, or similar statues so as to relieve D/FDC of any responsibility or liability for treating Contractor's employees as employees of D/FDC for the purpose of their safety or of keeping records, making reports or paying of any payroll taxes or contribution; and Contractor agrees to indemnify and hold D/FDC harmless and reimburse it for any expense or liability incurred under said statutes in connection with employees of Contractor, including a sum equal to any unemployment benefits paid to those who were Contractor's employees, where such benefit payments are charged to D/FDC under any merit plan or to D/FDC's reserve account pursuant to any statute. The Contractor further agrees, as regards the items set forth below and for Work

under this Contract, that it will keep and have available all necessary records and make all payments, reports, collections and deductions and otherwise do any and all things so as to fully comply with all federal, state and local laws, ordinances and regulations as they affect performance of the Contract, so as to fully relieve and protect D/FDC and Owner from any and all responsibility or liability therefore or in regard thereto: (1) the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies and equipment; (2) the hire, tenure or conditions of employment of employees and their hours of work and rates of the payment of the work, and (3) the keeping of records, making of reports, and the payment, collection and/or deduction of federal, state, commonwealth and local taxes, contributions, pension funds, welfare funds, or similar assessments.

## 33.0 PERMITS AND LICENSES

33.1 Contractor shall only be responsible for obtaining those permits which are required in order for Contractor to perform its scope of Work. D/FDC and or Owner shall obtain all other permits such as Building Permit, Air Permit, Operating Permit, etc.

33.2 Contractor shall be responsible for obtaining, at the time needed, all construction licenses and other permits, and governmental inspections required, as of the date of this Contract, by public authorities for performing the Work and which are not otherwise specified to be obtained by D/FDC or Owner.

33.3 The Work shall meet all applicable requirements of local, state, and Federal public authorities regulating the environment and local, state and Federal public authorities regulating building or construction specifications or design as necessary for the completed Units to qualify for necessary construction, building and operating permits and other licenses and environmental regulatory approvals provided that D/FDC or Owner has advised Contractor of any such requirements. The applicable regulatory requirements which are the basis for such obligation of Contractor are those effective on the date of this Contract. Contractor shall promptly notify D/FDC of any changes made in these requirements after date of this Contract which may impact the Work, and shall provide written recommendations concerning actions to be taken to comply with the revised or new regulations.

## 34.0 INDEPENDENT CONTRACTOR

Nothing in this Contract shall be deemed to represent that Contractor, or any of Contractor's employees or agents, are the agents, representatives or employees of D/FDC or Owner. Contractor shall be an independent contractor and shall have responsibility for and control over the details and means for performing the Work, provided that Contractor is in compliance with the terms of this Contract. Anything in this Contract which may appear to give D/FDC the right to direct Contractor as to the details of the performance of the Work or to exercise a measure of control over Contractor, shall mean that Contractor shall follow the desires of D/FDC only as to the intended results of the Work.

## 35.0 CONFIDENTIAL INFORMATION

Drawings, specifications, and other information, which is marked as confidential and obtained by Contractor from D/FDC or Owner in connection with the Work shall be held in confidence by Contractor and shall not be used by Contractor for any purpose other that for the performance of Work or as authorized in writing by D/FDC. All such documents furnished by D/FDC or Owner to Contractor shall

remain their property. Drawings, specifications and other information which is provided to D/FDC and which is marked as confidential shall be treated as confidential and proprietary and remain the property of Contractor. D/FDC and/or Owner shall have the right to disclose this information to third parties, subject to appropriate and reasonable restrictions of confidentiality, to the extent necessary to construct, maintain and operate the equipment but shall not use this information for the expansion or substantial duplication of the Work.

## 36.0 PUBLICITY

**36.1** Contractor shall not make news releases pertaining to the Work or this Contract without first obtaining the written approval of D/FDC.

**36.2** The Jobsite shall be maintained free from any and all advertising and Contractor's and its subcontractors', suppliers', and manufacturers' signboards of every kind, except those specifically approved in writing by D/FDC. Contractor and its subcontractors, suppliers , and manufacturers shall place no temporary sign (except as required for safety or by law) on any part of the premises of Owner without the written permission of D/FDC.

**36.3** Publications and advertisements concerning the Project shall not be made by or on behalf of Contractor, or its subcontractors, suppliers, manufacturers or agents, unless prior written authorization therefor is obtained from D/FDC.

**36.4** Cameras or picture taking, except for purposes of reporting the progress of construction or problem areas which may occur during construction, shall not be allowed on or of the Jobsite or on or of any of Owner's property or facilities, except with written permission of D/FDC.

## 37.0 OWNERSHIP AND USE OF DRAWINGS

**37.1** Engineering and related data, calculations, plans, maps, drawings, computer programs and specifications furnished by D/FDC or Owner in connection with the Work (referred to in this Article 37.0 as "D/FDC's Documents") shall remain D/FDC's or Owner's property. Contractor agrees not to use or release to others any such D/FDC's Document for purposes other than the Work performed hereunder unless prior written consent to the contrary is given by D/FDC. Contractor shall give D/FDC receipts for D/FDC's documents furnished by D/FDC or Owner and shall be responsible for their safekeeping and return to D/FDC or Owner upon request, upon termination or completion of this Contract, or upon termination or completion of the Work to which such D/FDC's documents apply.

**37.2** Contractor shall release D/FDC and Owner from all liability which may arise as a result of the use of D/FDC's Documents, whether by Contractor or third parties to whom Contractor discloses said documents and information, for purposes other than the Work and Units provided under this Contract as set forth above. This Article 37.2 shall apply mutatis mutandi to D/FDC and Owner.

**37.3** Any drawings, data or information supplied by Contractor hereunder shall remain the sole and exclusive property of Contractor but may be used by D/FDC and Owner solely for the purpose of evaluation, facilitating and/or completing construction, maintenance, operation and/or repair of the subject Facility and not for any other unrelated purpose.

## 38.0 ASSIGNMENTS

Contractor shall not assign this Contact wholly or in part, voluntarily, by operation of law, or otherwise without first obtaining the written consent of D/FDC. Any assignment of the Contract in violation of the foregoing shall be at the option of D/FDC, void. Subject to the foregoing, the provisions of this Contract shall extend to the benefit of and be binding upon the successors and assigns of the parties hereto. D/FDC reserves the right at its sole option to assign this Contract to Owner, Owner's designated agent, Owner's Lenders, or to D/FDC's affiliates. In the event that Contractor needs to split the Contract to include work in Puerto Rico, Contractor reserves the right to add Combustion Engineering Caribe, Inc. to this Contract.

## 39.0 LAWS AND REGULATIONS

**39.1** Both parties shall comply strictly with local, municipal, state, federal and governmental laws, orders, codes and regulations applicable to their operations as they relate to this Contract.

**39.2** Contractor shall not, under any circumstances apply to or enter into negotiations with any governmental authority or agency for acceptance of variations from or revisions to safety or health, or air, water or noise pollution laws or regulations relating to this Contract or to the performance thereof, without D/FDC and Owner's prior written approval.

**39.3** Neither party shall, under any circumstances, cause or permit their operations as they relate to this Contract, the discharge, emissions or release of any hazardous substance and/or waste, pollutant, contaminant or other substance in violation of any applicable laws, rules or regulations which are now or hereafter promulgated by any governmental authorities having jurisdiction over the Work. Contractor shall comply with all legal regulatory requirements applicable to the Work performed under this Contract and shall be responsible for compliance with all hazardous waste, health and safety, notice, training, and environmental protection laws, rules, regulations and requirements, including, but not limited to, the Resource Conservation and Recovery Act. "Hazardous Waste" includes all substances which are or may be identified as such in 40 C.F.R Part 261 or other applicable laws or regulations. Contractor shall submit material safety data sheets, OSHA Form 20, as required. As an inducement to award of this Contract, Contractor warrants full compliance and that it will adhere to all applicable project hazardous waste procedures and if necessary, obtain or arrange for at its expense all identification numbers, permits, applications and other things required in connection with the activities under this Contract. Contractor agrees that it will not store any hazardous wastes at the jobsite for periods in excess of ninety (90) days or in violation of the applicable site storage limitations imposed by law, the Owner or D/FDC, whichever shall be more restrictive. Contractor further agrees that it will not permit any accumulation in excess of the small quantity generator exclusion of 40 C.F.R. Part 261 or other applicable law, as amended. Contractor agrees to take, at its expense all actions necessary to protect third parties, including without limitation, employees and agents of Owner and D/FDC from any exposure to, or hazards of, hazardous and/or toxic wastes or substances generated or utilized in Contractor's operations. Contractor agrees to report to the appropriate governmental agencies all discharges, releases and spills of hazardous substances and/or wastes required to be reported by law and to immediately notify Owner and D/FDC of same.

**39.4** This Contract shall be subject to the law and jurisdiction of the State of Delaware, unless expressly designated otherwise within this Contract.

39.5  To the extent, if any, that (a) any changes in Applicable Laws, including their interpretation, or Applicable Permits occur after the date of this Agreement or (b) any Applicable Permits obtained after the date hereof (or any Applicable Permits obtained by Owner on or prior to the date hereof but not disclosed to Contractor), contain terms that Contractor did not and should not have reasonably foreseen as of the date hereof, such changes or unforeseen terms shall be treated as a Scope Change under Section 16 hereof; provided, however, that Contractor shall not be required to comply with any such changes and terms which are impossible to comply with as a practical matter; and provided further, that this Section 39.5 shall not apply to any change in Applicable Permits resulting directly or indirectly from the acts or omissions of Contractor or any Subcontractor that are wrongful or otherwise not in compliance with Contractor's obligations hereunder.

39.6  Contractor shall observe and comply with all aspects of all ordinances, laws, requirements, codes, rules and regulations of all bodies of government and governmental agencies having jurisdiction over any aspect of the Work. If Contractor observes that this Contract is at variance therewith, it shall give D/FDC prompt written notice thereof. Should Contractor become aware of any violations of any laws, ordinances, requirements, codes, rules or regulations, it shall promptly notify D/FDC in writing. Contractor shall give due and adequate notices to D/FDC of all properties of third parties which may be affected by Contractor's Work. If Contractor, or its employees, agents, subcontractors, suppliers or manufacturers of any tier, violates any laws, ordinances, requirements, codes, rules or regulations, Contractor shall defend, indemnify and hold D/FDC and Owner, and their agents, harmless against any fines and penalties incurred by itself or by D/FDC, Owner, their agents, or their other contractors if resulting therefrom. Claims, loss or damages indemnification shall be in accordance with Article 29.0 of Part III of this Contract.

39.7  Contractor shall perform its Work in accordance with applicable laws, rules, regulations, and orders, including but not limited to, those under Federal Occupational Safety and Health Act (Public Law 91-956), relating to the safety of Contractor's employees and shall require each subcontractor to have an appropriate safety program covering the subcontractors employees. Contractor shall defend, indemnify and hold harmless D/FDC and Owner and their agents from and against any fines and penalties resulting from Contractor's or its subcontractor's violation of any such laws, rules, regulations, or orders. Claims, loss or damages indemnification shall be per Article 29.0 of Part III of this Contract.

39.8  Contractor shall comply with the requirements of all Federal and state Worker's Compensation, Unemployment, Wage and Hour, and Social Security Regulations pertaining to the Work involved in this Contract and other special state and municipal licenses and permits required for the Work. It shall file the necessary reports and pay the required taxes thereunder.

39.9  It shall be the obligation of the Contractor to inform itself of the requirements of the law.

39.10  The Work shall be designed and constructed in compliance with editions of the codes and standards listed in the erection specification Part I Scope of Work which are in effect as of the date of this Contract. Subsequent changes in standards and codes shall be referred to D/FDC for resolution as to whether a Change Order shall be made to the Work consistent with this Contract.

39.11  Applicable codes and standards referenced in this Contract establish minimum requirements for the Work. If this Contract is silent concerning applicable codes and standards, the applicable codes and standards shall control; however, applicable codes and standards referenced in this Contract shall be superseded by more stringent requirements of this Contract when and where such requirements occur.

Any other Contractor deviation from the applicable codes and standards referenced in this Contract shall not be permitted except with D/FDC's written approval.

## 40.0 COMMUNICATIONS

**40.1** Written communications from Contractor shall be marked with D/FDC's contract number and addresses as set forth in this Contract.

**40.2** Unless expressly authorized by D/FDC, in writing, Contractor shall not contact Owner regarding this Contract.

## 41.0 EMERGENCY MEDICAL SERVICES

D/FDC or Owner may furnish emergency medical treatment or related services to Contractor's employees in the case of job connected illness or injury occurring at the jobsite. In the event that such services are available, all such treatment or services, if any, are furnished on a Good Samaritan basis and not as a contractual obligation. In consideration of any such treatment or services, Contractor acknowledges, except for gross negligence or willful misconduct, that it assumes full and complete responsibility and liability for all injuries and damages to any of its employees arising out of or allegedly attributable in any way thereto. Nothing herein contained shall be constructed as imposing any duty upon D/FDC or Owner to provide facilities necessary to furnish emergency medical treatment or related services to Contractor's employees or to make such facilities and/or services available to Contractor's employees.

## 42.0 INVOICING AND PAYMENT

**42.1** The Contract Price shall be payable per the milestones (dates) and of the amounts established in (Attachment 13.B of Part II) this Contract. Invoices shall be paid per the terms of this Contract provided verification has been established that the milestone(s) events tied to that specific payment have been satisfactorily completed.

**42.2** Contractor shall submit separate invoices to D/FDC in accordance with Section 7.0, Part II of this Contract.

**42.3** Payment shall not be construed to be an acceptance of Work. D/FDC shall pay the final retainage invoice to Contractor in accordance with the following:

a)  Within five (5) days after the determination, in accordance with the terms of this Contract, that Performance Acceptance has been achieved, all retainage, except for 150% of the cost of completing all punch list items, shall be paid to Contractor and Contractor shall issue an acceptable Letter of Credit to DFDC in the amount of $1,000,000;

b)  Within thirty (30) days after Project Completion, all remaining retainage less the $1,000,000 Letter of Credit shall be paid to Contractor;

c)      Within eighteen (18) months after the occurrence of Performance Acceptance, and provided that Project Completion has occurred, DFDC shall extinguish the Letter of Credit requirement.

**42.4** Additional Work Invoices shall be submitted as separate invoices, to cover additional Work authorized by D/FDC and completed by Contractor, but not added to this Contract by a formal change at the time of invoicing.

**42.5** Contractor shall prepare all invoices in a form satisfactory to and approved by D/FDC. In the event an invoice is submitted, in accordance with Contract terms, for Work accomplished on a reimbursable or unit price/unit rate basis, it shall be accompanied by documentation supporting each element of measurement and/or cost. Any invoice submitted, which fails to comply with the terms of this Contract, including the requirements of form and documentation, may be returned to Contractor. Any costs associated with the resubmission of a proper invoice shall be to Contractor's account.

**42.6** With each milestone payment invoice, Contractor shall furnish partial lien waivers (in substantially the form shown as Attachment 13.E to Part II of this Contract) which partial lien waiver will waive Contractor's lien rights for all work performed through the cutoff date of such invoice. D/FDC may withhold payment of invoices until Contractor furnishes such partial lien waivers. Such partial lien waiver may be conditioned upon receipt of the associated payment. In addition, Contractor shall provide, if requested by the Owner prior to disbursement of funds to D/FDC required to make such scheduled Contractor payment, copies of such partial lien waivers from subcontractors and suppliers with subcontracts or purchase orders with a contract price or purchase order price of $100,000 or more as are necessary to support Contractor's invoice.

**43.0 TAXES, DUTIES AND FEES**

Contract Price does not include any sales tax or duties. Sales tax and duties of any nature shall be the responsibility of D/FDC and/or Owner. Contract shall be inclusive of, all payroll taxes, income taxes, fees and other assessments of whatever nature imposed by governmental authorities and applicable to the performance of the Work and this Contract, provided that such taxes, fees and other assessments were the law and in effect as of the date of this Contract.

Contractor shall administer and pay all sales, use, gross receipts, municipal license, municipal excise, and other similar taxes, fees, duties and contributions imposed upon Contractor by any taxing authority upon the sale, purchase or use of materials, supplies, equipment, services or labor to be incorporated in the Work, as well as taxes on or measured by Contractor's income or gross receipts or taxes measured by wages earned by employees of Contractor or any of its Subcontractors (the "Taxes"), and shall furnish to the appropriate taxing authorities all required information and reports in connection with such Taxes and promptly furnish copies of all such information and reports to D/FDC; provided, that D/FDC shall be responsible, and shall reimburse Contractor outside the Contract Price and without retainage following receipt of appropriate supporting documentation, for all Taxes, other than taxes on or measured by Contractor's net income or taxes measured by wages earned by employees of Contractor or any Subcontractor, paid by Contractor. Contractor shall use reasonable efforts to efficiently manage its provision of the Work hereunder so as to minimize the incurrence of Taxes that are reimbursable by D/FDC hereunder. In addition, DFDC shall, to the extent reasonably possible, obtain or take advantage of tax exemptions, rebates and credits available with respect to the Contract for the benefit of D/FDC and Contractor and (to the extent that applies to Contractor's Work)such tax exemptions, rebates and credits

shall be passed along to the Contractor. If and to the extent that the work required of Contractor pursuant to the preceding sentence materially exceeds what Contractor otherwise should have reasonably expected with respect to such matters, D/FDC shall reimburse Contractor outside of the Contract Price and without retainage for all costs reasonably incurred by Contractor in performing such extraordinary work; provided, however, that prior to having performed such extraordinary work Contractor shall have notified D/FDC of the likely costs thereof and D/FDC thereafter shall have directed Contractor to proceed with such work. All subcontracts and purchase orders shall be written exclusive of any sales or use tax, or, if not so written, shall include the amount of such tax as a separate line item on the face of such subcontracts and purchase orders along with adequate support documentation. Contractor will use its reasonable prudence and diligence in the administration of Taxes, and Contractor shall confirm with D/FDC in advance any discretionary action, election or omission permitted in connection with the Taxes.

## 44.0 DOCUMENTATION AND RIGHT OF AUDIT

**44.1** Where Contractor's Invoice includes compensation for Work performed at a unit price, Contractor shall submit its determination of units of Work performed, determined in accordance with the provisions of this Contract, and substantiated by documents satisfactory in form an content to D/FDC. Upon verification by D/FDC of said documents, D/FDC will advise Contractor in writing of either acceptance of Contractor's determination of units or of D/FDC's determination of such units. If Contractor believes that D/FDC has incorrectly determined the units of Work performed, Contractor shall comply with the provisions of Article 19.0, CLAIMS.

**44.2** Where Contractor's Invoice includes compensation for Work performed for a reimbursable Contract Price, all costs, expenses and other amounts so invoiced shall be substantiated and supported by equipment time slips, paid invoices, time sheets, receipts and other documents satisfactory to and verified by D/FDC.

**44.3** Contractor shall maintain for a period of two (2) years after final payment under this Contract, all records and accounts pertaining to Work performed by Contractor under this Contract for a unit price, a reimbursable price, or otherwise authorized in writing by D/FDC for performance on a reimbursable basis. D/FDC and/or Owner shall have the right to have an independent auditor audit, copy and inspect said records and accounts at all reasonable times during the course of such Work and for the above two (2) year period for the purpose of verifying units furnished and/or costs incurred, as applicable.

## 45.0 LIENS

**45.1** Contractor shall at all times promptly pay for all services, materials, equipment and labor used or furnished by Contractor in the performance of the Work under this Contact and provided that D/FDC has promptly paid Contractor for Work satisfactorily completed, shall at its expense keep Owner's premises and all property belonging to D/FDC and Owner, or to either of them, free and clear of any and all liens arising out of services, labor, equipment or materials furnished by Contractor or its employees, materialmen or subcontractors in the performance of the Work. If Contractor fails to release and discharge any such claim of lien against Owner's premises or the property of D/FDC and Owner, or of either of them, arising out of performance of the Work within twenty (20) working days after receipt of written notice from D/FDC to remove such claim of lien, D/FDC may, at its option, discharge or release the claim of lien or otherwise deal with the lien claimant, and Contractor shall pay D/FDC any and all costs and expenses of D/FDC in so doing, including reasonable attorneys' fees incurred by D/FDC.

**45.2** Should any lien or other encumbrance be placed against the Work or property of Owner or D/FDC due to any activity or Work of Contractor's subcontractors suppliers or manufacturers at any tier, Contractor shall immediately provide a bond consistent with the law to cover the lien.

**45.3** Until bond is in place covering the lien obligation , D/FDC's obligation to make payments for the amount of the lien to Contractor shall be suspended.  During the period of suspension of payments due to the failure of Contractor to place an adequate bond, no interest shall accrue to Contractor's account

**45.4** Contractor and D/FDC shall notify each other of any liens of which they become aware.

## 46.0 RIGHT TO OFFSET

D/FDC, without waiver or limitation of any rights or remedies of D/FDC or Owner, shall be entitled from time to time to deduct from any amounts due or owing by D/FDC to Contractor in connection with this Contract, any and all amounts owned by Contractor to D/FDC or Owner is connection with this Contract.

## 47.0 FINAL PAYMENT CERTIFICATION AND RELEASE

D/FDC shall not be obligated to make final payment to Contractor until Contractor has delivered to D/FDC a final release waiver (in substantially the form shown as Attachment 13.F to Part II of this Contract) satisfactory to D/FDC that Contractor has fully performed under this Contract and that all claims of Contractor for the Work are satisfied upon the making of such final payment, that no property of Owner or property used in connection with the Work is subject to any unsatisfied lien of claim as a result of the performance of the Work, that all rights of lien against Owner's property in connection with the Work are released (including without limitation, if D/FDC requests, releases of lien satisfactory in form to D/FDC executed by all persons who by reason of furnishing material, labor or other services to Contractor for the Work or potential lienors against Owner's property), and that Contractor has paid in full all outstanding obligations against the Work.

In addition to the partial lien waivers required under Article 42.6 above, Contractor shall deliver to D/FDC a copy of a final release waiver form for each subcontractor and supplier with subcontracts or purchase orders with a contract price or purchase order price of $100,000 or more prior to the final payment per Article 42.3 above.

## 48.0 ARBITRATION/LITIGATION

**48.1** In the event that D/FDC is required to arbitrate a dispute with a third party, which dispute arises out of or is directly related to this contract, Contractor agrees to join in such arbitration proceeding as D/FDC may direct and shall submit to such jurisdiction and be finally bound by the judgment rendered in accordance with the arbitration rules as may be established therein.

**48.2** If D/FDC is involved in litigation with a third party, which litigation includes issues which relate to Contractor, Contractor hereby agrees, if requested by D/FDC, to provide reasonable technical assistance during such litigation.

## 49.0 VALIDITY OF PROVISIONS

In the event any section, or any part or portion of any section of this Contract shall be held to be invalid, void or otherwise unenforceable, such holding shall not affect the remaining part or portions of that section, or any other section hereof.

## 50.0 WAIVER

Either party's failure to insist on performance of any term, condition, or instruction, or to exercise any right or privilege included in this Contract, or their waiver of any breach, shall not thereafter waive any such term, condition, instruction, and/or any right or privilege.

## 51.0 GRATUITIES

**51.1** Contractor, its employees, agents or representatives shall not offer or give to an officer, official or employee of D/FDC or Owner gifts, entertainment, payments, loans or other gratuities to influence the award of a contract or obtain favorable treatment under a contract.

**51.2** Violation of this Article may be deemed by D/FDC to be a material breach of this Contract and any other contract with D/FDC and subject all contracts with Contractor to Termination for Default, as well as any other remedies at law or in equity.

## 52.0 LIMITATION OF LIABILITY

In no event shall Contractor's liability for any matter relating to this Contract, including, without limitation, warranties, breach of contract, tort [including negligence] and lawsuits, but excluding any patent indemnity or third party liability under Article 29 of this Part III, exceed either individually or in the aggregate an amount equal to the Contract Price. In no event shall D/FDC or Contractor be liable for incidental, special or consequential damages of any kind, including, without limitation, loss of revenue, loss of profits, loss of use of the facility or damages associated therewith. The foregoing notwithstanding, in no event shall Contractor's liability for Liquidated Damages exceed, in the aggregate, an amount equal to thirty percent (30%) of the Contract Price. Where a remedy is specified in the Contract for an occurrence, such remedy shall be an exclusive remedy for such occurrence; where no remedy is specified in the Contract for an occurrence, the remedy at law shall apply subject to the provision of this Article 52. Furthermore, it is specifically understood and agreed that the payment of any liquidated damages provided for in the Contract shall constitute Contractor's sole obligation and D/FDC's and/or Owner's sole and exclusive remedies for Contractor's failure to meet the Contract schedule and/or Performance Guarantees. All releases, waivers or limitations of liability specifically expressed in this Contract apply equally to Contractor's subcontractors, suppliers and vendors of any tier. All releases, waivers or limitations of liability specifically expressed in this Contract apply notwithstanding the negligence, strict liability, fault, or breach of warranty or contract of the party whose liability is so released or limited.

## 53.0 CONTRACTOR'S WORK AREA

All Contractor's work areas on the jobsite will be assigned by D/FDC and/or Owner, which areas shall be reasonably satisfactory to the Contractor and which shall have reasonably free and unhindered access thereto by the Contractor. Contractor shall confine its operations to the areas so assigned.

Contract\ABBT&C2
(Rev. 2/23/98)

**B.078**

ALDEC05 - 01618

**54.0 FUEL AND LIMESTONE**

D/FDC and/or Owner shall provide at its cost the fuels and limestone specified in the technical specifications of this Contract which are to be delivered to the project in a reasonable and specified quantity in order to enable Contractor to perform start-up performance testing and operation of the project in accordance with the terms of this Contract, provided that Contractor shall have given D/FDC and/or Owner at least 30 days' prior written notice of the need for such fuels.

**55.0 UTILITIES**

D/FDC and/or Owner shall furnish all utilities, including electricity, water, sewage and waste disposal services, chemicals and consumables, which are required for construction, start-up, performance testing and operation of the Facility (or any portion thereof). D/FDC and/or Owner shall pay for all electricity consumed during start-up through Final Completion.

**56.0 HAZARDOUS MATERIAL INDEMNITY**

D/FDC shall defend, indemnify and save harmless the Contractor, its affiliates, subcontractors, consultants, agents and employees, from and against all claims, lawsuits, damages, losses, and expenses (including, but not limited to, reasonable attorneys' fees, court and arbitration costs) arising out of or resulting from the presence, discharge, escape or release of any hazardous or toxic waste or substance, other than as a result of the acts or omissions of Contractor, its subcontractors, agents, consultants or employees.

Contractor shall defend, indemnify and save harmless D/FDC, its affiliates, subcontractors, consultants, agents and employees, from and against all claims, lawsuits, damages, losses, and expenses (including, but not limited to, reasonable attorneys' fees, court and arbitration costs) arising out of or resulting from the presence, discharge, escape or release of any hazardous or toxic waste or substance, other than as a result of the acts or omissions of D/FDC, its subcontractors, agents, consultants or employees.

**57.0 ADJOINING UTILITIES**

Contractor shall do all things reasonably necessary or expedient to protect any and all parallel, converging and intersecting electric lines and poles, telephone lines and poles, highways, waterways, railroads, sewer lines, natural gas pipelines, drainage ditches, culverts and any and all property of others from damage as a result of its performance of the Work hereunder. To the extent that any such property is damaged or destroyed in the course of the performance of the Work hereunder, Contractor shall at its own expense rebuild, restore or replace such damaged or destroyed property as Owner in its reasonable discretion may direct be so rebuilt, restored or replaced (subject to the limitations of Article 30.7), unless such property damage is the result of subsurface conditions which were not and should not have been reasonably foreseen by Contractor, exercising the standard or care required hereunder, prior to the occurrence of such damage or destruction. Notwithstanding the foregoing sentence, Contractor shall not be required by this Article 59.0 to rebuild, restore or replace such damaged or destroyed property if and to the extent that any contract entered into between Contractor and the Person whose property was

damaged or destroyed by Contractor specifically provides that Contractor is not liable for such damage or destruction.

## 58.0 SUBORDINATED DEBT FINANCING

Contractor shall arrange for one or more of its affiliates to commit to provide subordinated debt financing for the Facility in an aggregate principal amount of $3,850,000 (the "Subordinated Debt Commitment Amount"), by causing such affiliates as lenders on or before the later of (a) the closing of initial construction financing for the Facility and (b) the 30th day following the date on which Contractor receives notice of such scheduled closing to execute and deliver an agreement in substantially the form as Appendix J of the EPC Contract, setting forth the rights and obligations of the Owner as borrower and such affiliate(s) as lenders with respect to the Subordinated Debt Commitment Amount (the Subordinated Debt Agreement") ,provided, however this obligation is subject to be reviewed and approved by ABBCE, and if such review and approval is not provided within six (6) weeks from the date of this Contract or such longer period as DFDC and Contractor may mutually agree, then this Contract is subject to termination or renegotiation at the sole discretion of DFDC; and provided further that , if DFDC or its affiliate(s) are not required to provide a subordinated debt commitment to the Owner under and pursuant to the EPC Contract by the later of the events delineated under subclauses (a) and (b) above, then this Article 58.0 and any Subordinated Debt Agreement shall be null and void, of no further force and effect, and fully and finally terminated without any surviving obligation..

## 60.0 HARBOR RIGHTS

Contractor acknowledges that D/FDC or Owner shall not be under any obligation to provide Contractor with rights of access to and use of Las Mareas Harbor in connection with Contractor's performance of the Work hereunder. Contractor further acknowledges that the Owner has negotiated with Phillips Puerto Rico Core, Inc. ("Phillips") a harbor coordination agreement that provides Phillips with certain rights to coordinate access to and use of Las Mareas Harbor by Owner and its Contractors, and provides Phillips with certain priorities with respect to such access and use. Contractor agrees that if it seeks to use Las Mareas Harbor then (i) such use shall be subject to, and Contractor shall comply with, the terms of the harbor agreement, and (ii) any costs imposed on Owner under the harbor coordination agreement or otherwise as a result of such use shall be for Contractor's account. D/FDC and Contractor shall use all reasonable efforts to agree on the coordination and cooperation of Harbor Usage during the period beginning five (5) months after the NTP and ending twenty-one (21) months after the NTP.

## 61.0 RESULTANT PHYSICAL DAMAGE

Contractor, through and up to the end of the Warranty Period, shall also be responsible for all resultant physical damages which are suffered or incurred by D/FDC as a result of Contractor's failure to (a) comply with Contractor's warranties, or (b) fully and properly perform all of its obligations under or otherwise fully comply with this Contract.

## 62.0 GUARANTY

Contractor and D/FDC agree that guarantees may be necessary and required from corporate entities reasonably acceptable to each party to secure performance of each party's obligations described in this contract. Therefore, if either party requests financial guarantees for the obligations described herein,

such requested party shall provide a guarantee in form and substance satisfactory to the requesting party within 30 days of such request. If either party fails to provide such guarantee, either party may terminate this contract and neither party shall have any further obligation or liability the other.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ALLAN B. DYER

I, Allan B. Dyer, do hereby declare as follows:

1.      I am the President of AES Puerto Rico, L.P. ("AES-PR") and plant manager for the AES-PR power plant.  I have been President and plant manager since approximately July 2003.  What follows is based on my personal knowledge except as otherwise noted.

2.      In November 2003, severe corrosion was discovered in the plant's Unit 2 electrostatic precipitator ("ESP"), and in January 2004 severe corrosion was discovered in the Unit 1 ESP.  Upon discovery of the corrosion in each unit, I immediately notified William Jarvis of ALSTOM that ALSTOM's warranty covered the damage to the equipment and required that AMSTOM repair the corroded materials and take steps to prevent future accelerated corrosion.

3.      Mr. Jarvis and I spoke repeatedly in November 2003 about the warranty claim. Mr. Jarvis told me that ALSTOM viewed the warranty claim as the responsibility of its subcontractor, Environmental Elements Corporation ("EEC"), because ALSTOM had passed through its warranty obligations to EEC.  Mr. Jarvis said that ALSTOM would attempt to provide technical assistance to prevent future corrosion, but that EEC, not ALSTOM, was responsible for the warranty.  During this timeframe, Mr. Jarvis never told me that ALSTOM was questioning or investigating whether AES-PR's warranty claim was valid.

B.082

4.     On May 18, 2004, Mr. Jarvis wrote to me and requested access to the plant's operating records "to further [ALSTOM's] investigation" of the "extremely rapid corrosion phenomenon." I responded by letter dated June 22, 2004 that, if ALSTOM would like to inspect the records, Mr. Jarvis should "contact me to arrange a time to come to the plant for such an inspection." Nobody from ALSTOM ever followed up to inspect the records prior to the commencement of this lawsuit.

5.     Because ALSTOM failed to provide assistance, AES-PR was forced on its own to devise a method to stop continued accelerated corrosion. It ordered replacement ESP collection plates and, in early 2004, contracted to procure a new reverse osmosis system that allowed the plant to run its pollution control equipment, of which the ESP is a component, with low-chloride water in order to avoid additional accelerated corrosion. The new reverse osmosis system went on-line in Summer 2004.

6.     A byproduct of this new reverse osmosis system is concentrated salty water known as "brine." Because AES-PR's facility is not permitted to discharge liquids, it needed a way to evaporate the water out of the brine. One way to do so would be to install a brine crystallizer that would evaporate the water out of the brine and permit the plant to dispose of the remaining salts as a solid. AES-PR knew when it contracted for the new reverse osmosis system that there was some chance it would be unable to evaporate all of the water in the concentrated brine without a crystallizer, but, because of the expense of a new brine crystallizer, AES-PR decided to attempt to evaporate the water out of the brine on-site without a crystallizer.

7.     By Fall 2005, AES-PR concluded that it could not evaporate all of the water out of the brine on-site. Accordingly, it began active planning and investigation for construction and installation of a brine crystallizer, and in the meantime implemented an interim solution to evaporate some portion of the water in the brine in the plant's boiler.

8.     AES-PR's implementation of its interim solution of sending a portion of the brine to the plant's boilers has imposed substantial operating costs. AES-PR now is finalizing procurement plans for a brine crystallizer, which will be much more cost-effective than the

2

interim solution, and it expects the crystallizer to be on line within two years. The brine crystallizer and secondary reverse osmosis systems are both necessary components of our modifications to allow the plant to operate in a manner that will not cause continued accelerated corrosion of the ESP collecting plates.

9.     I believe installation of the new reverse osmosis system and brine crystallizer is the most cost effective means to stop further accelerated corrosion of the ESPs in a manner that will allow the plant to comply with its environmental permits.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of April, 2006.


Allan B. Dyer

3

**B.084**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF RICHARD R. LUNT, Doc. Eng. Sci.

I, Richard R. Lunt, Doc. Eng. Sci., do hereby declare as follows:

1.    I have been retained as an expert witness by Williams & Connolly LLP on behalf of plaintiff AES Puerto Rico, L.P. in the case identified above.

2.    At the request of plaintiff, I prepared a report concerning my review of various materials relating to the corrosion of the electrostatic precipitators in the power plant owned by AES Puerto Rico, L.P. A copy of my report, which is dated 24 February 2006, is attached to this declaration.

3.    The information in my report is true and accurate to the best of my knowledge, information, and belief, and accurately reflects my professional opinions concerning the subjects on which I was retained to opine.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of April, 2006.

Richard R. Lunt

**B.085**