**Linda Rothe**

Page 142

1    Q.  So Alstom's position is that EEC is attempting to

2    void the corrosion warranty to escape the known

3    consequences of high potential for corrosion due to

4    operation of the CDS at lower than design outlet

5    temperature?

6                MR. VITTORIA:  Objection.

7    Q.  (By Mr. Williams)  Correct?

8                MR. VITTORIA:  Objection.

9                THE WITNESS:  I can't -- I can't

10                interpret the language to state that

11                clearly enough.  It's too technical in

12                nature.

13    Q.  (By Mr. Williams)  You just know this was Alstom's

14    position communicated to EEC?

15    A.  Correct.

16                THE WITNESS:  Objection.

17    Q.  (By Mr. Williams)  Okay.  You can put Exhibit 27

18    to the side.

19                MR. VITTORIA:  Can we take a break?

20                MR. WILLIAMS:  We can take a break

21                now.

22                THE VIDEOGRAPHER:  The time is 1:41.

23                We are off the record.

24                (Off the record.)

B.313

Linda Rothe

Page 151

1           any more than it does.

2      Q.   (By Mr. Williams)  Well, the letter says, "This is

3   an extremely serious issue."  Right?

4      A.   Problems with equipment are extremely serious

5   issues.

6      Q.   And you were expressing concerns about the

7   problems with the EEC supplied equipment.  Right?

8                MR. VITTORIA:  Objection.

9                THE WITNESS:  We are expressing

10              concerns with EEC supplied equipment, yes.

11     Q.   (By Mr. Williams)  Okay.  You can put aside

12  Exhibit Number 29.  Sorry, one second.

13              (Exhibit 30, 4/17/03 Letter, marked

14              for identification.)

15     Q.   (By Mr. Williams)  Okay.  Miss Rothe, I'm handing

16  you what's been marked Exhibit Number 30.  Can you identify

17  this document for the record, please?

18     A.   It's a letter dated April 17, 2003 to

19  Environmental Elements, Joe Titus from myself.

20     Q.   You write to Mr. Titus that the EEC equipment is

21  defective, has failed to meet its performance guarantees,

22  fails to conform to EEC's warranties, and is in fact

23  causing a delay in acceptance of the entire plant.

24  Correct?

B.314

**Linda Rothe**

Page 152

1          MR. VITTORIA:  Objection.

2          THE WITNESS:  That is what it says.

3    Q.  (By Mr. Williams)  What was going on here?

4          MR. VITTORIA:  Objection.

5          THE WITNESS:  There are references in

6      the -- there are multiple references in the

7      -- in the letter that I would have to kind

8      of sit back and refresh my memory by going

9      through them.  But basically we're

10      complaining, further to previous

11      notifications, your equipment is defective

12      and failing to meet performance guarantees

13      and we want them to -- we want to inspire

14      them to do something about it.

15    Q.  (By Mr. Williams)  Because by this point, the

16    plant was already in commercial operation.  Right?

17    A.  I'm not sure.  This is an April 13, 2003 letter.

18    I'm not sure when it went into commercial operation.

19    Q.  April 17, 2003.  The letter date is April 17th.

20    Correct?

21    A.  Yes, sorry.

22    Q.  I'll represent to you for the record that the

23    plant began commercial operation November 28, 2002.

24    A.  Okay.

B.315

**Linda Rothe**

Page 156

1    Q.  (By Mr. Williams)  I'm handing you what's been

2    marked Exhibit 32.  And can you identify this document for

3    the record?

4    A.  It's a letter to Miss -- Miss Nina Durante from

5    Liberty Bond Services from myself dated May 29, 2003.

6    Q.  And you're writing as your -- in your capacity as

7    project procurement manager of Alstom.  Correct?

8    A.  I am.

9    Q.  You CC Environmental Elements Corp.  Correct?

10   A.  I do.

11   Q.  And the letter concerns the equipment EEC supplied

12   for the Puerto Rico facility.  Right?

13                  MR. VITTORIA:  Objection.

14                  THE WITNESS:  The letter is

15                  addressing EEC's May 16, 2003 letter

16                  written in response to a previous letter.

17                  There's a big chain of letters that it's

18                  referring to, and that specifically is what

19                  this letter is dealing with.

20   Q.  (By Mr. Williams)  I guess I was asking a more

21   general question which is whether this related to the

22   equipment that EEC provided for the AES Puerto Rico

23   facility or generally.

24                  MR. VITTORIA:  Objection.

**B.316**

**Linda Rothe**

Page 157

1                    THE WITNESS:  The Alstom purchase

2            order that you see referenced is the

3            purchase order to EEC for the CDS, ESP.

4       Q.   (By Mr. Williams)  Supplied to the Puerto Rico

5   plant?

6       A.   Supplied at the Puerto Rico plant.

7       Q.   Do you see in the second paragraph, you say,

8   "First and foremost, the system provided by EEC has failed

9   to meet the PM emissions guarantee"?

10      A.   That's how it reads.

11      Q.   And do you know what a PM emission guarantee is?

12      A.   PM is particulate matter.

13      Q.   So there was a guarantee for the amount of

14  particulate matter that would come out of the plant, and

15  the EEC equipment failed to keep the emissions from the

16  plant below the specified level.  Is that accurate?

17                   MR. VITTORIA:  Objection.

18                   THE WITNESS:  That was the

19           information given to me to present to

20           Liberty Bond Services.

21      Q.   (By Mr. Williams)  Why were you presenting this to

22  Liberty Bond Services?

23                   MR. VITTORIA:  Objection.

24                   THE WITNESS:  The purchase order to

                                              B.317

**Linda Rothe**

Page 172

1     Q.  (By Mr. Williams)  What I'm trying to understand

2  is if EEC had already told you that they weren't going to

3  honor their corrosion warranty, why were you after that

4  time submitting a claim to them under their corrosion

5  warranty?

6              MR. VITTORIA:  Objection,

7          mischaracterizing this e-mail.

8              THE WITNESS:  Alstom maintains

9          they're fully responsible for that

10         warranty.

11     Q.  (By Mr. Williams)  You can put Exhibit 35 aside.

12          (Exhibit 36, 1/13/04 Letter, marked

13         for identification.)

14     Q.  (By Mr. Williams)  I'm handing you what's been

15  marked Exhibit 36.  Exhibit 36 is a letter that you sent to

16  Liberty Mutual on behalf of Alstom on January 13, 2004.

17  Correct?

18     A.  Correct.

19     Q.  Has your signature on it on the second page?

20     A.  Correct.

21     Q.  In this letter, you report that AES performed an

22  inspection on the unit one ESP on January 10, 2004 and that

23  corrosion was evident.  Correct?

24              MR. VITTORIA:  Objection.

**B.318**

**Linda Rothe**

Page 173

1                    THE WITNESS:  That is how the letter

2         reads.

3         Q.  (By Mr. Williams)  And that's what you informed

4    Liberty Mutual on behalf of Alstom.  Right?

5         A.  Correct.

6         Q.  And then you wrote, "Please note that we consider

7    this a warranty item for EEC and as such hereby give

8    notice."  Correct?

9         A.  That's how it reads, yes.

10        Q.  So is this letter Alstom's formal notification to

11   EEC of a warranty claim for the corrosion in the unit one

12   ESP?

13                   MR. VITTORIA:  Objection,

14        mischaracterizes the testimony.

15                   MR. WILLIAMS:  Can you read the

16        question back, please.

17             (The previous question was read

18        back.)

19                   THE WITNESS:  It's sharing with them

20        the results of the inspection that was

21        performed and notifying them that we

22        consider it a warranty item and as such

23        hereby give notice.

24        Q.  (By Mr. Williams)  You're actually giving notice

B.319

**Linda Rothe**

Page 174

```
1    to Liberty Mutual because Liberty Mutual was responsible to

2    perform EEC's obligations under the purchase order?

3                   MR. VITTORIA:   Objection.

4        Q.  (By Mr. Williams)  Correct?

5                   MR. VITTORIA:   Objection.

6                   THE WITNESS:   Yes.

7        Q.  (By Mr. Williams)  Okay.  You can put Exhibit 36

8    aside.

9                   (Exhibit 37, 1/29/04 Invoice, marked

10              for identification.)

11       Q.  (By Mr. Williams)  I'm handing you what's been

12   marked Exhibit 37.  Can you please identify Exhibit 37 for

13   the record?

14       A.  It's Alstom invoice CS-04-301 dated January 29,

15   2004.

16       Q.  It's an invoice Alstom submitted to EEC.  Correct?

17       A.  Correct.

18       Q.  And it's an invoice for precipitator curtains.

19   Correct?

20                  MR. VITTORIA:   Objection.

21                  THE WITNESS:   That's one of the items

22              on the invoice.

23       Q.  (By Mr. Williams)  The precipitator curtains that

24   are on the invoice were precipitator curtains for the AES
```

B.320

**Linda Rothe**

Page 175

1    Puerto Rico project.  Correct?

2        A.  Correct.

3        Q.  And precipitator is another word for ESP.

4    Correct?

5        A.  Yes, it is.

6        Q.  So this invoice is Alstom's invoice to EEC to pay

7    for replacement materials needed as a result of the

8    corrosion discovered in the AES Puerto Rico ESP.  Correct?

9                    MR. VITTORIA:  Objection.

10                   THE WITNESS:  I don't know.

11       Q.  (By Mr. Williams)  Does it appear to you to be

12   that?

13                   MR. VITTORIA:  Objection.

14                   THE WITNESS:  I don't know how to

15              associate it.  It's just an invoice

16              generated by the finance people to

17              Environmental Elements.

18       Q.  (By Mr. Williams)  Did you have any role with

19   respect to invoices Alstom was sending to Environmental

20   Elements Corporation relating to the AES Puerto Rico

21   project?

22       A.  Other than I would take the invoices, put a cover

23   letter on them, and transmit them, no.

24                   (Exhibit 38, 3/11/04 Letter, marked

B.321

**Linda Rothe**

Page 176

1                for identification.)

2        Q.   (By Mr. Williams)   I'm handing you what's been

3    marked Rothe Exhibit 38.   Is Rothe Exhibit 38 the cover

4    letter you put on the invoice that we discussed which is

5    marked Exhibit 37?

6        A.   This appears to be a generic cover letter probably

7    formatted by finance when they generate the -- oh, no,

8    okay, this is specific.   Let me read the rest of it.   I'm

9    sorry.   I do not recall writing this letter.   And it has no

10   signature, which is odd to me.   So it looks like something

11   I would write, but I'm kind of baffled by the fact that

12   there's no to and no signature.   Unless it went along with

13   a stack of invoices and maybe I put a cover letter on all

14   of them.   I'm kind of at a loss.   It looks like something I

15   would write, but I don't specifically recall writing it.

16       Q.   Looking at the letter, is it -- strike that.

17   Looking at the letter and the attached January 29, 2004

18   invoice, is it now consistent with your recollection that

19   you submitted an invoice to EEC for warranty claims

20   submitted by AES for replacement of the ESP internal

21   components that had failed due to corrosion?

22                MR. VITTORIA:   Objection,

23            mischaracterizes the testimony.

24                THE WITNESS:   It's consistent with

                                                    **B.322**

**Linda Rothe**

Page 177

1          what I recall we did.

2      Q.   (By Mr. Williams)   Do you recall that you informed

3   EEC that the replacement of the ESP internal components

4   that failed due to corrosion is covered under EEC's two

5   year corrosion warranty?

6              MR. VITTORIA:   Objection.

7              THE WITNESS:   I don't recall this

8          specific letter.

9      Q.   (By Mr. Williams)   Do you recall telling EEC that

10   the replacement components that failed due to corrosion

11   were covered by the two year corrosion warranty that EEC

12   provided to Alstom?

13              MR. VITTORIA:   Objection.

14              THE WITNESS:   I recall telling EEC

15          that corrosion would -- was covered by

16          their warranty.   And as you saw, I

17          presented letters to them to that effect on

18          a couple of occasions.   But that's -- but

19          that's it.

20      Q.   (By Mr. Williams)   And the letters you presented

21   related specifically to the corrosion that was discovered

22   at the end of 2003 and beginning of 2004?

23              MR. VITTORIA:   Objection.

24              THE WITNESS:   I'm not sure.

**B.323**

Page 212

1    STATE OF CONNECTICUT

2    HARTFORD, SS.

3

4              I, Esmeralda Guzman, a Certified Shorthand

5    Reporter and Notary Public in and for the State of

6    Connecticut, do hereby certify that the foregoing

7    transcript of the deposition of Linda Rothe, having

8    previously been sworn on January 13, 2006, is true and

9    accurate to the best of my knowledge, skill, and ability.

10             I further certify that I am not a relative or

11   employee or attorney or counsel of any of the parties

12   hereto, nor am I a relative or employee of such attorney or

13   counsel; nor do I have any interest in the outcome or

14   events of this action.

15             IN WITNESS WHEREOF, I have hereunto set my hand

16   and seal this 6th day of February 2006.

17

18             *Esmeralda Guzman*

19             ESMERALDA GUZMAN

20

21   My Commission Expires:

22   September 30, 2010

23

24                                        B.324

 

# PURCHASE ORDER

ABB Combustion Engineering Systems
Combustion Engineering, Inc.
2000 Day Hill Road
Post Office Box 500
Windsor, CT 06095-0500
Tel. (860) 688-1911  FAX (860) 285-9730

Date: 03/30/99

Page: 1

P. O. Number:
50730 IO

TO:
ENVIRONMENTAL ELEMENTS CORP.
3700 KOPPERS ST.
P.O. BOX 1318
BALTIMORE MD 21203

SHIP TO:
To Be Advised

| CONTRACT NAME | CONTRACT NUMBER | BUYER NAME | SUPPLIER CODE | INV. TAX |
|---|---|---|---|---|
| AES PUERTO RICO | 65005697 | L. R. JANNELLE | 00202282 | N |

| PAYMENT TERMS | FOB POINT | SHIPPING CHARGES | SHIP VIA |
|---|---|---|---|
| Net 30 Days | FOB:CONSOLIDATION POINT | Freight, Third Party Billing | To Be Advised |

| Item | Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|---|---|---|---|---|---|---|
| 1 | 1.00 | EA | DUCT TO PRECIPITATOR<br>32240901<br>Unit # 001 | 03/03/00 | .00 | $.00 |
| 2 | 1.00 | LT | MTL PRECIPITATOR<br>32591000<br>Unit # 001 | 03/03/00 | 20,000.00 | $20,000.00 |
| 3 | 1.00 | EA | MTL GAS DUCT TO I.D. FAN<br>32240960<br>Unit # 001 | 03/03/00 | .00 | $.00 |
| 4 | 1.00 | EA | CIRCULATING DRY SCRUBBER<br>32592500<br>Unit # 001 | 06/02/00 | .00 | $.00 |
| 5 | 1.00 | EA | FRT EXPORT PREP/PKG<br>88831330 | 03/03/00 | .00 | $.00 |

There are 2 units on this contract.  Quantities shown are
for one unit.

This purchase order is issued to supercede the letter of
intent dated December 29, 1998 for the complete design,
manufacture, and supply of Air Pollution Control Equipment
for the AES Puerto Rico Total Energy Project as described by
the following documents :

ABBCE RFQ 73301197A  dated August 19,1997
EEC Proposal 420584  dated August 27, 1997
EEC Pricing Letter dated October 30, 1997
DFD Specification No. W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.03-0001, Revision 1,
2/4/98
DFD Specification No. W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.03-0002, Revision 1,
2/4/98
DFD Specification No. AES-GPR-I, 2/4/98
DFD Specification No. W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.00-001, Rev. 1, 2/4/98

This purchase order authorizes Environmental Elements to
invoice for engineering incurred to the agreed upon
preliminary notice value as stated in line item 2. This will
be deducted from the total price upon final notice to
proceed. EEC agrees that costs incurred  in excess of this
value prior to Notice To Proceed, shall be at EEC's risk. In
the event of termination of this Project, all parties hereby
waive any and all liability or claim against the other for

# ORIGINAL

B.325

API 0673619



EXHIBIT
Rothe 3
1-13-06

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the laws of the State of Connecticut, without giving effect to principles of choice of law thereof.

ORIGINAL



**PURCHASE ORDER**
ABB Combustion Engineering Systems 

**ABB**
ASEA BROWN BOVERI

Date:  03/30/99

Page:  2

P. O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|-------------------------|--------------------|-----------|----------|

any direct, indirect, or consequential damage or loss, and each party hereby waives any rights against the other, however caused, including fault, negligence, or strict liability.

TERMINATION OF NOTICE OF INTENT

This Purchase Order shall terminate upon the first to occur of the following. 1. The filing by or against a party of a petition or application for any proceeding relating to such party as debtor under any bankruptcy or insolvency law of any jurisdiction. 2. A cancellation by the Purchaser's Customer or Owner. 3. August 31, 1999, unless it is extended by mutual agreement of both parties. 4.  A change order is issued notifying EEC of Notice to Proceed.

Price

The price for the base scope of supply is $14,527,570.00 for two units including options for; Primer SSPC-2, Galvanized Support Steel, Commissioning, Air & Water Piping, Data Management System, Electricals and Special Packing Containers.  Options will be maintained for shipment to destination and performance/payment bonding. Purchaser and Seller shall endeavor to obtain shared cost reduction through such methods as alternative sourcing.  A formal plan will be jointly developed and implemented.  Cost breakdowns provided in the proposal phase shall be utilized.

Schedule

The parties agree that they will be working with an overall 15 month project completion from Notice to Proceed and that the overall project schedule is a work in progress.  The parties are currently working with the schedule parameters in the referenced proposal and the DDIMSR document for engineering.  A final conformed project schedule will replace the referenced document upon full notice to proceed.  A milestone payment schedule will be negotiated as appropriate.

Terms and Conditions of Purchase

Terms and Conditions of Purchase are in process of negotiation.  Those provided hereinbelow represent ABB/CE's current position and comments received by Environmental Elements are in review for return to EEC. Finalized Terms and Conditions will be included in the change order for engagement of the full scope of supply.

1.    ACCEPTANCE

      The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof.  Seller's acknowledgement of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional

API 0673621

B.327

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort [including negligence], strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673622

B.328



**PURCHASE ORDER**



ABB Combustion Engineering Systems

Date: **03/30/99**

Page: **3**

P. O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|--------------------------|---------------------|------------|----------|

terms in any proposal, acknowledgement, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2.    DELIVERY

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability, if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved, under any circumstances, of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3.    APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract, whether express or implied.

4.    INSPECTION

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5.    WARRANTY

Seller warrants Purchaser that the Work shall comply with the provisions of this Purchase Order and all specifications and drawings referred to in this Purchase Order, and that the Work shall be free from defects in materials and workmanship and in full compliance with any design or engineering furnished by Seller. Seller further warrants Purchaser that all materials, equipment and supplies furnished by Seller for the Work shall be new and fit for

API 0673623

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673624

B.330





**PURCHASE ORDER**
ABB Combustion Engineering Systems

Date:  03/30/99

Page:  4

P. O. Number:
**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|-----|-----|-----|-----|

their specified purposes as set forth in this Purchase Order
and be in full compliance with the requirements of this
Purchase Order.  As described in this Purchase Order, if any
defect in the Work in violation of the foregoing warranties
arises within the period set forth below, Supplier shall
upon receipt of prompt written notice from Purchaser of such
defect promptly furnish, at no cost to Purchaser, design and
engineering, labor, equipment and materials necessary to
correct such defect and cause the Work to comply fully with
the foregoing warranties.

Seller, at its expense, (including, without limitation,
costs of removal, packing, transportation and
reinstallation) shall remedy promptly any defective Work
which exists during the applicable warranty period as set
forth above, and of which Purchaser gives written notice
within a reasonable time after discovery of the defect or
damage.  Upon such notification by Purchaser, Seller shall
promptly commence and proceed to make all needed
adjustments, repairs, additions, corrections, and
replacements which arise out of or are necessitated by such
defective Work or damage.  Seller shall conduct such
warranty work on an overtime schedule basis if Purchaser
determines such a schedule is necessary to avoid or minimize
the effects of an outage or load reduction and Purchaser
shall reimburse Seller the premium differential for
performing warranty work on an overtime basis if reimbursed
by Purchaser's Customer.  Seller shall coordinate its
warranty Work with Purchaser to minimize interference to
facility operations.  Purchaser will permit reasonable
access to as much of the Unit(s) as Seller may reasonably
require for performance of warranty Work, but any costs of
uncovering Work shall be the responsibility of the Seller.
Seller shall perform warranty Work so that such adjustments,
repairs, additions, corrections and replacements do not
degrade the performance of, nor impair the use of the
Equipment, Materials or other Work in question, other
systems, or the Unit(s) as a whole to an extent that the
Equipment, Materials, or other Work, systems or Unit(s) will
not meet the requirements of this Purchase Order in all
respects, and Seller shall repair or replace all other
facilities to the extent they are destroyed or damaged as
result of Seller's performance of warranty Work.

WARRANTY PERIOD

The Warranty Period means that period extending:

Until twelve (12) months after Performance Acceptance with
the following exception that the warranty period shall be
extended for corrective Work as set forth below.

At the mutual agreement of Seller and Purchaser, warranty
Work provided hereunder may be deferred until the time of
the Unit (s) next regularly scheduled maintenance outage,
provided that such outage shall commence not later than six
(6) months after Purchaser's notice to Seller of the
defective condition, and the warranty provisions hereunder
shall apply notwithstanding that such outage occurs after
the time the warranty would otherwise expire.  Seller shall
not be liable or responsible for any such warranty work if
the outage is not commenced within the stated six (6)
months.

**B.331**

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order in whole or in part or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order as the face notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort [including negligence], strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673626





**PURCHASE ORDER**

ABB Combustion Engineering Systems

Date: 03/30/99

Page: 5

P. O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|-----|-----|-----|-----|

The warranty period shall be extended to cover each of the specific repairs, adjustments, additions, corrections, and replacements furnished under the warranty for a period of twelve (12) months from the date of such repair, adjustment, addition, correction, or replacement, except as provided in the following two paragraphs but in no case shall any warranty or re-warranty obligation of Seller extend beyond 24 months after Performance Acceptance. A repair, addition, adjustment, correction, or replacement shall be deemed to be completed upon Seller 's submittal to Purchaser of written Notice of Completion unless Purchaser, within ten (20) days thereafter, furnishes Seller with a written statement of reasons as to why such repair, addition, adjustment, correction, or replacement is not complete. Seller warrants that the repair, addition, adjustment, correction, or replacement will be consistent with the warranties herein throughout the duration of the applicable warranty period.

In the event any adjustment, repair, addition, correction, or replacement made pursuant to this warranty is ineffective in remedying the defective condition in question, Purchaser shall so notify Seller in writing prior to expiration of the Warranty Period, as applicable, and Seller shall proceed to conduct further warranty Work consistent with its obligation under this Article until the defective condition is remedied.

CHRONIC FAILURE

A chronic failure ( Chronic Failure ) shall be deemed to occur when any piece of Equipment and/or Materials, or part or component thereof, fails during the Warranty Period and fails a second time during the extended warranty period from the same cause(s). In the event of a Chronic Failure, Purchaser and Seller shall consult with each other and others as appropriate to reach mutual agreement as to the cause of the failure and as to the appropriate remedy. The warranty for the repair(s) shall then be extended for a period of twelve (12) months from the completion of the repair but in no case shall any warranty or re-warranty obligation of Supplier extend beyond twenty-four (24) months after Performance Acceptance.

In the event Seller shall have been notified in writing of any defects in the Work in violation of Seller 's foregoing guarantees and shall fail to promptly and adequately correct such defects, Purchaser and Owner shall have the right upon written notice to Seller to correct or to have such defects corrected for the account of Seller, and Seller shall promptly pay Purchaser or Owner the reasonable costs incurred in correcting such defects upon submittal of a written claim with backup documentation supporting written claim.

In the event of an emergency when, in the reasonable judgment of Purchaser, delay could cause serious loss or damage, the adjustments, repairs, additions, corrections, and replacements necessary to remedy any defective Work may be made by Purchaser, or by a third party chosen by Purchaser, without giving prior notice to Seller, and the reasonable cost of the remedial work shall be paid by Seller but Seller shall have no responsibility or liability

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673628

B.334

  **PURCHASE ORDER**
ABB Combustion Engineering Systems 

ASEA BROWN BOVERI

Date:  03/30/99

Page:  6

P. O. Number:
**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|----|----|----|----|

(including warranty) for such remedial work. Notice of this
course of action will be provided by Purchaser to Seller as
soon as practical.

ACCELERATED CORROSION

The Seller shall warrant for a period of twenty-four (24)
months from performance acceptance the scrubbers,
precipitators, and interconnecting duct work against the
consequences of accelerated corrosion outside of the
industry standards for power-generated facilities with dry
scrubbing systems to the extent that the corrosion has
materially affected or is reasonably expected to materially
affect in the next two (2) years (i) the structural
integrity of the Equipment of any portion thereof or (ii)
that ability of the Equipment to mechanically perform.
Seller 's corrosion guarantee is conditioned upon operation
and maintenance of the system in accordance with Seller 's
Operation and Maintenance manuals, Owner 's specified
operating parameters, and typical system operation at base
load and specified capacity factors.  Corrosion shall be
monitored by a mutually agreed upon mapping program to be
conducted by Owner.  Upon demonstration that corrosion
exceeds the level described above, the Seller and Owner
shall use best faith efforts to mutually agree on the
appropriate remedial actions.  In the event that the parties
are unable to reach a mutual Purchase Order either as to the
extent of corrosion or the appropriate remedy, the issue
shall be referred to a mutually agreeable third party
mediator.  There shall be no re-warranty or extended
warranty obligation, as set forth above, applicable to this
corrosion warranty.

Seller agrees that Purchaser may assign its rights under
this warranty and other parts of this Purchase Order to
Owner and Owner 's Lenders, and Seller hereby consents to
the same and shall fully honor its obligations hereunder in
the event of any such assignment.

Consumable items, normal wear and tear (e.g. including, but
not limited to, wear on refractory surfaces and maintenance
thereof and/or sacrificial items such as weld overlay, tube
shields, etc.) and erosion, corrosion or chemical attack to
any portion of the boiler system caused in whole or part by
deviations in the fuel or feed stocks from the limits
specified in the Purchase Order are excluded from any
warranty obligations of the Seller.

Seller's representatives shall have reasonable access to
test and operating records, the equipment, and other
information they deem necessary to satisfy themselves of the
validity of a claim under this warranty.

ALL IMPLIED WARRANTIES INCLUDING THE IMPLIED WARRANTIES OF
MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE
HEREBY DISCLAIMED AND WAIVED.

6.    CHANGES

This Purchase Order shall not be changed or otherwise
modified except upon the prior written authorization of a

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673630

**B.336**

  **PURCHASE ORDER**
**ABB Combustion Engineering Systems** 

ASEA BROWN BOVERI

Date: 03/30/99

Page: 7

P. O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|------------------------|--------------------|------------|----------|

duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7.    TERMINATION

In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorney's fees and costs of collection), Purchaser shall have the right at any time, with or without cause, to terminate further performance of all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. On the date of such termination stated in said notice, Seller shall discontinue performance of the Work and shall preserve and protect tools, construction equipment and facilities on jobsite, materials and plant equipment purchased for or committed to the Work (whether delivered to the Jobsite or on order), Work in progress and completed Work (whether at jobsite or other locations) pending Purchaser's instructions and, if requested by it, shall turn over the same to Purchaser/Purchaser's Customer, or Owner, including title to said materials and plant equipment, provided the Seller has been paid in full for such material and equipment or dispose of same in accordance with Purchaser's instructions.

Upon receipt of said notice, Seller shall advise Purchaser of its outstanding orders and subcontracts pertaining to performance of the terminated work and, upon request, furnish Purchaser with complete copies. Seller shall place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the Work as is not terminated; Seller shall promptly make every reasonable effort to procure cancellation, upon terms satisfactory to Purchaser, of all orders and subcontracts to the extent they relate to the performance of Work terminated; or, as directed by Purchaser, shall assign to it or Owner such of its subcontracts and orders as are designated by Purchaser, or shall take such other action relative to such subcontracts or orders as may be directed by Purchaser.

If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs

API 0673631

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's printed terms and conditions and this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making of or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673632

**B.338**

 

**PURCHASE ORDER**

ASEA BROWN BOVERI

ABB Combustion Engineering Systems

Date:  03/30/99

Page:   8

P. O. Number:

**50730 IO**

| Item Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|---|---|---|---|---|---|

which form part of such claim.   Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process.   In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply.   In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

In no event shall total payment to Seller exceed the Contract Price.

The provisions of this Contract, which by their nature survive final acceptance of the Work, shall   remain in full force and effect after such termination.

8.     TITLE AND RISK OF LOSS

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances.   Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9.     COMPLIANCES

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the laws and regulations of the country of manufacture and final shipment.   Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10.   INDEMNITY

Seller agrees to defend, indemnify and hold harmless Purchaser, Purchaser's Customer and Owner, the Owner's lenders, the Utility, the PREPA, and the Steam Host, the affiliated companies of each, and all of their directors, officers, employees, agents and representatives, from and against:

Any claim, demand, cause of action, liability, loss or expense arising by reason of Seller's actual failure (or if asserted, to defend until proven not liable) to comply with any applicable law, ordinance, regulation, rule or order applicable to Seller under this Contract, or with this Contract.   This Section includes, but is not limited to, fines or penalties by government authorities and claims arising from Seller's actual or asserted failure to pay taxes for which Seller is liable to pay hereunder.

Any claim, demand, cause of action, liability, loss or

API 0673633

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense [including attorneys' fees] relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673634

  

**PURCHASE ORDER**
ABB Combustion Engineering Systems

ASEA BROWN BOVERI

Date: 03/30/99

Page: 9

P.O. Number:

**50730 IO**

| Item | Quantity | UN | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|-------------------------|--------------------|------------|----------|

expense arising from actual violation or infringement of rights (or, if asserted, to defend until proven not liable) in any applicable patent, copyright, proprietary information, trade secret or other property right caused or alleged to be caused by the use of goods, materials, equipment, methods, processes, designs or information, including construction methods, construction equipment and temporary construction facilities, furnished by Seller or its subcontractors in performance of the Work. Should any goods or services provided by Seller become the subject of a claim of infringement of a patent, copyright or other property right, Seller shall, at Seller's option, either procure for Purchaser/Purchaser's Customer and Owner the right to continue using such goods or services, replace same with equivalent, non-infringing goods or services, or modify the goods or services so that the use thereof becomes non-infringing, provided that any such modification or replacement is of equal quality and provides equal performance to the infringing goods or services. Seller's obligations under this paragraph shall not apply to any goods, equipment processes, methods, designs or information to the extent that it was subsequently altered, modified or changed by Purchaser/Purchaser's Customer/Owner or used or operated by Purchaser/Purchaser's Customer/Owner in a manner in intended by this Contract.

Any claim, demand, cause of action, liability, loss or expense arising from injury to or death of third persons (including employees of Purchaser/Purchaser's Customer/Owner, Contractor and Contractor's subcontractors) or from damage to or loss of tangible property (but exclusive of property damage to the extent covered by the proceeds of the Builders All Risk Insurance or other insurance provided by Purchaser/Purchaser's Customer and/or Owner) caused by any negligent acts or omissions of Seller or its subcontractors; if the Seller and/or its subcontractors is/are on the site to perform Warranty Work. Seller's defense and indemnity obligations hereunder include claims and damages arising from non-delegable duties of Purchaser/Purchaser's Customer or Owner or arising from use by Seller of construction equipment, tools, scaffolding or facilities furnished to Seller by Purchaser/Purchaser's Customer or Owner.

Any claim, demand, cause of action, liability, loss or expense for actual or alleged contamination, pollution, or public or private nuisance, to the extent arising out of any acts or omissions of Seller, or its subcontractors.

In the event of joint or concurrent negligence on the part of the Purchaser or any other indemnified party, the liability, and any associated indemnity obligations shall be reduced by the negligence attributable to such indemnified party. Seller's defense and indemnity obligations shall include the duty to reimburse any reasonable attorneys' fees and expenses incurred by Purchaser/Purchaser's Customer or Owner for legal action to enforce Seller's indemnity obligations, but only to the extent Purchaser/Purchaser's Customer or Owner is successful in such actions.

In the event that the indemnity provisions in this Contract are contrary to the law governing this Contract, then the indemnity obligations applicable hereunder shall be construed to have the same economic effect on the parties.

API 0673635

B.341

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser's or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the sole Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

B.342

  

**PURCHASE ORDER**

**ABB Combustion Engineering Systems**

ASEA BROWN BOVERI

Date:  03/30/99

Page:  10

P. O. Number:
**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|-------------------------|--------------------|------------|----------|

With respect to claims against Purchaser/Purchaser's Customer or Owner by employees of Seller or its subcontractors, the indemnity obligations created under this Article shall not be limited by the fact of, amount, or type of benefits or compensation payable by or for Seller, its subcontractors or suppliers under any workers' compensation, disability benefits, or other employee benefits acts or regulations, and Seller waives, against Purchaser/Purchaser's Customer or Owner, any limitation of liability arising from workers' compensation or such other acts of regulations.

If there is a dispute between the parties regarding Seller's obligations hereunder, Purchaser shall be entitled to retain from payments otherwise due Seller such amounts as shall reasonably be considered necessary to satisfy any claims, suits or liens for damages that fall within Seller's indemnity obligations under this Article 29.0, until such claims suits or liens have been settled and satisfactory evidence to that effect has been furnished to Purchaser.

Seller acknowledges specific payment of $10.00 incorporated into the Contract Price as legal consideration for Seller's indemnity obligations as may be provided in this Contract.

Notice and Defense: Promptly after receipt by Purchaser of any claim or notice of the commencement of any action, proceeding or investigation as to which the indemnity provided for this Article applies, such indemnified party shall notify Seller in writing of such fact. Seller shall assume on behalf of the indemnified party the defense thereof with counsel of the indemnified party's choice or which shall be reasonably acceptable to Purchaser; provided that such indemnified party shall have the right to be represented by independent counsel of its own selection and at its own expense. Purchaser/Purchaser's Customer and Owner shall provide reasonable support and assistance to the Seller in connection with the defense of any claim to which the indemnity herein shall apply.

11.    ASSIGNMENT AND SUBCONTRACTING

Seller shall not assign this Purchase Order to subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

12.    EQUAL EMPLOYMENT OPPORTUNITY

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

13.    TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION

API 0673637

**B.343**

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, on its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673638