

  **PURCHASE ORDER**
**ABB Combustion Engineering Systems**

ASEA BROWN BOVERI

Date:  03/30/99

Page:  11

P. O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|-------------------------|--------------------|------------|----------|

Engineering and related data, calculations, plans, maps, drawings, computer programs and specifications furnished by Purchaser/Purchaser's Customer or Owner in connection with the Work (referred to in this Article as "Purchaser's Documents") shall remain Purchaser/Purchaser's Customer's or Owner's property.  Seller agrees not to use or release to others any such Purchaser's Documents for purposes other than the Work performed hereunder unless prior written consent to the contrary is given by Purchaser.  Seller shall give Purchaser receipts for Purchaser's documents furnished by Purchaser/Purchaser's Customer or Owner and shall be responsible for their safekeeping and return to Purchaser/Purchaser's Customer or Owner upon request, upon termination or completion of this Contract, or upon termination or completion of the Work to which such Purchaser's documents apply.

Seller shall release Purchaser/Purchaser's Customer and Owner from all liability which may arise as a result of the use of Purchaser's Documents, whether by Contractor or third parties to whom Seller discloses said documents and information, for purposes other than the Work and Units provided under this Contract as set forth above.  This Article shall apply mutatis mutandi to Purchaser/Purchaser's Customer and Owner.

Any drawings, data or information supplied by Seller hereunder shall remain the sole and exclusive property of Contractor but may be used by Purchaser/Purchaser's Customer and Owner solely for the purpose of evaluation, facilitating and/or completing construction, maintenance, operation and/or repair of the subject Facility and not for any other unrelated purpose.

**14.    PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**15.    APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut without giving effect to principles of choice of law thereof.

**16.    LIMITATION OF LIABILITY**

In no event shall Seller's liability for any matter relating to this Contract, including, without limitation, warranties, breach of contract, tort [including negligence] and lawsuits, but excluding any patent indemnity or third party liability under Article 10, exceed either individually or in the aggregate an amount equal  to the Contract Price.  In no event shall Purchaser or Seller be liable for incidental, special or consequential damages of any kind, including, without limitation, loss of revenue, loss of profits, loss of use of the facility or damages associated therewith.  The

API 0673639

B.345

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673640





**PURCHASE ORDER**
ABB Combustion Engineering Systems

ASEA BROWN BOVERI

Date:  03/30/99

Page:  12

P.O. Number:
**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|-----|-----|-----|-----|

foregoing notwithstanding, in no event shall Seller's
liability for Liquidated Damages exceed, in the aggregate,
an amount equal to thirty percent (30%) of the Contract
Price.  Where a remedy is specified in the Contract for an
occurrence, such remedy shall be an exclusive remedy for
such occurrence; where no remedy is specified in the
Contract for an occurrence, the remedy at law shall apply
subject to the provision of this Article 16.  Furthermore,
it is specifically understood and agreed that the payment of
any liquidated damages provided for in the Contract shall
constitute Seller's sole obligation and
Purchaser/Purchaser's Customer's and/or Owner's sole and
exclusive remedies for Seller's failure to meet the Contract
schedule and/or Performance Guarantees.  All releases,
waivers or limitations of liability specifically expressed
in this Contract apply equally to Seller's subcontractors,
suppliers and vendors of any tier.  All releases, waivers or
limitations of liability specifically expressed in this
Contract apply notwithstanding the negligence, strict
liability, fault, or breach of warranty or contract of the
party whose liability is so released or limited.

17. WAIVER AND RELEASE OF LIEN

With each milestone payment invoice, Seller shall furnish
partial lien waivers (in substantially the form shown as
Attachment _____ ) which partial lien waiver will waive
Seller's lien rights for all work performed through the
cutoff date of such invoice.  Purchaser may withhold payment
of invoices until Seller furnishes such partial lien
waivers.  Such partial lien waiver may be conditioned upon
receipt of the associated payment. In addition, Seller shall
provide, if requested by the Owner prior to disbursement of
funds to Purchaser/Purchaser's customer  required to make
such scheduled Seller payment, copies of such partial lien
waivers from subcontractors and suppliers with subcontracts
or purchase orders with a contract price or purchase order
price of $100,000 or more as are necessary to support
Seller's invoice.

A final lien waiver will be required to effect final
payment.

18.  BACKCHARGES

      A backcharge is a cost sustained by Purchaser and
chargeable to Seller, which shall either be paid by Seller
or, at Purchaser's option, deducted from amounts owed to
Seller.   Without limitation and by way of example only,
backcharges may result from:

            Services performed by Purchaser, at Seller's
request, for work which is within Seller's Scope of Work
under this Contract, or

            Costs sustained by Purchaser as a result of
Seller's non-compliance with the provisions of this Contract

API 0673641

**B.347**

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673642


**ASEA BROWN BOVERI**



**PURCHASE ORDER**
ABB Combustion Engineering Systems

Date: 03/30/99

Page: 13

P.O. Number:
**50730 IO**

| Item | Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|------|----------|----|-----------|-----------|-----------|-----------|

or Seller's act or omission or negligence.

Upon identification by Purchaser of an actual or anticipated backcharge, Purchaser will issue Contractor with a backcharge notice.
　　　　The backcharge cost shall include:

　　　　a.　　Labor:　at actual cost plus 15% to cover payroll additives;

　　　　b.　　Material:　at actual supplier and freight invoice cost delivered to jobsite;

　　　　c.　　Construction Equipment:　at actual third party rental cost or at Purchaser's equipment rental rates whichever may be applicable;

　　　　　　　　10% shall be added to Paragraph's a. through c. above for indirect costs, overhead, supervision and administration.

19.0　　LIQUIDATED DAMAGES

GENERAL

Purchaser and Seller agree that, at Release of this Contract, the Schedule of this Contract will be assigned specific dates based on the agreed upon durations from Release.  Seller guarantees the dates that will be established based on the durations stated in the Schedule of this Contract to be the firm date for completion by Seller of all activities pertaining to each specific milestone.

Seller shall meet the Ship Dates and Performance Guarantees set forth in this Section 19.0.  The parties agree that failure of Seller to meet these dates and Performance Guarantees will do Purchaser harm and that damages for failure to meet said guarantees are extremely impracticable or impossible to predict or calculate, and accordingly Seller shall be liable for liquidated damages to Purchaser for failure to achieve Ship Dates or Performance Guarantees as specified , which liquidated damages Seller will pay to Purchaser.  Seller acknowledges and affirms that the amounts of liquidated damages set forth herein do not constitute a penalty, but rather are a fair estimate and assessment of damages which are uncertain and not readily ascertainable.  The liquidated damages set forth in this Section 19.0 are the sole and exclusive remedies of Purchaser for failure of Seller to meet Ship Dates or Performance Guarantees.  The parties agree that liquidated damages are in lieu of actual damages and Purchaser will not attempt to recover actual damages for Seller's failure to achieve the guarantees stipulated in this Section 19.  All liquidated damages specified herein are cumulative and no liquidated damages shall be deemed to supplement, replace, supersede or in any way reduce any other liquidated damages for which Seller is responsible.

LIQUIDATED DAMAGES FOR LATE DRAWINGS AND DATA SUBMITTAL

The Seller recognizes that Purchaser will suffer damages in

API 0673643

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673644

B.350

  

**PURCHASE ORDER**

**ABB Combustion Engineering Systems**

ASEA BROWN BOVERI

Date: 03/30/99

Page: 14

P.O. Number:

**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|----|-----|-----|-----|-----|

the event of delay in schedules for submittal of Final
drawings and data four working days prior to those specified
in the DDMRR. Seller shall submit drawings and data
packages to arrive at Purchaser on or before the specified
dates. Documents submitted shall be in accordance with the
requirements of this Contract. Documents that do not meet
these requirements will be returned to the Seller and will
not be accepted until resubmitted in proper
form and content by Purchaser. The parties agree that the
sum of $500.00 per calendar day is a reasonable and fair
estimate of damages and loss which Purchaser would suffer
for each such calendar day that Seller is late in submitting
each drawing package or data package. It is therefore
agreed that, in the event of such failure by Seller, Seller
shall pay to Purchaser the sum of $500.00 for each calendar
day by which the actual date of each drawing package or data
package is later than the said firm drawing package or data
package submittal date.

**LIQUIDATED DAMAGES FOR LATE SHIPMENT**

In the event that the delivery of all or any portion of the
equipment and materials are delayed beyond the delivery date
specified, the following liquidated damages shall be imposed
on the seller:

1/2 % per day or part of for the first twenty (20) days
beyond the required ship date. 1% per day or part of
thereafter.

The above percentages are to be applied to the total value
of the purchase order.

**LIQUIDATED DAMAGES FOR TECHNICAL PERFORMANCE**

Seller guarantees the performance of the equipment and other
Work covered by this Purchase Order to be in accordance with
the guaranteed data as set forth in the following Confirmed
Equipment Specifications, which Guarantees are sometimes
referred to as "Performance Guarantees":
-      Circulating Fluidized Bed Boiler
Specification W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.00-0001, Revision 1;
-      Circulating Dry Scrubber FGDS Specification
W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.03-0001, Revision 1; and
-      Electrostatic Precipitator Specification
W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.03-0002, Revision 1.

Seller's achievement of these Performance Guarantees will be
demonstrated over a four (4) hour test period as set forth
in the Performance Test Plan which will occur during the
Performance Test. Seller's achievement of these Performance
Guarantees will be tested per the methods specified in the
Performance Test Plan.

It is agreed that the actual damages and loss which
Purchaser would incur as a result of Seller's default in its
obligation to meet the Performance Guarantees would be
impractical and difficult to determine and that the sums
listed below are a reasonable and fair estimate of the
damages and loss which Purchaser would suffer by Seller's

# GENERAL TERMS AND CONDITIONS OF PURCHASE
## CA-10-87

**1  ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2  DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3  APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4  INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5  WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6  CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7  TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, [which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection] Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order the Seller at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8  TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9  COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10  INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11  PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12  ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13  EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14  TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15  PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16  APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

  **PURCHASE ORDER**
ABB Combustion Engineering Systems 

ASEA BROWN BOVERI

Date:  03/30/99

Page:   15

P.O. Number:
**50730 IO**

| Item | Quantity | UM | Description WBS / Status | Required Ship Date | Unit Price | Extended |
|------|----------|-----|--------------------------|--------------------|------------|----------|

failure to meet the Performance Guarantees.  It is, therefore, agreed that Seller shall pay Purchaser the following liquidated damages for any shortfalls in meeting the Performance Guarantees:

A. Auxiliary Power Consumption:

$2,733 for each full KW that the Equipment is in excess of the guarantee value, as defined in the performance section of the technical specification.

B. Lime:

$6,585 per each full pound per hour of Lime that the Facility is in excess of the guarantee value, as defined in the performance section of the technical specification.

PAYMENT OF LIQUIDATED DAMAGES

Seller agrees that all sums payable by Seller to Purchaser as liquidated damages pursuant to this Section 10 shall be paid promptly to Purchaser or, at Purchaser's option, may be deducted by Purchaser from the price to be paid to Purchaser hereunder.  The liquidated damages are agreed to be a reasonable estimate of actual damages, not a penalty.

The liquidated damages set forth in this Section 19.0 are the sole and exclusive remedies of Purchaser for failure of Seller to meet Performance Acceptance or Performance Guarantees, however, shall not constitute a waiver of any rights of Purchaser to damages or other remedies of Purchaser under other Sections of this Contract not related to Seller's failure to meet Performance Acceptance and/or Performance Guarantees.

Seller's liability for liquidated damages shall be limited in accordance with Article 16of this Contract, provided, however, that liquidated damages shall not be deemed to be incidental, special or consequential damages.

REMEDIES

In the event the Performance Test results indicate lower than specified and/or guaranteed performance, Seller will be given the opportunity, which is reasonably possible under the circumstances, to rectify the equipment and the unit will be retested.

In the event of any deficiencies in Seller's equipment and design relative to the specifications and/or performance guarantees in the Technical Specification which are not covered by liquidated damages, Seller will correct these deficiencies to conform to the performance guarantees as set out in the specification.

20.0 INSURANCE

Before any Work is performed under this Contract, Seller shall, as its sole cost, obtain and maintain in force the following insurance coverages:

API 0673647

B.353

GENERAL TERMS AND CONDITIONS OF PURCHASE
CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility to the goods delivered or services performed hereunder or any requirements under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.





**PURCHASE ORDER**
ABB Combustion Engineering Systems

Date:  03/30/99

Page:  16

P. O. Number:
**50730 IO**

| Item | Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|------|----------|-----|----------------------------|------------------------|------------|----------|

Worker's Compensation Insurance, including occupational
illness or disease coverage, or other similar social
insurance in accordance with the laws of the nation, state,
commonwealth, territory or province exercising jurisdiction
over the employee and Employer's Liability Insurance with a
limit of $1,000,000 per occurrence and in the aggregate.

Comprehensive or Commercial General Liability Insurance,
including Contractual Liability, Products and Completed
Operations liability (with the Completed Operations coverage
to remain in effect for two (2) years following Performance
Acceptance), Explosion, Collapse, and Underground Hazards,
Personal Injury Liability (with the standard contractual and
employee exclusions eliminated), Elevators and Escalators,
Employers Liability, and Broad Form Property Damage
Liability coverages with a combined single limit of
$1,000,000 per occurrence and in the aggregate. Such
insurance shall protect against losses arising out of
explosion, collapse or underground hazards. The Policy shall
name Purchaser/Purchaser's Customer, its affiliates, Owner's
Lenders and Owner as additional insureds with respect to
liability or losses based upon or arising out of Seller's
Work under this Agreement. Seller shall evidence that such
coverage has been extended to the aforesaid additional
insureds through provision of either a specific endorsement
to its policy or through a Certificate of Insurance issued
by its insurance broker on behalf of its insurance company
that states that the additional insureds are additional
insureds as required herein.

Automobile Liability Insurance covering use of all owned,
non-owned and hired automobiles with a combined single limit
of $1,000,000 per occurrence and in the aggregate for bodily
injury and property damage liability.  This policy shall be
endorsed to name Purchaser/Purchaser's Customer, its
affiliates and Owner and Owner's Lenders as additional
insureds with respect to liability based upon or arising out
of the activities of Seller pursuant to this Contract.

Tools and Equipment Insurance covering physical damage to or
loss of all major tools and equipment, office furniture and
equipment, and vehicles for which Seller is responsible
throughout the course of the Work.

"Umbrella" or Excess Liability Insurance, over the
Comprehensive or Commercial General Liability, Automobile
Liability and Employer's Liability, with a coverage limit of
$10,000,000.

The foregoing insurance coverages shall be primary and
non-contributing with respect to any other insurance or self
insurance which may be maintained by Purchaser/Purchaser's
Customer, Owner, Owner's Lenders, the Electric Utility and
Steam Host to which Owner will be furnishing electricity and
steam, and the Puerto Rico Aqueduct and Sewer Authority.
Seller's Comprehensive General Liability and Automobile
Liability Insurance policies shall contain a Cross Liability
and Severability of Interest clause.  Seller shall obtain
from each of its insurers a waiver of subrogation in favor
of Purchaser/Purchaser's Customer, its affiliates, Owner,
Owner's Lenders, the Electric Utility and Steam Host to
which Owner will be furnishing electricity and steam, and

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673650

**B.356**



 **PURCHASE ORDER**
ABB Combustion Engineering Systems 

ASEA BROWN BOVERI

Date:   03/30/99

Page:   17

P. O. Number:
**50730 IO**

| Item | Quantity | UM | Description | Required Ship Date | Unit Price | Extended |
|------|----------|----|-------------|--------------------|-----------|----------|

WBS / Status

the Puerto Rico Aqueduct and Sewer Authority with respect to losses arising out of or in connection with the Work. Seller shall cause its insurance underwriters to issue Certificates of Insurance satisfactory in form to Purchaser (ACCORD form or equivalent) evidencing that the coverages, coverage extensions, policy endorsements and waivers of subrogation required under this Contract are maintained in force and that not less than 30 days written notice will be given to Purchaser/Purchaser's Customer, Owner and Owner's Lenders prior to any material modification or cancellation of the policies.

Builder's Risk Insurance covering loss or damages to materials and equipment at the Jobsite that are and/or will be incorporated into the completed Facility shall be provided by D/FDC or Owner.  Contractor and its subcontractors shall be additional named insured on the Builders Risk Insurance Policy and such policy shall provide a waiver of subrogation in favor of Contractor.  Contractor shall be responsible for the payment of the applicable deductible (but in no event shall said deductible exceed $25,000 per occurrence) and other uninsured amounts for each loss or damage to such materials or equipment which are in the care, custody and control of Contractor.

Changes in Seller's insurance costs or escalations in premiums related to insurance programs and limits agreed to herein shall not be the basis for any increase in the price of the Work unless such change is due to changes in the Work.  However, the additional cost for any other insurance required to be put into place by Purchaser/Purchaser's Customer or Owner shall be borne by Purchaser/Purchaser's Customer or Owner.

All insurance coverage provided by the Seller shall be on an occurrence basis unless such coverage is not commercially available, in which event the parties shall agree upon replacement coverage on a claims made basis which provides, to the fullest extent possible, the same coverage as would be provided on an occurrence basis.

21.  Year 2000 Compliance
Seller hereby irrevocably represents and warrants that the delivered product, software, or systems are Year 2000 compliant and that neither the performance nor functionality of the product, software or system, operating alone and/or together with other products, software and/or systems, are and will be affected by dates prior to, during and after Year 2000; in particular;

   no value for current date will cause any interruption in the operation of the product, software or system,
   the product shall calculate, manipulate and represent all data values within the application domain correctly for the purposes for which they were intended,
   in all interfaces and data storage, the century in any date is specified either explicitly or by unambiguous inferencing rules,
   the Year 2000, and all the leap years beyond the year 2000, must be recognized as leap years,
   cause loss of functionality specified in the Agreement under which the product software or system were originally furnished.

API 0673651

**B.357**

GENERAL TERMS AND CONDITIONS OF PURCHASE
CA-10-87

1. ACCEPTANCE
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. DELIVERY
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. INSPECTION
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. WARRANTY
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. CHANGES
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. TERMINATION
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. TITLE AND RISK OF LOSS
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. COMPLIANCES
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. INDEMNITY
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. ASSIGNMENT AND SUBCONTRACTING
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. EQUAL EMPLOYMENT OPPORTUNITY
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. PUBLICITY
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. APPLICABLE LAW
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.





**PURCHASE ORDER**

**ABB Combustion Engineering Systems**

Date: 03/30/99

Page: 18

P.O. Number:
**50730 IO**

| Item Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|---|---|---|---|---|---|

In the event of any breach of any of the above warranties, seller shall promptly, upon receipt of notice of non-conformity from Purchaser, holding Purchaser harmless from any cost and expense, repair the defect, replace the defective product, software and/or system with product, software and/or system complying with the above warranties, and/or take such other actions as are reasonably satisfactory to Purchaser and its customer to restore full warranty compliance additionally and without cost to Purchaser. Seller shall, upon demand, provide to Purchaser copies of Seller's Year 2000 Compliance Testing Procedures and testing results applicable to the product, software and/or systems furnished in connection with this Agreement or P.O.

Seller further warrants that all its facilities are Year compliant in accordance with the British Standards.

22.0 DELAYS

In the event Seller or Purchaser is delayed in performing any of their respective obligations in the Contract (other than the payment of money) and such delay is caused by a Force Majeure Event defined as; acts of God, war, riots, civil insurrection, acts of the public enemy, accidents, acts of civil or military authority, sabotage, epidemics, revolution, injunction, terrorism, quarantine, strikes and labor disputes (except as excluded below), fires, floods, landslides, tidal wave, hurricane, lightning, explosion or earthquakes, or other similar events, beyond the reasonable control of the party delayed, such delay shall be excused and the period of such delay shall be added to the time for performance as required. Force Majeure Events do not include strikes, work stoppages and labor disputes or unrest of any kind involving employees of Seller or any of its subcontractors employed on the Facility Site (provided, however, that if such events are beyond the control of the Seller or any of its subcontractors and are not caused by the actions or failure to act of Seller or any of its subcontractors, such events shall be Force Majeure Events), late delivery of materials or equipment (except to the extent caused by a Force Majeure Event), and economic hardship. In the event any such delay due to the foregoing causes or events occurs or is anticipated, the party delayed or anticipating delay shall promptly notify the other party in writing of such delay or expected delay and the cause and estimated duration of such delay. In the event of a delay due to the foregoing causes or events, whether such delay is excused or not, the party delayed shall, at no cost to the other party, exercise reasonable diligence to shorten and avoid the delay and shall keep the other party advised as to the continuance of the delay and steps taken to shorten or terminate the delay. Seller shall not in any event be entitled to additional or extra compensation by reason of Seller having been delayed in performance of its obligations due to the foregoing causes or events whether such delay was excused or not.. Seller or Purchaser shall, within five (5) working days of becoming knowledgeable of the commencement of any such delay, give to the other written notice thereof

API 0673653

**B.359**

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed prior to termination, and shall take prompt by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673654

**B.360**



 **PURCHASE ORDER** 



**ABB Combustion Engineering Systems**

Date:  03/30/99

Page:  **19**

P. O. Number:

**50730 IO**

| Item Quantity | UM | Description<br>WBS / Status | Required<br>Ship Date | Unit Price | Extended |
|---|---|---|---|---|---|

and of the anticipated results thereof.  Within two (2)
working days of the termination of any such delay, Seller or
Purchaser shall file a written notice with the other
specifying the actual duration of the delay.  If the delay
was beyond the control and without the fault or negligence
of  Seller or Purchaser, as the case may be,  and not
foreseeable at the effective date of this Contract, Seller
or Purchaser shall be entitled to an equitable extension of
the time of performance of this Contract, provided that the
extension of time is of no greater scope and of no longer
duration than is reasonably required by the delay. Seller
shall not be entitled to, and hereby expressly waives
recovery of, and damages suffered by reason of the delays
contemplated by this Section 13.0 and extension of time
shall constitute Seller's sole remedy for such delays.

The time of completion of any and all Work items scheduled
in the Contract shall not be extended because of
non-extraordinary weather conditions or other natural
non-extraordinary phenomena including, but not limited to
normal rain, high temperature, wet grounds, and high winds.

The inability of Seller to obtain permits or licenses
required for the progress of its Work shall not be
considered a reason for force majeure claim.

23.0 WORK RULES

Seller agrees to use its reasonable efforts to comply with
Purchaser's/Purchaser's Customer's and Owner's rules
governing the conduct of Seller and Seller's employees,
agents and subcontractors at and about the jobsite.  Seller
agrees that it shall ensure that its supervisory personnel,
employees, agents and subcontractors at the jobsite comply
strictly with such rules.  Purchaser/Purchaser's Customer
and Owner reserve the right to, from time to time, revise
any such rules, and Seller shall comply fully with such
rules as revised in accordance with the foregoing
provisions.

------------------------------------------------------------------

                                        FIRM TOTAL NET PRICE        $20,000.00
------------------------------------------------------------------
                        QUALITY ASSURANCE NOTIFICATION

Notification for final inspection is required for material
or fabrication of components on this order.  Criteria for
notification are defined in this order.
------------------------------------------------------------------
            INVOICE INSTRUCTIONS
        Mail original and two copies of invoices with a copy of
the bill of lading and receipted freight bill to:

            ABB COMBUSTION ENGINEERING SYSTEMS
            COMBUSTION ENGINEERING INCORPORATED
            P. O. BOX 339
            WINDSOR, CT  06095

        In order to assure prompt payment, all invoices must
include the purchase order number and be itemized in the
EXACT line item format of the purchase order.  Line item

API 0673655

**B.361**

## GENERAL TERMS AND CONDITIONS OF PURCHASE
### CA-10-87

**1. ACCEPTANCE**

The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any additional or different terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**

Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**

Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**

Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**

Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**

This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**

In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**

Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**

Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**

Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**

Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**

Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**

In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**

All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**

Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**16. APPLICABLE LAW**

Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

API 0673656

B.362

 

**PURCHASE ORDER**
ABB Combustion Engineering Systems

Date:  03/30/99

Page:    20

P. O. Number:
**50730 IO**

numbers must be shown together with the appropriate charges.

```
    Netting Code:   N/A
    INFORM Code:    N/A
    ABACUS Code:    N/A

        Any invoice not submitted in this manner shall be
returned to the supplier.
------------------------------------------------------------
```

API 0673657

B.363

GENERAL TERMS AND CONDITIONS OF PURCHASE
CA-10-87

1. **ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

2. **DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

3. **APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

4. **INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

5. **WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, and in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality, and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user thereof, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

6. **CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

7. **TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

8. **TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

9. **COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

10. **INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

11. **PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

12. **ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

13. **EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

14. **TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller assumes no right to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

15. **PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

16. **APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

B.364



 **PURCHASE ORDER ACKNOWLEDGMENT**

**ABB Combustion Engineering Systems**



Date: 03/30/99

Page: 21

P. O. Number:
**50730 IO**

Contract:    65005697    - AES PUERTO RICO

This order consists of   21   pages.

ACCEPTANCE
     Please indicate your acceptance of this order
subject to the terms and conditions as shown on the face
and reverse side and the required shipping schedule by
signing after the words "accepted by" and returning this
acknowledgement to:

                ABB COMBUSTION ENGINEERING, SYSTEMS
                COMBUSTION ENGINEERING, INCORPORATED
                2000 Day Hill Road
                Windsor, CT  06095

                ATTN: L. R. JANNELLE
                Purchasing Department 5275-2228

        Accepted By: _____

               Title: _____

                Date: _____

ABB COMBUSTION ENGINEERING SYSTEMS
COMBUSTION ENGINEERING, INCORPORATED
Purchasing Department
        By: _____ 3-30-99

API 0673659

**B.365**

GENERAL TERMS AND CONDITIONS OF PURCHASE
CA-10-87

**1. ACCEPTANCE**
The contract ("contract") between Purchaser and Seller shall consist of the terms written on the face hereof, these printed terms and conditions and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof. Seller's acknowledgment of receipt of this Purchase Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the contract. Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller. Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to any additional or different terms included in these printed terms and conditions or written on the face hereof. In the event of conflict between the terms written on the face hereof and these printed terms and conditions, the terms written on the face hereof shall prevail.

**2. DELIVERY**
Time is of the essence, and Seller shall notify Purchaser immediately in writing of any delay or threatened delay in Seller's performance under the contract. Purchaser may cancel this Purchase Order in whole or in part without any liability if the delivery or completion date(s) in the contract are not satisfied, provided that if such delay is due to causes beyond the control of Seller and such causes were not reasonably foreseeable by Seller at the time of entering into this contract, and Purchaser exercises its option to cancel this Purchase Order, the provisions of Paragraph 7 hereof shall apply. In addition, Seller shall not be relieved under any circumstances of the obligation to procure alternative suppliers or materials with respect to subcontracted or purchased labor, materials or services, except by written consent of Purchaser.

**3. APPROVAL OF DESIGNS, DRAWINGS AND PROCEDURES**
Purchaser's approval of Seller supplied drawings, manufacturing procedures, calculations, and other documents shall not relieve the Seller of any responsibility for the goods delivered or services performed hereunder or any requirements or warranties under the contract whether express or implied.

**4. INSPECTION**
Purchaser, or its representatives, shall have the right to inspect and test the goods or services ordered hereunder at any time prior to delivery or performance, and to finally inspect such goods and results of such services within a reasonable time after delivery at the ultimate destination or completion of their performance. The goods or services shall not be deemed accepted until after such final inspection. The making or failure to make any inspection of, or payment for, or acceptance of, the goods or services, shall in no way impair Purchaser's right to reject or revoke its acceptance of nonconforming goods and services or to seek any other remedies to which Purchaser may be entitled.

**5. WARRANTY**
Seller warrants that the goods delivered, and services rendered, pursuant to this Purchase Order are free from all defects in design, workmanship and material, are in strict conformance with the specifications, drawings and samples in the contract, and are new, of merchantable quality and fit for the purposes for which they are intended. Seller agrees to promptly repair or replace, at Purchaser's option and without cost to Purchaser, any goods delivered, and services rendered, which shall be found by Purchaser to be defective, non-conforming or otherwise not in accordance with this warranty within the later of (a) one year after commencement of use of the goods or services by the ultimate user, Purchaser, or (b) in the case of goods, eighteen months after the date of delivery by Seller of the goods to Purchaser or to Purchaser's customer. Seller agrees that all warranties of Seller on goods delivered, and services rendered, under this Purchase Order shall extend to, and be for the benefit of, Purchaser and Purchaser's customers.

**6. CHANGES**
This Purchase Order shall not be changed or otherwise modified except upon the prior written authorization of a duly authorized representative of Purchaser. Purchaser shall have the right to make any changes in the work ordered under this Purchase Order and Seller agrees to perform this Purchase Order in accordance therewith. If in Seller's opinion such changes will cause an increase or decrease in the cost of, or time required for, performance hereunder, Seller shall notify Purchaser promptly. If additional cost or time is required, Seller shall not proceed without written authorization from Purchaser and if Purchaser directs Seller to proceed, Purchaser shall make an equitable adjustment in the price and delivery/completion schedule.

**7. TERMINATION**
In addition to any other rights Purchaser may have with respect to cancellation or termination, (which, in the event of Seller's default of the provisions hereof, shall include, without limitation, the right to recover attorneys' fees and costs of collection) Purchaser may terminate this Purchase Order as to all or any part of the work for which Seller's performance is not yet completed by giving notice of termination to the Seller. Following notice of such termination, Seller shall do only such work as is necessary to preserve and protect goods completed or in process of completion. If in Purchaser's opinion Seller is not in default under this Purchase Order at the time such notice is given, Purchaser will make an equitable termination payment to Seller based on the proportion of the work completed, and reasonable costs incurred in connection with the terminated work. Such payment shall not exceed that fraction of the total Purchase Order price which is allocable to the work performed and any such payment shall be subject to audit by Purchaser. Seller shall submit his claim for a termination payment within thirty days after receiving notice of termination, and shall take prompt action to minimize costs which form part of such claim. Seller shall deliver promptly in accordance with Purchaser's delivery instructions all completed goods and work in process. In the event that, for any reason, it is determined that Seller was not in default, the termination for convenience provisions of this Section shall apply. In no event shall Purchaser be liable for any special, indirect, incidental or consequential damages of any nature, including, but not limited to, under-utilization of labor or facilities, loss of revenues or anticipated profits, potential damage to business reputation, or loss of business or business opportunity, whether based on contract, tort (including negligence), strict liability or otherwise.

**8. TITLE AND RISK OF LOSS**
Seller agrees to deliver to the Purchaser title to the goods covered by this Purchase Order, free and clear of all liens, claims and encumbrances. Title and risk of loss to goods delivered hereunder shall pass to Purchaser upon receipt by Purchaser at Purchaser's plant or at another delivery location designated by Purchaser, unless otherwise agreed in writing.

**9. COMPLIANCES**
Seller warrants that all goods delivered and services rendered hereunder shall be in strict compliance with all applicable laws and regulations to which the goods and services are subject, including the Williams-Steiger Occupational Safety and Health Act of 1970, as amended. Seller shall indemnify and hold harmless the Purchaser and the Purchaser's customers from all loss, liability and fines incurred by any of them as a result of Seller's failure to so comply.

**10. INDEMNITY**
Seller agrees to be responsible for and indemnify and save harmless the Purchaser and Purchaser's customers from and against all loss, liability, cost and expense (including attorneys' fees) relating to bodily injury, including death, and damage to property arising out of any act or omission of the Seller, its employees, agents and subcontractors.

**11. PATENTS, TRADE SECRETS, COPYRIGHTS AND TRADEMARKS**
Seller represents and warrants that all products delivered, and services performed, pursuant to this Agreement and the sale or use thereof do not infringe any patent, trade secret, copyright or trademark, and that Seller will at Seller's expense, defend, indemnify and hold harmless Purchaser and Purchaser's customers from any and against all claims, demands, actions and liability based on alleged or actual infringement thereof. Purchaser, at its option, may require Seller to deliver non-infringing goods or services, to modify Seller's goods and services so as to become non-infringing, to procure for Purchaser the right to continue using Seller's infringing goods and services, or in the case of goods to refund the purchase price thereof upon the return by Purchaser of the infringing goods.

**12. ASSIGNMENT AND SUBCONTRACTING**
Seller shall not assign this Purchase Order or subcontract the whole or any part thereof without the Purchaser's prior written consent. Seller's purchase of raw materials or standard commercial articles shall not be deemed a subcontract.

**13. EQUAL EMPLOYMENT OPPORTUNITY**
In performing this Purchase Order, Seller agrees to comply with Executive Order 11246, as amended, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1972, and the equal opportunity clauses contained therein are hereby incorporated into the Purchase Order.

**14. TITLE TO DRAWINGS AND OTHER TECHNICAL INFORMATION**
All intellectual property rights in any drawings or other technical information which Purchaser supplies to Seller shall remain the sole and exclusive property of Purchaser and Seller agrees not to use such drawings and information for any purpose other than this Purchase Order or disclose such drawings and information to any third party without Purchaser's prior written consent.

**15. PUBLICITY**
Seller shall obtain the consent of Purchaser prior to any publicity regarding any order hereunder, and Purchaser shall have the right to participate in the content of any such proposed publicity.

**APPLICABLE LAW**
Unless otherwise provided on the face hereof, this Purchase Order shall be governed in all respects in accordance with the law of the State of Connecticut, without giving effect to principles of choice of law thereof.

ALSTOM    Linda P. Rothe/USWIN01/Power/ALSTOM
09/19/2002 04:35 PM (Phone: +001 860-285-9713, Dept.: 5275)

To:      "VanHooser, Bill" <wbvanhooser@eec1.com>
cc:      William M Jarvis/USWIN01/Power/ALSTOM@GA, "Kimberl, Rob" <rbkimberl@eec1.com>, "Siever, Ray"
         <SieverR@eec1.com>, nrdavis@eec1.com, John C. Packard/USWIN01/Power/ALSTOM@GA
Subject: Re: AES-PR / Open Issues / EEC #E971 📎

Security Level:?    Internal

Bill,

We have read your letter of earlier this date and we are astounded at the position taken by EEC on the subject of CDS/ESP commissioning. This commissioning process has equated more to R&D than actual commissioning.

ALSTOM did indeed insist that EEC provide additional support as it was very evident that the issues that occurred were more than "normal commissioning and checkout". It was evident that EEC did not have the technical savvy with this first time installation on a CFB boiler. This view was shared by both our client and the owner and relayed to EEC senior management in efforts to inspire dispatch of support with adequate expertise. In fact it was only after assistance from an ALSTOM team of dry scrubber experts that success in achieving a CDS bed was attained. Continued participation by ALSTOM experts was required to progress the commissioning. ALSTOM hereby notifies that it will pursue recovery of costs associated with this assistance.

Furthermore EEC experienced numerous problems during commissioning which in fact resulted in delays to the project. These include but are not limited to:

- CDS Pluggage Unit 1  8/4 thru 8/6, boiler was on outage from July 31.
- CDS Pluggage Unit 2  9/7 through 9/9/02
- opacity spikes
- continuous/shutdown operation of rotary valves
- correct rapper sequences for CDS in or out of service
- T/R settings
- clean up of ash after cleaning out the CDS's
- correct operating procedures and set points

These constitute further delays for which ALSTOM intends to pursue under the terms of the contract.

We believe that several issues remain open such as:

- Depletion of the CDS bed over time.

- As of this date the limestone feed system is still not operating reliably in automatic. ALSTOM believes that there a design deficiencies with this system and expect EEC to continue to work to resolve this problem that SO2 emissions can be controlled and that this constitutes as delay in readiness of the equipment.
- incorrect conditions inside the CDS causing
  - plugging of dosing valves
  - wetting of ash
  - ash build ups on top of venturi's
- finding the correct operating temperature
- finding the correct bed delta pressure also calculation of dp Vs stack flow.



- nozzle inspection frequency, broom stick testing frequency (test used to check for wet ash)
- rotary valves on/off operation to keep opacity down

Regarding EEC's assertion that their presence during the Performance Testing is needed by ALSTOM, we will leave this to EEC's discretion, however please be advised that ALSTOM will seek full recovery of liquidated damages to the extent available under this contract and applicable laws for failure of the EEC supplied equipment to operate in accordance with the specifications and guarantees.

Additionally we reject EEC's attempt to deflect responsibility for field repairs and modifications for failure to sign time sheets. EEC's representative was notified, kept fully informed, and directed all field modification work. Under the terms of the contract ALSTOM will withhold from payment all cost associated with this additional work.

Please be advised that additional charges will be forthcoming for commissioning support work and modifications.

Linda

"VanHooser, Bill" <wbvanhooser@eec1.com>

**ALSTOM**    "VanHooser, Bill" <wbvanhooser@eec1.com>
            09/19/2002 08:48 AM

To:    William M Jarvis/USWIN01/Power/ALSTOM@GA
cc:    Linda P. Rothe/USWIN01/Power/ALSTOM@GA, "Kimberl, Rob" <rbkimberl@eec1.com>, "Siever, Ray"
       <SieverR@eec1.com>
Subject:    AES-PR / Open Issues / EEC #E971

Security Level:?    Internal

Bill,

Please refer to the attached letter on open contract issues, and advise if
you have any questions.

Regards,
Bill VanHooser
  <<L971_Jarvis.doc>>

 - L971_Jarvis.doc

CONFIDENTIALITY : This e-mail and any attachments are confidential and may be privileged. If you are not a named recipient, please notify the sender immediately and do not open any attachments hereto, disclose the contents of this e-mail or the attachments if any thereto, to another person, use it for any purpose or store or copy the information in any medium.

**B.368**

# ENVIRONMENTAL
# ELEMENTS

C O R P O R A T I O N                                              S I N C E   1 9 4 6

3700 KOPPERS STREET □ BALTIMORE, MARYLAND 21227 □ TELEPHONE (410) 368-7000

September 19, 2002

Alstom Power
1000 Prospect Hill Road
Windsor, CT  06095-0500

Attention:    William Jarvis

Reference:    AES Puerto Rico Project
              Customer Reference #50730

Subject:      Open Issues / EEC #L971

Dear Bill:

I would like to briefly summarize the open contract issues in preparation for discussions on final acceptance and contract closure.   Unit 1 and 2 CDS systems are operating in compliance with emissions monitored by the Stack CEMS.  Our units are currently ready for testing, but we understand this will be delayed until September 28.

EEC has provided Commissioning assistance, as requested by Alstom, in preparation for testing that was to occur during the week of Sept 1.  We provided this extra assistance even though Alstom Power claims they are not responsible.  We notified you earlier that EEC plans to issue a change order request for additional Commissioning support, in excess of contractual requirements, and we will be issuing an invoice within the next week.  At Alstom's request EEC will have representatives present during the upcoming Performance Test, and we expect to be compensated for this work as well.

As you are aware, there have been some operational issues with the CDS.  We believe these will improve with time and Operator familiarity with the control system.  After reviewing the daily logs and process trends we feel that most of the upsets are the result of slow response time to process signals, and in some cases, missing or inacurate process signals.  There have been examples of bad quality process signals and blowers tripping without operator action.  We have written and issued numerous, additional procedures to the operations personnel to help improve this situation, but believe improved Operator familiarity with the contrtols and the process are the keys to resolving this issue.

Finally, we have reviewed the numerous Construction related backcharges/invoices that Alstom has forwarded to EEC.  We find most of these are not EEC's responsibility.  Within the next couple of weeks we will forward a detail analysis of these backcharges for your review.  We also note that our Construction Advisor did not sign the time sheets associated with most of this work.  Alstom was notified earlier that all extra work must have time sheets approved by our Construction Advisor.

We are available to discuss these issues and any other concerns you may have at your earliest convenience. Please advise if you have any questions or comments.

B.369                                    L1-003413

# ENVIRONMENTAL
# ELEMENTS
C  O  R  P  O  R  A  T  I  O  N

Regards,


William VanHooser
410-368-6752


cc:  R. Kimberl
     R. Siever

**B.370**

L1-003414

# ALSTM

ALSTOM Power Inc.                                                    December 20, 2002
Power Boilers

Environmental Elements
3700 Koppers Street
Baltimore, MD  21203



Attn:  Mr. Rob Kimberl

Subject:  AES Puerto Rico-EEC Nonconformances

Reference:  API Purchase Order 50730 IO

Dear Rob,

Recent failure of EEC to respond as promised to Alstom's repeated requests for presentation of a detailed plan and schedule for correction of non-conformances, replacement equipment, and services required to secure stable operation of EEC supplied  CDS/Precipitator scope makes it necessary for us to present our formalized notification to EEC of remaining items requiring action to support fulfillment of EEC's obligations shown below.

EEC's detailed plan and schedule for completion of these items is required no later than the close of business December 27, 2002. EEC's failure to respond by this date will result in determination that EEC is unable and/or unwilling to comply with API's directive and will result in our notice to Liberty Mutual Insurance Company that EEC has defaulted in performance of work under API Purchase order No. 50730 IO.

# CDS / ESP Outstanding Items

### 1.____Opacity Spikes.

Start-up and normal operating procedures for the CDS and ESP have been modified countless times without attaining consistent reliable operation.  Stack opacity spikes exceeding the maximum permissible levels continue.  A number of these philosophies have been implemented in the DCS control logic for automatic operation, but considerable manual operator intervention and attention is

Linda P. Rothe
ALSTOM Power Inc.
P O. Box 500
2000 Day Hill Road
Windsor, CT 06095-0500
Tel: (860) 285-9713
Fax: (860) 285-4645

B.371



EXHIBIT
22
Rothe
1-13-06

ALDEC05 - 00977

2

required and operating procedures outside of the prescribed procedures are required to correct opacity spikes. EEC advised by letter dated November 6, 2002 that two or three gas baffles are needed to correct this deficiency. API believes that air-slides for ash diversion from the ESP ash hoppers closest to the ESP gas outlet may also be required.

2.    Operation Coverage Post 100 Hour Reliability Test

With the CDS & ESP equipment in its current state, it requires continuous expert monitoring and manual manipulation by the operators both locally and remotely from the main unit control room to remain in compliance with the stack opacity and SO2 emission limits. This requires at least one process knowledgeable person present in the control room, and one equipment knowledgeable person in the field at all times. EEC has not demonstrated that the CDS/ESP is reliably operable. EEC personnel are required to continue on site until reliable operation can be consistently obtained.

3.    ID Fan Inlet Duct Design Deficiency.

The duct design and construction of the ID Inlet duct does not meet the specifications. EEC to advise how this will be corrected and a time schedule to complete the work.

4.    Hydrated Lime Storage and Feed System /Gravimetric & Bypass Volumetric Feeder

To date the Hydrated lime feed system has not been successfully commissioned. The manufacturer's representative was on site for several weeks in attempts to commission the system. This system could not be commissioned due to design, equipment selection, and configuration problems. The feed system needs to be redesigned to accomplish reliable accurately metered feed rate control. This requires Mechanical, Electrical and Controls modification.
The intermediate weigh bin vent line repeatedly plugs. This is a generic problem as it exists on both units. Alstom does not agree that the EEC suggested modifications provide for the element of control and measurement required by the contract. EEC is to provide a plan and time schedule for implementation that will allow the weigh belt feeder to function as intended.

5.    Unit 1 Hydrated Lime Storage Silo Damage

The walls of the silo buckled inwards in the area of the sidewall supports. The tank design is deficient. EEC advised that Talboa Tank had been subcontracted to complete this repair. EEC has taken no action. EEC to provide a time schedule for correcting this design deficiency.

3

### 6.    Medium Air Pressure Blower Capacity

The medium pressure blowers cannot maintain design outlet pressure when supplying fluidization air for its design consumers i.e. Hydrated Lime Storage Silo and Weigh Bin, Ash Disposal Silos and First Row ESP Ash Hoppers.
The blower capacity needs to be increased to suite the requirements of the consumers.

### 7.    ESP Hopper Outlet Rotary Valve Failures

Rotary valves continue to bind up causing severe mechanical damage to the rotor shaft and drive.  This is not due to construction debris.
Replacement vanes are required to replace the damaged vanes.
Root cause needs to be identified and corrected.  Replacement sprockets for the rotary valves have broken.  EEC needs to replace these.

### 8.    Silo Level Monitoring Probe Replacement

The current level probes used on the Hydrated Lime Silo, Ash Disposal Bins and the ESP ash hoppers have proven to be very unreliable.
These probes fail indicating product with no product present, and also fail the opposite way, indicating no presence of product when product is present.
Reliable level probes are required.

### 9.    ESP Transformer / Rectifier Contactor Failure - Design

As per Alstom TIR # 1146 , the contactors used in the TR set controllers have failed prematurely and the remaining ones show signs of immanent failure.
One of the failed contactors was inspected and it was found that the securing method for the stationary contacts was poorly designed and leads to poor electrical contact and resultant overheating. Replacement contactors suitable for the application are required.
T/R ADP3200 controllers- They have ZERO reliability, there have been approx. 12 failures during S/U and commercial operation. These continue to fail.  EEC needs to replace with more reliable controllers.

B.373

ALDEC05 - 00979

4

## 10.    TR Set High Current cable terminations

One of the TR Set Controllers electrical isolators failed, and it was found that the root cause is most likely the poor termination arrangement of the cabling.
The cabling used is a multi strand trailing type cable used for its flexibility  using screw type terminals for the termination of this        type of cable is unsuitable - compression terminal lugs are required for this type of cable.
This was discussed with EEC's Mr. Rich Hoch, and he agreed that these terminations should be redone with the appropriate termination lugs.

## 11.    CDS Water Injection Nozzle Tip Fouling

Nozzle tips or mouthpieces reliability- AES has used 2 spares 1 during S/U and one recently.  These were manufactured out of tolerance.  EEC is aware of this but has not taken action.  After last weeks events of the unit 2 CDS plugging, AES borrowed 6 from the unit in Wyoming that has an EEC CDS.  EEC needs to supply replacement nozzle tips.

## 12.    CDS Water Injection Pressure Gauge Replacement

The pressure gauges on the CDS Water injection system have failed as a result of overpressure and pulsation.
Replacement pressure gauges with suitable overpressure and pulsation protection are required for this system.

## 14.    Handrail

The Hand Rails at the stair landings do not conform to OSHA requirements.
These are installed according to the drawings provided by EEC.  EEC to provide a plan and a time schedule for replacing the handrail. This is a safety issue for which EEC is liable.

## 15. Nozzle Quick Disconnects

All 10 of quick disconnects have failed due to corrosion. The water supply side have the internals removed because of the amount of corrosion that had occurred has made them inoperable.  This is a safety concern to AES.  EEC needs to replace with corrosion resistant couplings.

B.374

ALDEC05 - 00980

5

### 16.  Open TIRs

There are some parts that were provided by AES from their warehouse.  EEC needs to replace (TIRs are still open).  There are also several parts needed now to repair 3 T/Rs, as identified under separate cover.

### 17.  Heating Elements

The heating elements on the Medium pressure blowers are defective.  EEC to replace.

### 18.  Latest rev of controls and logic-

Also need to review this with AES and make some modifications to prevent another CDS pluggage occurrence.

### 19.  Corrosion Guarantee

EEC's position has been reviewed and is rejected.

We require your timely submittal of the detailed corrective action plan no later than December 27, 2002.

Sincerely,

Linda P. Rothe
Alstom Power Inc.

Cc:  W. B. Vanhooser
J. Titus
W. Jarvis
J. Sams
E. Bulewich
P. Moynagh
L. Chen
J. Packard
T. Wardell

B.375

ALDEC05 - 00981