# EXHIBIT 2

```
                                                                    1
 1                          Volume:    I

 2                          Pages:     1-269

 3                          Exhibits:  1-65

 4        IN THE UNITED STATES DISTRICT COURT

 5           FOR THE DISTRICT OF DELAWARE

 6

 7                          C.A. No. 04-1282-JJF

 8

 9   - - - - - - - - - - - - - - - - - - - - x

10   AES PUERTO RICO, L.P.,

11            Plaintiff

12   vs.

13   ALSTOM POWER, INC.,

14            Defendant

15   - - - - - - - - - - - - - - - - - - - - x

16

17       VIDEOTAPED DEPOSITION OF PAUL STINSON

18       Thursday, February 9, 2006 - 9:32 a.m.

19              Holland & Knight LLP

20              10 St. James Avenue

21              Boston, Massachusetts

22              - - - - - - - - - -

23

24   Reporter:  Maureen J. Manzi, CSR
```

105

1  document. But to the extent that that
2  characterization was correct, then that would be a
3  mistake on the part of the EEC.
4      Q. You are aware that the O and M Manuals
5  provided by EEC are a contract document, are you
6  not?
7          MR. WILLIAMS: Objection. Calls for
8  legal conclusion. And I'll note that counsel is
9  holding in the air Exhibit 4. Unclear if that's
10 part of his question.
11     A. I know that those documents were provided as
12 underneath a contract. I don't -- I'm not aware
13 that they are contract documents or not.
14     Q. Are you aware that a precondition to the
15 corrosion warranty is that AES comply with the
16 directions contained in the EEC O and M Manuals?
17         MR. WILLIAMS: Objection. Calls for a
18 legal conclusion.
19     A. I'm not a lawyer. So only my engineering
20 opinion is that we need to follow, the plant would
21 need to follow any material recommendations that
22 were correctly given and were, in fact, necessary.
23     Q. Mr. Stinson, do you consider yourself an
24 expert in relation to electrostatic precipitators?

106

1          MR. WILLIAMS: Objection to the extent
2  it's calling for a legal conclusion. It's a term
3  experts use in the Federal rules of evidence.
4       A.  I would have no idea whether I would be
5  considered an expert in any kind of legal sense. As
6  an engineering matter, I would not characterize
7  myself as an expert in electrostatic precipitation.
8       Q.  **Nevertheless you believe it was a mistake**
9  **for EEC to direct the operator of the electrostatic**
10 **precipitator to measure the chloride content of the**
11 **ash?**
12         MR. WILLIAMS: Objection.
13 Mischaracterizes the testimony in the documents.
14      A.  Yeah, I do believe that mischaracterizes
15 what was said. I -- my understanding of what you
16 were representing was that this was requested to be
17 done every shift or daily or weekly or something
18 like that. That would be a mistake in my opinion.
19      Q.  **What's your opinion based upon?**
20      A.  The correct reading of the document I think
21 is what my opinion is based upon.
22      Q.  **Why don't you tell me how I'm not correctly**
23 **reading the document.**
24         MR. WILLIAMS: Objection to form.

Paul Stinson                                              02/09/2006

                                                                 264

1    A.  I'm on that page.

2    Q.  Look at the paragraph on the bottom of the
3  page, please.

4    A.  Read the paragraph?

5    Q.  Just look at it and review it.

6    A.  I've read it.

7    Q.  Do you recall that you testified earlier
8  today about parts of that paragraph?

9    A.  I do recall such testimony.

10   Q.  Based on your work at the AES Puerto Rico
11 plant, do you have an opinion as to whether prior to
12 September 2003 there was any need to take daily
13 analyses of CDS water chloride levels?

14         MR. VITTORIA:  Objection, compound.
15 Objection, asks for opinion testimony.

16   Q.  You can answer.

17   A.  Well, I don't think it was necessary to take
18 daily samples.

19   Q.  Why not?

20   A.  Well, when one evaluates the proper
21 frequency for taking a sample, one would estimate
22 the likelihood of variability and one would evaluate
23 the need for those i.e. what action would one take
24 as a result of any variability in that.  The only