IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P. | * |
| Plaintiff | * |
| v. | *   C.A. No. 04-1282-JJF |
| ALSTOM POWER INC. | * |
| Defendant | * |

\*     \*     \*     \*     \*     \*     \*

**ALSTOM POWER INC.'S REPLY BRIEF IN SUPPORT OF
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road
Suite 200
Wilmington, Delaware  19806
(302) 888-3222

James E. Edwards, Jr.
Anthony F. Vittoria
Michael A. Schollaert
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone: (410) 685-1120
Fax:     (410) 547-0699

Counsel for Defendant
ALSTOM Power Inc.

Date:  April 14, 2006

TABLE OF CONTENTS

Page

I. ARGUMENT ........................................................................................................... 1

    A. Because AES Has Not, As Required By Law, Made A Showing Sufficient To Establish The Existence Of Elements Essential To Its Case -- And For Which It Would Bear The Burden Of Proof At Trial -- Summary Judgment Is Mandated ................................................ 1

    B. ALSTOM's Corrosion Warranty Obligation Is Conditional, And AES, Which Bears The Burden Of Proof, Has Made No Showing Sufficient To Establish Its Satisfaction Of The Conditions Precedent ........... 3

        1. In support of its Motion, ALSTOM pointed out the absence of evidence to support an essential element of AES' case ................. 3

        2. AES erroneously argues that compliance with the O&M Manuals is not a condition precedent ................................................ 5

            a. The EEC-supplied O&M Manuals are, in fact, the "Contractor's O&M Manuals" ............................................... 7

            b. The August 2001 O&M Manuals are "final" .......................... 7

            c. Construing the plain language of the condition as written is not unreasonable ...................................................... 8

            d. The fact that the O&M Manuals allowed for limited customization based on operating experience is irrelevant to AES' noncompliance with the condition precedent ........................................................................... 8

            e. Equally irrelevant is the fact that the O&M Manuals were submitted after the Purchase Order was signed ............ 9

        3. ALSTOM's subsequent conduct did confirm the applicability of the Purchase Order's condition precedent to ALSTOM's corrosion warranty ........................................................................... 9

        4. AES has made no showing that it satisfied specified conditions .................................................................................... 11

        5. AES has admitted that it did not satisfy other conditions, but has tried to excuse its admitted non-satisfaction of those conditions .................................................................................... 13

    C. Significant Elements Of AES' Damage Claim Are Unrecoverable As A Matter Of Law .................................................................................................. 15

        1. AES purposely has confused various of the Purchase Order warranties; ALSTOM's warranty against "accelerated corrosion" is for a maximum of 48 months ....................................... 15

        2. AES may not recover costs that constitute "betterment" and that are intended to address corrosion after expiration of the warranty period, including for future improvements to its water treatment system ........................................................................ 18

        3. AES' claimed costs -- particularly those that relate to purported future efforts to prevent "further corrosion" -- indisputably are grossly disproportionate to the value of the corroded components ................................................................... 20

## TABLE OF CITATIONS

### FEDERAL CASES

**Page**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 1

*Benitec Austl. Ltd. v. Promega Corp.*,
   C.A. No. 04-889 JJF, 2005 U.S. Dist. LEXIS 3545 (D. Del. Mar. 8, 2005) ........... 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................. 1, 2

*Green County v. Quinlan*,
   211 U.S. 582 (1909) .............................................................................................. 5, 6

*James E. Brady & Co. v. Rex Eno*,
   992 F.2d 864 (8th Cir. 1993) ................................................................................... 5

*Weiss v. Nw. Broad., Inc.*,
   140 F. Supp. 2d 336 (D. Del. 2001) ..................................................................... 5, 6

### STATE CASES

*Aeroglobal Capital Mgmt, LLC. v. Cirrus Indus., Inc.*,
   871 A.2d 428 (Del. 2005) ...................................................................................... 15

*Falcon Tankers, Inc. v. Litton Systems, Inc.*,
   355 A.2d 898 (Del. Super. Ct. 1976) ..................................................................... 20

*Haft v. Haft*,
   671 A.2d 413 (Del. Ch. 1995) ................................................................................ 10

*Jackson v. Krieger Ford, Inc.*,
   No. 88AP-1031, 1989 Ohio App. LEXIS 1201 (Ohio Ct. App. Mar. 28, 1989) ... 18

*Oberly v. Howard Hughes Med. Inst.*,
   472 A.2d 366 (Del. Ch. 1984) .................................................................................. 3

### STATUTES

Fed.R.Civ.P. 56 ............................................................................................................... 1

I.  **ARGUMENT**

   A.   **Because AES Has Not, As Required By Law, Made A Showing Sufficient To Establish The Existence Of Elements Essential To Its Case -- And For Which It Would Bear The Burden Of Proof At Trial -- Summary Judgment Is Mandated.**

AES contends, in opening its opposition brief, that the "case is not appropriate for summary judgment" because "*critical facts* are hotly contested by the parties."[1] Notably absent from Fed.R.Civ.P. 56 and applicable Supreme Court precedent, however, is any reference to "critical facts", irrespective of whether they are "hotly contested". Rather, the applicable standard requires that "the trial judge . . . grant summary judgment if there is no genuine issue as to any *material fact* and if the moving party is entitled to judgment as a matter of law."[2] Such is the case here.

The Federal Rules of Civil Procedure have, for nearly 75 years, authorized motions for summary judgment upon a proper showing of the lack of a genuine, triable issue of material fact.[3] In that regard, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"[4] Indeed, one of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims.[5]

Throughout its opposition brief, AES decries what it (wrongly) describes as ALSTOM's "new series of excuses not to honor its warranty"[6] and complains that ALSTOM "supports its motion with only one conclusory affidavit, no deposition excerpts, and no properly authenticated

---

[1] AES Opposition Brief ("Opp. Br.") at 2 (emphasis added).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added).
[3] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[4] *Id.* (citation omitted).
[5] *Id.*
[6] Opp. Br. at 2.

documentations."[7] AES' complaints reflect a grave misunderstanding of the summary judgment process and the burden that the moving and nonmoving parties bear pursuant to that process, particularly with respect to issues on which the nonmoving party bears the burden of proof. As the Supreme Court has observed, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."[8] Indeed, contrary to AES' contention[9], ALSTOM has no burden, in moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, particularly with respect to issues on which AES bears the burden of proof.[10] Rather, ALSTOM's burden is discharged merely "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."[11] ALSTOM has met its burden of making that "showing". The burden thus is on AES to "designate 'specific facts showing that there is a genuine issue for trial.'"[12] In such circumstances, the failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts -- whether "critical" or "hotly contested" -- as immaterial.[13]

As established by ALSTOM's opening brief and this submission, AES has failed to make a showing sufficient to establish the existence of elements essential to its case and on which it would bear the burden of proof at trial -- specifically, AES' satisfaction of contractual conditions precedent and the recoverability of certain of its claimed damages. Therefore, ALSTOM is entitled to partial summary judgment.

---

[7] *Id.* at 24.
[8] *Celotex*, 477 U.S. at 323 (emphasis in original).
[9] Opp. Br. at 23.
[10] *Celotex*, 477 U.S. at 325.
[11] *Id.*
[12] *Id.* at 324.
[13] *Id.* at 322-23.

B.  **ALSTOM's Corrosion Warranty Obligation Is Conditional, And AES, Which Bears The Burden Of Proof, Has Made No Showing Sufficient To Establish Its Satisfaction Of The Conditions Precedent.**

1.  **In support of its Motion, ALSTOM pointed out the absence of evidence to support an essential element of AES' case.**

ALSTOM has discharged its burden of "showing" the Court that there is an absence of evidence to support AES' satisfaction of the conditions precedent contained in ALSTOM's accelerated corrosion warranty -- an issue for which AES bears the burden of proof.[14]

In its opening brief, ALSTOM expressly cited to and quoted the operative, unequivocal language:

> Contractor's corrosion guaranty is conditioned upon operation and maintenance of the system in accordance with Contractor's Operation and Maintenance manuals, Owner's specified operating parameters, and a typical system operation at baseload and specified capacity factors.[15]

ALSTOM also cited, at some length, specific provisions of the O&M Manuals that reiterated earlier warnings to AES concerning the link between proper O&M procedures and the risk of accelerated corrosion.[16] Among the very specific instructions and procedures to which ALSTOM directed the Court's attention were those concerning the chloride content of the ash in the CDS (influenced by the chloride content of both the spray water and the fuel and feedstock being combusted in the boiler). Those procedures required AES to "[m]easure the chloride content of the ash and [to] measure cooling water conductivity to correlate to chloride content in the water and verify flue gas approach temperature, with those readings maintained in Plant Operating Logs."[17] ALSTOM also pointed to the provisions in the O&M Manual concerning regulation of the CDS temperature to ensure proper evaporation of the cooling water in the CDS and to prevent condensation in the ESP, which required that AES measure regularly the "wet bulb

---

[14] As ALSTOM has pointed out, AES has the burden, under Delaware law, of asserting and establishing that all conditions precedent have been satisfied. *See* ALSTOM Opening Brief ("Open. Br.") at 21; *see also Oberly v. Howard Hughes Med. Inst.*, 472 A.2d 366, 386 (Del. Ch. 1984).

[15] Open. Br. at 5-6 (quoting Purchase Order Excerpts (Exhibit 2 at Part III, ¶ 1.6; A016-A017)).

[16] Open. Br. at 8-12.

[17] Open. Br. at 11 (quoting O&M Manual Excerpts (Exhibit 6 at 9-2 and 9-3; A078-A079)).

temperature", operate the CDS in such a manner that the temperature of the flue gas would be maintained at a minimum temperature of 30°F above the wet bulb temperature, and maintain records of the wet bulb temperature measurements for each shift during initial operations.[18] ALSTOM further pointed out the O&M Manual requirement that the operating temperature of the CDS be "ramped up" during soot blowing cycles.[19]

Finally, and most significantly, ALSTOM's opening brief detailed the absence of evidence sufficient to establish that AES satisfied the contractual condition of operating and maintaining in accordance with the O&M Manuals because: (i) it did not monitor and control the chloride content of the CDS water; (ii) it did not monitor and control the chloride content of the ash; (iii) it did not adjust the flue gas approach temperature according to the level of chlorides and moisture in the system; (iv) it did not maintain the water nozzles in the CDS; (v) it did not operate the equipment at required temperatures during soot blowing; and (vi) it did not maintain mandated records of those required actions.[20]

Notably -- with the lone exception of issues relating to maintenance of the CDS water nozzles, for which AES admittedly has identified disputes of material fact -- AES has not presented evidence by which it has designated "specific facts showing that there is a genuine issue for trial" concerning its satisfaction of the contractual conditions precedent. Rather, as discussed more fully below, it has (i) erroneously argued that its compliance with the O&M Manuals is not a condition precedent to ALSTOM's corrosion warranty obligation, (ii) admitted that it has not satisfied certain conditions, but argued that its non-satisfaction is somehow excusable and (iii) remained utterly silent with respect to its satisfaction *vel non* of other conditions.

---

[18] Open. Br. at 10-11 (citing O&M Manual Excerpts (Exhibit 6 at 9-2, 9-4; A078-A080)).
[19] Open. Br. 11-12 (citing O&M Manual Excerpts (Exhibit 6 at 9-3; A079)).
[20] Open. Br. at 21-28.

### 2. AES erroneously argues that compliance with the O&M Manuals is not a condition precedent.

AES has tried to avoid the plain language of the corrosion warranty -- that "Contractor's corrosion guaranty *is conditioned upon* operation and maintenance of the system in accordance with Contractor's Operation and Maintenance manuals"[21] -- through a transparent mix of inapposite caselaw and irrelevant "facts". For example, in the seven pages of opposition brief argument by which AES addresses the condition precedent issue, it cites fifteen cases in supposed support of its position; notably, of those cases, only one -- *Weiss v. Northwest Broadcasting, Inc.*[22] -- involved a contract that utilized the term "condition", "on condition" or -- as here -- "is conditioned upon". Each of the other cases (with the exception of one, discussed below) construed language that was not, on its face, either conditional or contingent. AES' reliance on that inapposite caselaw appears purposeful, especially in light of a case that it obliquely cites in its opposing brief (absent from its Table of Citations), which makes the self-apparent observation that (as is the case here) "conditions precedent are usually introduced by conditional language such as 'provided that' or 'on condition.'"[23] The term utilized here -- "is conditioned upon" -- expresses a condition precedent with equal force. Consistently, as the sole pertinent case cited by AES has noted: "Under Delaware law, the provisions of a contract must be read as a whole and the words chosen, if they are neither expressly defined nor words of art, should be given their plain and normal meaning."[24] Here, the words chosen are plain and unambiguous -- "is conditioned upon" -- clearly, compliance with the requirements of the O&M Manuals unequivocally is in the nature of a condition precedent.

In that regard, AES' reliance on the Supreme Court's decision in *Green County v.*

---

[21] Purchase Order Excerpts (Exhibit 2 at Part III, ¶ 1.6; A017) (emphasis added).
[22] *Weiss v. Nw. Broad., Inc.*, 140 F. Supp. 2d 336 (D. Del. 2001).
[23] *James E. Brady & Co. v. Rex Eno*, 992 F.2d 864, 869 (8th Cir. 1993).
[24] *Weiss*, 140 F. Supp.2d at 344.

5

*Quinlan*[25] is misplaced. That case involved municipal bonds from 1871 that financed railroad construction and that, on their face, contained no conditional language whatsoever; rather, the language at issue had been included in a resolution passed by the citizens of Green County, Kentucky, authorizing the county to issue bonds "upon condition that [the railroad] company shall locate and construct said railroad through the said county of Green . . . ."[26] In the context of that wholly inapposite scenario, the Supreme Court considered the voters' use of the term "condition" as representing "a covenant or agreement, to be performed independently of the counter obligation with which it is associated."[27] Indeed, it did represent a covenant by the railroad, not a condition precedent to be satisfied by the bondholders.

In the instant case, the contractual provision is markedly different. Plainly, the language is described in terms of conditions -- "is conditioned upon" -- not in terms of promises. As noted in *Weiss*, a "breach of promise subjects the promisor to liability and damages, while non-occurrence of a condition prevents a party from acquiring a right or deprives him of one, but does not subject him to liability."[28] That distinction is pertinent. It would make no sense for ALSTOM to have bargained for the right to sue AES in damages for breach of promise following AES' failure to follow the O&M Manual requirements. Rather, the only reasonable interpretation of the provision is that ALSTOM bargained that, if AES did not comply with the O&M Manual requirements, the non-occurrence of that condition would preclude AES from then acquiring any right to pursue accelerated corrosion warranty claims against ALSTOM. The plain language and intent establishes a condition precedent.

The "multiple reasons" that AES implausibly posits for why that clear language should not be construed as written -- as a condition precedent -- are addressed below in *seriatim* fashion.

---

[25] *Green County v. Quinlan*, 211 U.S. 582 (1909).
[26] *Id.* at 591.
[27] *Id.* at 594.
[28] *Weiss*, 140 F. Supp. 2d at 346 (citing 5 WILLISTON ON CONTRACTS [3d ed.] § 665).

    a.  **The EEC-supplied O&M Manuals are, in fact, the "Contractor's O&M Manuals".**

  AES first contends that, because the Purchase Order's condition precedent language refers to "Contractor's O&M Manuals," it cannot possibly apply to the EEC-furnished O&M Manuals.[29] ALSTOM, as AES' own exhibits demonstrate, subcontracted with EEC to supply that air pollution equipment and the accompanying manuals that the Purchase Order required ALSTOM to furnish.[30] Those EEC-furnished manuals, which were submitted by ALSTOM to D/FD under the Purchase Order -- and which on their face reflect the fact that they were prepared for AES and D/FD for use with the Plant -- are the only "Contractor's O&M Manuals" that were to be (and were) furnished by ALSTOM for the air pollution control equipment, and the parties regarded them as such.[31]

    b.  **The August 2001 O&M Manuals are "final".**

  AES next contends that the August 2001 Contractor's O&M Manuals furnished by EEC are "not final", suggesting that the Purchase Order "does not require AES-PR to follow non-final manuals."[32] Nothing in the Purchase Order language refers to a "final" version of the O&M Manuals. However, in point of fact, the August 2001 version -- prepared by EEC and thereafter submitted by ALSTOM to D/FD -- specifically was accepted by D/FD as the "final" (and only) version.[33] Indeed, as AES itself has acknowledged, those manuals -- which were incorporated by reference under the terms of the Purchase Order as "Contract Documents"[34] -- were never formally modified to include any supplemental instructions.[35]

---

[29] Opp. Br. at 19.
[30] *Id.* at 6.
[31] *See* Supplemental Affidavit of William M. Jarvis (Exhibit 37 at ¶ 4-5; Reply Brief Appendix ("C") 001-C002).
[32] Opp. Br. at 20.
[33] Exhibit 37 at ¶ 4-5; C001-C002.
[34] *See* Purchase Order excerpts (Exhibit 2 at Art. 1.0; A004).
[35] Opp. Br. at 20 (*See e.g.*, B.243 (W. Jarvis Dep. 45:11-14) (EEC Manual not updated "to include the revised procedures")); *see also* Purchase Order Excerpts (Exhibit 2 at Art. 1.0; A004) (providing that Contract Documents "may be changed only by a writing executed by" D/FD and ALSTOM).

          c.          **Construing the plain language of the condition as written is not unreasonable.**

AES' third contention is that compliance with the O&M Manuals could not possibly be a condition precedent because they contain "an extensive set of literally thousands of specific operating and maintenance parameters with complex and intricate variables."[36] That, of course, is precisely the point -- ALSTOM did not intend to be bound to an accelerated corrosion warranty unless AES observed the "specific operating and maintenance parameters" that were mandated to limit the occurrence of accelerated corrosion. It was for that reason that the O&M Manuals mandated that AES record and document data that demonstrated compliance, and it is why ALSTOM further bargained for the right to demand "reasonable access to test and operating records . . . and other information necessary to satisfy" itself of "the validity of a claim" under the accelerated corrosion warranty.[37] Indeed, it would be commercially unreasonable to expect that instructions and conditions for the operation and maintenance of complex systems in a power plant must be reduced to a "specific act" to make compliance with those instructions and conditions an enforceable condition precedent.

          d.          **The fact that the O&M Manuals allowed for limited customization based on operating experience is irrelevant to AES' noncompliance with the condition precedent.**

AES' fourth "factual" contention is that because the O&M Manuals stated that the "customer may decide to alter or customize the maintenance as determined through operating experience," they could not be construed as imposing any specific requirements on AES.[38] In proffering its novel theory, AES has wholly overlooked the sentence that immediately precedes that on which it relies: "It is the responsibility of [AES] plant personnel to review this material *and incorporate the requirements* . . . ."[39] There is no evidence whatsoever that AES did

---

[36] Opp. Br. at 20.
[37] Purchase Order Excerpts (Exhibit 2 at Part III, ¶ 1.9; A017).
[38] Opp. Br. at 21.
[39] O&M Manual Excerpts (Exhibit 6 at ¶ 9-2; A078) (emphasis added).

anything to "incorporate the requirements" or, for that matter, to "alter or customize the maintenance" based on operating experience (and it would be ridiculous to suggest that AES would have been free to make wholesale modifications to specific procedures required for accelerated corrosion protection) -- rather, the evidence is undisputed that AES simply disregarded the requirements altogether. Concern about possible disregard, of course, was precisely what prompted ALSTOM to condition its accelerated corrosion warranty obligations on AES' compliance with the O&M Manual requirements. AES' failures relieved ALSTOM from any obligation under the accelerated corrosion warranty.

> e. **Equally irrelevant is the fact that the O&M Manuals were submitted after the Purchase Order was signed.**

Finally, AES contends that compliance with the O&M Manuals could not have been a condition precedent because they did not exist when the Purchase Order was formed. That contention, albeit true, is wholly irrelevant. The parties knew that O&M Manuals would be prepared and submitted after they had signed the Purchase Order, and that the Manuals would set forth the O&M parameters to limit accelerated corrosion. From as early a point as the design phase, AES was on notice that the O&M manual procedures that would be created would outline the maintenance required to limit the risk of accelerated corrosion problems.[40] Indeed, EEC specifically admonished AES early in the project that the accelerated corrosion guarantees "are based on proper operation and maintenance procedures."[41]

> 3. **ALSTOM's subsequent conduct did confirm the applicability of the Purchase Order's condition precedent to ALSTOM's corrosion warranty.**

The extent to which AES has gone to avoid summary judgment is perhaps best illustrated by its contention that "ALSTOM's conduct immediately after learning of the accelerated

---

[40] *See* Meeting Minutes of February 10 & 11, 2000 meeting (Exhibit 4 at 2; A054).
[41] *See* Exhibit 5 at 2; A060.

9

corrosion proves it did not believe the warranty contains any conditions precedent."[42] In support of that proposition, AES cites a case -- *Haft v. Haft*[43] -- that did not involve construction of condition precedent language in light of subsequent conduct. Even setting aside that important distinction, the case does not stand for the proposition, as suggested by AES, that a court should look to subsequent conduct in interpreting contractual language. Rather, as that decision plainly states: "Under the objective theory of contracts, when a writing is clear, 'the writing itself is the sole source for gaining an understanding of intent.'"[44] The writing here -- "is conditioned upon" -- is abundantly clear.

Even more significantly, the "factual" contentions made by AES in support of its position are flatly and patently untrue. AES has represented to the Court that the "first suggestion that the Contract contains a 'condition precedent' was made by ALSTOM's litigation counsel at a December 7, 2005 hearing in this matter," and that "ALSTOM's Answer is silent on AES-PR's alleged failure to meet specific conditions precedent . . . ."[45] Plainly, the contractual language itself identifies the condition at issue; it is not something conjured up after-the-fact. More to the point, even a cursory review of ALSTOM's November 2004 Answer would have revealed that ALSTOM not only raised the issue of the condition precedent at the outset, but unequivocally asserted that AES had failed to satisfy the conditions. Both Paragraphs 13 and 15 of ALSTOM's Answer expressly state: "ALSTOM refers to and incorporates Section 1.0 in Part III of the Purchase Order in its entirety, *including applicable conditions and exclusions of the warranties set forth in this Section*."[46] In Paragraph 19, ALSTOM even more specifically asserted: "ALSTOM . . . states that, among other things, *AES has failed to operate and maintain the system in accordance with the Operation and Maintenance Manuals*, Owner's specified operating

---

[42] Opp. Br. at 22-23.
[43] *Haft v. Haft*, 671 A.2d 413 (Del. Ch. 1995).
[44] *Id.* at 417 (citation omitted).
[45] Opp. Br. at 23, n.9.
[46] Answer at ¶¶ 13, 15 (emphasis added).