# Tab 35

OBER|KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Anthony F. Vittoria**
afvittoria@ober.com
410-347-7692

**Offices In**
Maryland
Washington, D.C.
Virginia

August 15, 2005

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

> **Re:**  *AES Puerto Rico, LP v. ALSTOM Power Inc.*
> <u>Civil Action No. 04-1282-JJF</u>

Dear Dan:

As you will recall from the mediation, Judge Thynge encouraged the parties to work together on issues that might arise during discovery. Accordingly, I am writing to you regarding ALSTOM's concerns about AES's Answers to ALSTOM's Interrogatories and AES's hard-copy document production. I will address AES's Answers to ALSTOM's Interrogatories first.

## I.    AES's Answers To ALSTOM's Interrogatories

As you know, the parties agreed to exchange limited Interrogatories prior to the Mediation. ALSTOM served AES with its Interrogatories on or about April 12, 2005. AES served its Answers on or about May 16, 2005. While AES's Answers are lacking in many respects, its Answer to Interrogatory No. 2 is particularly deficient and must be supplemented as soon as possible. Interrogatory No. 2 requests the identity of persons with knowledge of the CDS, ESP or FBHE Handcuff equipment and a description of the knowledge possessed by those individuals. In response, AES provided the names of only 13 individuals and failed to provide any information as to the knowledge possessed by those individuals.

A brief review of the hard-copy documents produced by AES provides the identity of several more individuals who had significant roles on the Project and who have knowledge and information regarding the CDS, the ESP or the FBHE Handcuff equipment. Those individuals include, but are certainly not limited to, Chip Bergeron, Jerry Cagle, Anibal Davila, Jorge Diaz, Stewart Ferguson, Rod Jorgensen, Calvin Kotrla, Luis Lopez, Gary Martin, Jorge Martinez, Julio Ortiz, Carlos Reyes, Carlos Gonzalez Rivera, Fernando Rodriguez, Eduardo Santiago, Brian Thompson, Doug Tomlin, Rich Triffinoff, Bill Vela, Rick Wylie, WeiLi Yu. The formal identification of all AES personnel who have knowledge and information regarding these matters is important because ALSTOM expects that AES will produce both the electronic document files and hard-copy document files for all of these individuals. As you know, it is AES's obligation to

C 074



Daniel D. Williams, Esquire
August 15, 2005
Page 2

identify all individuals responsive to this Interrogatory – it is not ALSTOM's obligation to identify those individuals AES failed to identify. Accordingly, AES should formally supplement its Answer to Interrogatory No. 2 with the identities of **all** persons having material knowledge regarding the CDS, the ESP or the FBHE Handcuff equipment, as well as a description of the information they possess, as soon as possible.

## II.    AES's Production Of Hard-Copy Documentation

In addition to limited Interrogatories, the parties agreed to exchange document requests prior to the Mediation. ALSTOM served AES with a Request for the Production of Documents on or about March 18, 2005. AES replied to the Request with its Responses and Objections on or about April 27, 2005.

As you know, ALSTOM had concerns regarding many of the objections asserted by AES to ALSTOM's various requests. Those concerns were detailed in my letter to you dated May 16, 2005. While I never received a substantive response from AES, you did offer to "meet and confer" regarding ALSTOM's concerns. At about the same time as your offer, AES began the production of its hard-copy documents. Accordingly, rather than attempt to discuss, in the abstract, all of AES's objections, it was simply more efficient for ALSTOM to review AES's hard-copy document production prior to a "meet and confer" so that it could determine whether any of AES's objections remained a concern. Having completed an initial review of the hard-copy documents that AES produced, ALSTOM not only still has concerns regarding AES's Responses and Objections to ALSTOM's Request for the Production of Documents, but it also has serious concerns regarding the form and substance of AES's hard-copy document production.

### A.    The Improper Format of AES's Hard-Copy Document Production

Rather than produce its hard-copy documents "as they are kept in the usual course of business", AES ostensibly produced the hard-copy documents organized and labeled to correspond with the categories in ALSTOM's request. Upon cursory review, however, it was immediately apparent that AES failed to fulfill its obligations under the Federal Rules to properly organize and label its hard-copy documents according to ALSTOM's categories. Rather, it is apparent that AES simply took copies of certain "binders" (which appear to be AES's project binders) and then simply placed several labels in front of those binders in a half-hearted attempt to comply with the Federal Rules. However, AES's placement of those "labels" was haphazard at best and, in certain instances, appeared completely random.

The following is not a comprehensive list, but simply sets forth examples of the seemingly arbitrary manner in which AES attempted to "categorize" and "label" its hard-copy document production.



Daniel D. Williams, Esquire
August 15, 2005
Page 3

- Binder 35 (AESPR 006738 through AESPR 006779) was labeled to be responsive to ALSTOM Document Request No. 32, which requested documents related to the "design, procurement and/or construction and installation of the CDS and/or the ESP, or Water Treatment System." Binder 35, however, contained CDS Water Quality and CPCO Condensate Return Logs. It did not contain any hard-copy documents responsive to Request No. 32. Interestingly, the hard-copy documents contained in Binder 35 were responsive to Document Request No. 53, which sought any "data compilations . . . relating to the CDS", but that Request was not identified on AES's label.

- Binder 1 (AESPR 007742 through AESPR 008216) was labeled to be responsive to ALSTOM Document Request No. 13, which requested documents related to the "application for the air permit submitted to the governmental agency or agencies having authority over the emissions from the Project." Binder 1, however, which was entitled "AES-PR Correspondence", did not contain any documents dating back to the time at which AES prepared or submitted its application to EPA for the air permit. Rather, Binder 1 contained several documents related to the Project's compliance with air emission standards, which is directly responsive to Request No. 56. That Request, however, was not identified on AES's label. In addition, Binder 1 contained a great number of hard-copy documents related to the coal crushers on the Project. Those hard-copy documents are not responsive to any of ALSTOM's Requests.

- Binders 4, 5 and 6 (AESPR 009225 through AESPR 010161) were each labeled to have been responsive to ALSTOM Document Request No. 69, which requested "documents related to any physical or operational modifications AES made to the CDS and/or ESP equipment, the Water Treatment System, or the Closed Cooling Water Cycle." Binders 4-6, however, contained D/FD Construction Weekly Status Reports and correspondence between AES and D/FD during the construction phase of the Project. None of the Binders contained documents dated from after November 28, 2002 – the date on which AES took operational control of the Project – and therefore do not, and cannot, contain any documents regarding modifications that AES made to the Project.

C 076



Daniel D. Williams, Esquire
August 15, 2005
Page 4

- Binders 40 and 42 (AESPR 022494 through AESPR 022646 and AESPR022736 through AESPR023621, respectively) were both labeled to have been responsive to ALSTOM Document Request No. 49, which requested "photographs, videotapes, drawings, or other graphic depictions of any aspect of the CDS and/or the ESP equipment, or the Water Treatment System." Neither Binder 40 nor 42, both of which contained emissions compliance reports, contained a single photograph or videotape. In addition, the few drawings contained in those binders relate to equipment other than the CDS, ESP or FBHE Handcuff equipment. Moreover, the graphs contained in Binders 40 and 42 simply chart the emissions from the Project and do not depict "any aspect of the CDS and/or the ESP equipment or the Water Treatment System."

- Documents AESPR 006780 through AESPR 009224, Binder 15 (AESPR 012555 through AESPR 012757), Binder 32 (AESPR 016396 through AESPR 016833), Binder 36 (AESPR 021506 through AESPR 022012) and Binder 22, (AESPR 025969 through AESPR 026614) were all labeled to be responsive to "Multiples". There simply was not an ALSTOM Document Request that was either entitled, or could be described as, "Multiples". Accordingly, AES produced approximately 4,225 pages of hard-copy documentation with absolutely no explanation as to which Request or Requests the hard-copy documents were supposedly responsive. Further, it is troubling that AES labeled those documents as being responsive to "Multiples" when it labeled other hard-copy documents as being responsive to up to 12 separate Requests. Finally, some of the documents contained in the "Multiples" category were directly responsive to other requests made by ALSTOM. For example, an AES e-mail entitled "Preservation of Documents for Lawsuit" (AESPR 007242 to AESPR 007245) is directly responsive to ALSTOM request No. 5, which sought any documents relating to the retention/destruction of electronic documents.

In addition to the foregoing examples, AES produced many hard-copy documents that simply were not responsive to any of ALSTOM's requests, including, but not limited to, hard-copy documents related to (1) archaeological information concerning the Project site, (2) the required reforestation of land in Puerto Rico, (3) the Project's switchyard, (4) climatological data dating back to 1931, (5) coal sizing, (6) soil liquefaction, (7) the erection and commissioning of



Daniel D. Williams, Esquire
August 15, 2005
Page 5

the turbine, (8) the refractory at the Project and (9) an unrelated lawsuit involving Brand Scaffold.

AES neither produced its hard-copy documents "as they are kept in the usual course of business", nor did it produce them organized and labeled to correspond with the categories in ALSTOM's request. Rather, AES produced a small portion of its documents – the "binders" – as they were kept in the usual course of business, but then haphazardly grouped those hard-copy documents with labels. By improperly and inadequately combining the two formats, AES has failed to satisfy its obligations under the Federal Rules.

**B.    The Substantive Inadequacies Of AES's Hard-Copy Document Production**

In addition to the inappropriate format of AES's hard-copy document production, there were several glaring substantive deficiencies to the production. First, a simple cross-check of the "labels" accompanying AES's hard-copy documents with ALSTOM's Document Request indicates that AES failed, by its own admission, to produce a single document responsive to ALSTOM Document Request Nos. 2 through 11, 20, 21, 30, 31, 34, 37 through 45, 60, 63, 67, 68, 70 through 72, and 74 through 76. Although AES objected to several of those Requests, those objections were addressed in my May 16, 2005 letter to you.

More importantly, there is a noticeable absence of specific categories of documentation in AES's hard-copy document production. In particular, AES produced very few of the personal files of the employees who worked on the Project. Specifically, AES produced the personal files of only David Stone and Rick Wylie. AES did not produce the personal files of any of the individuals identified in its Answers to ALSTOM's Interrogatories or any of the other individuals identified above (and in AES's own documents) who had significant roles on the Project.

In addition to the dearth of personal files, AES failed to produce the following highly relevant hard-copy documents that were specifically requested by ALSTOM:

- AES did not produce a copy of its air-permit application to EPA, the supplementations to that application, any of the hard-copy documentation leading up to the submission of the application, or EPA's approval of that application, as requested in Document Request No. 13.

- AES failed to produce any hard-copy documents relating to the original Water Treatment System at the Project, as requested by ALSTOM Request No. 14. AES is claiming damages relating to the modification of that system, so hard-copy documents relating

C 078



Daniel D. Williams, Esquire
August 15, 2005
Page 6

to the original design and performance of that system are highly relevant and material to AES's claim for damages.

- AES did not produce any hard-copy documents relating to the consideration, design or construction of the equipment that recirculated the ash from the ESP to the boilers. Those hard-copy documents would have been responsive to either or both Document Request Nos. 18 and 19.

- Document Request No. 34 requested all daily, monthly and other periodic reports relating to the Project. Despite this specific request, AES did not produce D/FD Monthly Report Nos. 1-2, 6, 10-11 or any dated after December, 2001. Further, AES produced weekly reports for the period of March of 2001 through June of 2002, only.

- AES failed to produce any insurance policies relating to the Project, as requested by Document Request No. 37.

- AES failed to produce all of the EEC Operations and Maintenance ("O&M") Manuals, as request by ALSTOM Request No. 52. Specifically, while AES produced O&M Volumes I-II and IV-VI, it failed to produce Volumes III and VII-IX. In addition, AES's production of Volume I – the Volume that contains specific instructions related to the daily operation and maintenance of the CDS and ESP equipment – was completely defective. Specifically, the Manual was completely out of order – it went from the cover page and table of contents, to Appendices A through C, then skipped to Appendix E, then to Appendix G, then to Appendix I, then to Appendix J, before going to Chapter 2, then to Chapter 5, then Chapters 8 through 10, then back to Chapter 1, then to Chapter 7, then to Appendix D, then to Appendix F, then H, and finally to Appendices K through O. In addition to this haphazard arrangement, the Manual was missing all of Chapters 3, 4 and 6 and parts of Chapters 2 and 5.

- AES has also failed to produce the Test and Monitoring Plan, which was expressly requested by ALSTOM by Request No. 60, despite the fact that other documentation – specifically, a May 31, 2001 letter from D/FD to AES's Stewart Ferguson – shows that AES was provided with a copy of that Plan on May 15, 2001.

C 079



Daniel D. Williams, Esquire
August 15, 2005
Page 7

- Document Request No. 62 requested documents related to the chloride content of the water used in the CDS. AES did not produce any hard-copy document records of chloride testing of the CDS water dating prior to September of 2003.

- Document Request No. 64 requested documentation relating to the chloride content of the ash within the CDS and ESP equipment. Despite the fact that the CDS/ESP O&M Manuals instructed AES to regularly monitor the chloride content of the ash, AES produced only anecdotal information regarding such monitoring.

- AES failed to produce any hard-copy documentation relating to the consumption of lime and limestone at the Project, despite the fact that such hard-copy documentation would be responsive to Document Request Nos. 53 and 75.

- Finally, and perhaps most troubling, AES neglected to provide any hard-copy documentation related to the calculation of AES's claim for over $10M in "estimated" damages. Those hard-copy documents would have been responsive to several of ALSTOM's Requests, including, but not limited to, Request No. 35, which specifically requested all documents relating to any damages sustained by AES as a result of problems with or failure of the CDS or ESP equipment.

While the documents and document-types identified above are simply examples of the substantive deficiencies of AES's hard-copy document production, they demonstrate the need for AES to revisit ALSTOM's Requests and supplement it hard-copy document production as soon as possible.

C.    **Illegible Hard-Copy Documents Produced by AES**

AES did not produce the originals of the hard-copy documents that it produced to ALSTOM. Rather, AES produced copies of those originals. While it is unclear from our review what the "generation" of those copies were (i.e. copies of the originals, copies of copies, etc.), it is clear that AES rendered a large number of the hard-copy documents illegible by the manner in which it copied and produced them. In addition, most of the photographs, the originals of which were presumably in color, were rendered illegible when they were converted to black-and-white copies by AES prior to production to ALSTOM. A list of the Bates numbers of the illegible

C 080



Daniel D. Williams, Esquire
August 15, 2005
Page 8

documents is attached hereto. ALSTOM requests that AES produce legible copies of the hard-copy documents contained in the attached list as soon as possible.

Because AES has (1) neglected to produce its hard-copy documentation in a proper format, (2) failed to produce highly relevant and responsive documents, and (3) produced several hundred illegible documents, it is appropriate that AES make a second production in which it produces **all** of its original hard-copy documents "as they are kept in the usual course of business".

I look forward to hearing from you in the near future regarding these matters.

Sincerely,

Anthony F. Vittoria

Attachment

AFV:
cc:    James E. Edwards, Jr., Esquire
       Michael A. Schollaert, Esquire

770997

## ILLEGIBLE HARD-COPY DOCUMENTS PRODUCED BY AES

| | | |
|---|---|---|
| AESPR 000395-000402 | AESPR 004799 | AESPR 005902-005903 |
| AESPR 000495-000508 | AESPR 004801 | AESPR 005953 |
| AESPR 004100 | AESPR 004806 | AESPR 005955 |
| AESPR 004102 | AESPR 005570 | AESPR 005963 |
| AESPR 004109-004112 | AESPR 005575 | AESPR 005966-005967 |
| AESPR 004114-004116 | AESPR 005602-005603 | AESPR 005969 |
| AESPR 004123-004124 | AESPR 005615 | AESPR 006028 |
| AESPR 004123 | AESPR 005617-005618 | AESPR 006043 |
| AESPR 004133-004134 | AESPR 005667 | AESPR 006147 |
| AESPR 004138 | AESPR 005669 | AESPR 006231 |
| AESPR 004140 | AESPR 005672 | AESPR 006334-006336 |
| AESPR 004145 | AESPR 005674 | AESPR 006341 |
| AESPR 004147-004148 | AESPR 005686-005693 | AESPR 006343-006344 |
| AESPR 004171-004191 | AESPR 005728-005729 | AESPR 006352 |
| AESPR 004262-004270 | AESPR 005735 | AESPR 006358 |
| AESPR 004317-004318 | AESPR 005746 | AESPR 006364 |
| AESPR 004424 | AESPR 005748 | AESPR 006412 |
| AESPR 004437-004439 | AESPR 005781 | AESPR 006432 |
| AESPR 004507 | AESPR 005788 | AESPR 006443 |
| AESPR 004778 | AESPR 005790-005791 | AESPR 006446 |
| AESPR 004789-004790 | AESPR 005841-005842 | AESPR 006466-006469 |
| AESPR 004796 | AESPR 005896 | AESPR 006482 |

| | | |
|---|---|---|
| AESPR 006484 | AESPR 006983 | AESPR 025851-025853 |
| AESPR 006587 | AESPR 006990-007001 | AESPR 025855-025857 |
| AESPR 006595 | AESPR 007008 | AESPR 025859-025861 |
| AESPR 006604 | AESPR 007014 | AESPR 025863-025865 |
| AESPR 006606 | AESPR 007022-007029 | AESPR 025909-025919 |
| AESPR 006611 | AESPR 007038-007043 | AESPR 025930-025935 |
| AESPR 006613-006614 | AESPR 007045-007047 | AESPR 025938-025939 |
| AESPR 006621-006622 | AESPR 007153 | AESPR 026093-026099 |
| AESPR 006624-006625 | AESPR 007210-007214 | AESPR 027034-02735 |
| AESPR 006657 | AESPR 007245 | AESPR 027039-027040 |
| AESPR 006664 | AESPR 007247-007248 | AESPR 027042-027046 |
| AESPR 006666 | AESPR 007339-007342 | AESPR 027049 |
| AESPR 006675 | AESPR 007391-007399 | AESPR 027055 |
| AESPR 006681 | AESPR 007496-007497 | AESPR 027057 |
| AESPR 006688 | AESPR 007515 | AESPR 027061 |
| AESPR 006695 | AESPR 007538-007550 | AESPR 027073 |
| AESPR 006719-006720 | AESPR 007561-007592 | AESPR 027079 |
| AESPR 006722 | AESPR 007663-007676 | AESPR 027090 |
| AESPR 006735 | AESPR 007685-007686 | AESPR 027109-027117 |
| AESPR 006874-006877 | AESPR 023679-023682 | AESPR 027123-027124 |
| AESPR 006935-006936 | AESPR 025612 | AESPR 027129 |
| AESPR 006949-006978 | AESPR 025745-025759 | AESPR 027142 |
| AESPR 006982 | AESPR 025763-025836 | AESPR 027147-027151 |

AESPR 027155-027156

AESPR 027157

AESPR 027160-027161

AESPR 027165

AESPR 027215

AESPR 027219-027237

AESPR 027244

AESPR 027246-027248

AESPR 027256

AESPR 027260-027261

AESPR 027273

AESPR 027279

AESPR 027507-027508

AESPR 027651-027652

AESPR 027183

AESPR 027185

AESPR 027195

AESPR 027201

AESPR 027204-027205

AESPR 027207

AESPR 027211

AESPR 027213

# Tab 36

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 6, 2005

Anthony F. Vittoria, Esquire
Ober, Kaler, Grimes & Schriver
120 East Baltimore Street
Baltimore, MD 21202-1643

**Re:    AES Puerto Rico, LLP v. ALSTOM Power, Inc.**

Dear Tony:

Thank you for your letter of August 15, 2005. For purposes of clarity, I address seriatim the issues you raise.

First, you claim that AES-PR's answer to Interrogatory No. 2 is "deficient." AES-PR objected to that interrogatory as overbroad and unduly burdensome to the extent it required AES-PR to identify "all persons" with any "personal knowledge" regarding the CDS, ESP, and FBHEs and to state for each person all "knowledge [the person] possesses." AES-PR stands by that objection. In response to what was plainly an overbroad interrogatory, in the spirit of cooperation, AES-PR provided you the names of current and former AES-PR employees who would, in its opinion, have the most pertinent knowledge of the CDS, ESP, and FBHEs. ALSTOM is capable of identifying persons with more peripheral knowledge of those issues by reviewing the documents produced by AES-PR.

Second, you claim that AES-PR failed to "properly organize and label its hard-copy" production. Frankly, AES-PR is surprised at this complaint, given that you did not raise this issue on May 25, 2005, when you spent the better part of the day reviewing the documents at our offices in Washington, D.C., and that you have not raised it in the over three months since then.

I can assure you that, in an effort to make our production more user-friendly, we spent significant time and resources reviewing and organizing our

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria
September 6, 2005
Page 2

responsive documents. Because categories of your document requests overlapped, and many of the requests were vague, we labeled the documents as best we could to correspond to your requests, although it is possible that documents labeled for one request are also responsive to other requests.

Third, you point to nine documents (for which you do not provide bates numbers) that AES-PR included in its production that you claim are "not responsive" to ALSTOM's requests. I can assure you that an attorney reviewed each and every document that was produced to you. In doing so, we attempted to provide you only with documents that were responsive to ALSTOM's requests. However, if there was a close call as to responsiveness or if we felt that including a document would add greater clarity to other documents, we erred on the side of inclusion. Given that our entire production was only thirteen boxes (of which you took only five), I cannot imagine this presents a genuine issue.

Fourth, you claim that AES-PR failed to produce a number of documents responsive to your requests. Initially, for several of your requests, AES-PR simply does not have responsive documents. As to others, as you note in your letter, AES-PR objected to several of ALSTOM's documents requests on April 27, 2005. You claim that "those objections were addressed in [your] May 16, 2005 letter to [AES-PR]." You omit, however, that I responded to your May 16th letter on May 17th. In that letter, I requested clarification on several of your objections and suggested that we meet and confer to clarify the outstanding issues regarding document production. You never responded to me and did not meet and confer. If your August 15th letter represents a desire to begin the meet-and-confer process, I remain available to discuss these issues at your convenience.

Fifth, you claim that several of the documents that AES-PR produced to ALSTOM were illegible. As you will recall, AES-PR offered to provide ALSTOM a full copy set of documents when you were in Washington, D.C. on May 25, 2005. Those documents were copies of the originals. ALSTOM refused to make timely payment for those copies and opted to make copies of copies. It is certainly possible that certain of your copies of copies may be difficult to read. We currently are reviewing the list of documents you provided which you claim are illegible and will attempt to locate in our copy set the originals for those that truly are illegible. I will let you know when we can make them available to you.

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria
September 6, 2005
Page 3

AES-PR remains committed to a quick and fair resolution of discovery issues as they arise. To that end, I'm happy to meet with you at any time about these issues.

I trust that this letter finds you and your colleagues well.

Best regards,

Daniel D. Williams

cc: Michael Schollaert, Esq.