# Tab 37



**OBER | KALER**
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Anthony F. Vittoria
afvittoria@ober.com
410-347-7692

Offices In
Maryland
Washington, D.C.
Virginia

September 16, 2005

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Re:  *AES Puerto Rico, LP v. ALSTOM Power Inc.*
     Civil Action No. 04-1282-JJF

Dear Dan:

I am writing to respond to your letter of September 6, 2005 which, in turn, was in response to my letter of August 15, 2005 regarding AES's deficient Answers to Interrogatories and hard-copy document production in this matter. It is troubling that, in your September 6th letter, you focused on certain peripheral matters rather than responding to the substantive issues addressed in my August 15th letter. Accordingly, I will first set forth below the substantive issues that you either failed to address or addressed inadequately. I will then, as necessary, touch on the peripheral issues that you raised in your letter.

**I.   Substantive Deficiency Of AES's Answer To ALSTOM Interrogatory No. 2**

There is ample legal precedent, both in Delaware and under the Federal Rules, that an Interrogatory requesting the identities of all persons who have knowledge of the facts of the case is completely appropriate and must be adequately answered. *See Patterson-Schwartz & Assocs., Inc. v. R. B. R., Ltd.*, C.A. No. 84C-DE-18, 1986 Del. Super. LEXIS 1395, *4 (Del. Super. Ct. June 20, 1986); *In re Grand Casinos, Inc.*, 181 F.R.D. 615, 618 (D. Minn. 1998); *Moreno-Rodriguez v. Pride Construction, Inc.*, No. 5: 95-CV-583-BR(2), 1996 U.S. Dist. LEXIS 1321 (E.D.N.C. January 25, 1996).

ALSTOM has demonstrated that AES's Answer to ALSTOM Interrogatory No. 2 is deficient. Nevertheless, AES has thus far refused to supplement its Answer. It is my understanding from your letter that AES continues to refuse to supplement its Answer. Please inform immediately if my understanding is incorrect.

C 088



Daniel D. Williams, Esquire
September 16, 2005
Page 2


## II. Substantive Deficiencies In AES's Production Of Hard-Copy Documentation

In my August 15th letter, I set forth several categories of hard-copy documents which were requested by ALSTOM but that AES has either failed or refused to produce. Those documents include the following:

- The personal files of any of the individuals identified in AES's Answers to ALSTOM's Interrogatories or any of the other individuals who had significant roles on the Project, as identified in my August 15, 2005 letter.

- AES's air-permit application to EPA, the supplementations to that application, any of the hard-copy documentation leading up to the submission of the application, or EPA's approval of that application.

- Hard-copy documents relating to the original Water Treatment System at the Project.

- Hard-copy documents relating to the consideration, design or construction of the equipment that recirculated the ash from the ESP to the boilers.

- Daily reports, D/FD Monthly Report Nos. 1-2, 6, 10-11 or any Monthly Reports dated after December, 2001 or any weekly reports, other than for the period of March of 2001 through June of 2002.

- Insurance policies relating to the Project.

- Volumes III and VII-IX of the EEC Operations and Maintenance ("O&M") Manuals, and Chapters 3, 4 and 6 and parts of Chapters 2 and 5 of Volume I.

- The Test and Monitoring Plan.

- Hard-copy document records of chloride testing of the CDS water dating prior to September of 2003.

C 089


OBER | KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 16, 2005
Page 3

- Hard-copy documentation relating to the chloride content of the ash within the CDS and ESP equipment.

- Hard-copy documentation relating to the consumption of lime and limestone at the Project.

- Hard-copy documentation related to the calculation of AES's claim for over $10M in "estimated" damages.

You failed to address any of these categories of hard-copy documentation in your September 6, 2005 letter. Accordingly, it is my understanding that AES continues to refuse to supplement its hard-copy document production and produce the hard-copy documents set forth above. Please notify me if my understanding in this regard is incorrect.

### III. Peripheral Issues Raised In AES's September 6, 2005 Letter

In addition to the substantive issues raised above, you raised several issues that would have to be characterized as peripheral, for lack of a better word. I will address those issues below.

First, you failed to explain how the five deficiencies in the format of AES's production outlined in ALSTOM August 15, 2005 letter occurred – including the fact that some documents were labeled to be responsive to up to 12 separate requests, while approximately 4,225 pages of hard-copy documentation did not have *any* meaningful label. Nor did you explain how hundreds of pages of non-responsive hard-copy documents were produced. (The Bates numbers of a short list of examples of those non-responsive hard copy documents is attached hereto.) Despite this fact, you assert that AES "spent significant time and resources reviewing and organizing responsive documents".

AES chose to produce its hard-copy documents in a format that, under the Federal Rules, required AES to (1) produce only those hard-copy documents that were responsive to ALSTOM's requests and (2) group and label those hard-copy documents according to ALSTOM's requests. Nevertheless, and despite allegedly expending "significant time and resources", AES produced at least 6,800 pages of documentation – approximately one quarter of AES's entire production – that were either irrelevant, incorrectly labeled or effectively unlabeled.

Next, as you know, ALSTOM had obtained thousands of pages of hard-copy documents from AES pursuant to a subpoena in a related case prior to AES's production in this case. Upon our review of AES's production on May 25, 2005, it was readily apparent that a great number of the hard-copy documents produced were the exact same hard-copy documents that had been produced previously. Accordingly, ALSTOM needed to copy only a portion of the hard-copy



Daniel D. Williams, Esquire
September 16, 2005
Page 4

documents produced on May 25, 2005 to have a complete set. Nevertheless, and despite having been informed of this on the day of our review, you insist on mischaracterizing the facts by asserting that ALSTOM "took only five" of the thirteen boxes of documents produced by AES.

Third, I clearly acknowledged and addressed your May 17th letter on page 2 of my August 15, 2005 letter. Nonetheless, you somehow assert that I ignored the fact that you did respond (although not substantively) to my May 16, 2005 letter regarding AES's objections.

Fourth, you blatantly mischaracterize our conversation of May 25, 2005 regarding the reimbursement of AES's copying costs. During our conversation on that day, you unreasonably demanded that Mike Schollaert and I "guarantee" that ALSTOM or Ober, Kaler, Grimes & Shriver, P.C. would pay AES's copying costs within seven days. Mr. Schollaert and I both explained to you that seven days was an arbitrarily short period of time and that because of certain client and firm policies, we could not guarantee payment in that time period on the spot. It was after that representation that you refused to allow us to take the copies of the hard-copy documents that we reviewed. Despite this, you improperly assert that "ALSTOM refused to make timely payment for those copies."

Finally, ALSTOM has gone through extraordinary lengths in its efforts to resolve this discovery dispute. ALSTOM has set forth its position on this dispute in this letter, the 9 page letter of May 16 and the 8 page letter of August 15. Nevertheless, you appear to assert in both your May 17, 2005 letter and your September 6, 2005 letter that ALSTOM has an obligation to go beyond the exchange of this detailed correspondence and "meet and confer" regarding this discovery dispute.

ALSTOM believes that face-to-face meetings and telephonic conferences are generally very beneficial in the resolution of discovery disputes. However, our experience with such meetings and telephone conferences in both this matter and in the related matter referred to above – and your continued penchant for completely misrepresenting what was discussed in those meetings and conferences – has convinced ALSTOM that such meetings and conferences are a hindrance, rather than an aid, to the efficient resolution of disputes in this case.

Further, there is no requirement in either the Federal Rules or the Local Rules of the District of Delaware that requires the parties to "meet and confer" to discuss discovery disputes. Rather, Local Rule 7.1.1 provides only that a party filing a non-dispositive motion must also file a "statement that the attorney making the motion has made a reasonable effort to reach an agreement with the opposing attorneys on the matters set forth in the motion." In light of the steps taken, ALSTOM is confident that the Court will conclude that ALSTOM has exerted more than a "reasonable effort to reach an agreement", as required by the Local Rules.

C 091

OBER│KALER
A Professional Corporation

Daniel D. Williams, Esquire
September 16, 2005
Page 5

      Please inform me immediately whether, in light of the foregoing, AES intends to alter its position and supplement its hard-copy document production or any of its Interrogatory Answers. If AES fails to provide such notice, ALSTOM will be forced to assume that AES refuses to supplement its deficient discovery and will take whatever steps are necessary and appropriate.

                                Sincerely,

                                Anthony F. Vittoria

Attachment

cc:    James E. Edwards, Jr., Esquire
        Michael A. Schollaert, Esquire
        Kevin S. Corwin, Esquire

AFV
772846

# EXAMPLES OF IRRELEVANT HARD-COPY DOCUMENTS PRODUCED BY AES-PR

| | |
|---|---|
| AESPR-007863 through AESPR-007870 | D/FD Project Acceleration Incentive Letter |
| AESPR-007874 | Staff Incentive Plan |
| AESPR-007896 through AESPR-007899 | AES/DFD Schedule Correspondence |
| AESPR-007890, AESPR-007910, AESPR-007912 through AESPR-007927 | Dredging/CWA Compliance |
| AESPR-007902 through AESPR-007909 | Anchor Bolt Testing |
| AESPR-007938 through AESPR-007946 | Design & Construction of Dock Facility |
| AESPR-007955 through AESPR-007957 | AES/DFD Payment Disputes |
| AESPR-007967 through AESPR-007971 | AES/DFD: Start-Up and Notice to Proceed |
| AESPR-007972 through AESPR-007974 | Cable Tray Supports |
| AESPR-007997 through AESPR-008005, AESPR-008011 through AESPR-008013 | Unrelated Brand Scaffold Litigation |
| AESPR-010866 through AESPR-010868 AESPR-010884 through AESPR-010896 AESPR-010956 through AESPR-010961 | Archaeological Information |
| AESPR-010830, AESPR-010847 AESPR-011103 through AESPR-011110 | "Right of Way" Issues |
| AESPR-010974 through AESPR-010982 | Warehouse & Guardhouse Issues |
| AESPR-011426 through AESPR-011432 | "Access" Roads |
| AESPR-011734 through AESPR-011761 | Stack Lining (Refractory) |
| AESPR-011834 through AESPR-011835 | Tonghae Reliability Run |
| AESPR-011929 through AESPR-011935 | Quality Auditing Report |
| AESPR-026015 through AESPR-026045 | "Ash Removal Process: Nov. 2003 Scheduled Outage" |

C 093

| AESPR-026078 through AESPR-026614 | "Inspection Procedure for Magnetic Particle Examination of Turbine Components"; Ultrasonic Thickness Inspection: Unit 2 Ash Hoppers |
|---|---|
| AESPR-026794 through AESPR-026877 | "AES Final Refractory Report: Nov. 2003 Outage" |
| AESPR-026878 through AESPR-026885 | J.T. Thorpe Summary of Refractory Reports |
| AESPR-026886 through AESPR-026914 | Non-destructive Examination of Unit 2 CFB Boilers |
| AESPR-026915 through AESPR-026921 | Unit #2 Pre-outage Vibration Analysis |
| AESPR-026921 through AESPR-026925 | Unit #2 Balancing During Restart; Non-responsive |
| AESPR-026926 through AESPR-027030 | All Turbine Documents; Non-responsive |

# Tab 38

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 27, 2005

**Via E-Mail and First Class Mail**

Anthony F. Vittoria, Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, MD 21202-1643

   Re: **AES Puerto Rico, L.P. v. Alstom Power, Inc.**

Dear Tony:

   I write in response to your September 16, 2005 letter concerning AES-PR's interrogatory responses and production of paper documents. Your letter mischaracterizes AES-PR's document production to date, and it misconstrues AES-PR's positions with respect to various issues. This confusion is exactly why I have recommended repeatedly that we meet and confer concerning discovery. While you claim that the governing court rules do not require such a meeting, Fed. R. Civ. P. 37(a)(2)(B) requires exactly that, and it does so to promote the efficient resolution of discovery disputes. I request that you reconsider your refusal to meet and confer so that we can move beyond exchanges of long letters and instead proceed efficiently with discovery.

   Your letter contains a set of issues you label "substantive," and this response focuses on those issues. It appears that you no longer are demanding action on my part with respect to the issues you have included in the "peripheral" categories. If you are requesting anything with respect to the issues you label "peripheral," I propose that we discuss them when we meet and confer.

   I respond to your "substantive" issues as follows:

   1. AES-PR properly objected and responded to Interrogatory No. 2. As drafted, Interrogatory No. 2 would have required AES-PR to interview each of the over 100 plant employees, as well as any contractors, vendors, or other persons of

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
September 27, 2005
Page 2

which AES-PR was aware, to determine whether they had <u>any knowledge whatsoever</u> of the CDS, ESP, and FBHE Handcuffs and then to discover and document in detail the extent of each such person's knowledge. That request is overbroad, and the effort required to comply with it would be unduly burdensome. Decisions from federal courts in both Delaware and Puerto Rico make clear that what Alstom demands is not required. *See Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534, 538 (D. Del. 1962) (finding a similar interrogatory to be "burdensome and oppressive"); *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 313 (D. P.R. 1985) (finding a similar interrogatory to be "overbroad and unduly burdensome"). In the spirit of cooperation, AES-PR provided Alstom with the names of the thirteen employees who have substantive knowledge of the contested systems and who AES-PR believes have information material to this lawsuit. Thus, rather than simply stand on our well-placed objection, in order to avoid unnecessary discovery disputes, we provided the relevant information that Alstom's interrogatory appears to seek.

Notably, AES-PR propounded a similar but properly limited interrogatory to Alstom asking for the names of employees who participated in Alstom's efforts to analyze the cause(s) of and/or to remedy the ESP corrosion. In response, Alstom gave AES-PR a list of employees who "may" have the requested information. By failing to confirm whether anyone on Alstom's list <u>actually has</u> relevant information, Alstom has not provided a meaningful disclosure. Alstom's complaint about AES-PR's interrogatory response rings hollow in light of its own refusal to provide a meaningful response to AES-PR's similar but properly limited interrogatory.

2. You claim that AES-PR failed to provide you with the personal files of individuals who had significant roles on the Project. That is incorrect. Given the industrial nature of the Plant, most of the plant's employees do not maintain personal files. For those who do, however, AES-PR has produced responsive documents from those files.

3. You claim that AES-PR has not provided hardcopy documents relating to the "original" Water Treatment System. That is incorrect. AES-PR produced a number of documents relating to the original Water Treatment System, including (by way of example only) the "Plant Design Book," which contains the design specifications for the Water Treatment System, and several other design books that contain information relating to the original Water Treatment System.

C 096

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
September 27, 2005
Page 3

    4.    You claim that AES-PR did not produce documents concerning the re-circulation of ash to the boilers. That is incorrect. By way of example only, AES-PR produced a copy of EEC's August 2001 version of the O&M manual, which includes materials about the re-circulation of ash to the boilers.

    5.    You claim that AES-PR failed to produce Volumes III, VII, VIII, and IX of EEC's August 2001 version of the Operations and Maintenance Manual. That is incorrect. We produced those volumes to Alstom on May 25, 2005. They are Bates-stamped AESPR 001541-001743, AESPR 023703-024190, AESPR 024191-024873, and AESPR 024874-025609, respectively.

    6.    You claim that AES-PR did not produce hardcopy documents relating to the chloride content of the ash within the CDS and ESP. That is incorrect. By way of example, AES-PR made available to Alstom a multi-page document entitled "Ash Study Chloride Content," which is bates stamped AESPR 023622 – 023652.

    7.    You complain that AES-PR has not produced its insurance policies for the plant. AES-PR is the <u>plaintiff</u> in this lawsuit, and accordingly its insurance policy will not compensate Alstom. For that reason, AES-PR's April 27, 2005 responses objected to this document request as "irrelevant to the issues in this litigation." *Accord* Fed. R. Civ. P. 26(a)(1)(D) (requiring initial disclosure of insurance policies only when the insurance company "may be liable to satisfy part or all of a judgment" or may be required to indemnify or reimburse payments made to satisfy the judgment). In the five months since Alstom received AES-PR's objection, it has not articulated any theory as to why the AES-PR's insurance policies would be relevant here.

    8.    You claim that AES-PR failed to produce documents relating to the consumption of lime and limestone at the Plant. None of the 76 document requests Alstom issued requests lime or limestone consumption data. If you believe that such data are called for by any of Alstom's document requests, please advise me as to which one it is.

    9.    You claim that there are various gaps in AES-PR's production of D/FD monthly and weekly reports. While we doubt that these reports contain information relevant to this lawsuit, we have conducted a good faith effort to locate all of the monthly and weekly reports in AES-PR's possession and have made all of the ones we could locate available to you.

C 097

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
September 27, 2005
Page 4

    10.    You claim that AES did not produce any hardcopy documents reflecting chloride testing of the CDS water prior to September 2003. While we conducted a good faith effort to locate all such hard-copy documents in AES-PR's possession, we have not yet located any.

    11.    With respect to two of the categories on your list, AES-PR recently located a small quantity of additional documents that it will be producing shortly. These documents relate to the Plant's air permits and the "Test and Monitoring Plan." In addition, as you know, AES-PR recently produced six boxes of documents to Alstom in response to Alstom's third-party subpoena to AES-PR in Alstom's state-court lawsuit against D/FD. Your partner Jeff Regner has copied and sent them to your offices in Baltimore. Some of these documents may be responsive to document requests in this litigation as well.

    Finally, below I address briefly one of the issues your September 16 letter labels "peripheral," although I stand ready to discuss each of them point-by-point if you later decide that any of them raises a substantive area of disagreement concerning further discovery in this case. On page 4 of your letter, you accuse me of mischaracterizing our May 25, 2005 conversation and you go on to state that I have "a penchant for completely mischaracterizing" issues discussed during our telephone conversations. Those accusations are completely unfounded and unfair. As you no doubt recall, when you came to our offices on May 25, 2005 to review documents, I offered to provide Alstom a full copy set of the documents in question so long as you would agree to pay the copying charges. You stated that your law firm, Ober Kaler, would not pay the charges on behalf of its client. Instead, you suggested that I send a bill to Alstom in an attempt to collect from them directly, notwithstanding that Alstom already owes my client millions of dollars. I then asked if you could commit to a timeframe for <u>Alstom</u> to make payment for the copies (since Ober Kaler refused to make payment at any time ever), and you stated that you would not provide any timeframe whatsoever to make payment. It was only then that I refused to extend indefinite credit to Alstom and asked that you contract directly to have the photocopies made.

    Sincerely,

    Daniel D. Williams

C 098

# Tab 39

# OBER | KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Anthony F. Vittoria**
afvittoria@ober.com
410-347-7692

**Offices In**
Maryland
Washington, D.C.
Virginia

October 25, 2005

Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Re: *AES Puerto Rico, LP v. ALSTOM Power Inc.*
    **Civil Action No. 04-1282-JJF**

Dear Dan:

We are in receipt of your letter dated October 19, 2005 regarding the above-referenced case. In that letter you stated that AES "must insist" upon a deadline for the exchange of documents in this matter.

Regardless of whether you "insist", ALSTOM will not obligate itself to an arbitrary and unilaterally imposed deadline. Further, ALSTOM takes issue to the extent that AES intends to rely upon its arbitrary deadline for the production of its relevant and responsive hard-copy documents.

In that regard, your letter failed to address the production of AES's documents relating to the EPA permit and the "Test and Monitoring Plan." AES has admitted it is in possession of those documents, but has thus far failed or refused to produce them.

In addition, you also failed to address any supplementation to AES's electronic document production. Over two months ago, AES stated that it would produce additional electronic documents "in about a month", but has thus far failed or refused to do so. As you know, ALSTOM has been forced to file a motion to compel because of this failure on the part of AES.

In regard to ALSTOM personal files, I will repeat that ALSTOM is not aware of any responsive hard-copy documents that it has not produced. If you believe that ALSTOM has failed to produce certain documents, please inform us of those documents. Unlike AES, ALSTOM has been very responsive to such supplemental requests.

C 099

**OBER|KALER**
A Professional Corporation

Daniel D. Williams, Esquire
October 25, 2005
Page 2

                    Sincerely,

                    Anthony F. Vittoria

AFV:

cc:   James E. Edwards, Jr., Esquire
      Michael A. Schollaert, Esquire
      Kevin S. Corwin, Esquire

AFV
775017

C 100