# Tab E

LAW OFFICES
## WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 1, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

Anthony F. Vittoria, Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

    Re:   **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Tony:

      I write in response to your letter of January 24, 2006 regarding discovery issues. Your letter begins by accusing AES-PR of "fail[ing] to fulfill its discovery obligations in this case." Not only is that sort of inflammatory accusation detrimental to the collaborative process of resolving discovery disputes through the meet-and-confer process, it is patently false. I will address the issues you raise in your letter in the same order in which you present them.

      First, with respect to Interrogatory No. 2, as you know, prior to the December 7, 2005 Discovery Conference before Judge Farnan, the parties disagreed as to whether AES-PR is required to state the specific knowledge that each person it identifies possesses. Following the Discovery Conference, we met and conferred to resolve this and other discovery disputes and agreed that ALSTOM would modify its interrogatory to request only the "identity" of "AES-PR employees performing specific job functions." That agreement is memorialized in ALSTOM's December 15, 2005 letter to Judge Farnan. Contrary to our compromise, your letter of last week reverts to ALSTOM's initial demand for "the knowledge that each identified person possesses." I would ask you to reconsider that demand in light of the agreement memorialized in ALSTOM's December 15 letter to the Court. Moreover, contrary to the specific agreement memorialized in the December 15 letter, shortly after

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
February 1, 2006
Page 2

sending the December 15 letter to the Court, you e-mailed me to request "the identities of any of the employees or outside vendors whose job responsibilities or assignments concern, or who were otherwise involved in" specified activities. Notwithstanding that your request asked for more than we had agreed, we provided you with the list you requested. Although we believe we have fully complied with the terms of the agreement memorialized in the December 15 letter, and indeed have provided more information than we were obliged to under that agreement, in order to resolve this issue, we would be willing to attempt to break down the list we provided by sub-category. Please let me know if our doing so will resolve this issue to ALSTOM's satisfaction.

Second, your letter is incorrect when it asserts that AES-PR "purposefully or negligently withheld information relating to its damages claim" and that it has not produced paper and electronic documents to support its damages claims. It has indeed produced such documents and has not withheld information. ALSTOM fully anticipated that AES-PR would be supplementing its May 16, 2005 response to ALSTOM's interrogatory concerning damages, and it did so for good reason – that Response stated explicitly that the damages estimates it contained "are subject to revision." Recognizing that the May 16, 2005 damages estimates were likely to be revised, ALSTOM itself in its Notice of Deposition listed as a topic "[a]ny changes, modifications or alterations to any of the damages claims previously asserted by AES against ALSTOM." AES-PR went beyond what was called for in ALSTOM's deposition notice and provided a written supplement to its interrogatory response the day before the deposition. ALSTOM then conducted the deposition for seven full hours and, at the conclusion of the deposition, requested to continue it at some unspecified date in the future. Having specifically requested that any updates to AES-PR's damages estimates be provided at the deposition, and then having deposed AES-PR's corporate designee for seven hours before objecting for the first time to the timing of AES-PR's supplemental interrogatory response, ALSTOM is not entitled to re-depose AES-PR on its damages claim.

Third, with regard to the 30(b)(6) deposition of AES-PR on document issues, AES-PR disagrees that its witnesses were not prepared to testify as to all of the subjects set forth in the Notice of Deposition. With regard to Mr. Hernandez's personal involvement, as you are well aware, we are under no obligation to produce a 30(b)(6) witness who was personally involved in each aspect of each of the specified topics. Nevertheless, AES-PR worked hard to find the best witnesses to testify as to the broad and varied topics listed in your deposition notice and we

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
February 1, 2006
Page 3

believe we produced the most knowledgeable witnesses on the topics listed. Your letter's characterization of Mr. Hernandez's testimony is at odds with our recollection of the deposition. Rather than debate the issue based on each side's recollection of what transpired at the deposition, however, we suggest that we revisit this issue after receipt of the transcript from the deposition. As of today, we have not received a copy of the transcript. If you have received it, please forward it to us so that we can respond to your request promptly.

   Fourth, we believe the index that Ms. Torres referred to in the document deposition is an index she created at our direction in order to keep track of the documents AES-PR collected and produced and is therefore protected by the attorney-client and work product privileges. According to Mr. Schollaert, ALSTOM created a similar index of its paper documents, and despite my repeated requests, ALSTOM has refused to produce its index. Please let me know if you would like to revisit the question whether <u>both</u> parties should produce the document indices they created as part of the litigation process.

   Fifth, we disagree that Mr. Hernandez "admitted" at the 30(b)(6) deposition that he had no knowledge of the costs involved in retrieving the "aesc.com" emails from archives or back-up tapes. Frankly, we do not recall Mr. Hernandez being examined on that point. We can revisit this point once we have the benefit of a transcript from the deposition. However, even if Mr. Hernandez did so testify, ALSTOM's unsupported legal assertion that AES-PR has thus "failed to sustain its burden" concerning the costs to restore back-up tapes clearly misstates the law.

   Sixth, your letter requests "the names of the individuals who performed . . . searches" of the AES-PR "I-drive" and "information relating to the manner in which the search was conducted." Having already taken the deposition of AES-PR on document collection issues, it is simply not appropriate now to ask counsel to supply information in response to questions ALSTOM chose not to ask at that deposition. Should ALSTOM wish to submit an interrogatory on this issue, we will respond to it as contemplated under the Federal Rules of Civil Procedure.

   Seventh, your letter misstates AES-PR employee Elias Sostre's testimony concerning CEMS data. Mr. Sostre stated that he believed he could find 6-minute average opacity data on CEMS – not that he could prepare a comprehensive spreadsheet of such data spanning six-minute time intervals over

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
February 1, 2006
Page 4


several years. Thus, the assertion in your letter that such a data report could be prepared "at little or no cost" simply has no support in Mr. Sostre's testimony. Moreover, as you know, AES-PR has no duty <u>to create</u> documents; it is required only to make available for inspection and copying the documents that already exist. We have now done so for the six-minute opacity data in <u>two</u> ways – first by giving ALSTOM access to the CEMS system itself so that ALSTOM can copy any and all data it needs, and second by producing in paper form print-outs of CEMS data in six-minute intervals. By letter dated January 5, 2006, I informed you that the paper print-outs were available for ALSTOM's inspection and copying "at your convenience," but you waited until January 19, 2006 to send a copy service to retrieve them for copying. I trust that such paper documents provide all of the information you need. If you would like the information in electronic form, we stand by our offer to make the data on the CEMS system available to you for inspection and copying at any time between now and March 10, 2006.

   Eighth, while we do not believe that any employee responses to the questions in the "Boiler Qualification Book" to which you refer could possibly have any meaningful significance for this litigation, and while we disagree with your characterization of the deposition testimony about this booklet, we are currently seeking to determine whether any "written or typed answers to the questions contained in the Boiler Qualification Book" can be located. If they can, we will produce them.

   Finally, with respect to the subpoena that you mailed to non-party John Toher (but failed to serve as required under the rules), as we have discussed, testifying experts will supplement their document productions during the period for expert discovery after submission of expert reports. You have not provided a log of the purportedly privileged or confidential Altran documents post-dating the date on which you claim ALSTOM entered into a joint defense agreement with Liberty Mutual, and AES-PR has not produced a privilege log for Mr. Toher's documents. It seems to me that it would make sense for privilege logs to be produced during the period that experts are required to produce documents. However, if you would like to revisit the question whether <u>both</u> parties should produce such logs prior to the

WILLIAMS & CONNOLLY LLP

Anthony F. Vittoria, Esquire
February 1, 2006
Page 5

time period for expert discovery, please let me know and I will consider such a proposal.

Sincerely,

Daniel D. Williams