# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AES PUERTO RICO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 04-1282-JJF |
| | ) | |
| ALSTOM POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SURREPLY OF PLAINTIFF AES PUERTO RICO, L.P. IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

Defendant ALSTOM Power, Inc. ("ALSTOM") has submitted a 17-page Reply brief and 190-page supplemental appendix in support of its motion for sanctions. The Reply contains a completely new theory to justify its requested relief -- that Plaintiff AES Puerto Rico, L.P. ("AES-PR") allegedly failed to produce air emissions data that ALSTOM recently received directly from the United States Environmental Protection Agency ("EPA") in response to a Freedom of Information Act ("FOIA") request. Specifically, ALSTOM claims that it lacked information AES-PR attaches to its quarterly reports to the EPA concerning the plant's air emissions violations and the contemporaneous explanations for the violations. That assertion is just wrong. The plant emissions data, including the contemporaneous reasons for each violation, is stored in a computer system known as the Continuous Emissions Monitoring System ("CEMS"). AES-PR produced the CEMS data to ALSTOM in December 2005 in spreadsheet form and also provided ALSTOM full access to copy whatever data it wanted from the system itself. Thus, it is nothing short of astounding that ALSTOM would submit a Reply brief to this

Court claiming that sanctions should be imposed on AES-PR on the theory that AES-PR hid information contained in the CEMS system from ALSTOM.

## I.     AES-PR PREVIOUSLY PRODUCED THE CEMS REPORTS THAT ALSTOM CLAIMS IT HAD NOT RECEIVED.

The AES-PR plant has a computer system known as CEMS that stores data concerning plant emissions as well as information concerning the reasons for emissions violations. ALSTOM rests its argument that AES-PR should be sanctioned on excerpts from CEMS reports contained in three transmittals of the CEMS data and related information to the EPA. *See* Reply Br. 8-10 & Ex. 48-50.[1] But what ALSTOM fails to tell the Court is that, on December 21, 2005, AES-PR produced a full printout of the CEMS excess emissions reports from January 2003 through December 2004 that contained the same information ALSTOM claims it received for the first time in response to its FOIA request to the EPA. In addition, AES-PR does not believe it even possesses a copy of one of the three quarterly EPA reports ALSTOM highlights. *See* Tab A (Siberon Decl. ¶ 5). As is explained below, due to a clerical error, copies of the other two quarterly reports were not previously produced to ALSTOM. But that omission created no prejudice to ALSTOM because ALSTOM <u>already</u> <u>had</u> <u>the</u> <u>underlying</u> <u>information</u> from those quarterly reports in the data from the CEMS system. Finally, with respect to the EPA quarterly report AES-PR does not have, AES-PR certainly cannot be accused of hiding what it does not have, and ALSTOM now has received that report from the one source that possesses it – the EPA.

---

[1] The quarterly reports AES-PR submits to the EPA contain a one-page cover letter transmitting the reports, print-outs and certification of the CEMS data, and reports and accompanying certifications concerning the accuracy of the air emissions monitoring devices that collect the data stored by the CEMS system.

On December 21, 2005, AES-PR produced the CEMS emissions exceedence reports for 2003 and 2004 as a 314-page spreadsheet bates-stamped AESPR-261795-2108. *See* Tab B (excerpts of document). A comparison of the CEMS data ALSTOM attaches to its Reply brief with the CEMS reports that AES-PR produced in December 2005 disproves ALSTOM's claim that AES-PR was hiding information. *Compare* Reply at 10 & Tab 49 at EPA0224-228 (CEMS printouts ALSTOM received from the EPA for the period July 10, 2003 through August 12, 2003) *with* Tab B at AESPR-261800-813 (the same CEMS data produced by AES-PR in December); *compare also* Reply Tab 48 at EPA0348, 362; Tab 50 at EPA0609, 620 (summarizing exceedances from CEMS data for fourth quarter 2003 and first quarter 2004) *with* Tab B at AESPR-261820-26; AESPR-261958-60 (CEMS reports produced by AES-PR in December providing the full, detailed information from CEMS for the fourth quarter of 2003 and first quarter of 2004 on which the summaries ALSTOM highlights were based).[2]

Not only did AES-PR produce all of the CEMS emission exceedence reports to ALSTOM in December 2005, but on December 14, 2005 it produced copies of the exceedence reports it had transmitted to the Puerto Rico Environmental Quality Board. *See* Tab C (excerpt from one of the three folders of such reports AES-PR produced). By law, not only must AES-PR file quarterly reports with the U.S. EPA, but it must make contemporaneous reports of emission exceedences to the Puerto Rico authorities. These submissions are based on the same CEMS

---

[2]   ALSTOM's Reply brief argues repeatedly that the reasons for opacity violations set forth in the CEMS data reports "contradict" AES-PR's position with respect to the causes of the opacity exceedences. *E.g.* Reply. Br. at 1. That argument misinterprets the CEMS reports, as ALSTOM knows from the deposition testimony of AES-PR witness Elias Sostre. But the parties' disagreement as to the significance of these documents is a subject for trial, not a discovery motion.

information and also provide the contemporaneous reasons submitted by AES-PR for the air
emission violations.

Although, as explained above, ALSTOM did receive the CEMS information that
it claims it needs for trial, due to an inadvertent clerical error during production of documents,
AES-PR did not previously produce copies of the quarterly reports to the EPA forwarding copies
of the CEMS information.  While gathering documents to produce to ALSTOM, AES-PR's
environmental compliance coordinator, Geannette Siberon, designated these quarterly reports for
copying.  *See* Tab A (Siberon Decl. ¶ 3).  However, due to a miscommunication between Ms.
Siberon and the AES-PR coordinator for paper document collection, these documents were left
out of the materials provided to ALSTOM's copy service.  *See id.*  Upon receipt of ALSTOM's
Reply brief, AES-PR sought to re-confirm that all correspondence with the EPA had been
produced and, for the first time, discovered this omission.  *See id.* ¶ 4.  AES-PR now has made
copies of the reports it possesses available to ALSTOM.  *See* Tab D.  Given that all of the
underlying CEMS information already had been produced to ALSTOM, however, there has been
absolutely no prejudice to ALSTOM in not having received copies of the EPA quarterly reports.

## II.   AES-PR PRODUCED OTHER EPA DOCUMENTS ALSTOM DESCRIBES IN ITS REPLY BRIEF.

ALSTOM's motion also charges, without citation to specific documents, that
"AES has defiantly withheld production of the air permit compliance documents that it supplied
to and received from the EPA."  Reply at 11.  That charge is false – AES-PR has produced such
correspondence.

For example, ALSTOM attaches to its Reply brief a copy of an August 10, 2004
letter concerning the plant's PSD permit that it received from the EPA in response to its FOIA
request.  It fails to mention, however, that AES-PR already had produced exactly the same

4

document.  *Compare* Reply Br. Tab 32 *with* Tab E (same document produced by AES-PR with

"AESPR" bates-stamp).  ALSTOM similarly claims that, "[n]oticeably absent from" AES-PR's

May 25, 2005 paper document production were "documents exchanged with the EPA relating to

the PSD [air emissions] Permit."  Reply at 5-6.  That carefully worded sentence <u>ignores</u> that

AES-PR included in its May 2005 document production multiple binders of air quality test result

data, which is the data ALSTOM would have this Court believe AES-PR is hiding.  *See* Tab F at

4 (excerpt of sampling report produced by AES-PR in May 2005 that, according to the

document, is designed to "demonstrate compliance with the requirements of the PSD Air Quality

Permit").

     ALSTOM's Reply brief contends that AES-PR's alleged "withhold[ing of]

production of documents relating to its compliance with the PSD Permit" forced ALSTOM to

file a motion to compel on December 5, 2005.  Reply Br. at 6.  That claim, too, is false.  On

October 28, 2005, AES-PR produced daily CEMS log data for the facility.  *See* Tab G (sample of

daily CEMS log data).  AES-PR produced still more CEMS data on air emissions on November

9, 2005.  *See* Tab H (excerpt of data produced).  At a December 7, 2005 discovery hearing in this

matter, ALSTOM then complained about the manner in which AES-PR had produced this data,

contending, wrongly, that AES-PR had not produced "the actual data" and instead had provided

"some derivation of that data in some spread sheet that someone else prepared."  D.I. 64

(Hearing Tr. 38).  Although that charge of data manipulation had absolutely no basis in reality,

AES-PR responded by offering ALSTOM the opportunity to inspect and copy <u>all</u> the plant

operating data, including all of the CEMS data, so that it would be clear to ALSTOM that the

data it received was not "some derivation" created by AES-PR.  *See* Tab I at 2.  In light of AES-

PR's agreement to make all of this data available, ALSTOM's charge in its Reply brief that there

are "CEMS Reports that AES failed to produce," Reply Br. at 10, is simply false. From mid-December 2005 through the close of fact discovery on March 10, 2006, ALSTOM had full access to all information on the CEMS system.

## III.    ALSTOM'S LEGAL ARGUMENT FOR SANCTIONS MISSTATES THE LITIGATION HISTORY.

Just as its discussion of the documents it has received misstates the factual record, so too does ALSTOM's recitation of the facts giving rise to this Court's December 16, 2005 Discovery Order (D.I. 65). Although ALSTOM now pretends that that Order "arose from ALSTOM's two motions to compel," Reply Br. at 12, in fact, after both parties filed various motions to compel, and after the Court denied all of the motions with leave to renew, D.I. 60, the parties resolved their mutual dissatisfaction about the pace of the others' document productions by submitting to the Court a proposed amendment to the Court's Rule 16 Scheduling Order setting a December 30, 2005 deadline for the parties to complete their document productions. ALSTOM makes no attempt to reconcile its current interpretation of the Court's December 16 Order with the fact that ALSTOM itself produced over 25 percent of its electronic documents after December 30, 2005. See AES-PR's Opp. to Mot. for Sanctions at 3. And ALSTOM ignores the case law cited by AES-PR in its Opposition to ALSTOM's Motion for Sanctions explaining that ALSTOM must first have an Order granting a motion to compel before it can move for discovery sanctions. See Opp. 2-3 (discussing, e.g., Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 301-02 (3d Cir. 2000)). ALSTOM does not mention Black Horse and other similar authority in its 17-page Reply brief because its argument is foreclosed by those cases.

6

**IV.    ALSTOM'S LENGTHY DISCUSSION OF THE FACTS OF THE CASE IS BOTH IRRELEVANT TO THIS MOTION AND INCORRECT.**

ALSTOM's Reply brief contains a lengthy discussion of the facts of the case in an attempt to convince the Court that AES-PR's damages should be limited. *See* Reply Br. at 2-4, 9-12. It is unclear whether ALSTOM is including this information in its sanctions Reply brief, rather than in the summary judgment reply brief it filed the same day, because ALSTOM could not fit this additional merits argument into its 21-page summary judgment reply brief or because it knows that the "facts" on which it bases this argument are disputed. Either way, the argument has no place in a reply brief relating to discovery issues.

Indeed, the inappropriateness of the argument is highlighted by the fact that ALSTOM relies on documents AES-PR produced months ago for its erroneous assertion that the pollution control equipment could comply with air emission requirements when operating at a high temperature with high-chloride water. For that assertion, ALSTOM relies on a November 3, 2003 memo and a November 12, 2003 e-mail that ALSTOM claims to have "unearthed in discovery." Reply Br. at 9. Far from having to "unearth[]" documents that had been buried, however, the November 3, 2003 memo was in AES-PR's very first production of documents in May 2005, and AES-PR produced a second, electronic copy in December 2005. Likewise, it produced the November 12 e-mail in electronic and fully-text-searchable form on December 21, 2005. Not only is ALSTOM's suggestion that these documents had been buried incorrect, but its interpretation of them likewise is wrong. The documents show only that, when operating at a low temperature with high-chloride water, opacity could be controlled in late 2003. But doing so (as ALSTOM had instructed AES-PR to do) caused the massive corrosion that is the subject of this suit. The documents do not show that the system could be operated at high temperatures

7

with high-chloride water and still comply with the plant's emissions limits.  But, in any event, this issue is one for trial, not a motion for discovery sanctions.[3]

## CONCLUSON

For the foregoing reasons, and for the reasons set forth in AES-PR's Opposition to ALSTOM's Motion for Sanctions, ALSTOM's Motion for Sanctions should be denied.

Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated:  April 19, 2006

/s/ John S. Spadaro
John S. Spadaro (Bar No. 3155)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Attorneys for AES Puerto Rico, L.P.

---

[3]  ALSTOM's Reply brief also reiterates the arguments set forth in its opening brief in support of its sanctions motion.  *See* Reply Br. at 13-16.  AES-PR responded to those arguments in its Opposition to ALSTOM's Motion for Sanctions and does not repeat those arguments here.