# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AES PUERTO RICO, L.P., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ALSTOM POWER, INC., ) <br> ) <br> Defendant. ) | Civ. No. 04-1282-JJF |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS IN LIMINE ON EVIDENTIARY MATTERS
## OF PLAINTIFF AES PUERTO RICO, L.P.

John S. Spadaro
Bar No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel (302) 472-8100
Fax (302) 472-8135

OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
Ann N. Sagerson
James L. Tuxbury
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: October 2, 2006                    Attorneys for AES Puerto Rico, L.P.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.   MOTION IN LIMINE ON EVIDENTIARY MATTERS #1:  MOTION TO EXCLUDE EVIDENCE OF THE ALLEGED IMPROPER DISPOSAL IN THE DOMINICAN REPUBLIC OF COAL ASH FROM THE AES-PR FACILITY. ................................................................................................................. 1

    A.   Evidence To Be Excluded. ................................................................................. 2

    B.   Legal Analysis. .................................................................................................. 2

II.  MOTION IN LIMINE ON EVIDENTIARY MATTERS #2:  MOTION TO EXCLUDE EVIDENCE OR ARGUMENT THAT ATTEMPTS TO SHIFT RESPONSIBILITY TO EEC. ........................................................................................ 4

    A.   Evidence To Be Excluded. ................................................................................. 4

    B.   Legal Analysis. .................................................................................................. 5

III. MOTION IN LIMINE ON EVIDENTIARY MATTERS #3:  MOTION TO EXCLUDE ALSTOM'S EXPERT TESTIMONY FOUNDED ON *EX PARTE* COMMUNICATIONS. ............................................................................................... 7

    A.   Background. ....................................................................................................... 7

    B.   Legal Analysis. .................................................................................................. 9

IV.  MOTION IN LIMINE ON EVIDENTIARY MATTERS #4:  MOTION TO EXCLUDE REFERENCE TO AES-PR HAVING "ASSUMED THE RISK" OF CORROSION. ............................................................................................................. 11

V.   MOTION IN LIMINE ON EVIDENTIARY MATTERS #5:  MOTION TO EXCLUDE EVIDENCE OF THE MONETARY VALUE OF AES-PR'S SETTLEMENT WITH D/FD. ...................................................................................... 12

    A.   Evidence To Be Excluded. ............................................................................... 13

    B.   Legal Analysis. ................................................................................................ 13

CONCLUSION .................................................................................................................... 14

**TABLE OF AUTHORITIES**

**FEDERAL CASES**
*Belote v. Maritrans Operating Partners*, L.P., 1998 WL 136523 (E.D. Pa. 1998) ........................11

*Bio-Vita, Ltd v. Rausch*, 759 F. Supp. 33 (D. Mass. 1991)................................................................11

*Chemical Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co.*,
    89 F.3d 976 (3d Cir. 1996)..................................................................................................3

*Coleman v. Home Depot*, 306 F.3d 1333 (3d Cir. 2002) ..............................................................3, 6

*DiOssi v. Edison*, 583 A.2d, 1343, (Del. Super 1990) ....................................................................10

*Faison v. Thornton*, 863 F. Supp. 1204 (D. Nev. 1993) .................................................................11

*Government of the Virgin Islands v. Pinney*, 967 F.2d 912 (3d Cir. 1992) .....................................3

*In re Complaint of PMD Enterprises, Inc.*, 215 F. Supp. 2d 519 (D.N.J. 2002) ..............................9

*In re Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997) ..........................................................9

*Klauder and Nunno Enterprises, Inc. v. Hereford Associate Inc.*,
    723 F. Supp. 336 (E.D. Pa. 1989) .......................................................................................6

*LaPoint v. Amerisourcebergen Corp.*, 2006 WL 2105862 (Del. Ch. July 18, 2006) ......................9

*Monsanto Co. v. Potts*, 2005 WL 1514130 (S.D. Ohio June 24, 2005).........................................11

*Penda Corp v. STK LLC*, 2004 WL 1628907 (E.D. Pa. July 16, 2004) ..........................................9

*United States v. Smallwood*, 365 F. Supp. 2d 689 (E.D. Va. 2005) ..........................................9, 10

*Williams v. Bd. of Regents of University System of Georgia*,
    629 F.2d 993 (5th Cir. 1980) ............................................................................................12

**RULES**

Fed. R. Evid. 401 ............................................................................................................... *passim*

Fed. R. Evid. 402 ............................................................................................................... *passim*

Fed. R. Evid. 403 ............................................................................................................... *passim*

American Bar Association Model Rules of Professional Conduct 4.2.................................. *passim*

American Bar Association Model Rules of Professional Conduct 5.3……………………7, 9, 10

# INTRODUCTION

Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiff AES Puerto Rico, L.P. ("AES-PR") respectfully submits this Memorandum of Points and Authorities in support of its motion for entry of an order precluding any evidence, examination, or argument concerning: (1) the alleged dumping in the Dominican Republic of coal ash originating from the AES-PR facility; (2) the assertion by defendant ALSTOM Power, Inc. ("ALSTOM") that its subcontractor, Environmental Elements Corporation ("EEC"), and not ALSTOM, is responsible for AES-PR's damages; (3) expert testimony based on *ex parte* communications with AES-PR personnel; (4) ALSTOM's assumption of risk defense; and (5) evidence of the monetary value of AES-PR's settlement of litigation with its general contractor, Duke Fluor Daniel Caribbean, S.E. ("D/FD").

**I.   MOTION IN LIMINE ON EVIDENTIARY MATTERS #1:  MOTION TO EXCLUDE EVIDENCE OF THE ALLEGED IMPROPER DISPOSAL IN THE DOMINICAN REPUBLIC OF COAL ASH FROM THE AES-PR FACILITY.**

During the deposition of AES-PR's President, Al Dyer, ALSTOM's counsel asked questions about a lawsuit brought by the Government of the Dominican Republic alleging that an AES-PR contractor allegedly disposed of coal ash from the AES-PR facility improperly in the Dominican Republic.  That issue is irrelevant to any claim or defense in this litigation, and could be offered by ALSTOM only to attempt to prejudice the jury against AES-PR.  Accordingly, pursuant to Federal Rules of Evidence 401, 402, and 403, ALSTOM should be prohibited from making any inquiry or presenting any evidence at trial regarding the alleged improper disposal in the Dominican Republic of coal ash from the AES-PR facility.

### A. Evidence To Be Excluded.

On March 23, 2006, the Government of the Dominican Republic filed a civil complaint against AES-PR and other defendants in the Eastern District of Virginia, alleging, *inter alia*, that an AES-PR contractor allegedly disposed of coal ash from the AES-PR facility improperly in the Dominican Republic.  AES-PR vehemently denies the charges, and on August 7, 2006, filed a motion to dismiss plaintiff's amended complaint.

### B. Legal Analysis.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides that "[e]vidence which is not relevant is not admissible."  Evidence of alleged improper disposal of coal ash in the Dominican Republic is not a fact of any consequence to any claim or defense ALSTOM may raise in this litigation.  Accordingly, that evidence is not relevant under Rule 401 and inquiry regarding the subject should be barred at trial.

In addition, because AES-PR would be compelled to defend itself against the false charges of environmental misconduct, reference to the subject by Defendant would require AES-PR to introduce counter-evidence, unnecessarily distracting and confusing the jury about the issues truly at dispute in this case and unnecessarily prolonging the trial of this matter. Reference to alleged improper disposal of coal ash therefore also is barred by Fed. R. Evid. 403, which excludes otherwise admissible evidence if the probative value of the proffered evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

2

misleading the jury." Fed. R. Evid. 403; *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-45 (3d Cir. 2002).

Here, the unfair prejudice and confusion created by reference to AES-PR's contractor's alleged improper disposal of coal ash in the Dominican Republic far outweighs its probative value. As discussed above, the subject is of no probative value to any issue in this case. Evidence of the alleged improper disposal of coal ash and the alleged environmental damage in the Dominican Republic may, however, stir jurors' emotions and create unfair prejudice against AES-PR. Courts have recognized that evidence that a party may have caused harm to the environment is likely to be highly prejudicial. *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 994-95 (3d Cir. 1996) (in environmental insurance case, upholding exclusion of evidence of environmental contamination at plaintiff corporation's other locations because the evidence not only would confuse the jury, but also had a "significant danger of unfair prejudice"). When evidence has little value to any fact at issue but carries a large risk of prejudice to one of the parties, it should be excluded under Rule 403. *See Government of V.I. v. Pinney*, 967 F.2d 912, 918 (3d Cir. 1992) (emotionally charged evidence that had "*de minimus*" probative value excluded under Rule 403).

ALSTOM may claim that termination of AES-PR's shipment of coal ash to the Dominican Republic is relevant to ALSTOM's (incorrect) assertion that AES-PR reduced production of ash rock, which in turn allegedly caused AES-PR difficulty in disposing of water on-site at the plant. However, ALSTOM need not invoke allegations of environmental improprieties to support its theory. ALSTOM will remain free to introduce evidence about the quantity of AES-PR's ash rock production, the only factual issue that is remotely relevant to this

3

case.  ALSTOM can ask all the questions its needs about ash rock production without mentioning the allegations of improper disposal of ash in the Dominican Republic.

II. **MOTION IN LIMINE ON EVIDENTIARY MATTERS #2:  MOTION TO EXCLUDE EVIDENCE OR ARGUMENT THAT ATTEMPTS TO SHIFT RESPONSIBILITY TO EEC.**

ALSTOM has suggested that if there are design defects in the critical components of AES-PR's pollution control equipment – the circulating dry scrubber ("CDS") and the electrostatic precipitator ("ESP") – then its subcontractor, EEC, and not ALSTOM, is at fault and should bear responsibility for AES-PR's corrosion warranty damages.  ALSTOM has suggested that because it purportedly was "forced" to subcontract with EEC, it should not be responsible for EEC's deficient work on the CDS and ESP.  But the Contract between ALSTOM and AES-PR[1] provides that ALSTOM is responsible for the work of its subcontractors.  *See* A06 (Contract, Part III, § 8.1).  Moreover, the Contract does not permit ALSTOM to assign its contractual obligations (such as its corrosion warranty responsibilities) to EEC without the consent of D/FD or AES-PR, which it is undisputed did not occur.  *See* A07 (Contract, Part III, § 38).  Accordingly, evidence or argument by ALSTOM that attempts to shift responsibility for the corrosion damage to EEC is improper, irrelevant, and would tend to confuse the jury.  Therefore, such evidence and argument should be barred under Fed. R. Evid. 401, 402, and 403.

A. **Evidence To Be Excluded.**

ALSTOM may seek to present evidence that suggests that EEC – and not ALSTOM – is responsible for any design defects that caused the corrosion in the ESPs at the AES-PR plant.  ALSTOM may suggest that it should not be liable for EEC's work because it

---

[1] Although ALSTOM and D/FD were the original parties to the Contract, D/FD assigned its rights under the Contract to AES-PR.  ALSTOM does not appear to challenge the validity of that assignment.

4

was forced by AES-PR to subcontract with EEC. ALSTOM and its counsel also may argue that AES-PR should have to recover its damages directly from EEC and not ALSTOM. Evidence or argument on these points should be excluded at trial.

    **B.**    **Legal Analysis.**

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Moreover, even if evidence is relevant, it will be excluded under Rule 403 if its probative value is "substantially outweighed" by, *inter alia*, a danger of "confusion of the issues."

In this case, there is no legal basis for ALSTOM to assert that it is not liable for EEC's work. Pursuant to the Contract between the parties, ALSTOM was required to supply, *inter alia*, "all the design, engineering, manufacture, delivery, installation . . . [of the] Circulating Dry Scrubbers, [and] Electrostatic Precipitators." A03 (Contract, Part I, § 1.1). In the Contract, ALSTOM provided an accelerated corrosion warranty that protected certain pieces of equipment, including the ESP, against damage from accelerated corrosion. A04-05 (Contract, Part III, § 1.6).

The Contract also gave ALSTOM the option to employ approved subcontractors. A06 (Contract, Part III, § 8.1). But even if ALSTOM chose to employ subcontractors, the Contract specified that ALSTOM was responsible for the work of the subcontractors. A06 (Contract, Part III, § 8.2) ("Contractor [ALSTOM] guarantees that its subcontractors will comply fully with the terms of this Contract applicable to the portion of the Work performed by them."). The Contract did not permit ALSTOM to assign its obligations under the Contract (or the

5

accelerated corrosion warranty specifically) to EEC without the consent of D/FD or AES-PR, which it is undisputed was not provided.  *See* A07 (Contract, Part III, § 38).

There is no doubt that ALSTOM is legally responsible for its subcontractor's work under the Contract.  *See Klauder & Nunno Enterprises, Inc. v. Hereford Assocs. Inc.* 723 F. Supp. 336, 346 (E.D. Pa. 1989) ("contractor . . .is liable for the breaches of its subcontractors").  Whether EEC, as opposed to ALSTOM, was responsible for the mistakes that caused the accelerated corrosion in the pollution control equipment at the AES-PR facility is of no consequence in this action between AES-PR and ALSTOM.  Thus, evidence or argument by ALSTOM or its counsel that tries to shift responsibility to EEC is legally improper, irrelevant to any claim or defense in this case, and inadmissible at trial.  *See* Fed. R. Evid. 401 (relevant evidence must bear upon a "fact that is of consequence to the determination of the action").

Furthermore, evidence that tries improperly to shift liability to EEC would tend to confuse the jury, especially because EEC is not a party to this litigation.  In 2004, ALSTOM filed a third-party complaint against EEC in this case.  *See*  D.I. 14.  But, in April 2005, ALSTOM voluntarily dismissed its third-party complaint.  *See* D.I. 22.  Subsequently, ALSTOM entered into a joint defense agreement with EEC's surety, Liberty Mutual.  A68-76 (Joint Defense Agreement).  It would be particularly inequitable to allow ALSTOM to point the finger of blame at a party that ALSTOM dismissed from this action, and with whose surety ALSTOM has teamed to try to defeat AES-PR's claims.  Thus, this evidence also should be excluded under Rule 403.  *See Coleman*, 306 F.3d at 1343-44.

### III. MOTION IN LIMINE ON EVIDENTIARY MATTERS #3: MOTION TO EXCLUDE ALSTOM'S EXPERT TESTIMONY FOUNDED ON *EX PARTE* COMMUNICATIONS.

Two of ALSTOM's designated experts, Ronald Ballinger and Marlin Anderson, have proffered expert opinions based on *ex parte* communications with AES-PR personnel. Those communications violated the American Bar Association Model Rules of Professional Conduct ("Model Rules") 4.2 and 5.3,[2] and the appropriate remedy is exclusion of the evidence obtained from the *ex parte* communications.

#### A. Background.

In October 2005 and March 2006, AES-PR agreed to ALSTOM's counsel's requests to inspect AES-PR's boiler and pollution control units as they were taken offline for periodic maintenance. Prior to the October 2005 inspection, ALSTOM's counsel agreed that during the inspection "its representatives [would] not question AES personnel about the Plant or its equipment." A08-09 (10/13/05 Letter from Anthony Vittoria to AES-PR's counsel). That agreement was made specifically for the purpose of ensuring that ALSTOM's counsel and its experts would not engage in *ex parte* communications with AES-PR personnel when AES-PR's counsel were not present.

During the October 2005 inspection, ALSTOM's counsel attended the inspection of Unit 1 along with ALSTOM's experts. ALSTOM's counsel, however, apparently failed to inform ALSTOM's experts that they were prohibited from asking questions of AES-PR personnel and failed to stop ALSTOM's expert from engaging in *ex parte* communications. *See* A13 (Anderson Dep. 195:1-6) (no recollection of ALSTOM's counsel, present during the

---

[2] Under Delaware Local Rule 83.6(d), the Model Rules govern the conduct attorneys admitted to the bar of the United States District Court for the District of Delaware.

7

inspection, informing expert that he could not question AES-PR personnel). During that inspection, not attended by AES-PR's counsel, ALSTOM's expert, Dr. Anderson, questioned AES-PR personnel regarding AES-PR's maintenance practices. A12 (Anderson Dep. 194:18) ("I asked several questions [to AES-PR personnel], really."). In particular, Dr. Anderson questioned AES-PR personnel regarding AES-PR's practice for bolting the CDS water nozzle lances to the CDS. A11-12 (Anderson Dep. 193:20 – 194:15). Based on these *ex parte* communications, Dr. Anderson concluded that AES-PR improperly attached the CDS spray nozzle bolts and that it could have led to corrosion in the ESP. *See* A16 (Anderson Expert Report, 4). Dr. Ronald Ballinger, who had an assistant present during these *ex parte* communications, repeats Dr. Anderson's opinion regarding the bolts used to attach the CDS lances. A22, 23 (Ballinger Expert Report 8, 12).

Unaware of these *ex parte* communications during the October 2005 inspection, AES-PR's counsel again agreed to ALSTOM's counsel's request for an inspection of equipment at the AES-PR facility in late March 2006 with the same ground rules as the October 2005 inspection. Prior to the March 2006 inspection, ALSTOM's counsel even represented that AES-PR counsel need not attend the inspection. A24 (2/16/06 Letter from James Edward to AES-PR's counsel). But during the March 2006 inspection, ALSTOM's counsel again allowed its experts to engage in *ex parte* communications with AES-PR personnel. Dr. Ronald Ballinger, ALSTOM's expert, admitted in his deposition that, during the March 2006 inspection, he questioned AES-PR personnel. A19 (Ballinger Dep. 216:8-12) ("I did speak with operating people at the plant in March 2006"). Moreover, Dr. Ballinger identified these *ex parte* communications with AES-PR personnel as the basis for his opinions regarding AES-PR's CDS

8

spray water nozzle maintenance.  A18 (Ballinger Dep. 215:9 –20) ("The basis would be, in part, reading the manuals and then talking with people [at the plant].").

      **B.**      **Legal Analysis.**

Rule 4.2 of the Model Rules prohibits an attorney from having *ex parte* communications with an individual that the attorney knows is represented by counsel.[3]  *See In re Grand Union Co.,* 204 B.R. 864, 875 (Bankr. D. Del. 1997); *see also LaPoint v. AmerisourceBergen Corp.*, No. Civ. A. 327-N, 2006 WL 2105862, at *2 (Del. Ch. July 18, 2006) (applying identical Delaware rule).  The bar on *ex parte* communications applies to attorneys and those who work for the attorney.  *See United States v. Smallwood*, 365 F. Supp. 2d 689, 697 (E.D. Va. 2005) (investigator acting on behalf of attorney also precluded from having *ex parte* communications with represented party under Virginia's Rule 4.2, which is identical to the Model rule); *Penda Corp v. STK, LLC*, Nos. Civ. A. 03-5578, Civ. A. 03-6240, 2004 WL 1628907, at *3-5 (E.D. Pa. July 16, 2004) (applying identical Rule 4.2 in Pennsylvania to find violation where paralegal engaged in *ex parte* communication with represented party).

Model Rule 5.3(a) also makes an attorney responsible for ensuring that the conduct of a non-lawyer retained by counsel is "compatible with the professional obligations of the lawyer."  Under Model Rule 5.3, an attorney is responsible for ensuring that its non-lawyer agents or representatives do not engage in *ex parte* communications with a represented opposing party.  *See In re Compl. of PMD Enters.*, 215 F. Supp. 2d 519, 529 (D.N.J. 2002) (applying

---

[3] Rule 4.2 states:

    In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

9

similar provision in New Jersey Rule 5.3 to find violation when attorney failed to prevent investigator from having *ex parte* communications with represented party).

In this case, ALSTOM's counsel appear to have violated (even if inadvertently) Model Rules 4.2 and 5.3. There is no dispute that the AES-PR personnel at the plant were represented by counsel who were not present during the communications. There also is no dispute that ALSTOM's counsel and their hired experts did not have permission to engage in *ex parte* communications with AES-PR personnel, and indeed ALSTOM specifically had agreed that such communications would not take place. *See* A08-09 (10/13/05 Letter from Anthony Vittoria to AES-PR's counsel) ("ALSTOM agrees that its representatives will not question AES personnel about the plant or the equipment."). That ALSTOM's counsel may not themselves have conducted the questioning of AES-PR's personnel does not mitigate the Rule 4.2 violation. *See Smallwood*, 365 F. Supp. at 697.

ALSTOM's experts now are trying to use against AES-PR the information they learned from these *ex parte* communications. *See* A11-12 (Anderson Dep. 193:20 – 194:15); A18 (Ballinger Dep. 215:9 –20). But that is exactly what Model Rule 4.2 protects against. *See DiOssi v. Edison*, 583 A.2d, 1343, 1345 (Del. Super Ct. 1990).

ALSTOM's counsel also violated Model Rule 5.3 by failing to prevent its representatives from engaging in *ex parte* communications. During both inspections, ALSTOM's counsel was present, yet failed to stop the *ex parte* communications by its experts. From Dr. Anderson's deposition testimony, it appears that ALSTOM's counsel never even warned their experts against *ex parte* communications. *See* A13 (Anderson Dep. 195:1-6).

The appropriate remedy for ALSTOM's counsel's violation of Model Rules 4.2 and 5.3 is exclusion from trial of the evidence learned during the *ex parte* communications. *See*

*Belote v. Maritrans Operating Partners, L.P.*, Civ. A. 97-3993, 1998 WL 136523, at *6-8 (E.D. Pa. Mar. 20, 1998) (applying identically worded Rule 4.2 in Pennsylvania and excluding evidence learned in *ex parte* communications); *Faison v. Thornton*, 863 F. Supp. 1204, 1215-16 (D. Nev. 1993) (applying Nevada rule identical to Model Rule 4.2 and excluding evidence learned in *ex parte* communications). Specifically, the Court should bar Drs. Anderson and Ballinger from describing or otherwise commenting on AES-PR's purported practices in attaching the CDS spray nozzle lance bolts, and Dr. Ballinger from opining on AES-PR's CDS spray water nozzle maintenance practices.[4]

### IV.  MOTION IN LIMINE ON EVIDENTIARY MATTERS #4:  MOTION TO EXCLUDE REFERENCE TO AES-PR HAVING "ASSUMED THE RISK" OF CORROSION.

In opposition to AES-PR's accelerated corrosion warranty claim, ALSTOM has asserted the affirmative defense of assumption of risk. There is, however, no legal basis for ALSTOM to assert an assumption of risk defense in this breach of contract case. Therefore, any argument or reference to AES-PR having "assumed the risk" of corrosion is irrelevant and should be excluded.

Assumption of risk is not a valid defense against a breach of contract claim. *See Monsanto Co. v. Potts*, No. 2:04-CV-282, 2005 WL 1514130, at *2 (S.D. Ohio June 24, 2005) ("It is well settled that assumption of the risk is not a defense in a contract action.") (quotation marks omitted); *Bio-Vita, Ltd. v. Rausch*, 759 F. Supp. 33, 39-40 (D. Mass. 1991) ("Assumption of risk is not, however, available as a defense in a fraud or contract action.").

---

[4] AES-PR also has moved to exclude this same evidence as part of its *Daubert* Motion, which is being submitted simultaneously with this motion.

Because the assumption of risk defense is unavailable in this breach of contract action, any argument that AES-PR "assumed the risk" of corrosion to their equipment is improper. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 629 F.2d 993, 1002 (5th Cir. 1980) (noting that "the judge ruled that as a matter of law the defenses would be unavailable, and, therefore, the evidence was irrelevant under Fed. R. Evid. 401").

## V. MOTION IN LIMINE ON EVIDENTIARY MATTERS #5: MOTION TO EXCLUDE EVIDENCE OF THE MONETARY VALUE OF AES-PR'S SETTLEMENT WITH D/FD.

ALSTOM may seek to present evidence of the amount of money that AES-PR received from its general contractor, D/FD, pursuant to a Release and Settlement Agreement ("Settlement Agreement") resolving litigation between those two companies. There is no reason that the Settlement Agreement need be entered into evidence at all. It is relevant at most only to prove that D/FD assigned to AES-PR its warranty rights under the Contract at issue in this case, a fact that ALSTOM does not appear to dispute. Other aspects of the Settlement Agreement, including the amount of money paid to AES-PR by D/FD, are not relevant to any claim or defense in this litigation. Moreover, if the monetary value of the settlement were admitted into evidence, it would be highly prejudicial to AES-PR and would tend to confuse the jury, as AES-PR would be forced to present rebuttal evidence to show that the settlement payment is unrelated to any damages sought in this litigation. Accordingly, pursuant to Fed. R. Evid. 401, 402, and 403, this Court should preclude ALSTOM and its witnesses from referring to the monetary value of AES-PR's settlement with D/FD, and the dollar value of the settlement should be redacted from the Settlement Agreement if the need arises for it to be introduced as an exhibit at trial.

### A. Evidence To Be Excluded.

On June 3, 2003, AES-PR filed a civil complaint against D/FD in this Court. In that complaint, AES-PR alleged that D/FD failed to: pay late completion rebates; make payments for its failure to meet performance guarantees; and complete unfinished construction work items. *See* A25-44 (AES-PR Compl. Against D/FD). On October 31, 2003, AES-PR and D/FD executed a Settlement Agreement to resolve the disputes identified in AES-PR's June 2003 complaint, as well as D/FD's counterclaims. *See* A45-67 (Settlement Agreement). Pursuant to the Settlement Agreement, D/FD paid AES-PR $43.75 million based on D/FD's: failure to meet the "Heat Rate Guarantees"; failure to pay "Late Completion Payments"; defective or incomplete work; and failure to reimburse AES-PR for work performed on the turbine blade failure. A51-52 (Settlement Agreement at 7-8). The Settlement Agreement does not settle the claims and damages sought by AES-PR in this litigation. *See generally,* A25-44 (AES-PR Compl. Against D/FD).

### B. Legal Analysis.

As discussed earlier in this motion, evidence is only relevant, and thus admissible under Fed. R. Evid. 402, if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The amount of money paid by D/FD in the October 2003 settlement is not relevant to any claim or defense in this case. Specifically, the Settlement Agreement details the grounds for D/FD's $47 million payment to AES-PR, which did not settle the claims brought in this litigation. *See* A51-52 (Settlement Agreement at 7-8). Thus, the amount of money paid to AES-PR by D/FD will not make any fact of consequence more probable; that evidence therefore should be excluded from trial pursuant to Rules 401 and 402.

Moreover, the monetary value of D/FD's settlement with AES-PR also should be excluded because its probative value is "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. ALSTOM may seek to use the evidence of D/FD's payment to argue – incorrectly – that AES-PR already has been compensated for the damages it seeks in this litigation. But the Settlement Agreement disproves that argument, as it explains the bases for D/FD's payment. And it would be patently improper for ALSTOM to seek to use the Settlement Agreement to suggest that AES-PR should not recover against it simply because AES-PR already has recovered a large sum of money from D/FD related to faulty construction of the power plant.

Accordingly, because the amount of money AES-PR received in its settlement with D/FD is irrelevant to this case, and would be highly prejudicial and confusing, all evidence relating to the monetary value of the settlement should be excluded from trial pursuant to Rules 401, 402, and 403.

## CONCLUSION

For the foregoing reasons, AES-PR respectfully requests that the Court grant its Motion and preclude from trial any evidence, examination, or argument concerning: (1) the alleged dumping in the Dominican Republic of coal ash from the AES-PR facility; (2) the assertion by ALSTOM that EEC, and not ALSTOM, is responsible for AES-PR's damages; (3) expert testimony based on *ex parte* communications with AES-PR personnel; (4) ALSTOM's

assumption of risk defense; and (5) evidence of the monetary value of AES-PR's settlement with D/FD.

Respectfully submitted,

OF COUNSEL:
Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
Ann N. Sagerson
James L. Tuxbury
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

/s/ John S. Spadaro
John S. Spadaro (Bar No. 3155)
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135

Dated:  October 2, 2006

Attorneys for AES Puerto Rico, L.P.

15

## **CERTIFICATE OF SERVICE**

On October 2, 2006, Plaintiff served the foregoing Memorandum of Points and Authorities in Support of Motions In Limine on Evidentiary Matters of Plaintiff AES Puerto Rico, L.P. by electronic filing and first class mail, postage prepaid, on:

> Richard R. Wier, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road
> Suite 200
> Wilmington, Delaware 19806

and by e-mail and first class mail, postage prepaid, on

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643


/s/ John S. Spadaro