## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement is made and entered into and dated as of October 31, 2003, among and between AES Puerto Rico, L.P. ("AES") and Duke/Fluor Daniel Caribbean S.E., Duke/Fluor Daniel International, Duke/Fluor Daniel International Services, Fluor Daniel Caribbean, Inc., Caribbean Architects & Engineers, Fluor Corporation and Duke Capital Corporation (collectively the "D/FD Parties"). (AES and the D/FD Parties are referred to collectively as the "Parties.")

WHEREAS, on or about April 3, 1996, AES and Duke/Fluor Daniel Caribbean S.E., Duke/Fluor Daniel International, Duke/Fluor Daniel International Services, Fluor Daniel Caribbean, Inc., and Caribbean Architects & Engineers entered into an Agreement for Engineering, Procurement and Construction Services, and on several occasions subsequently amended it in writing (referred to as amended as the "EPC Contract") for a power plant and associated facilities to be constructed near Guayama, Puerto Rico (as more fully described in the EPC Contract, the "Project");

WHEREAS, on or about April 3, 1996, Fluor Corporation and Duke Capital Corporation each executed guarantees that, among other things, guarantee performance of specified obligations under the EPC Contract ( the "Guarantees");

WHEREAS, on or about June 9, 2003, AES filed a Complaint, which was subsequently amended, against all of the D/FD Parties in the United States District Court for the District of Delaware styled *AES Puerto Rico, L.P. v. Duke/Fluor Daniel Caribbean S.P., et al.* alleging, among other things, breach of the EPC Contract and the Guarantees (as amended, the "Complaint");

WHEREAS, on or about August 22, 2003, the D/FD Parties filed a Counterclaim against AES in the United States District Court for the District of Delaware entitled *Defendants'*

*Answer to Plaintiff's Amended Complaint and Counterclaim* alleging, among other things, affirmative defenses, breaches and claims for relief with respect to the EPC Contract and the Guarantees (the "Counterclaim");

WHEREAS, the D/FD Parties deny the allegations in the Complaint and AES denies the allegations in the Counterclaim; and

WHEREAS, the Parties wish to enter into a full and final settlement of any and all claims that they have or may have against each other now or hereafter arising out of or relating to the Project, the EPC Contract, the Guarantees, the Complaint and the Counterclaim, except for any and all claims that the Parties may now or hereafter have with respect to the Retained Rights (as defined in Section 3.2 hereof).

NOW, THEREFORE, AES (on the one hand) and the D/FD Parties (on the other hand), in consideration of the mutual promises set forth below, the sufficiency of which is hereby acknowledged and accepted, agree as follows:

## 1.    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants, with respect to itself in the case of AES and with respect to the D/FD Parties in the case of each of the D/FD Parties, as follows:

1.1.    The Parties, and each of them, have the full power and authority to enter into and perform this Release and Settlement Agreement. The signatories are authorized to execute this Release and Settlement Agreement on behalf of themselves and their respective partnerships or corporations.

1.2.    The Parties, and each of them, have received no notice and have no knowledge of any judgment, restraining order, consent decree or judicial or administrative prohibition binding upon them, which would be violated by their entry into this Release and

**A46**

T:/Contracts/AES Settlement Agreement 103103cl.doc.

**AESPR 136928**

Settlement Agreement or by their consummation of the transactions contemplated by this Release and Settlement Agreement.

      1.3.    No authorization, approval, or consent of any governmental authority is required by AES and/or the D/FD Parties in connection with the execution and performance by them of this Release and Settlement Agreement.

      1.4    The Parties have not assigned or otherwise transferred any rights under or in connection with the EPC Contract including without limitation any rights to any claims against any of the Parties, except for AES's assignment of its rights and interests under the EPC Contract and the Guarantees as acknowledged and consented to by the D/FD Parties in the Acknowledgment and Consent Agreements, each dated as of May 15, 2000, among Banco Santander Puerto Rico, as Collateral Agent, Credit Lyonnais New York Branch, as Administrative Agent, Bankers Trust Company, as Bond Trustee, AES and, with respect to the assignment of the EPC Contract, each of the D/FD Parties that are signatory to the EPC Contract, and, with respect to the assignment of each of the Guarantees, the D/FD Party that is signatory to the applicable Guarantee being assigned (collectively, the "Consent Agreements").

      1.5    The Parties hereby acknowledge and agree that the effectiveness of this entire Release and Settlement Agreement (including, without limitation, any releases contained in this Release and Settlement Agreement and any obligations contained in this Release and Settlement Agreement) is subject to the express condition precedent that the Collateral Agent (as defined in the Consent Agreements) shall have consented in writing, without condition, to this Release and Settlement Agreement (the "AES Lender Consent"), which AES Lender Consent AES agrees to use its reasonable efforts to obtain in a timely manner, and AES shall have

**AESPR 136929**

3

**A47**

notified the D/FD Parties in writing of its receipt of such consent and provided a copy thereof to the D/FD Parties within fourteen (14) days of the date of this Settlement and Release Agreement.

## 2.    TERMS AND CONDITIONS

2.1.    The D/FD Parties agree, subject to the occurrence of the AES Lender Consent and a copy thereof having been provided to the D/FD Parties within fourteen (14) days of the date of this Settlement and Release Agreement, to pay AES  Forty-Three Million, Seven Hundred Fifty Thousand Dollars ($43,750,000) (the "Settlement Amount") as follows:

a)    The D/FD Parties, and each of them, fully release any claim to the retainage AES currently holds pursuant to Section 4.2.4 of the EPC Contract, which amount totals Thirty-One Million, Eight Hundred Twenty Three Thousand, Nine Hundred Twenty Dollars ($31,823,920), and to any and all other payments that may now or hereafter be due to any of the D/FD Parties under the EPC Contract, and agree that AES shall have no obligation, either now or in the future, to pay that sum, or any portion of that sum, or any other amount arising out of or in connection with the EPC Contract, the Guarantees or the Counterclaim, to the D/FD Parties or any of them or any Subcontractor (as defined in the EPC Contract) or any other Person claiming by, through or under any of the D/FD Parties or in connection with the Services and other work to be performed by the D/FD Parties under the EPC Contract or Guarantees; provided, however, that this Section 2.1(a) (including, without limitation, the release given by the D/FD Parties herein) is conditioned upon (i) the occurrence of the AES Lender Consent and a copy thereof having been provided to the D/FD Parties within fourteen (14) days of the date of this Settlement and Release Agreement, and (ii) the filing by AES of a dismissal with prejudice of the Complaint in full accordance with Section 2.2 of this Release and Settlement Agreement; and

AESPR 136930

4

**A48**

b)      Within three (3) business days of the D/FD Parties' receipt of the AES Lender Consent (but not less than ten (10) days from the date of this Release and Settlement Agreement), and provided that the AES Lender Consent was received by the D/FD Parties within fourteen (14) days of the date of this Release and Settlement Agreement, the D/FD Parties shall (i) sign and deliver to AES's counsel, Williams & Connolly LLP, a motion to dismiss and proposed order dismissing with prejudice the Counterclaim against AES in the action pending before the United States District Court for the District of Delaware, which motion and proposed order of dismissal shall be in the form attached hereto as Exhibit "A", and (ii) deliver to AES's counsel, Williams & Connolly LLP, the Contractor's Final Lien Waiver and the Subcontractor's Final Lien Waivers required by Section 2.6 of this Release and Settlement Agreement, and (iii) pay AES the sum of Eleven Million, Nine Hundred Twenty-Six Thousand, Eighty Dollars ($11,926,080), which payment is to be made by way of a wire transfer of immediately available funds for deposit into a trust account maintained by AES's counsel, Williams & Connolly LLP, and the wiring information for such account is as follows (as may be modified in writing by AES):

Bank Name:  Bank of America

Account Name: Williams & Connolly LLP

ABA No:  054001204

Account No:  002086538402

Said funds, motion to dismiss and lien waivers are to be held in trust by Williams & Connolly LLP, with (x) the motion to dismiss to be filed with the Court and the lien waivers to be released to AES by Williams & Connolly LLP only if AES files the motion for dismissal with prejudice of the Complaint in full accordance with Section 2.2 of this Release and Settlement Agreement,

**A49**

T:/Contracts/AES Settlement Agreement 103103cl.doc.

AESPR 136931

and if such motion to dismiss with prejudice the Complaint is not so filed by AES within the seven (7) day period specified in Section 2.2 of this Release and Settlement Agreement, the motion to dismiss signed by the D/FD Parties, the lien waivers and the funds which were delivered to Williams and Connolly LLP shall be returned to the D/FD Parties and shall be of no force or effect; and (y) the funds to be released to AES by Williams & Connolly LLP only upon the issuance by the Court of an order dismissing the Complaint with prejudice. For the avoidance of doubt, the Parties hereby agree that, upon (1) the occurrence of the AES Lender Consent and a copy thereof having been provided to the D/FD Parties within fourteen (14) days of the date of this Release and Settlement Agreement, and (2) the delivery by the D/FD Parties of the motion to dismiss, lien waivers and funds required by Section 2.1 hereof, the releases set forth in this Release and Settlement Agreement (including without limitation the mutual releases set forth in Section 3.1 hereof) shall be valid, final, irrevocable and unconditional and shall not be affected in any way by any failure of the Court to issue any order requested by the motions contemplated hereunder.

2.2.    Within seven (7) days after the date that AES's counsel, Williams & Connolly LLP, receives the motion to dismiss signed by the D/FD Parties, the lien waivers and the check required by Section 2.1 of this Release and Settlement Agreement, AES shall file a motion to dismiss in the United States District Court for the District of Delaware requesting an order dismissing with prejudice the Complaint in full, which motion and proposed order of dismissal shall be in the form attached hereto as Exhibit "B". The Parties shall cooperate to secure the orders of dismissal of the Complaint and Counterclaim consistent with the terms of this Release and Settlement Agreement in as expeditious a timeframe as possible. Without limitation of the foregoing, the Parties will, if necessary, cooperate in the filing of a motion or

**A50**

T:/Contracts/AES Settlement Agreement 103103cl.doc.

AESPR 136932

motions for summary judgment seeking the dismissal of the Complaint and Counterclaim on the basis of the mutual releases contained in the Release and Settlement Agreement.

2.3    The Parties agree that the Settlement Amount was determined on the basis of the following:

a.    Six Million, Fifty Thousand Dollars ($6,050,000) owed to AES for failure to meet the "Heat Rate Guarantees" contained in Section 8.1.2 of the EPC Contract.

b.    Thirty-Five Million, Three Hundred Thousand Dollars ($35,300,000) owed to AES for "Late Completion Payments" for failure to achieve "Performance Acceptance" on or before the "Guaranteed Completion Date" pursuant to Article 7 of the EPC Contract, which Guaranteed Completion Date the Parties agree is hereby extended for thirty (30) days of excusable delay under the EPC Contract (including, without limitation, the delay associated with Hurricane Debby, Tropical Storm Dean, fume release from Phillips plant, delay in first fire on oil, delay in first fire on coal, electrical disturbance, ammonia test and electrical trip).

c.    Four Million Dollars ($4,000,000) owed to AES for incomplete and defective work (including Punch List items), including Three Million Dollars ($3,000,000) for incomplete or defective work on the boilers related to the size of coal particles from the coal crusher which are usable by the boilers (but which does not include the Unit #2 boiler refractory repairs, for which warranty obligations continue as part of the Retained Rights under Section 3.2 hereof).

d.    Four Million, One Hundred Thousand Dollars ($4,100,000) owed to the D/FD Parties for outstanding change order claims.

e.    Two Million, Five Hundred Thousand Dollars ($2,500,000) owed to AES for repair work performed prior to the date hereof as a result of the turbine blade failure

7

**A51**

AESPR 136933

experienced by the Project's Unit #1 on or about May 14, 2003 due to steam turbine defects, and for repairs necessary to correct the vibration problem in the Unit #2 steam turbine.

The Parties hereby acknowledge and agree that the Settlement Amount agreed-upon and determined as set forth in this Article 2 is final and irrevocable and not subject to challenge or adjustment for any reason whatsoever, and is a fair and reasonable representation of their final settlement of all of their respective rights and claims being released and resolved hereunder, and further hereby acknowledge and agree that the Settlement Amount shall not be subject to change regardless of any value actually received by or any costs or damages actually sustained by any of the Parties in connection with or as a result of the Project, the EPC Contract or the Guarantees.

2.4    The Parties agree that, subject to (a) the occurrence of the AES Lender Consent and a copy thereof having been provided to the D/FD Parties within fourteen (14) days of the date of this Settlement and Release Agreement and (b) the delivery by the D/FD Parties of the motion to dismiss, lien waivers and funds required by Section 2.1 hereof, "Performance Acceptance" (as defined in the EPC Contract), the "Minimum Performance Criteria" (as defined in the EPC Contract) and "Project Completion" (as defined in the EPC Contract) have been achieved.  The Parties also agree that AES took possession and control of the Facility (as defined in the EPC Contract) effective as of November 28, 2002, whereupon risk of loss and responsibility for the operation and maintenance of the Facility transferred to AES.

2.5    Subject to (a) the occurrence of the AES Lender Consent and a copy thereof having been provided to the D/FD Parties within fourteen (14) days of the date of this Settlement and Release Agreement, and (b) AES filing a motion to dismiss with prejudice the Complaint in full accordance with Section 2.2, the D/FD Parties agree to fully indemnify the

**A52**

8

AESPR 136934

Indemnified Parties (as defined in the EPC Contract) from and against any Damages (as defined

in the EPC Contract) resulting from any liens, claims, security interests or other encumbrances

against any of the Indemnified Parties or the Facility (as defined in the EPC Contract) that are

filed now or in the future against any of the Indemnified Parties or the Facility by any

Subcontractor (as defined in the EPC Contract) (or by any Person (as defined in the EPC

Contract) asserting such Subcontractors' claims) on account of non-payment of any amount

alleged to be payable by any of the D/FD Parties or any Subcontractor in connection with the

Services (as defined in the EPC Contract) or other work to be performed by the D/FD Parties

under the EPC Contract or the Guarantees, including without limitation any such Damages

resulting from the claims filed by Brand Scaffold Builders, Inc., against certain of the

Indemnified Parties in the United States District Court for the District of Puerto Rico, Case No.

03 1507(JAF).  For the avoidance of doubt, Subcontractors (as defined in the EPC Contract)

includes Subcontractors of all tiers (including Subcontractors of Subcontractors).

   2.6 In accordance with and subject to Section 2.1(b) thereof, the D/FD Parties

are required to deliver to AES's counsel, Williams & Connolly LLP, (a) the Contractor's Final

Lien Waiver required under Section 2.1.22.1 of the EPC Contract in the form set forth in

Appendix I-1 to the EPC Contract, with no exceptions listed for any claims other than Permitted

Liens (as defined in the EPC Contract) that satisfy the requirements of clause (i) of the proviso to

Section 2.1.22.1 of the EPC Contract; and (b) Subcontractor's Final Lien Waivers in

substantially the form of Appendix I-3 to the EPC Contract (or such other form as may be

reasonably acceptable to AES) from each of the Subcontractors with a subcontract or purchase

order in excess of $100,000 as required by Section 4.6.2 of the EPC Contract to the extent that

the D/FD Parties have not already done so; provided, however, that if the D/FD Parties do not

**A53**

AESPR 136935

deliver such final lien waivers from any such Subcontractors, AES hereby agrees that, in lieu of requiring that final lien waivers be furnished from such Subcontractors, it shall accept the indemnity contained in Section 2.5 hereof as being "other collateral" satisfactory to it for purposes of complying with the requirements of Section 2.1.22.3 of the EPC Contract and this Section 2.6.

2.7.    The Parties agree to the mutual release set forth in Section 3.1 of this Release and Settlement Agreement.

### 3.    **MUTUAL RELEASE**

3.1.    Subject to and upon (a) the occurrence of the AES Lender Consent with a copy thereof having been given to the D/FD Parties within fourteen (14) days of the date of this Release and Settlement Agreement, (b) the delivery by the D/FD Parties of the payment, motion to dismiss and lien waivers required by Section 2.1 (b) hereof, and (c) with respect only to the release of Claims (as defined below) given by the D/FD Parties as described below in this Section 3.1, AES's filing of a motion to dismiss with prejudice the Complaint in full accordance with Section 2.2 hereof, and except solely with respect to the Retained Rights (as defined in Section 3.2 hereof) and the rights and obligations of the Parties provided elsewhere in this Release and Settlement Agreement: AES (on the one hand) and the D/FD Parties (on the other hand), and each of them, for themselves and for their partners, insurers, agents, employees, officers, directors, corporate parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, attorneys, predecessors, successors, and assigns of any of them (individually and collectively, the "Releasors"), for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, do hereby fully remise, release, acquit and forever discharge each other and their respective partners, insurers, agents, employees, officers, directors,

10

**A54**

**AESPR 136936**

corporate parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, attorneys,

predecessors, successors, and assigns of any of them (individually and collectively, the

"Releasees"), of and from any and all claims, causes of action, suits, debts, dues, accounts,

bonds, covenants, contracts, agreements, judgments, damages of any kind (including without

limitation all special, incidental, indirect and consequential damages), and demands whatsoever

in law or in equity arising out of or relating to the Project, the EPC Contract and the Guarantees

(hereinafter "Claims"), including but not limited to the matters alleged in the Complaint and the

Counterclaim, and including but not limited to all Claims for amounts due to any of the D/FD

Parties under or in connection with the EPC Contract (which includes without limitation all

withheld payments under the EPC Contract (including the retainage), all scope change order

requests/notices and any performance-related bonuses), and including but not limited to any

claim that Releasors were induced to agree to this Release and Settlement Agreement by any

statements not reflected in this Release and Settlement Agreement and any claim by Releasors

for alleged fraud or misrepresentations in connection with this Settlement and Release

Agreement, and including but not limited to all Claims for amounts due to AES under or in

connection with the EPC Contract (which includes without limitation any Claim for breach of

warranties or guarantees, any Claim for liquidated damages, any claim for delay in the

performance or completion of any of the Services (as defined the EPC Contract), any Claim for

punch list items, and any Claim for any incomplete or defective Services (as defined in the EPC

Contract)) whether such Claims be presently known or unknown, discoverable or

undiscoverable, which the Releasors ever had, now have, or which they or their successors or

assigns hereafter can, shall, or may have against the Releasees, now and in the future.

**AESPR 136937**

11

**A55**

3.2.    Notwithstanding anything to the contrary in Section 3.1 of this Release and Settlement Agreement, (a) the following provisions of the EPC Contract shall remain in full force and effect to the benefit of all Parties: Section 3.3; Article 10; Article 11 (solely with respect to the repair to be made by the D/FD Parties to the boiler refractory on the Project's Unit #2 during an outage scheduled during November, 2003, as referenced in the October 17, 2003, and August 22, 2003 letters to AES from Duke/Fluor Daniel Caribbean S.E. (and provided that AES provides the D/FD Parties with access to the Facility allowing them to perform such repairs during an outage commencing in November, 2003), and any warranty claim by AES with respect to such repair, and such warranty will expire no later than six (6) months after the earlier of (i) the completion of the repairs, or (ii) November 30, 2003); and Articles 19, 20, 22, 23, 24, and 26 (except for Sections 26.1 and 26.14) in their entirety; and (b) the Guarantees shall remain in full force and effect with respect to any obligations of any of the D/FD Parties arising from the provisions enumerated in the preceding clause (a) of this Section 3.2 (any and all such continuing provisions and obligations are referred to herein collectively as the "Retained Rights").

3.3    Notwithstanding the foregoing, or anything else in this Release and Settlement Agreement or the EPC Contract to the contrary, the Parties acknowledge that various of the D/FD Parties have asserted claims against certain of their subcontractors and suppliers (including, without limitation, Alstom Power, Inc.), which claims (which include, but are not limited to, the claims made against Alstom Power, Inc. ("API") in the third party complaint filed in the Delaware lawsuit, which lawsuit is described in the third "Whereas" clause of this Agreement) are not released pursuant to this Release and Settlement Agreement, and that the D/FD Parties shall be entitled to prosecute such claims against such subcontractors and suppliers and shall be entitled to all settlements and other recoveries therefrom, and AES hereby agrees to

12

**A56**

AESPR 136938

provide reasonable cooperation to the D/FD Parties in connection with the D/FD Parties'

informational requirements for the prosecution of such claims (including, without limitation,

access to the Project and to non-confidential books, records and personnel of AES).

### 4.    LIMITED ASSIGNMENT OF SUBCONTRACTOR WARRANTIES

4.1.    Subject to and upon (a) the occurrence of the AES Lender Consent with a

copy thereof having been given to the D/FD Parties within fourteen (14) days of the date of this

Release and Settlement Agreement, (b) the delivery by the D/FD Parties of the payment, motion

to dismiss and lien waivers required by Section 2.1 (b) hereof, and (c) AES's filing of a motion to

dismiss with prejudice the Complaint in full accordance with Section 2.2 hereof, Duke/Fluor

Daniel Caribbean S.E. ("D/FD Caribbean") hereby assigns to AES the warranties contained in

Articles 1.2, 1.3, 1.4, 1.5, and 1.6 of Part III, General Conditions of the Contract, dated February

24, 1998, between D/FD Caribbean and Combustion Engineering, Inc. for supply and erection of

boilers, among other things, for the Project; the warranties contained in Articles 1.2, 1.3, 1.4, and

1.5 of Part III, General Terms of the Purchase Order dated December 8, 1999, between D/FD

Caribbean and ABB Power Generation, Inc. for supply and erection of steam turbines, among

other things, to be installed in the Project; and any and all other subcontractor or supplier

warranties provided to D/FD Caribbean by other subcontractors and suppliers for the Project, and

each of the other D/FD Parties hereby assigns to AES any and all warranties provided to such

D/FD Party by any subcontractor or supplier for the Project, (collectively the "Subcontractor

Warranties"); **provided, however**, that the assignment by D/FD Caribbean and by the other

D/FD Parties as set forth herein is limited solely to rights under the Subcontractor Warranties for

(a) defects which first appear after the date of this Release and Settlement Agreement (other than

any rights in connection with the D/FD Parties' continuing warranty obligations hereunder with

13

respect to the Unit #2 boiler refractory repairs included within the Retained Rights pursuant to Section 3.2 hereof), and (b) future costs of repairing currently existing defects in the precipitator and scrubber which have been identified in currently existing warranty claims.   It is specifically understood and agreed that except with respect to the rights under the Subcontractor Warranties described in subclauses (a) and (b) immediately above, the D/FD Parties are not assigning any rights to AES, and it is specifically understood that the D/FD Parties reserve and retain all rights to make claims against all subcontractors and suppliers except with respect to the rights described in said subclauses (a) and (b).  Without limiting the foregoing, for the avoidance of doubt, and by way of illustration, the D/FD Parties retain and reserve all rights to make claims against and recover damages and all other costs and fees from Combustion Engineering, Inc., ABB Power Generation, Inc., API, and their predecessors, successors, parents, subsidiaries, affiliates, partners, assigns and related entities (collectively, "Alstom") for delay damages, liquidated damages, performance guarantee damages, impact damages, interference damages, acceleration damages, indemnification, and all costs and damages of any kind whatsoever incurred by the D/FD Parties as a result of any breach of warranty or other breach of contract, negligence or other wrongful conduct by Alstom.

      4.2     AES agrees that the D/FD Parties make no representations, promises, warranties, or guarantees concerning the Subcontractor Warranties assigned by the D/FD Parties to AES pursuant to Article 4.1 above, including, but not limited to, any representations, warranties, or guarantees that the Subcontractor Warranties, or the assignment thereof, are valid, enforceable, or cover any particular defect, including, but not limited to, the specific defects referred to in Section 4.1 above.  It is understood that AES shall have no rights against, claims

14

**A58**

AESPR 136940

against, or recourse against the D/FD Parties arising out of or relating in any manner to the Subcontractor Warranties, or the assignment of those warranties.

## 5.    MISCELLANEOUS PROVISIONS

5.1.    The Parties shall execute such further instruments and documents and shall perform such further acts as may be reasonably necessary or convenient to carry out and perform the terms and provisions of this Release and Settlement Agreement.

5.2.    This Release and Settlement Agreement constitutes the entire understanding among and between the Parties with respect to the subject matter hereof, supersedes any and all prior negotiations and agreements of the Parties with respect to the subject matter hereof, and shall not be modified except by an instrument in writing executed by the Parties.

5.3.    The Parties expressly agree and acknowledge that this Release and Settlement Agreement is in full accord and satisfaction of disputed claims; that the provisions of this Release and Settlement Agreement constitute a fair, reasonable and adequate settlement and determination of their rights and obligations; and that they have entered into this Release and Settlement Agreement freely and voluntarily after consultation with counsel. This Release and Settlement Agreement is not to be considered as an admission of liability by or against AES and/or the D/FD Parties in any proceeding, except with respect to the obligations and liabilities expressly set forth herein.

5.4.    This Release and Settlement Agreement is the product of negotiation and preparation by and among the Parties and their respective counsel. The Parties expressly acknowledge and agree that this Settlement Agreement shall not be deemed to be prepared or drafted by any particular party or its attorneys, and will be construed accordingly. Any rule of

15

**A59**

AESPR 136941

construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Release and Settlement Agreement.

      5.5.    This Release and Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Delaware in effect as of the date of execution of this Release and Settlement Agreement.

      5.6.    The Parties agree that they will be responsible for their own costs and attorneys' fees arising out of the Complaint and Counterclaim. If any Party to this Release and Settlement Agreement shall commence any action against any other Party because of a breach of this Release and Settlement Agreement, the prevailing Party(ies) shall be entitled to reasonable costs and attorneys' fees.

      5.7.    This Release and Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Release and Settlement Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Release and Settlement Agreement.

[SIGNATURES START ON NEXT PAGE]

**A60**

T:/Contracts/AES Settlement Agreement 103103cl.doc.

**AESPR 136942**

IN WITNESS WHEREOF, the Parties hereto have executed this Release and Settlement Agreement.

AES Puerto Rico, L.P.

By: _____

Its  *President*

Date: ~~October ___, 2003~~
       November 10, 2003

Duke/Fluor Daniel Caribbean S.E., by Duke/Fluor Daniel International, Its General Partner,

By: _____

Its _____

Date: October ___, 2003

Duke/Fluor Daniel International

By: _____

Its _____

Date: October ___, 2003

Duke/Fluor Daniel International Services

By: _____

Its _____

Date: October ___, 2003

Fluor Daniel Caribbean, Inc.

By: _____

Its _____

Date: October ___, 2003

17

A61

T:/Contracts/AES Settlement Agreement 103103cl.doc.

AESPR 136943

IN WITNESS WHEREOF, the Parties hereto have executed this Release and Settlement Agreement.

AES Puerto Rico, L.P.

By: _____

Its _____

Date: October ___, 2003

Duke/Fluor Daniel Caribbean S.E., by Duke/Fluor Daniel International, Its General Partner,

By _____

Its _____
     CEO

Date: October 31, 2003

Duke/Fluor Daniel International

By _____

Its _____
     CEO

Date: October 31, 2003

Duke/Fluor Daniel International Services

By _____

Its _____
     CEO

Date: October 31, 2003

Fluor Daniel Caribbean, Inc.

By: _____

Its _____

Date: October ___, 2003

17

T:/Contracts/AES Settlement Agreement 103103cl.doc.

**A62**

AESPR 136944

IN WITNESS WHEREOF, the Parties hereto have executed this Release and

Settlement Agreement.

AES Puerto Rico, L.P.                           Duke/Fluor Daniel Caribbean S.E., by
                                                Duke/Fluor Daniel International, Its General
                                                Partner,

By: _____                   By: _____

Its _____                   Its _____

Date: October ___, 2003                         Date: October ___, 2003


                                                Duke/Fluor Daniel International

                                                By: _____

                                                Its _____

                                                Date: October ___, 2003


                                                Duke/Fluor Daniel International
                                                Services

                                                By: _____

                                                Its _____

                                                Date: October ___, 2003


                                                Fluor Daniel Caribbean, Inc.

                                                By: _____

                                                Its _____

                                                Date: October ___, 2003


                                                                              **A63**

17

**AESPR 136945**

Caribbean Architects & Engineers

By: _Balys Young_

Its _Partner_

Date: October ___, 2003

Fluor Corporation

By: _____

Its _____

Date: October ___, 2003

Duke Capital Corporation

By: _____

Its _____

Date: October ___, 2003

Williams & Connolly LLP has executed this Release and Settlement Agreement confirming its role of accepting funds and items from the D/FD Parties and holding them in trust as described in this Release & Settlement Agreement.

Williams & Connolly LLP

By: _____

Its _____

Date: October ___, 2003

18

A64

AESPR 136946

Caribbean Architects & Engineers

By: _____

Its _____

Date:   October ___, 2003

Fluor Corporation

By:  *Y.U. [signature]*

Its  *SENIOR VP*

Date:   October ___, 2003

Duke Capital Corporation

By: _____

Its _____

Date:   October ___, 2003

Williams & Connolly LLP has executed this Release and Settlement Agreement confirming its role of accepting funds and items from the D/FD Parties and holding them in trust as described in this Release & Settlement Agreement.

Williams & Connolly LLP

By: _____

Its _____

Date:   October ___, 2003

18

**A65**

AESPR 136947

Caribbean Architects & Engineers

By: _____

Its _____

Date:  October ___, 2003


Fluor Corporation

By: _____

Its _____

Date:  October ___, 2003


Duke Capital Corporation

By: *David L. Hauser*                    CMP

Its   Vice President & Treasurer

Date:  ~~October ___, 2003~~  November 17, 2003


Williams & Connolly LLP has executed this Release and Settlement Agreement confirming its role of accepting funds and items from the D/FD Parties and holding them in trust as described in this Release & Settlement Agreement.


Williams & Connolly LLP

By: _____

Its _____

Date:  October ___, 2003

18

**A66**

**AESPR 136948**

Caribbean Architects & Engineers

By: _____

Its _____

Date:  November ___, 2003


Fluor Corporation

By: _____

Its _____

Date:  November ___, 2003


Duke Capital Corporation

By: _____

Its _____

Date:  November ___, 2003


Williams & Connolly LLP has executed this Release and Settlement Agreement confirming its role of accepting funds and items from the D/FD Parties and holding them in trust as described in this Release & Settlement Agreement.


Williams & Connolly LLP

By: _____

Its _____

Date:  November 10, 2003


**A67**

18

AESPR 136949

PRIVILEGED AND CONFIDENTIAL

JOINT DEFENSE AGREEMENT

This Joint Defense Agreement (the "Agreement") is entered into effective as of October 28, 2004 by and between ALSTOM Power Inc. ("ALSTOM") and Liberty Mutual Insurance Company ("Liberty Mutual"). For purposes of this Agreement, the term "Parties" shall refer to ALSTOM, Liberty Mutual, their respective affiliates and their respective counsel.

WHEREAS, Duke/Fluor Daniel Caribbean, S.E. ("D/FD Caribbean") entered into an EPC Contract with AES Puerto Rico ("AES"), the Owner, to design and construct a power-generating facility in Guuyama, Puerto Rico (the "Project"), and ALSTOM entered into a Purchase Order with D/FD Caribbean under which ALSTOM agreed to furnish and install two boilers and related pollution-control equipment;

WHEREAS, ALSTOM and Environmental Elements Corporation ("EEC") entered into a Purchase Order (the "EEC Purchase Order") under which EEC agreed to supply certain pollution-control equipment in connection with the construction of the Project;

WHEREAS, EEC, as Principal, and Liberty Mutual, as Surety, issued to ALSTOM's predecessor, as obligee, a Performance and Payment Bond, Bond No. 17-022-963, in the amount of Fourteen Million Six Hundred Sixty Three Thousand Eight Hundred One Dollars ($14,663,801) (the "Bond");

WHEREAS, certain disputes have arisen pursuant to which AES has filed an action against ALSTOM for alleged breach of warranty relating to equipment

A68    A-DB-00119

supplied by EEC under the EEC Purchase Order during the construction of the Project, which action is styled AES Puerto Rico, L.P. v. ALSTOM Power Inc., Civ. No. 04-1282-JJF, in the United States District Court for the District of Delaware (the "AES Litigation");

WHEREAS, Liberty Mutual, in its capacity as EEC's Surety, is defending ALSTOM's interests in the AES Litigation;

WHEREAS, ALSTOM and Liberty Mutual believe that they have a mutuality of interests in defending the claims that AES has asserted against ALSTOM in the AES Litigation as well as other claims that may arise and be asserted by AES or D/FD Caribbean in the future with respect to equipment supplied by EEC to ALSTOM under the EEC Purchase Order on the Project ("Other Project Claims") and that disclosure to and cooperation with each other regarding matters of common interest is essential in their joint interest in defending against AES's claims and any future claims that may arise from the Project; and

WHEREAS, both ALSTOM and Liberty Mutual, as well as their respective counsel, are of the opinion that it is in their mutual best interest to exchange information with each other on a confidential basis and cooperate in certain joint defense efforts without waiving any applicable privilege or allowing any confidential information to be disclosed to third parties.

NOW, THEREFORE, in order to accomplish the goals set forth above and in order to memorialize their understanding regarding their joint defense efforts,

A69

A-DB-00120

ALSTOM and Liberty Mutual agree, on their own behalf and on behalf of their respective counsel, as follows:

1.    The preambles to this Agreement are incorporated herein as if set forth in full.

2.    For purposes of this Agreement, "Confidential Material" includes all information, including, but not limited to, documents, communications, factual material, mental impressions, legal analysis, memoranda, and interview reports relating to the AES Litigation and/or to Other Project Claims, exchanged or communicated between the Parties (including their respective counsel, including, but not limited to, Ober|Kaler for ALSTOM and Niles, Barton & Wilmer for Liberty Mutual) in connection with the joint defense efforts made pursuant to this Agreement.  Confidential Material includes any information conveyed orally, by electronic media or in writing.  The fact of this Agreement and its contents also constitute Confidential Material pursuant to this Agreement.

3.    The Parties intend, in light of their mutual interests and the recognized joint defense privilege, that the legal privileges and protections of attorney-client communications, attorney work product or otherwise shall apply to all Confidential Material provided by and exchanged between the Parties to the same extent as if the Confidential Material had not been disclosed.  The Parties intend that the exchange of Confidential Material between the Parties shall not constitute a waiver of any applicable privilege.  It is further understood that all work jointly undertaken or shared among the Parties or their counsel in connection

A70

A-DB-00121

with the AES Litigation or any Other Project Claims is being undertaken or shared pursuant to the "joint defense doctrine."

4.    To ensure the protection of the work product of counsel, as well as privileged or confidential business, technical, financial or other information, the Parties agree that Confidential Material shall not be disclosed in any way, by any Party other than the Party that provided the Confidential Material, to anyone other than:  (a) the Parties to this Agreement and their respective counsel; and (b) consultants and experts retained for purposes of the AES Litigation or Other Project Claims by any Party, provided that any such consultant or expert has read this agreement and agrees to be bound by its terms.  Unless otherwise ordered by a court or other tribunal after appropriate objection, the Parties agree not to disclose any Confidential Material received pursuant to this Agreement to any person not specified in this Paragraph 4 without the prior express written consent of the Party that provided the Confidential Material.

5.    Nothing contained herein shall limit the right of either Party or its counsel to use or disclose any documents or information (a) that constitute or are derived from ordinary business records relating to the Project that ALSTOM would be entitled to obtain from EEC or Liberty Mutual or Liberty Mutual would be entitled to obtain from ALSTOM by virtue of the relationships established by the Purchase Order and the Bond, or (b) that have been or may in the future be independently obtained by the Party or its counsel.

4

A71

A-DB-00122

6.    Subject to Paragraph 5, the Parties agree that all Confidential Material disclosed pursuant to this Agreement shall be used only in connection with the AES Litigation and/or Other Project Claims, and shall not be used for any other purpose without the prior express written consent of the Party that provided the Confidential Material.  In particular, but without limitation, the Parties acknowledge that, to the extent AES prevails against ALSTOM in the AES Litigation or succeeds with respect to other claims ALSTOM may assert, ALSTOM and Liberty potentially could end up having claims against one another.  The Parties agree that they may elect to withdraw from this Agreement and thereafter assert legal claims against the other if they so choose.  The Parties expressly agree that in such an event, however, and subject to Paragraph 5, they will not use in any subsequent proceedings against the other any Confidential Material received from the other Party and that they will not use any Confidential Material received from the other Party to cross-examine any employee or representative of the Party who provided such material, unless such information is obtained through independent, legal means.

7.    Each Party agrees that at the conclusion of the AES Litigation and/or Other Project Claims, the Parties, within ten (10) days of the request of the other, shall, upon request of the other, return all documentary or electronic media Confidential Material (and copies thereof) to the Party that provided such Confidential Material.

A72

A-DB-00123

8.    The existence of this Agreement and of the joint defense shall not be used by either Party in any manner in any litigation or other proceeding involving the Parties.

9.    Either Party to this Agreement may withdraw from the Agreement by notifying the other Party in writing.  Such withdrawal shall not affect the attorney-client and work product privileges and other protections that exist pursuant to this Agreement prior to any such withdrawal.  Any Party that withdraws from this Agreement must continue to assert the attorney-client privilege and work product protection with respect to all Confidential Material covered by this Agreement unless and until such privileges/protections are expressly waived by all Parties hereto.  Upon withdrawal from this Agreement, the withdrawing Party shall, upon request of the other, promptly return any and all documentary or electronic media Confidential Material provided by any other Party to the Agreement, and the other Party shall promptly return any and all such Confidential Material received from the withdrawing Party.

10.    Nothing in this Agreement shall obligate a Party to disclose or share any information that it determines should not be disclosed, or prevent a Party from imposing additional conditions under which information may be shared or disclosed.

11.    Nothing in this Agreement shall be construed to prevent any counsel from continuing to represent their respective clients in the event of a future legal dispute between the Parties.  It is the Parties' express intent that each Party's respective counsel be permitted to continue their representation in any legal dispute

A73

A-DB-00124

between the Parties. It is further agreed that no counsel who has participated as part of the joint defense under this Agreement shall be disqualified, by virtue of this Agreement or such participation, from examining or cross-examining any Party's representative who testifies at any proceeding.

12.   The Parties acknowledge that disclosure of any Confidential Material in violation of the Agreement will cause the Parties to suffer irreparable harm for which there is no adequate remedy at law. Each Party hereto acknowledges that immediate injunctive relief is an appropriate and necessary remedy for any violation or threatened violation of the Agreement.

13.   If any person who is not a party hereto requests or demands, by subpoena or otherwise, any Confidential Material received by a Party from another Party, the Party that has received the request or demand shall immediately notify the supplying Party. Each Party will then take all reasonable steps necessary to preserve all applicable rights and privileges with respect to such Confidential Material and shall cooperate fully with the other Party in any proceedings relating to the disclosure of such Confidential Material.

14.   This Agreement shall, subject to the Parties' rights of withdrawal, remain in full force and effect until such time as all claims relating to the AES Litigation and/or Other Project Claims are finally resolved, through dismissal, settlement, final adjudication and appeal, or otherwise.

15.   The Parties and their respective counsel understand and agree that all information and material exchanged among the Parties and their counsel prior to

A74

A-DB-00125

the signing of this Agreement that would have constituted Confidential Material had this Agreement been in place at the time of the exchange shall now constitute Confidential Material and shall be subject to the provisions of this Agreement.

16.    Any waiver in any particular instance of the rights and limitations contained herein shall not be deemed, and is not intended to be, a general waiver of any rights or limitations contained herein and shall not operate as a waiver beyond the particular instance.

17.    Any amendments or modifications to this Agreement must be in writing and signed by all the Parties to the Agreement.

18.    Nothing in this Agreement shall prevent the Parties from entering into joint defense agreements with other parties, and this agreement shall not be deemed to supersede or nullify, in whole or in part, any joint defense agreement any Party has entered into prior to the date of this Agreement.

19.    The execution of this Agreement and the exchange of consideration set forth herein shall not be construed or interpreted as an admission of any wrongdoing or liability of any sort or kind on the part of the Parties, and any breach, wrongdoing, or liability is expressly denied.

20.    This Agreement shall be construed in accordance with the laws of Maryland, regardless of the applicability or provisions of any other states' laws or rules concerning conflicts of laws.

21.    The Parties mutually covenant and agree, each to the other, that the statements, representations, agreements and covenants contained herein are

A75

A-DB-00126

contractual in nature and not mere recitations of facts, and that the agreement and covenants herein shall be binding upon the parties hereto and their respective successors and assigns.

22.    This Agreement may be executed in one or more counterparts, which may be photocopies or facsimile transmissions of the original, but which shall constitute the same instrument.  Photocopies or facsimile transmissions of signatures shall be deemed original signatures and shall be fully binding on the Parties to the same as original signatures.

ALSTOM POWER INC.

By: _____

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

A76

A-DB-00127

## CERTIFICATE OF SERVICE

On October 2, 2006, Plaintiff served its Appendix to Memorandum of Points and

Authorities in Support of Motions In Limine on Evidentiary Matters of Plaintiff AES Puerto

Rico, L.P. by electronic filing and first class mail, postage prepaid, on:

> Richard R. Wier, Esq.
> Daniel W. Scialpi, Esq.
> Two Mill Road
> Suite 200
> Wilmington, Delaware 19806

and by e-mail and first class mail, postage prepaid, on

> James E. Edwards, Esq.
> Anthony Vittoria, Esq.
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643

/s/ John S. Spadaro