IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,          *

        Plaintiff,         *

        v.           *     C.A. No. 04-1282-JJF

ALSTOM POWER INC.,        *

        Defendant.       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## NOTICE OF DEPOSITION *DUCES TECUM*

Defendant ALSTOM Power, Inc., by undersigned counsel and pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby gives notice that it will take the deposition upon oral examination of the following named individual on the date and at the time and place indicated below. The deposition will continue until completed.

    **NAME:**    **Custodian of Records**
                 **GE Infrastructure Water & Process Technologies**
                 **4636 Somerton Rd.**
                 **Trevose, PA 19053-6783**

    **DATE:**    **September 21, 2005**

    **TIME:**    **9:00 a.m.**

    **PLACE:**    **First Services**
              **1601 Market St.**
              **Philadelphia, PA 19103**

In addition, and pursuant to Rule 30(b)(5), the Custodian of Records is requested to bring to the deposition all documents responsive to the Request set forth on Schedule A that are in his or her possession, custody and control.

In lieu of appearing for the deposition noted above, the Custodian of Records may produce the documents requested in Schedule A at the Law Offices of Ober, Kaler, Grimes &

**B.97**

Shriver, P.C., 120 E. Baltimore Street, Baltimore, Md. 21201.  ALSTOM Power, Inc. will

reimburse reasonable copying and shipping costs incurred by such production.

ALSTOM POWER INC.

*Daniel W. Scialpi*
*by AFV*

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone:  (410) 685-1120
Fax:     (410) 547-0699

afv
771162

B.98

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of August 2005, a copy of the foregoing

Notice of Deposition *Duces Tecum*, attached Schedule A and accompanying subpoena was

served, via first-class mail, postage prepaid, on:

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, Delaware 19805

Dane H. Butswinkas, Esquire
R. Hackney Wiegmann, Esquire
Daniel D. Williams, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Attorneys for Plaintiff


*Daniel W. Scialpi*
                                            *by AFv*
Daniel W. Scialpi

# ATTACHMENT A

## DEFINITIONS/INSTRUCTIONS

1.    "Document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including, but not limited to correspondence, messages, contracts, checks, memoranda or notes of telephone or other oral conversations, studies, surveys, charts, reports, minutes, notes, diaries, logs, schedules, cancelled checks, graphs, invoices, bills, computer reports, photographs, videotapes, releases, newspaper or magazine articles, books, financial statements, ledgers, transcripts, affidavits, tapes, tape recordings, phonograph recordings, e-mails, electronic files, electronically stored data, whether originals, copies, or drafts, however produced or reproduced. If any of the data or information requested below is stored in such a way as to be retrieved by computer, then in respect to such data or information, the term "document" shall also include the physical medium in which such data or information is stored, or a copy thereof, together with a copy of the software which will enable the data or information to be retrieved and reviewed.

2.    "Person" means any natural person, corporation, partnership or other private organization or governmental or legal entity.

3.    "You" means the entity or person receiving this subpoena and Notice of Deposition *Duces Tecum*, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys.

4.    "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

**B.100**

5.    "D/FD" refers to Duke/Fluor Daniel Caribbean, S.E., a Puerto Rico partnership, and its constituent partner members, also named as parties in this action, and any officers, directors, employees, agents, representatives of or attorneys for D/FD.

6.    "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

7.    "Project" means the 454-megawatt, co-generation, coal-fired facility, in its entirety, located in Guayama, Puerto Rico.

8.    This request includes the production of all non-identical copies of requested documents, including drafts and copies upon which notes or comments have been made.

9.    If any document responsive to this request is not produced due to a claim of privilege to a part or parts of the document (including a claim that all or a portion of the document constitutes work product), describe each such document and the factual basis for the claim of privilege.  Documents shall be deemed to have been adequately listed and described for the purpose of this instruction when the following information has been provided:

a.    The place, approximate date and manner of preparation of the document;

b.    The basis on which the privilege is claimed;

c.    The name of each person who participated in the preparation of the document;

d.    The name and corporate position, if any, of each person other than attorneys representing you to whom the content of the document has been communicated in the past whether by copy, exhibition, reading or substantial summarization;

B.101

  e.  The nature of the document and a brief description of its subject matter; and

  f.  Each addressee, recipient or possessor of the document.

10. To the extent that any request is objected to on grounds other than privilege, set forth the factual and legal basis for the objection. If you object in part to any request, produce all documents responsive to the remainder of that request.

11. Documents required to be produced are not limited to "paper" documents, but also include electronic data and electronic media and all forms of documents listed in the documents definition above.

12. In seeking information to respond to this document production request, you are required to examine all possible forms of storing textual, verbal or numerical information, and your examination may not be limited to paper or other forms of "hard copy" records. In searching for nonpaper sources of information, you are required to search all computer or other electronic or optical forms of information storing formats, including:

  a.  so-called floppy disks;

  b.  removable drive media, of all kinds;

  c.  hard drives used by individuals;

  d.  hard drives shared by multiple users;

  e.  storage media used by network systems;

  f.  storage media not maintained on-line, including but not limited to backup tapes or similar archival storage media, wherever and by whomever stored or retained;

  g.  file servers;

B.102

h.  optical media, including "write-once-read-many" ("WORM") media or other optical formats, including rewritable optical formats;

i.  portable computers, included but not limited to, "notebook" computers, "laptop" computers, or other similar portable devices;

j.  palmtop, pocket size or similar portable information devices on which information is stored in digital form;

k.  systems that preserve "voice mail" or similar messages in analog or digital form; and

l.  all systems, whether included in (a)-(k) above, that preserve electronic mail or similar messages in any form, including, but not limited to, systems on the desktop of electronic mail users, systems on servers, and systems that are "offline" methods of preservation of such messages, whether tape, optical or otherwise.

13.  The documents and things requested shall be produced at the office of AES, or such other location(s) as agreed to by the parties.

## DOCUMENTS REQUESTED

1.  All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and AES concerning or in connection with the Project.

2.  All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and D/FD concerning or in connection with the Project.

B.103

3.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and ALSTOM concerning or in connection with the Project.

4.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and any other entity not identified in Numbers 1-3 above concerning or in connection with the Project.

5.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and AES by which you were to provide labor, materials or consultation in connection with the Project.

6.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and D/FD by which you were to provide labor, materials or consultation in connection with the Project.

7.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and ALSTOM by which you were to provide labor, materials or consultation in connection with the Project.

8.    All documents evidencing, referring to or relating to any invoices or requests for payment submitted to AES in regard to labor, materials or consultation you provided in connection with the Project.

9.    All documents evidencing, referring to or relating to any invoices or requests for payment submitted to D/FD in regard to labor, materials or consultation you provided in connection with the Project.

**B.104**

10.    All documents evidencing, referring to or relating to any invoices or requests for payment submitted to ALSTOM in regard to labor, materials or consultation you provided in connection with the Project.

11.    All documents evidencing, referring or relating to any payments made by AES to you for any labor, materials or consultation you provided in connection with the Project.

12.    All documents evidencing, referring or relating to any payments made by D/FD to you for any labor, materials or consultation you provided in connection with the Project.

13.    All documents evidencing, referring or relating to any payments made by ALSTOM to you for any labor, materials or consultation you provided in connection with the Project.

14.    All documents which constitute, pertain or relate in any way to requests for information, or other requests for interpretation or clarification which you submitted to any person or entity relating to the Project.

15.    All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records regarding the labor, materials or consultation you provided in regard to the Project.

16.    All documents which constitute, pertain or relate in any way to reports or meetings relating to the Project, including, without limitation, job meeting minutes, coordination meeting minutes, progress reports, cost reports and daily reports, monthly and/or other periodic reports.

17.    All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the Project.

B.105

18.    Any and all inspection reports, testing reports or other documents, data compilations or tangible things referring to or relating to the Project, whether created by you or provided to you by some other entity or person.

770437 – C

B.106

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_____Eastern_____            DISTRICT OF _____Louisiana_____

AES Puerto Rico, L.P.                    **SUBPOENA IN A CIVIL CASE**
            V.
ALSTOM Power Inc.

                                        Case Number:[1]  04-1282-JJF

TO: F.L. Smidth Airtech, Inc.
    Regional Service Center, 68264 Piney Woods Lane
    Covington, LA 70433

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE  Consolidated Reporting, 315 E. Kirkland St., Covington, LA 70433 | DATE AND TIME  September 23, 2005  10:00 a.m. |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 08/17/05 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |

   Anthony F. Vittoria, Esquire, Ober, Kaler, Grimes & Shriver, 120 East Baltimore St., Baltimore, MD 21202-1643, 410-347-7692

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**B.107**

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME)                                    MANNER OF SERVICE

SERVED BY (PRINT NAME)                                    TITLE

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____           _____
                    DATE                              SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**B.108**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,               *

     Plaintiff,               *

v.                                   *          C.A. No. 04-1282-JJF

ALSTOM POWER INC.,                   *

     Defendant.               *

*    *    *    *    *    *    *    *    *    *    *

## NOTICE OF DEPOSITION *DUCES TECUM*

Defendant ALSTOM Power, Inc., by undersigned counsel and pursuant to Rule 30 of the

Federal Rules of Civil Procedure, hereby gives notice that it will take the deposition upon oral

examination of the following named individual on the date and at the time and place indicated

below.  The deposition will continue until completed.

    **NAME:**    **Custodian of Records**
                **F.L. Smidth Airtech, Inc.**
                **Regional Service Center**
                **68264 Piney Woods Lane**
                **Covington, LA 70433**

    **DATE:**    **September 23, 2005**

    **TIME:**    **10:00 a.m.**

    **PLACE:**    **Consolidated Reporting**
                **315 E. Kirkland St.**
                **Covington, LA 70433**

In addition, and pursuant to Rule 30(b)(5), the Custodian of Records is requested to bring

to the deposition all documents responsive to the Request set forth on Schedule A that are in his

or her possession, custody and control.

In lieu of appearing for the deposition noted above, the Custodian of Records may

produce the documents requested in Schedule A at the Law Offices of Ober, Kaler, Grimes &

**B.109**

Shriver, P.C., 120 E. Baltimore Street, Baltimore, Md. 21201. ALSTOM Power, Inc. will

reimburse reasonable copying and shipping costs incurred by such production.

ALSTOM POWER INC.

*Daniel W. Scialpi* by ArV

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
1220 Market St., Suite 600
Wilmington, DE 19801
(302) 888-3222

James E. Edwards, Esquire
Anthony F. Vittoria, Esquire
Michael A. Schollaert, Esquire
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202-1643
Phone: (410) 685-1120
Fax:    (410) 547-0699

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of August 2005, a copy of the foregoing

Notice of Deposition *Duces Tecum*, attached Schedule A and accompanying subpoena was

served, via first-class mail, postage prepaid, on:

>   John S. Spadaro, Esquire
>   Murphy Spadaro & Landon
>   1011 Centre Road, Suite 210
>   Wilmington, Delaware  19805
>
>   Dane H. Butswinkas, Esquire
>   R. Hackney Wiegmann, Esquire
>   Daniel D. Williams, Esquire
>   Williams & Connolly LLP
>   725 Twelfth Street, N.W.
>   Washington, D.C.  20005
>
>   Attorneys for Plaintiff

Daniel W. Scialpi
by AFV

## ATTACHMENT A

## DEFINITIONS/INSTRUCTIONS

1.    "Document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including, but not limited to correspondence, messages, contracts, checks, memoranda or notes of telephone or other oral conversations, studies, surveys, charts, reports, minutes, notes, diaries, logs, schedules, cancelled checks, graphs, invoices, bills, computer reports, photographs, videotapes, releases, newspaper or magazine articles, books, financial statements, ledgers, transcripts, affidavits, tapes, tape recordings, phonograph recordings, e-mails, electronic files, electronically stored data, whether originals, copies, or drafts, however produced or reproduced.  If any of the data or information requested below is stored in such a way as to be retrieved by computer, then in respect to such data or information, the term "document" shall also include the physical medium in which such data or information is stored, or a copy thereof, together with a copy of the software which will enable the data or information to be retrieved and reviewed.

2.    "Person" means any natural person, corporation, partnership or other private organization or governmental or legal entity.

3.    "You" means the entity or person receiving this subpoena and Notice of Deposition *Duces Tecum*, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys.

4.    "AES" or "Owner" refers to Plaintiff, AES Puerto Rico, L.P., a Delaware limited partnership, and any current or former officers, directors, employees, agents, contractors, representatives of or attorneys for AES or AES related entities.

B.112

5.    "D/FD" refers to Duke/Fluor Daniel Caribbean, S.E., a Puerto Rico partnership, and its constituent partner members, also named as parties in this action, and any officers, directors, employees, agents, representatives of or attorneys for D/FD.

6.    "ALSTOM" refers collectively to ALSTOM Power Inc. and ALSTOM Caribe, (f/k/a CE Caribe), and any officers, directors, employees, agents, contractors, representatives or attorneys of ALSTOM.

7.    "Project" means the 454-megawatt, co-generation, coal-fired facility, in its entirety, located in Guayama, Puerto Rico.

8.    This request includes the production of all non-identical copies of requested documents, including drafts and copies upon which notes or comments have been made.

9.    If any document responsive to this request is not produced due to a claim of privilege to a part or parts of the document (including a claim that all or a portion of the document constitutes work product), describe each such document and the factual basis for the claim of privilege.  Documents shall be deemed to have been adequately listed and described for the purpose of this instruction when the following information has been provided:

    a.    The place, approximate date and manner of preparation of the document;

    b.    The basis on which the privilege is claimed;

    c.    The name of each person who participated in the preparation of the document;

    d.    The name and corporate position, if any, of each person other than attorneys representing you to whom the content of the document has been communicated in the past whether by copy, exhibition, reading or substantial summarization;

B.113

    e.    The nature of the document and a brief description of its subject matter; and

    f.    Each addressee, recipient or possessor of the document.

10.    To the extent that any request is objected to on grounds other than privilege, set forth the factual and legal basis for the objection. If you object in part to any request, produce all documents responsive to the remainder of that request.

11.    Documents required to be produced are not limited to "paper" documents, but also include electronic data and electronic media and all forms of documents listed in the documents definition above.

12.    In seeking information to respond to this document production request, you are required to examine all possible forms of storing textual, verbal or numerical information, and your examination may not be limited to paper or other forms of "hard copy" records. In searching for nonpaper sources of information, you are required to search all computer or other electronic or optical forms of information storing formats, including:

    a.    so-called floppy disks;

    b.    removable drive media, of all kinds;

    c.    hard drives used by individuals;

    d.    hard drives shared by multiple users;

    e.    storage media used by network systems;

    f.    storage media not maintained on-line, including but not limited to backup tapes or similar archival storage media, wherever and by whomever stored or retained;

    g.    file servers;

B.114

h.    optical media, including "write-once-read-many" ("WORM") media or other optical formats, including rewritable optical formats;

i.    portable computers, included but not limited to, "notebook" computers, "laptop" computers, or other similar portable devices;

j.    palmtop, pocket size or similar portable information devices on which information is stored in digital form;

k.    systems that preserve "voice mail" or similar messages in analog or digital form; and

l.    all systems, whether included in (a)-(k) above, that preserve electronic mail or similar messages in any form, including, but not limited to, systems on the desktop of electronic mail users, systems on servers, and systems that are "offline" methods of preservation of such messages, whether tape, optical or otherwise.

13.    The documents and things requested shall be produced at the office of AES, or such other location(s) as agreed to by the parties.

## DOCUMENTS REQUESTED

1.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and AES concerning or in connection with the Project.

2.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and D/FD concerning or in connection with the Project.

B.115

3.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and ALSTOM concerning or in connection with the Project.

4.    All documents evidencing, referring to or relating to any and all communications and transmissions (written or oral) between you and any other entity not identified in Numbers 1-3 above concerning or in connection with the Project.

5.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and AES by which you were to provide labor, materials or consultation in connection with the Project.

6.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and D/FD by which you were to provide labor, materials or consultation in connection with the Project.

7.    All documents evidencing, referring to or relating to any contract, purchase order or agreement between you and ALSTOM by which you were to provide labor, materials or consultation in connection with the Project.

8.    All documents evidencing, referring to or relating to any invoices or requests for payment submitted to AES in regard to labor, materials or consultation you provided in connection with the Project.

9.    All documents evidencing, referring to or relating to any invoices or requests for payment submitted to D/FD in regard to labor, materials or consultation you provided in connection with the Project.

B.116

10. All documents evidencing, referring to or relating to any invoices or requests for payment submitted to ALSTOM in regard to labor, materials or consultation you provided in connection with the Project.

11. All documents evidencing, referring or relating to any payments made by AES to you for any labor, materials or consultation you provided in connection with the Project.

12. All documents evidencing, referring or relating to any payments made by D/FD to you for any labor, materials or consultation you provided in connection with the Project.

13. All documents evidencing, referring or relating to any payments made by ALSTOM to you for any labor, materials or consultation you provided in connection with the Project.

14. All documents which constitute, pertain or relate in any way to requests for information, or other requests for interpretation or clarification which you submitted to any person or entity relating to the Project.

15. All documents which constitute, pertain or relate in any way to diaries, daily logs, chronologies, calendars or other records regarding the labor, materials or consultation you provided in regard to the Project.

16. All documents which constitute, pertain or relate in any way to reports or meetings relating to the Project, including, without limitation, job meeting minutes, coordination meeting minutes, progress reports, cost reports and daily reports, monthly and/or other periodic reports.

17. All documents which constitute, pertain or relate in any way to photographs, videotapes, drawings or other graphic depictions of any aspect of the Project.

B.117

18.    Any and all inspection reports, testing reports or other documents, data compilations or tangible things referring to or relating to the Project, whether created by you or provided to you by some other entity or person.

770437 – C

B.118

# RICHARD R. WIER, JR., P.A.

### ATTORNEY AT LAW

RICHARD R. WIER, JR.*
———
DANIEL W. SCIALPI

1220 MARKET STREET, SUITE 600
WILMINGTON, DELAWARE 19801

www.Wierlaw.com

(302) 888-3222
FAX (302) 888-3225

RWier@Wierlaw.com
DScialpi@Wierlaw.com

*ALSO ADMITTED IN PA

December 15, 2005

The Honorable Joseph J. Farnan, Jr.
United States District Court for the
District of Delaware
844 North King Street
Wilmington, Delaware  19801

Re:   **AES Puerto Rico, L.P. v. ALSTOM Power Inc.**
       **Case No. 04-1282 JJF**

Dear Judge Farnan:

We are writing to the Court on behalf of the parties to this case.  Pursuant to the Court's direction at the discovery dispute conference held on December 7, 2005, enclosed please find a proposed Discovery Dispute Resolution Plan (the "Plan") prepared jointly by the parties for the Court's approval.  Set forth below is a more complete summary of the agreements reached by counsel that are reflected in the Plan.

On December 9, 2005, counsel for AES Puerto Rico, L.P. ("AES-PR") and ALSTOM Power Inc. ("ALSTOM") met to discuss and attempt to resolve the discovery disputes in the case.  At that meeting, the parties agreed on a detailed protocol and set forth specific deadlines to complete all discovery in this matter.  To that end, the parties have further agreed to confer via telephone conference on a bi-weekly basis to monitor the progress of discovery and attempt to resolve further discovery disputes.

The parties agreed to make all hard-copy and electronic documents available for inspection on or before December 30, 2005.  Both parties have also agreed to make portions of the documents available for inspection on an interim basis as they are assembled, reviewed, and ready for production prior to December 30, 2005.  During the week of December 19, 2005, ALSTOM, at its own expense, will make its documents available to AES-PR in Windsor,

**B.119**

Connecticut.  Finally, the parties have discussed specific categories of documents to be produced within the agreed timeframe and will work together to ensure that a full and convenient production occurs.

   With regard to electronic mail, the parties have discussed their respective processes and have achieved a greater understanding of each other's practices.  In producing electronic mail, the parties will exchange the agreed upon levels of metadata where that metadata is available.  To the extent that there are any questions regarding the metadata that accompanies the parties' respective electronic productions, the parties will have their e-discovery liaisons meet and confer prior to bringing any issue to the attention of the Court.

   The parties agreed to a preliminary deposition schedule for a first round of depositions.  The deposition of fact witnesses shall be concluded by the close of discovery on March 10, 2006.  Mr. John Toher, an expert consultant for AES-PR who may be identified by AES-PR as a testifying expert, also is a fact witness in this case.  Should AES-PR decide not to designate Mr.  Toher as a testifying expert witness, AES-PR will notify ALSTOM and permit ALSTOM to depose Mr. Toher as a fact witness – even if ALSTOM has already taken or noticed seven "fact" witness and three Rule 30(b)(6) depositions – after the March 10, 2006 deadline, but before April 2, 2006.

   The Discovery Dispute Resolution Plan sets forth a schedule for expert witness disclosures in accordance with the discussions with the Court at the conference on December 7.  Further, the parties have agreed that the deposition of each expert submitting an Affirmative or Answering Disclosure will occur within three weeks of the submission of the Disclosure, while the deposition of each expert submitting a rebuttal Disclosure will be taken within two weeks of the submission of that Disclosure.  The deposition of an expert submitting a Rebuttal Disclosure will be limited to that Rebuttal Disclosure, but will be permitted even if the expert's deposition had been taken in regard to an Affirmative Disclosure.  These expert depositions will not count toward the numeric limits imposed in the Court's Rule 16 Scheduling Order entered on October 7, 2005.  In setting forth the timeline of expert depositions, the parties recognize that some of the depositions of expert witnesses will occur beyond the March 10, 2006 discovery deadline.

   Finally, the parties resolved the dispute regarding AES-PR's Answer to ALSTOM's Interrogatory No. 2.  During the week of December 12, 2005, ALSTOM will submit requests for the identities of AES-PR employees performing specific job functions.  ALSTOM's requests will be limited by the relevant timeframe, and AES-PR will endeavor to ascertain the identity of those individuals requested by ALSTOM.  AES-PR will timely Answer ALSTOM's narrowed Interrogatory by listing the requested individuals performing the requested job functions.

   Based upon these agreements and the enclosed Discovery Dispute Resolution Plan, the parties believe that it will not be necessary for the Court to hold the follow-up conference currently scheduled for December 20, 2005 at 10:00 a.m.  As set forth in the Court's Order dated December 8, 2005, however, the parties retain the right to renew their respective motions to

compel should full discovery not be provided by either party.

We appreciate your consideration of this matter.

Respectfully yours,

/s/ Daniel W. Scialpi

Daniel W. Scialpi (#4146)

Enclosure

cc:    James E. Edwards, Jr., Esquire/Anthony F. Vittoria, Esquire
       John S. Spadaro, Esquire
       Daniel D. Williams, Esquire

**B.121**

**Williams, Daniel**

| | |
|---|---|
| **From:** | Vittoria, Anthony [afvittoria@ober.com] |
| **Sent:** | Thursday, December 15, 2005 4:14 PM |
| **To:** | Williams, Daniel; Boatman, Jeb |
| **Cc:** | Edwards, James; Schollaert, Michael; Corwin, Kevin S.; Banister, Patricia |
| **Subject:** | AES v. ALSTOM |

Dan and Jeb,

In regard to ALSTOM Interrogatory No. 2, and as discussed by counsel, we would like the identities of any of the employees or outside vendors whose job responsibilities or assignments concern, or who were otherwise involved in, the following:

CDS/ESP

1.  CDS Nozzle cleaning/testing/maintenance/replacement -- including swirlers and tips
2.  CDS broomstick testing
3.  CDS/ESP inspection, maintenance and cleaning at initial turn-over and during shut-downs
4.  Control room operations
5.  Opacity monitoring, both by computer and visually
6.  The testing of the CDS water, including the taking of samples
7.  The testing of CDS or ESP ash, including the taking of samples
8.  The maintenance or calibration of the thermocouples, monitors or meters for the CDS, ESP and stack (CEMS)
9.  Taking, measuring or calculating the CDS or ESP wet bulb, dew point, approach or CDS operating temperatures
10. Stabilization work on the plates
11. Participated in the analysis and work to arrest the corrosion
12. The ash re-injection (from ESP to boilers) system
13. The sootblowing procedure
14. Participated in the analysis or effort to control opacity and/or comply with EPA permit or other opacity goals
15. The EEC training program

FBHE's

1.  The FBHE tube/handcuff/clamp failures, including time, location and severity
2.  The analysis of the cause of the failures
3.  The steps taken by ALSTOM, if any, to remedy the failures
4.  The steps taken by AES, or any consultant or contractor hired by AES to, to remedy the failures
5.  The fluidizing air flow or velocities in the FBHEs

Thanks,
Tony

Anthony F. Vittoria
410-347-7692
afvittoria@ober.com

O B E R | K A L E R
Attorneys at Law
www.ober.com
443-263-4192 -- Fax
120 East Baltimore Street

B.122

Baltimore, Maryland 21202


**Anthony F. Vittoria**
410-347-7692
afvittoria@ober.com

# O B E R | K A L E R
*Attorneys at Law*

www.ober.com
443-263-4192 -- Fax
120 East Baltimore Street
Baltimore, Maryland 21202

**B.123**

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

ANN N. SAGERSON
(202) 434-5494
asagerson@wc.com

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 20, 2006

**VIA E-MAIL AND FIRST-CLASS MAIL**
James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

Re:    *AES Puerto Rico, L.P. v. ALSTOM Power, Inc.*

Dear Jim:

Enclosed please find newly revised estimates based on newly received documents for procurement, construction and operation and maintenance ("O&M") costs for the Crystallizer. Based on the updated estimates, AES expects to make the following payments:

| Vendor | Date | Amount | Reason of Payment |
|---|---|---|---|
| To be determined | 2006 | $5,360,000 (est.) | Crystallizer – Procurement (incl. est. electrical) |
| To be determined | 2006/2007 | $4,650,000 (est.) | Crystallizer – Construction |
| Various | Ongoing | $14,359,011 (est.) | Crystallizer – O&M costs (est. $1,637,320/yr. incl. electrical, chemical, labor and disposal costs and 10% discount rate.) |

This letter and the enclosed documents (bates numbered AES PR 432939–988) are incorporated by reference into AES Puerto Rico LP's Responses to ALSTOM Power's Interrogatory No. 10.

If you have any questions, please do not hesitate to contact me at (202) 434-5494.

Best regards,

Ann N. Sagerson

**B.124**

## Williams, Daniel

| | |
|---|---|
| **From:** | Williams, Daniel |
| **Sent:** | Tuesday, April 25, 2006 12:09 PM |
| **To:** | Edwards, James |
| **Cc:** | Vittoria, Anthony; Schollaert, Michael; Sagerson, Ann; Tuxbury, James |
| **Subject:** | RE: Pertrial Order |

Jim:

Yes, we will be sending you our proposed jury instructions today.  We do not believe a special verdict form is necessary or advisable in this case, so we won't be proposing one.  We'll be sending you our document exhibits, but we also have four non-document exhibits, pieces of corroded collector plates and a FBHE handcuff, that we obviously can't photocopy.  You're certainly welcome to inspect them at your convenience.  Finally, we'll also be sending you a proposed statement of the nature of the case and statement of jurisdiction for the pretrial conference.

Best regards, Dan

> **From:** Edwards, James [mailto:jeedward@ober.com]
> **Sent:** Tuesday, April 25, 2006 11:42 AM
> **To:** Williams, Daniel
> **Cc:** Vittoria, Anthony; Schollaert, Michael
> **Subject:** Pertrial Order
>
> Dan:
>     In addition to the Exhibits, Exhibit List, Statement of Issues of Fact, Statement of Issues of Law, List of Proposed Admitted Facts, and List of Proposed Amendments to Pleadings, will you be sending Proposed Jury Instructions and a Proposed Verdict form to me today?  Regards, Jim.
>
>
> **James E. Edwards, Jr.**
> **Shareholder**
> 410-347-7330
> jeedwards@ober.com
>
> Ober, Kaler, Grimes & Shriver, P.C.
>
> 120 East Baltimore Street
> Baltimore, Maryland 21202-1643
> Fax:  410-547-0699

The information in this electronic transmission is confidential and intended only for the addressee.  Any use or disclosure by any other person is unlawful.  This information is protected under attorney-client and attorney work product privileges.  If you receive this electronic transmission in error, please notify us immediately by telephone (410-685-1120), and delete this message without making a copy.

**B.125**

5/16/05

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AES PUERTO RICO, L.P.,                          )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )        Civ. No. 04-1282JJF
                                                )
ALSTOM POWER, INC.                              )
                                                )
                    Defendant/                  )
                    Third-Party Plaintiff,      )
                                                )
        v.                                      )
                                                )
ENVIRONMENTAL ELEMENTS                          )
CORPORATION and LIBERTY MUTUAL                  )
INSURANCE COMPANY,                              )
                                                )
                    Third-Party Defendants.     )
                                                )

### NOTICE OF SERVICE

I, John S. Spadaro, hereby certify that on May 16, 2005, I caused true and correct copies

of Plaintiff's Responses to Alstom Power, Inc.'s First Set of Interrogatories to be served on all

counsel of record by electronic filing.

In addition, the following party was served in the manner indicated:

**HAND DELIVERY**
Richard R. Wier, Jr.
Daniel W. Scialpi
1220 Market Street, Suite 600
Wilmington, DE 19801

In addition, I certify that the following attorneys were served with the document by

facsimile at the number shown:

Anthony F. Vittoria
James E. Edwards
Ober Kaler, Grimes & Schriner
Fax: (410) 547-0699

120412

**B.125a**

in addition to this lawsuit, it currently is a party to the following lawsuits relating

to the construction of the plant:  (a) Brand Scaffold Builders, Inc. v. AES Puerto

Rico, L.P., et al., No. 04-1117 (JAG), pending in the United States District Court for

the District of Puerto Rico; (b) Duke/Fluor Daniel Caribbean, et al. v. J.R.

Insulation Sales and Services, et al., No. 05-01321, pending in the United States

District Court for the District of Puerto Rico and (c) J.R. Insulation Sales and

Services v. Combustion Caribbean Caribe, Inc., et al., No. G-AC-2003-0334, pending

in the Puerto Rico Tribunal de Primera Instancia.

INTERROGATORY NO. 14

        Set forth in detail and itemize each element of damage which you
contend you are entitled to recover in this action, describing in detail how you
computed each element of damage and the provision(s) in the Purchase Order
pursuant to which you contend that you are entitled to recover such damages, and
identify all documents which refer or relate to and all persons with knowledge of the
subject matter of your answer to this Interrogatory.

    RESPONSE

        AES PR objects to the interrogatory's request that AES PR "identify all

documents which refer or relate to and all persons with knowledge of the subject

matter of your answer to this Interrogatory" because it is vague and ambiguous.

Subject to the general and specific objections specified above, and without waiver

thereof, AES PR states that the damages to which it is entitled to recover are

currently estimated to be the amounts listed in response to interrogatories 10 and

12 above, plus interest.  Because all of the work has not yet been completed, these

estimates are subject to revision.  AES PR refers ALSTOM to the Complaint for an

explanation of the provisions in the Purchase Order pursuant to which AES PR is

entitled to reimbursement. AES PR supplements this response by referring

ALSTOM to the documents AES PR is producing in response to ALSTOM's first set

of requests for production. <u>See</u> Fed. R. Civ. P. 33(d).


John S. Spadaro
Bar No. 3155
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel. (302) 472-8100
Fax (302) 472-8135


OF COUNSEL:

Dane H. Butswinkas
R. Hackney Wiegmann
Daniel D. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. (202) 434-5000
Fax (202) 434-5029

Dated: May 16, 2005        Attorneys for AES Puerto Rico, L.P.

13

B.127

# OBER│KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410 685-1120 / Fax 410-547-0699
www.ober.com

**Anthony F. Vittoria**
afvittoria@ober.com
410-347-7692

**Offices in**
Maryland
Washington, D.C.
Virginia

June 15, 2006

F.L.Smidth Airtech, Inc.
Regional Service Center
68264 Piney Woods Lane
Covington, LA 70433

Re:  *AES Puerto Rico, LP v. ALSTOM Power Inc.*
     Civil Action No. 04-1282-JJF

Dear Madam/Sir:

As you know, a Subpoena and Notice of Deposition Subpoena Duces Tecum was previously delivered to you and your company in the above-referenced matter. A copy of that Subpoena is enclosed herein for your reference.

This matter is still pending in the United States District Court of Delaware. As set forth in the enclosed documents, ALSTOM Power Inc. respectfully requests that your company produce any and all documents relating to the AES Puerto Rico Cogeneration Power Plant in Guayama, Puerto Rico that were exchanged, obtained, or created since July 31, 2005. Again, we will reimburse your company for reasonable copying and shipping costs.

Please do not hesitate to contact me regarding the foregoing or enclosed.

Sincerely,

Anthony F. Vittoria

AFV/pjm
Enclosures
1825141

B.128

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

DANIEL D. WILLIAMS
(202) 434-5263
ddwilliams@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 6, 2006

**VIA HAND DELIVERY**

James E. Edwards, Jr., Esquire
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202-1643

      Re:   **AES Puerto Rico, L.P. v. ALSTOM Power, Inc.**

Dear Jim:

      Enclosed please find copies of AES-PR's supplemental trial exhibits, as well as an updated listing of the exhibits. The last exhibit, P-207, is a document just received by my client. We are producing it to you now as a supplement to our previous document productions.

      Please annotate the listing with ALSTOM's objections, if any, and return it to me by Friday so we can submit it to the Court on Monday as a supplement to the proposed pretrial order.

      Sincerely,

      Daniel D. Williams

Enclosures

**B.129**

**Williams, Daniel**

| | |
|---|---|
| **From:** | Williams, Daniel |
| **Sent:** | Thursday, September 07, 2006 3:12 PM |
| **To:** | 'Edwards, James' |
| **Subject:** | Supplemental exhibits |

**Attachments:**      P-208.pdf; Suppl Trial Exhibit List.pdf


Jim, we have one additional exhibit, P-208, attached to this e-mail and being sent to you by Federal Express, that we are including as a trial exhibit.  This document was received by my client this morning.  In addition to marking it as a trial exhibit, we are producing it to you now as a supplement to our previous document productions in this matter.

Best regards, Dan

Daniel D. Williams
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
tel.  (202) 434-5263
fax  (202) 434-5029

   

P-208.pdf (3 MB)   Suppl Trial Exhibit
List.pdf (...

**B.130**

| From: | Fred Campbell |
|---|---|
| Sent: | Monday, September 23, 2002 12:42 PM |
| To: | Rodney Hinds; Tim Maidenford; Jim Hipson; Thomas L. Wardell; Linda P. Rothe |
| Subject: | AES-PR / EEC #E972 |
| Attach: | Open Issues.doc; CDS_WaterNozzle_Rev1.doc; CDS_NozzleCleaningLogBook.doc |

-------------------- Forwarded by Fred Campbell/USWIN01/Power/ALSTOM on 09/23/2002 12:41 PM --------------------------

"VanHooser, Bill" <wbvanhooser@eec1.com>
09/23/2002 08:36 AM
To: William M Jarvis/USWIN01/Power/ALSTOM@GA
cc: "Kimberl, Rob" <rbkimberl@eec1.com>, "Siever, Ray" <SieverR@eec1.com>, Fred Campbell/USWIN01/Power/ALSTOM@GA
Subject: AES-PR / EEC #E972
Security Level:? Internal


Bill,

Per our discussion on Friday, I am attaching three documents:
1. List of outstanding issues
2. Updated procedures
3. Nozzle Cleaning Log

I will forward a copy of the procedures and log to the Operations Personnel.
I will also forward additional updated procedures, when they are complete.

Bill VanHooser
<<Open Issues.doc>> <<CDS_WaterNozzle_Rev1.doc>>
<<CDS_NozzleCleaningLogBook.doc>>

- Open Issues.doc
- CDS_WaterNozzle_Rev1.doc
- CDS_NozzleCleaningLogBook.doc


CONFIDENTIALITY : This e-mail and any attachments are confidential and may be privileged. If you are not a named recipient, please notify the sender immediately and do not open any attachments hereto, disclose the contents of this e-mail or the attachments if any thereto, to another person, use it for any purpose or store or copy the information in any medium.

PLAINTIFF'S
EXHIBIT
P-28
PENGAD 800-631-6989

MAID-EMAIL-009205

B.131

# CDS /ESP OPEN ISSUES

| DESCRIPTION | ACTION REQ'D BY | DATE CLOSED |
|---|---|---|
| 1.  Modify Ash Overflow Chutes | EEC/AP | |
| 2.  Repair ESP Outlet Ductwork | AP | |
| 3.  Confirm ESP Outlet Ductwork Design | EEC | |
| 4.  Investigate Fluidization air pressure requirement | EEC | |
| 5.  Measure flue gas wet bulb temp at CDS inlet | AP/AES | |
| 6.  Generate a PM Procedure log sheet | EEC | |
| 7.  Update / Reissue all Operating Procedures | EEC | |
| 8.  DCS to utilize last signal while calib. stack flow CEMS | DFD/AP | |
| 9.  Tune Lime Feed Controller | DFD/EEC | |
| 10. Modify Weigh Belt Feed Chutes | EEC/Chemco | |
| 11. Forward Report on DMS/DCS Comm. Issues | EEC | |
| 12. Issue Unit 2 "Trip Report" | EEC | |
| 13. Simulate CDS trip and Re-start at 125MW and higher | EEC/AP | |
| 14. Provide water analysis of Cooling Water (Cl / Susp. Solids) | AP | |
| 15. Provide ash analysis (Chlorides) | AP | |
| 16. Confirm consumption of Cooling Water | EEC | |
| 17. Replace Damaged Thermocouple 106A | AP | |
| 18. Replace Lime/CDS Level Probes | AP | |
| 19. Replace damaged water temp gauges on piping skids | AP | |
| 20. Comment on potential problems of modifying pump strainers | EEC | |
| 21. Add Master Fuel Trip for CDS system (Water, Ash , Lime) | DFD | |
| 22. Revise CDS Trip from Steam Flow to Total Air Flow | DFD | |
| 23. Confirm CDS Inlet Flow Calculation | EEC | |
| 24. Increase Pump under-pressure time delay trip | EEC/DFD | |
| 25. Provide Fabrication detail dwgs on Outlet Ductwork | EEC | |

MAID-EMAIL-009206

B.132

# CDS WATER NOZZLES
# CLEANING PROCEDURES

## FREQUENCY
- Each nozzle should be removed from service and cleaned once per shift
- Each nozzle must be removed from service and cleaned after a Boiler or CDS trip

## TOOLS NEEDED
- Wire brush
- Spray lubricant (WD-40 or equal)
- Temporary Cover for nozzle opening (out of service)
- Broomstick

## BEFORE CLEANING WATER NOZZLE:
- Notify Control Room Operator 5 minutes prior to removing nozzle, and
- Notify Control Room Operator when nozzle is returned to service

## CONTROL ROOM OPERATOR PROCEDURE
- At full load, three (3) nozzles will not provide the necessary water spray capacity to maintain CDS outlet flue gas temp at 150°F
- As soon as one (1) nozzle is removed from service, CDS outlet flue gas temp will slowly rise to approximately 160°F
- This may increase opacity and $SO_2$ emissions.
- If Operator wishes to eliminate spikes in these emissions, he may try putting Temp Control Valve in auto and controlling the output as necessary. In no event should CDS outlet flue gas temperature be <145°F

MAID-EMAIL-009207

B.133

- Control Room Operator must return CDS flue gas outlet temperature control valve to Auto w/ original setpoint, after operation has stabilized

## CLEANING PROCEDURE

- There must be at least three (3) nozzles in service at all times
- The time each nozzle is removed from service must be kept to a minimum
- Begin by removing nuts and bolts from flange of protector tube
- Valve nozzle out of service by 1st closing return valve and then closing supply valve. Pressure in the water lines may be removed by opening the drain valves at the end of the line, downstream of pressure gauges. Be sure to close drain valves.
- Disconnect hoses at quick disconnect and extract nozzle from protector tube
- Cover opening to eliminate in-leakage into CDS
- While nozzle is being cleaned, quick disconnect should be inspected for proper operation and sprayed with lubricant as necessary. Also use broomstick to clear any buildup in the nozzle protector tube.
- Clean nozzle end and head with wire brush. Nozzle should be as clean as possible before returning to service.
- Inspect nozzle orifice for any imperfections (out of round, etc.) and these should be noted in the nozzle cleaning log book along with a description of their appearance. Damaged nozzles should be replaced promptly.
- Remove temporary cover, Re-install nozzle and return to service by slowly opening the supply valve first, and then open the return valve
- Observe hose connections for water leaks and adjust or repair as necessary

MAID-EMAIL-009208

B.134

## BROOMSTICK TEST

- During each shift perform a broomstick test in the port adjacent to each nozzle.
- Remove inspection port and insert broomstick
- Try to eliminate in-leakage by blocking off any open area around broomstick
- Broomstick should remain in the inspection port for 20-30 seconds
- The appearance of the broomstick, after removal from the port should be noted in the nozzle cleaning log book

## NOZZLE CLEANING LOGBOOK



| DATE | TIME | NOZZLES CLEANED(x) | | | | BROOMSTICK(x) | | | | NOTES | INITIALS |
|------|------|---|---|---|---|---|---|---|---|-------|----------|
| | | 1 | 2 | 3 | 4 | 1 | 2 | 3 | 4 | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

MAID-EMAIL-009210

# ALST○M

## COMBUSTION ENGINEERING CARIBE, INC.

October 8, 2002

Bill VanHooser
EEC

Bill,

I've marked up and attached your open item list form 9/27/02. In addition to the items you indicate are open, there are several issues that we consider still open as follows:

1) Provide EEC duct calculations to T. Wardell.

2) Measure flue gas wet bulb temp at higher loads.

3) Update and reissue revised operating procedures.

4) Place weigh belt feeder in operation in automatic.

5) Demonstrate placement of CDS in service.

6) Repair hydrated lime tank structural non-conformances.

7) Rectify problems with filling of back ESP hoppers/opacity spikes.

Please note that although some items on the lists require assistance from others, we hold EEC responsible for insuring these are completed.

Call me if any questions.

Bill Jarvis

Cc: L. Rothe, F. Campbell, J. Tuncay

Combustion Engineering Caribe, Inc.
P.O. Box 118
Guayama, Puerto Rico 00785
Tel: (787) 306-7664



B.137

| | |
|---|---|
| **From:** | Linda P. Rothe |
| **Sent:** | Wednesday, October 9, 2002 12:01 PM |
| **To:** | nrdavis@eec1.com; rbkimberl@eec1.com |
| **Cc:** | William M Jarvis; Linda S. Chen; Pamela Moynagh; John C. Packard |
| **Subject:** | Delay Notification - P.O. 50730 IO |
| **Attach:** | ATT4CO4Y; eec.a.tif |

Neil/Rob,

Attached find subject correspondence relative to another customer claim for delay.

I am advised that the start of the 100 hour test was delayed again yesterday due to reliability problems with the CDS/ESP. EEC continues to make logic changes to the controls and modify the operation procedures. EEC has not been able to demonstrate continuous operation.

Process experts are needed at site NOW. John Toher was supposed to be on site but he is not. Please advise his schedule.

Transmittal Letter:

DFD Notification:

Linda

CONFIDENTIALITY : This e-mail and any attachments are confidential and may be privileged. If you are not a named recipient, please notify the sender immediately and do not open any attachments hereto, disclose the contents of this e-mail or the attachments if any thereto, to another person, use it for any purpose or store or copy the information in any medium.



PLAINTIFF'S
EXHIBIT
B-33
PENGAD 800-631-6989

ROTH-EMAIL-006750

B.138

# ALSTOM

## COMBUSTION ENGINEERING CARIBE, INC.

Date: October 23, 2002

Letter No.: CEC-5697/363C

Duke/Fluor Daniel Caribbean S.E.
AES Total Energy Project
P.O. Box 2700
Guayama P.R. 00785-2700

Attention: Charlie Lyda

Dear Mr. Lyda:

Attached are revised operating procedures from Environmental Elements Corporation as follows:

1. CDS Water nozzle cleaning procedure Rev. 9/22/02.
2. CDS Nozzle Cleaning Log Rev. 10/12/02.
3. CDS Re-Start Procedure Rev. 10/22/02
4. CDS Cold Start-up Procedure Rev. 10/22/02.

Please advise if you have any questions.

Regards,

Fred Campbell
Commissioning Manager

cc: W. Jarvis, E. Zielinski, F. Campbell, M. Smith, E. Bulewich, G. Mattice

Combustion Engineering Caribe, Inc.
P.O. Box 118
Guayama, Puerto Rico 00785
Tel: (787) 403-5545



PLAINTIFF'S
EXHIBIT

P-39

W-018-00433

A 100

B.139



Revised 9/22/02

# CDS WATER NOZZLE
# CLEANING PROCEDURE

## FREQUENCY
- Each nozzle should be removed from service and cleaned once every 8 hours
- Each nozzle must be removed from service and cleaned after a Boiler or CDS trip

## REQUIREMENTS
› Two operators minimum, three preferred
› Wire brush
› Spray lubricant (WD-40 or equal)
, Temporary Cover for nozzle opening (out of service)
· Broomstick
  Clean rag

## BEFORE and AFTER CLEANING WATER NOZZLE:
Notify Control Room Operator prior to removing nozzle, and
Notify Control Room Operator when nozzle is returned to service

## CONTROL ROOM OPERATOR (CRO) PROCEDURE
No CRO action is required other than monitoring the CDS outlet temperature, pump discharge pressure, opacity, and SO2 provided that nozzle cleaning procedure is properly executed. Otherwise, CRO should take action to avoid CDS outlet temperature excursions beyond the range of 145 to 160F
The temperature control valve should be in auto unless temperature drifts beyond the range of 145 to 160F. If CDS outlet temperature drifts beyond this range, put the temp control valve in manual and take appropriate action to control the temperature.

W-018-00434

A 101

B.140



ENVIRONMENTAL ELEMENTS CORPORATION

Revised 9/22/02

- In no event should CDS outlet flue gas temperature be <145°F
- Control Room Operator must return CDS flue gas outlet temperature control valve to Auto w/ original setpoint, after operation has stabilized

## CLEANING PROCEDURE

- There must be at least four (4) nozzles in service at all times. These nozzles must be in positions #1, #2, #3, and #4 before and after cleaning.
- Position #5 will be used temporarily during nozzle cleaning. Refer to Figure 1 for nozzle positions around CDS vessel
- If there is a nozzle in position #5, pull it out and clean it. Otherwise, insert a clean nozzle into position #5. Connect hoses to it and secure it in its port using the nuts and bolts.

One operator should be stationed by the skid #5, and the other by the skid #1. Let the CRO know you are ready to switch nozzles Simultaneously open the valves of skid #5, and close valves of skid #1. A third operator should help coordinate this effort.

Remove nozzle #1 and clean it. Inspect nozzle orifice for any imperfections (out of round, etc.) and these should be noted in the nozzle cleaning log book along with a description of their appearance. Damaged nozzles should be replaced promptly.

Cover opening to eliminate in-leakage into CDS. While nozzle is being cleaned, quick disconnect should be inspected for proper operation and sprayed with lubricant as necessary. Also use broomstick to clear any buildup in the nozzle protector tube.

Re-install nozzle #1

One operator should be stationed by the skid #1, and the other by the skid #2. Let the CRO know you are ready to switch nozzles Simultaneously open the valves of skid #1, and close valves of skid #2. A third operator should help coordinate this effort.

Remove nozzle #2 and cover opening to eliminate in-leakage into CDS.

W-018-00435

A 102

B.141



ENVIRONMENTAL ELEMENTS CORPORATION

Revised 9/22/02

- Follow the cleaning procedure as before.
- Re-install nozzle #2
- One operator should be stationed by the skid #2, and the other by the skid #3. Let the CRO know you are ready to switch nozzles
- Simultaneously open the valves of skid #2, and close valves of skid #3. A third operator should help coordinate this effort.
- Remove nozzle #3 and cover opening to eliminate in-leakage into CDS.

Follow the cleaning procedure as before.

Re-install nozzle #3

One operator should be stationed by the skid #3, and the other by the skid #4. Let the CRO know you are ready to switch nozzles

Simultaneously open the valves of skid #3, and close valves of skid #4. A third operator should help coordinate this effort.

Remove nozzle #4 and cover opening to eliminate in-leakage into CDS.

Follow the cleaning procedure as before.

Re-install nozzle #4

One operator should be stationed by the skid #4, and the other by the skid #5. Let the CRO know you are ready to switch nozzles

Simultaneously open the valves of skid #4, and close valves of skid #5. A third operator should help coordinate this effort.


## ROOMSTICK TEST

During each shift perform a broomstick test in the port adjacent to each nozzle.

Remove inspection port and insert broomstick

Try to eliminate in-leakage by blocking off any open area around broomstick

Broomstick should remain in the inspection port for 20-30 seconds

The appearance of the broomstick, after removal from the port should be noted in the nozzle cleaning log book

W-018-00436

A 103

B.142



Revised 9/22/02

- **Wetting of broomstick is an indication of imperfect spray and all nozzles should be cleaned.**

## Figure 1: Nozzle positions



W-018-00437

A 104

B.143

# CDS NOZZLE CLEANING LOG

**Date**_____

**Time**_____

**Unit**_____

**DFD Supervisor**_____

**Alstom Supervisor**_____

**AES Operator**_____

**AES Operator**_____

**Comments:**_____
_____
_____

| Conditions | Unit 1 | | | | | | Unit 2 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Nozzles in Service (circle) | 1 | 2 | 3 | 4 | 5 | 6 | 1 | 2 | 3 | 4 | 5 | 6 |
| Boiler Load (Gross MW) | | | | | | | | | | | | |
| CDS Outlet Temperature (Hi/Low) | | | | | | | | | | | | |
| Capacity Spike (%) | | | | | | | | | | | | |
| Pump Discharge Pressure (psi) | | | | | | | | | | | | |
| Temp Control Valve Position (%) | | | | | | | | | | | | |

### CDS Key Plan



Airslide (Typ)

W-018-00438

A 105

B.144

| | Opacity | CDS Temp | TCV Position | Pump Press. | CDS Bed dP | MW Load | Time |
|---|---|---|---|---|---|---|---|
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |
| Nozzle In | | | | | | | |
| Nozzle Out | | | | | | | |

W-018-00439

A 106

B.145



10/22/02

## CDS RE-START PROCEDURE

## PRELIMINARY STEPS TO SHUT-DOWN

- 1st Field ESP hoppers should have NO low or low-low level alarms present. The water nozzles should be cleaned within four (4) hours of the planned shutdown
- Next, just prior to shut-down, put the stand-by pump in manual. Make sure all water valves are in Auto. This will allow the supply and return valves to close automatically, and the temperature control valve (TC-106) and its bypass valve to open automatically and water to drain back into the tank
- Operator must note the position and bias setting for each dosing valve
- Operator must note the position of the temperature control valve (TC-106)

## CDS SHUT-DOWN

- The hydrated lime feed system should be shut down by selecting the System Stop Command
- The cooling water system should be shut down by turning the operating pump off.
- The ash recirculation system should be shut down next. This is done by first switching the CDS differential pressure controller to manual with an output of 0%. The rotary valves of all remaining ESP hoppers should be switched to Manual and turned off.

W-018-00440

A 107

B.146



10/22/02

# IT IS IMPORTANT TO RE-START THE CDS SYSTEM AS SOON AS POSSIBLE. OPERATOR MUST ESTABLISH MINIMUM CDS BED DP AND BEGIN SPRAYING WATER BEFORE CDS OUTLET FLUE GAS TEMPERATURE RISES ABOVE 220°F.

## PRELIMINARY STEPS TO RE-START

- **ESP airlocks A, B, C, & D in rows 420 through 450 should be in Manual and OFF.**
- **ESP Dosing Valves 400 A, B, C, & D should be in Auto and Closed.**
- **Water pump set-up:**
  - **Operating pump in Manual / Stand-by pump in Auto**
  - **Temp Control Valve (TV-106) in Manual w/ 50% Output**
  - **By-pass Valve in Auto and open**
  - **Supply Isolation Flow Valve (FV-201) in Auto and closed**
  - **Return Isolation Flow Valve (FV-210) in Auto and closed**

**Stack observer should be in position to get visual indication of stack opacity**

## CDS START-UP

The hydrated lime feed system should be started in manual. After selecting the system start, the output should be set at 100% Open All ESP Dosing Valves (Row 400) to their last position prior to shutdown.

Put Dosing Valves (400 A-D) in Auto w/ SP = 1.5"

Start Water pump as soon as CDS bed dp reaches 1.0"

As soon as water pump starts, put Water Control Valve in its last position prior to shutdown.

W-018-00441



10/22/02

- As soon as CDS outlet gas temp has fallen to 165°F, put Temp Control Valve In Auto w/ SP = the higher of 152°F,
- *DO NOT ALLOW CDS OUTLET FLUE GAS TEMPERATURE TO FALL BELOW 145°F*
- When CDS outlet gas temp reaches setpoint, begin increasing CDS bed dp to approximately 1.7" at low load (135 MW) or 2.5" at full load (250 MW). Setpoint for intermediate boiler loads should be made proportional to above upper and lower limits. Changes to the setpoint should be made in increments not to exceed 0.25". Be careful and do not raise setpoint to quickly or too much at a time, because dosing valve hoppers will have their ash inventory depleted and will begin to show low-low level alarms.
- Return the operating water pump to Auto. Return the hydrated lime feed system to Auto with a setpoint of 0.01 lb/MBtu.
- As soon as the CDS bed differential pressure and CDS outlet flue gas temperature have stabilized at, it will be necessary to clean all operating water nozzles within 8 hours. This must not be delayed.

W-018-00442

A 109

B.148

EEC

ENVIRONMENTAL ELEMENTS CORPORATION

10/22/02

# CDS COLD START-UP AT LOW LOAD

## PRELIMINARY STEPS TO SHUT-DOWN

- **Just prior to shut-down, put the stand-by pump in manual. Make sure all water valves are in Auto. This will allow the supply and return valves to close automatically, and the temperature control valve (TC-106) and its bypass valve to open automatically and water to drain back into the tank**
- **All ESP rotary airlocks in rows 410-450 should be in manual.**

## CDS SHUT-DOWN

- **The hydrated lime feed system should be shut down by selecting the System Stop Command**
- **The cooling water system should be shut down by turning the operating pump off.**
- **The ash recirculation system should be shut down next. This is done by first switching the CDS differential pressure controller to manual with an output of 0%.**
- **All diverter valves in rows A-D should be opened, and the rotary valves of all remaining ESP hoppers (410-450) should be on and their ash diverted to the ash bins.**

W-018-00443

A 110

B.149

EEC

## PRELIMINARY STEPS TO START-UP

- Ash level in the 1st field ESP hoppers should be at hi-hi level
- ESP airlocks A, B, C, & D in rows 420 through 450 should be in Manual and on as soon as coal firing begins.
- ESP Dosing Valves 400 A, B, C, & D should be in Auto and closed.
- Clean water nozzles and valve in four (4) nozzles.
- ESP rappers should be operating in Program #5
- Water pump set-up:
  - Operating pump in Manual / Stand-by pump in Auto
  - Temp Control Valve (TV-106) in Manual w/ 50% Output
  - By-pass Valve in Auto and open
  - Supply Isolation Flow Valve (FV-201) in Auto and closed
  - Return Isolation Flow Valve (FV-210) in Auto and closed
- Stack observer should be in position to get visual indication of stack opacity
  Measure wet bulb temperature at 100-125 MW load.

## CDS START-UP

Flue gas flow rate at CDS inlet should be 425,000 ACFM (±5%)

As soon as Flue Gas temperature at the CDS inlet reaches 220°F, the CDS should be put into service as quickly as possible.

First start the hydrated lime feed system in manual. After selecting the system start, the output should be set at 100%.

Open All ESP Dosing Valves (Row 400) and bring CDS bed dP to 1.25-1.50". Recommended output to accomplish this is as follows:
A-D = 25-35%

W-018-00444

A 111

B.150

EEG

10/22/02

- Put Dosing Valves (400 A-D) in Auto w/ SP = 1.5"
- Start Water pump as soon as CDS bed dp reaches 1.0"
- As soon as water pump starts, put Water Control Valve in manual with an output of 20-30%.
- As soon as CDS outlet gas temp has fallen to 165°F, put Temp Control Valve In Auto w/ SP = the higher of 152°F or 30°F approach to saturation.
- *DO NOT ALLOW CDS OUTLET FLUE GAS TEMPERATURE TO FALL BELOW 145°F*
- When CDS outlet gas temp reaches setpoint, begin increasing CDS bed dp to approximately 1.7". If Boiler load is increased to full load (250 MW) the bed dp setpoint should be increased to 2.5". Setpoint for intermediate boiler loads should be made proportional to above upper and lower limits. Changes to the setpoint should be made in increments not to exceed 0.25". Be careful and do not raise setpoint to quickly or too much at a time, because dosing valve hoppers will have their ash inventory depleted and will begin to show low-low level alarms.

Return the operating water pump to Auto. Return the hydrated lime feed system to Auto with a setpoint of 0.01 lb/MBtu.

As soon as the CDS bed differential pressure and CDS outlet flue gas temperature has stabilized at, it will be necessary to clean all operating water nozzles within 8 hours. This must not be delayed.

W-018-00445

A 112

B.151